# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MAURICE A. PIMBLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 08-0344 (RJL) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ADMINISTRATIVE RECORD

    Attached is an index and the record of the administrative proceedings at issue in this action.

Respectfully submitted,

PETER NICKLES
Acting Attorney General for the District
  of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [012914]
Chief, Equity Section 2

*/s/ Juliane DeMarco*
JULIANE DEMARCO [490872]
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
Tel. - (202) 724-6614
Fax. - (202) 727-3625

August 26, 2008

**Index of Record**

| | **Page** |
|---|---|
| 1. Certification of Record | 1 |
| 2. Due Process Hearing Request, 3/21/05 | 2-5 |
| 3. Hearing Notice, 3/28/05 | 6 |
| 4. Plaintiff's Disclosure Letter w/att., 4/18/05 | 7-8 |
| 5. MP-1 Request for Hearing, 3/21/05 | 9-14 |
| 6. MP-2 Letter to Lisa Russell requesting evaluation, 11/29/04 | 15-17 |
| 7. MP-3 Letter to Lisa Russell requesting evaluation, 2/15/05 | 18-22 |
| 8. MP-4 Letter to M. Snipes re: communication with Russell, 3/21/05 | 23-26 |
| 9. MP-5 Letter to Lisa Russell re: special ed. evaluation, 4/4/05 | 27-31 |
| 10. MP-6 Letter to Lisa Russell re: lack of records, 4/12/05 | 32-40 |
| 11. MP-7 Letter to Horton re: special ed. evaluation, 4/12/05 | 41-53 |
| 12. MP-8 Letter to Marianne Cantwell, 4/11/05 | 54-58 |
| 13. MP-9 Letter to Marianne Cantwell, 4/14/05 | 59-72 |
| 14. MP-10 Most Recent IEP, 10/1/04 | 73-83 |
| 15. MP-11 Roosevelt High School Report Card, 00/01- 01/02 | 84-85 |
| 16. MP-12 Johnson JHS Student Master Record, 9/5/00-9/17/01 | 86-87 |
| 17. MP-13 Johnson JHS Report Card, 2/5/01 | 88-89 |
| 18. MP-14 Raymond ES Student Master Record, 3/4/98-10/13/99 | 90-91 |
| 19. MP-15 Fifth Grade Report Card, 1998-1999 | 92-93 |
| 20. MP-16 Fifth Grade Report Card, 1999 | 94-95 |

21.  MP-17 Stanford Achievement Test Series, 4/98          96-100

22.  MP-18 Stanford Achievement Test Series, 9/98          101-104

23.  MP-19 Stanford Achievement Test Series, 4/99          105-107

24.  MP-20 Rudolph ES Student Master Record, 9/12/94-11/7/97   108-109

25.  MP-21 Rudolph ES Report Card, 4th grade               110-111

26.  MP-22 Rudolph ES Report Card, 3rd grade               112-115

27.  MP-23 Rudolph ES Report Card, 2nd grade               116-117

28.  MP-24 Report Card, 1st grade                          118-119

29.  MP-25 Progress Report, 2/9/93                         120-121

30.  MP-26 Progress report, 6/18/93                        122-124

31.  MP-27 Student Residence and Data Verification, 1997-1998 5th grade   125-126

32.  MP-28 5 DCMR 2201.9; 45 D.C. Reg. 5240                127-129

33.  Plaintiff's Brief on Joint Liability to Hearing Officer ("HO"), 5/1/05   130-137

34.  Plaintiff's Brief on Statute of Limitation to HO, 5/1/05   138-154

35.  Telephone Conference Attendance sheet, 5/3/05         155

36.  Request for Extension of Time to submit Cost Information, 5/19/05   156-157

37.  Letter to HO on cost information, 5/26/05 w/att.      158-159

38.  Curriculum Vitae of Tina Lepage                       160-164

39.  Curriculum Vitae of Kristen Clark Wynns               165-170

40.  Hearing Officer's Interim Order, 6/8/05               171-173

41.  Letter advising DCPS of S & L.evaluation for Pimble, 4/27/06   174

42.  Page 2 of HO Interim Order, 6/8/05                    175

43. Psycho-Educational Evaluation, 11/21-12/8/05                    176-179

44. Clinical Evaluation, 11/29/05                                   180-184

45. Curriculum Vitae of Rona Fields                                 185-196

46. Motion to Reconvene Hearing, 8/22/07 w/att                      197-198

47. Att.-1 Due Process Complaint, 3/21/05                           199-202

48. Att.-2 Plaintiff's Brief on Statute of Limitation to HO, 5/1/05   203-219

49. Plaintiff's Brief on Joint Liability to HO, 5/1/05              220-227

50. Att.-3 Evaluations -Speech and Language, 6/27/06                228-233

51. Psycho-Educational, 11/21-12/8/05                               234-237

52. Clinical Evaluation, 11/29/05                                   238-241

53. Psychological Evaluation, 4/19/05                               242-248

54. Hearing Notice, 9/26/07                                         249-251

55. Motion to Extend Time/Move Due Process Hearing, 10/17-10/18/07   252-255

56. Plaintiff's Disclosure letter w/att., 10/24/07                  256-258

57. MP-1 Pre-Hearing Motion, 10/24/07                               259-261

58. MP-2 Pre-Hearing Motion for Default Judgment, 10/24/07          162-274

59. MP-3 Pre-Hearing Motion to extend time, 10/18/07                275-277

60. MP-4 Grievance Process Initiated by Pimble, 2/8/07, 9/24/07 [1]  278

61. MP-5 Motion to reconvene, 9/24/07                               279-281

62. MP-6 Brief on Statute of Limitation, 5/1/05                     282-298

63. MP-7 Liability Brief, 5/1/05                                    299-306

64. MP-8 Request for Hearing, 3/21/05                               307-310

---

[1]  Plaintiff had no document attached to MP-4. The District will supplement the record when a copy of MP-4 is provided.

4

65. MP-9 Letter to Lisa Russell requesting evaluation, 11/29/04    311-312

66. MP-10 Letter to Lisa Russell requesting evaluation, 2/15/05    313-315

67. MP-11 Letter to M. Snipes re: communication with Russel, 3/21/05    316-318

68. MP-12 Letter to Lisa Russell re: special ed. evaluation, 4/4/05    319-323

69. MP-13 Letter to Lisa Russell re: lack of records, 4/12/05    324-331

70. MP-14 Letter to Horton re: special ed. evaluation, 4/12/05    332-344

71. MP-15 Letter to Marianne Cantwell, 4/11/05    345-349

72. MP-16 Letter to Marianne Cantwell, 4/14/05    350-363

73. MP-17 Letter to H. Lappin, BOP, 3/3/07    364-367

74. MP-18 Letter to M. Snipes, 2/28/07    368-370

75. MP-19 Letter to G. Snyder, 2/28/07    371-373

76. MP-20 Letter to G. Snyder, 2/21/07    374-376

77. MP-21 Most Recent IEP, 10/1/04    377-384

78. MP-22 Roosevelt High School Report Card, 00/01- 01/02    385-386

79. MP-23 Johnson JHS Student Master Record, 9/5/00-9/17/01    387-388

80. MP-24 Johnson JHS Student Master Record, 9/5/00-9/17/01[2]    389

81. MP-25 Johnson JHS Report Card, 2/5/01    390-391

82. MP-26 Raymond ES Student Master Record, 3/4/98-10/13/99    392-393

83. MP-27 Fifth Grade Report Card, 1998-1999    394-395

84. MP-28 Fifth Grade Report Card, 1999    396-397

85. MP-29 Stanford Achievement Test Series, 4/98    398-401

86. MP-30 Stanford Achievement Test Series, 9/98    402-405

---

[2]  Duplicate of MP-23.

87. MP-31 Stanford Achievement Test Series, 4/99                          406-408

88. MP-32 Rudolph ES Student Master Record, 9/12/94-11/7/97               409-410

89. MP-33 Rudolph ES Report Card, 4th grade                              411-412

90. MP-34 Rudolph ES Report Card, 3rd grade                              413-416

91. MP-35 Rudolph ES Report Card, 2nd grade                              417-418

92. MP-36 Report Card, 1st grade                                         419-420

93. MP-37 Progress Report, 2/9/93                                        421-423

94. MP-38 Progress report, 6/18/93                                       424-426

95. MP-39 Student Residence and Data Verification, 1997-1998 5th grade 427-428

96. MP-40 HO Order to Brief the issues, 4/25/05                          429-431

97. MP-41 Speech and Language Evaluation, 7/27/06                        432-437

98. MP-42 Clinical Psychological Evaluation, 4/19/05                     438-444

99. MP-43 Psychological Educational evaluation 11/21-12/8/05             445-453

100. HOD, 11/8/07                                                        454-462

101. Transcript of Hearing,   4/25/05                                    463 *et seq.*

102. Transcript of Hearing, 10/31/07

# DISTRICT OF COLUMBIA
## Office of the State Superintendent of Education
### Office of Review and Compliance
### Student Hearing Office

1150 5th Street, S.E.
Washington, D.C. 20003
(202) 698-3819; (202) 698-3825 (fax)

**CONFIDENTIAL**

## CERTIFICATION OF RECORD

**June 11, 2008**

**Re: Maurice Pimple v. DCPS**

**Student Hearing Office:**

Having rendered a decision in the above matter, I am returning with this letter the record made before me as the hearing officer.  It includes:

1.    The CD of the hearing held on October 31, 2007

2.    A packet of Petitioner's Exhibits MP-1- MP-43

I hereby certify that this administrative record is true, correct and complete as of the date of submission of the Hearing Officer's Determination on November 8, 2007.

Very truly yours,

Seymour DuBow, Hearing Officer

1

University of the District of Columbia
David A. Clarke School of Law

Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008
e-mail: cnecatlett@mail2world.com
(202) 274-7314
(202) 274-5583 (fax)



March 21, 2005

Jeffrey Phoenix
Student Hearing Office Coordinator
Student Hearing Office, DCPS
825 North Capital Street, NE (8th Floor)
Washington, DC 20002

Re:  Maurice Pimble  DOB: ▮▮▮/1985
     Due Process Hearing Request

Dear Mr. Phoenix:

Along with my supervisor, Joseph Tulman, through The University of the District of Columbia, David A. Clarke School of Law – Juvenile and Special Education Law Clinic, I represent Maurice Pimble regarding his special education needs. D.C.P.S. is failing and has failed to provide Maurice with a free appropriate public education (FAPE), as defined in the Individuals with Disabilities Education Act (IDEA) 20 U.S.C. § 1400, *et seq.*, and its implementing regulations. On behalf of my client, I request a hearing concerning this consistent failure to provide Maurice with FAPE. **I propose the following dates: Monday, April 18, 2005; Wednesday, April 20, 2005; Friday, April 22, 2005; and Monday, April 25, 2005.**

Maurice is a nineteen-year-old male who has been denied a free appropriate public education since the age of six, when he failed first grade at a DC Public School – Meyer Lower Campus -- and DCPS did not evaluate him for any disability. From an early age, Maurice consistently performed below average in his academics. In a third grade report, Maurice's teacher Ms. Wright notified Maurice's parents that he was "in danger of repeating the third grade". Maurice then failed the third grade. While Maurice was in the fifth grade at Raymond Elementary School, he performed "Below Basic" in both Mathematics and Reading in the Stanford Achievement Test. "Below Basic" indicates "little or no mastery of fundamental knowledge and skills". Maurice failed every single subject in the ninth grade at Roosevelt High School.

## I. DCPS Failed to Properly Identify and Evaluate Maurice.

Maurice has consistently shown unsatisfactory performance in his academics. He repeated first grade at Meyer Lower Campus, and has consistently received "Unsatisfactory" grades as well as repeated "C"s, "D"s, and "F"s throughout elementary and middle school.

D.C.P.S. personnel did not identify Maurice's disability while he was enrolled at Meyer Lower Campus, where he repeated the first grade. D.C.P.S. personnel also did not identify his disability

1

when he was in Rudolph Elementary School, where he repeated the third grade and received "Unsatisfactory" in every subject except Handwriting.

D.C.P.S. personnel failed to identify Maurice as a child with disability throughout elementary school. "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(i). D.C.P.S. did not identify or evaluate Maurice promptly, and this failure to identify and evaluate him negatively affected his academic performance throughout his academic career.

**II. Maurice's Current IEP is Inappropriate.**
Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved."

Also, pursuant to 34 C.F.R. § 300.350, "each public agency must (1) provide special education and related services for a child with a disability in accordance with the child's IEP; and (2) make good effort to assist the child to achieve the goals and objectives or benchmarks listed in an IEP." Maurice's academic performance and records show that D.C.P.S. did not provide him with special education and related services from the time he repeated the first grade and the 10 years he attended school thereafter.

According to Lisa Russell, Director of Special Education for Incarcerated Youth, Maurice was evaluated and an IEP was conducted in the 2001 school year. However, there are no records of these evaluations or when they took place and, notwithstanding my requests on November 29, 2004 and February 15, 2005, DCPS personnel has not provided me with records of these evaluations.

Maurice has a right to the records of the evaluations performed in 2001. When a student with a disability obtains the age of majority, all rights previously accorded to the parents transfer to the student. 34 C.F.R. § 300.517(a)(1). According to 34 C.F.R. §§ 300.501(a)(1)(i), 300.501(a)(1)(ii), the parents of a child with a disability must be afforded an opportunity to " -- inspect and review all education records with respect to the identification, evaluation, and educational placement of the child; and the provision of FAPE to the child." This right transferred to Maurice when he reached the age of eighteen.

There are records documenting that Maurice was identified as learning disabled in the 2000 – 2001 school year and that he received special education services at Johnson Jr. High School while enrolled in the seventh grade. Maurice's performance shows that either D.C.P.S. did not evaluate him appropriately and/or failed to identify him as learning disabled in a timely fashion. As a result of D.C.P.S.'s failure to conduct prompt or legally sufficient evaluations, Maurice exhibited consistent failure in his academics.

Also, the law requires that D.C.P.S. conduct an IEP every year and that evaluations occur triennually. 34 C.F.R. §300.536(b). Almost four years have elapsed since Maurice's last evaluation. On November 29, 2004, Maurice requested special education evaluations, and D.C.P.S. personnel have not yet conducted the evaluations. D.C.P.S has also not responded to

that request, in violation of 34 C.F.R. § 300.503(b)(2) (requiring that D.C.P.S. provide "an explanation of why the agency ... refuses to take the action"). On February 15, 2005, I requested that D.C.P.S. conduct an evaluation and D.C.P.S. again made no response – an express violation of 34 C.F.R. § 300.503(b)(2).

## III. DCPS Denied Maurice FAPE; Appropriate Remedies are Due.

On behalf of Maurice, I request an overdue comprehensive evaluation for him. Maurice is currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. Former law student advocate, Victoria Kunkoski, made a request for D.C.P.S. personnel to evaluate Maurice prior to his placement at Rivers Correctional Institution in Winton, North Carolina.

D.C.P.S.'s obligation to educate and provide Maurice with compensatory education is not relieved since "Individuals who are incarcerated are entitled to receive a FAPE if prior to their incarceration they had either been evaluated or had an Individualized Education Plan. 20 U.S.C. § 1412(a)(1)(B)(ii), 34 C.F.R. § 300.311(a)(1)(2). Maurice satisfies both criteria since he was identified as learning disabled in 2001, prior to his conviction on September 16, 2004.

Additionally, pursuant to The National Capital Revitalization Act of 1997, Pub. L. 105-33, § 11201 *et seq.*, the Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights; therefore, Maurice is still entitled to these evaluations and to special education and related services while he remains incarcerated at Rivers Correctional Institution, whether D.C.P.S. provides these services at their expense or whether the Federal Bureau of Prisons assumes this responsibility.

I also request compensatory education for the eleven years Maurice was denied FAPE (from first grade until ninth grade, including the grades he repeated) to meet Maurice's special education needs. *Burr. v. Ambach*, 863 F.2d 258 (1989). D.C.P.S. failed to identify, locate and evaluate Maurice in violation of 34 C.F.R. § 125(a)(1), consequently denying him a free appropriate public education. Pursuant to 20 U.S.C. § 1401(8), "A child who has a disability that adversely affects his/her educational performance is entitled to a free, appropriate public education" (FAPE). A FAPE must be in accordance with state administrative agency standards; must include an appropriate elementary or secondary education in the state involved; must be based upon an individualized educational program (IEP) designed for the child; and must be provided by the state at no cost to the child or to the child's parent(s). 20 U.S.C. § 1401(8); 34 C.F.R § 300.13.

If you have any questions, please contact me at (202) 274-7314 or by fax at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

cc:  Veleter Mazyck, DCPS General Counsel
     Maurice Pimble

3

4



University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2ⁿᵈ Floor
Washington, D.C. 20008

Telephone: (202) 274-7314
      FAX: (202) 274-5569

## FACSIMILE TRANSMITTAL SHEET

DATE: March 21, 2005

TO: Hearing Office

FAX NUMBER: 202-442-5153

FROM: Cynthia N. Catlett

UDC-DCSL FAX NO: 202-274-5569

RE: Hearing Request: Maurice Pimble

TOTAL PAGES: (Including this cover sheet) 4 Pages

FAX OPERATOR:

FAX OPERATOR PHONE:

BRIEF MESSAGE: Please respond to this request.

Thanks!

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

Assessment

5

TRANSMISSION VERIFICATION REPORT

```
TIME  : 03/28/2005 10:09
NAME  : STUDENT HEARINGS OFF
FAX   : 2024425556
TEL   : 2024254432
SER.# : BROH3J600601
```

```
DATE,TIME        03/28  10:08
FAX NO./NAME     92745583
DURATION         00:00:41
PAGE(S)          01
RESULT           OK
MODE             STANDARD
                 ECM
```

# District of Columbia Public Schools
## *Office of Compliance*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



RECEIVED 2005 MAR 28 AM 11: 24
PUBLIC SCHOOLS SERVICES BRANCH

HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE  [ ] MAIL  [ ] HAND DELIVERY |
|---|

TO:   Parent (or Representative): *C. CATLETT*     Fax No.: *274-5583*

LEA Legal Counsel: *L. VERA*

RE: *PIMBLE, MAURICE*     and (LEA)  DOB: ~~/85~~
     Student's Name

FROM: *SHARON NEWSOME*
     Special Education Student Hearing Office Coordinator

DATE SENT: *3/28/05*

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
*3/22/05*  . Please be advised that the hearing has been scheduled for:

DATE: *4/25/05*

TIME: *3:00 pm*

AT:   825 North Capitol Street, NE, Washington, DC

6

**University of the District of Columbia**
**David A. Clarke School of Law**

Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C.  20008
(202) 274-7314
(202) 274-5583 (fax)



April 18, 2005

**VIA FACSIMILE**

DCPS Office of General Counsel
925 North Capitol Street., NE
Washington, DC  20002

> Re:   **Maurice Pimble, DOB ▮▮/85**
> **Five Day Disclosure Letter**

Dear DCPS Attorney:

  The University of the District of Columbia David A. Clarke School of Law Juvenile and Special Education Clinic represents student Maurice Pimble in all matters relating to Maurice's rights to special education.  For the Due Process Hearing scheduled for April 25, 2005, we intend to introduce into evidence the following documents (which are labeled and attached hereto):

***Documents***

| | |
|---|---|
| MP1 | Request for a Hearing, March 21, 2005 |
| MP2 | Letter to Lisa Russell requesting special education evaluation, 11/29/04 |
| MP3 | Letter to Ms. Russell requesting special education evaluation, 2/15/05 |
| MP4 | Letter to Michael Snipes regarding communications with Ms. Russell and request for special education evaluation. |
| MP5 | Letter to Ms. Russell regarding special education evaluation, 4/4/05 |
| MP6 | Letter to Ms. Russell regarding lack of records available to DCPS, 4/12/05 |
| MP7 | Letter to Mr. Horton regarding special education evaluation, 4/12/05 |
| MP8 | Letter to Ms. Marianne Cantwell, 4/11/05 |
| MP9 | Letter from Ms. Cantwell, 4/14/05 |
| MP10 | Most Recent IEP, 10/1/04 |
| MP11 | Report Card from Roosevelt High School, 00/01 through 01/02. |
| MP12 | Student Master Record from Johnson Junior High School, 09/05/00 through 09/17/01 |
| MP13 | Report Card from Johnson Jr. High School, 02/05/01 |
| MP14 | Student Master Record from Raymond Elementary School 03/04/98 through 10/13/99 |
| MP15 | Fifth Grade Report Card, 1998 – 1999 |
| MP16 | Fifth Grade Report Card, 1999 |

2005 APR 18  PM 4: 15
STUDENT HEARING

| MP17 | Stanford Achievement Test Series, 04/98 (5th Grade) |
| MP18 | Stanford Achievement Test Series, 09/98 (5th Grade) |
| MP19 | Stanford Achievement Test Series, 04/99 (5th Grade) |
| MP20 | Student Master Record from Rudolph Elementary School, 09/12/94 through 11/07/97 |
| MP21 | Report Card, Rudolph Elementary School (4th Grade) |
| MP22 | Report Card, Rudolph Elementary School (3rd Grade) |
| MP23 | Report Card, Rudolph Elementary School (2nd Grade) |
| MP24 | Report Card, (1st Grade) |
| MP25 | Progress Report, 2/9/93 |
| MP26 | Progress Report, 6/18/93 |
| MP27 | Student Residence and Data Verification Form, 1997 – 1998 (5th Grade) |
| MP28 | 5 DCMR 2201.9; 45 D.C. Reg. 5240 |

**_Witnesses:_**

- I intend to call Maurice Pimble as a witness during the hearing. He is currently incarcerated in a Federal Bureau of Prisons Facility and will be available to participate and to testify by telephone.
- I intend to call Mr. Alfred Hobdy, Maurice's friend and mentor.


Please contact me with any questions or concerns. I can be reached at (202) 274-7314 and via facsimile at (202) 274-7317. My supervising attorney, Joseph Tulman, can be reached at (202) 274-7314.

Sincerely,

Cynthia N. Catlett
Advocate for Maurice Pimble

Cc:    Maurice Pimble
Student Hearing Office
Marianne Cantwell, Federal Bureau of Prisons

8

# MP1    Request for a Hearing



**University of the District of Columbia**
**David A. Clarke School of Law**



Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008
e-mail: cnecatlett@mail2world.com
(202) 274-7314
(202) 274-5583 (fax)

March 21, 2005

Jeffrey Phoenix
Student Hearing Office Coordinator
Student Hearing Office, DCPS
825 North Capital Street, NE (8th Floor)
Washington, DC 20002

Re:    Maurice Pimble  DOB: ■■/1985
       Due Process Hearing Request

Dear Mr. Phoenix:

Along with my supervisor, Joseph Tulman, through The University of the District of Columbia,
David A. Clarke School of Law – Juvenile and Special Education Law Clinic, I represent
Maurice Pimble regarding his special education needs. D.C.P.S. is failing and has failed to
provide Maurice with a free appropriate public education (FAPE), as defined in the Individuals
with Disabilities Education Act (IDEA) 20 U.S.C. § 1400, *et seq.*, and its implementing
regulations. On behalf of my client, I request a hearing concerning this consistent failure to
provide Maurice with FAPE. **I propose the following dates:** Monday, April 18, 2005;
Wednesday, April 20, 2005; Friday, April 22, 2005; and Monday, April 25, 2005.

Maurice is a nineteen-year-old male who has been denied a free appropriate public education
since the age of six, when he failed first grade at a DC Public School – Meyer Lower Campus --
and DCPS did not evaluate him for any disability. From an early age, Maurice consistently
performed below average in his academics. In a third grade report, Maurice's teacher Ms. Wright
notified Maurice's parents that he was "in danger of repeating the third grade". Maurice then
failed the third grade. While Maurice was in the fifth grade at Raymond Elementary School, he
performed "Below Basic" in both Mathematics and Reading in the Stanford Achievement Test.
"Below Basic" indicates "little or no mastery of fundamental knowledge and skills". Maurice
failed every single subject in the ninth grade at Roosevelt High School.

**I. DCPS Failed to Properly Identify and Evaluate Maurice.**
Maurice has consistently shown unsatisfactory performance in his academics. He repeated first
grade at Meyer Lower Campus, and has consistently received "Unsatisfactory" grades as well as
repeated "C"s, "D"s, and "F"s throughout elementary and middle school.

D.C.P.S. personnel did not identify Maurice's disability while he was enrolled at Meyer Lower
Campus, where he repeated the first grade. D.C.P.S. personnel also did not identify his disability

1

10



when he was in Rudolph Elementary School, where he repeated the third grade and received "Unsatisfactory" in every subject except Handwriting.

D.C.P.S. personnel failed to identify Maurice as a child with disability throughout elementary school. "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(i). D.C.P.S. did not identify or evaluate Maurice promptly, and this failure to identify and evaluate him negatively affected his academic performance throughout his academic career.

## II. Maurice's Current IEP is Inappropriate.

Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved."

Also, pursuant to 34 C.F.R. § 300.350, "each public agency must (1) provide special education and related services for a child with a disability in accordance with the child's IEP; and (2) make good effort to assist the child to achieve the goals and objectives or benchmarks listed in an IEP." Maurice's academic performance and records show that D.C.P.S. did not provide him with special education and related services from the time he repeated the first grade and the 10 years he attended school thereafter.

According to Lisa Russell, Director of Special Education for Incarcerated Youth, Maurice was evaluated and an IEP was conducted in the 2001 school year. However, there are no records of these evaluations or when they took place and, notwithstanding my requests on November 29, 2004 and February 15, 2005, DCPS personnel has not provided me with records of these evaluations.

Maurice has a right to the records of the evaluations performed in 2001. When a student with a disability obtains the age of majority, all rights previously accorded to the parents transfer to the student. 34 C.F.R. § 300.517(a)(1). According to 34 C.F.R. §§ 300.501(a)(1)(i), 300.501(a)(1)(ii), the parents of a child with a disability must be afforded an opportunity to " -- inspect and review all education records with respect to the identification, evaluation, and educational placement of the child; and the provision of FAPE to the child." This right transferred to Maurice when he reached the age of eighteen.

There are records documenting that Maurice was identified as learning disabled in the 2000 – 2001 school year and that he received special education services at Johnson Jr. High School while enrolled in the seventh grade. Maurice's performance shows that either D.C.P.S. did not evaluate him appropriately and/or failed to identify him as learning disabled in a timely fashion. As a result of D.C.P.S.'s failure to conduct prompt or legally sufficient evaluations, Maurice exhibited consistent failure in his academics.

Also, the law requires that D.C.P.S. conduct an IEP every year and that evaluations occur triennually. 34 C.F.R. §300.536(b). Almost four years have elapsed since Maurice's last evaluation. On November 29, 2004, Maurice requested special education evaluations, and D.C.P.S. personnel have not yet conducted the evaluations. D.C.P.S has also not responded to



that request, in violation of 34 C.F.R. § 300.503(b)(2) (requiring that D.C.P.S. provide "an explanation of why the agency ... refuses to take the action"). On February 15, 2005, I requested that D.C.P.S. conduct an evaluation and D.C.P.S. again made no response – an express violation of 34 C.F.R. § 300.503(b)(2).

### III. DCPS Denied Maurice FAPE; Appropriate Remedies are Due.

On behalf of Maurice, I request an overdue comprehensive evaluation for him. Maurice is currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. Former law student advocate, Victoria Kunkoski, made a request for D.C.P.S. personnel to evaluate Maurice prior to his placement at Rivers Correctional Institution in Winton, North Carolina.

D.C.P.S.'s obligation to educate and provide Maurice with compensatory education is not relieved since "Individuals who are incarcerated are entitled to receive a FAPE if prior to their incarceration they had either been evaluated or had an Individualized Education Plan. 20 U.S.C. § 1412(a)(1)(B)(ii), 34 C.F.R. § 300.311(a)(1)(2). Maurice satisfies both criteria since he was identified as learning disabled in 2001, prior to his conviction on September 16, 2004.

Additionally, pursuant to The National Capital Revitalization Act of 1997, Pub. L. 105-33, § 11201 *et seq.*, the Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights; therefore, Maurice is still entitled to these evaluations and to special education and related services while he remains incarcerated at Rivers Correctional Institution, whether D.C.P.S. provides these services at their expense or whether the Federal Bureau of Prisons assumes this responsibility.

I also request compensatory education for the eleven years Maurice was denied FAPE (from first grade until ninth grade, including the grades he repeated) to meet Maurice's special education needs. *Burr. v. Ambach*, 863 F.2d 258 (1989). D.C.P.S. failed to identify, locate and evaluate Maurice in violation of 34 C.F.R. § 125(a)(1), consequentially denying him a free appropriate public education. Pursuant to 20 U.S.C. § 1401(8), "A child who has a disability that adversely affects his/her educational performance is entitled to a free, appropriate public education" (FAPE). A FAPE must be in accordance with state administrative agency standards; must include an appropriate elementary or secondary education in the state involved; must be based upon an individualized educational program (IEP) designed for the child; and must be provided by the state at no cost to the child or to the child's parent(s). 20 U.S.C. § 1401(8); 34 C.F.R § 300.13.

If you have any questions, please contact me at (202) 274-7314 or by fax at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

cc:     Veleter Mazyck, DCPS General Counsel
        Maurice Pimble

 

University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2nd Floor
Washington, D.C. 20008

Telephone: (202) _274-7314_
    FAX: (202) 274-5569

## FASCIMILE TRANSMITTAL SHEET

DATE: _March 21, 2005_

TO: _Hearing Office_

FAX NUMBER: _202-442-5153_

FROM: _Cynthia N. Catlett_

UDC-DCSL FAX NO: 202-274-5569

RE: _Hearing Request: Maurice Pimble_

TOTAL PAGES: (Including this cover sheet) _4 Pages_

FAX OPERATOR: 

FAX OPERATOR PHONE: 

BRIEF MESSAGE: _Please respond to this request._

_Thanks!_

### ATTENTION!

The information contained in this transmission is privileged and confidential.  It is intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above.  Thank you.

13



| TRANSMISSION VERIFICATION REPORT | |
| --- | --- |

```
                              TIME  : 03/21/2005 11:39
                              NAME  : DACSL LEGAL CLINICS
                              FAX   : 2022745569
                              TEL   :
                              SER.# : BROE2J354480
```

```
      DATE,TIME             03/21  11:37
      FAX NO./NAME          94425556
      DURATION              00:02:06
      PAGE(S)               04
      RESULT               OK
      MODE                 FINE
                           ECM
```

To Hearing Office

14

**MP2        Letter to Lisa Russell requesting special education evaluation, 11/29/04**

# UNIVERSITY OF THE DISTRICT OF COLUMBIA
## David A. Clarke School of Law



Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008
(202) 274-7317
(202) 274-5583 (fax)

vkunkoski@msn.com

November 28, 2004

Lisa Russell
Director of Special Education for Incarcerated Youth
District of Columbia Public Schools
825 North Capitol Street, N.E.
Washington, DC 20002

RE:     Maurice Pimble
DOB:    ▮▮▮/85

Dear Ms. Russell:

    Along with my supervisor, Professor Joe Tulman, I represent Maurice Pimble regarding his special education needs. Recently, on November 15, 2004, Maurice Pimble requested an initial evaluation for special education. Currently, Maurice is incarcerated in the District of Columbia Jail. Due to the serious nature of Maurice's circumstances, I believe that this process of identification and evaluation should be expedited. If needed, I can contact independent evaluators to help speed the process. I am quite sure that Maurice is a young man in need of special education services.

    Please contact me if you have any questions or concerns. You can reach me at (240) 308-1092 or by letter at the address listed at the top of this letterhead.

Sincerely,

Victoria Kunkoski

Victoria Kunkoski
Law Student Advocate

cc:     Ray Bryant, Chief of Special Education Reform

16



University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2nd Floor
Washington, D.C. 20008

Telephone: (202) _____
    FAX: (202) 274-5569

## FASCIMILE TRANSMITTAL SHEET

DATE: 11·29·04

TO: Lisa Russell

FAX NUMBER: 202 442 5517

FROM: Victoria Kienkoski

UDC-DCSL FAX NO: 202-274-5569

RE: Maurice Pimble

TOTAL PAGES: (Including this cover sheet) Two

FAX OPERATOR: Victoria Kienkoski

FAX OPERATOR PHONE: (202) 274·5569

BRIEF MESSAGE: Please let me know if you
received the request for a
special education evaluation. Thank you.

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

**MP3       Letter to Lisa Russell
requesting special education
evaluation, 2/15/05**



University of the District of Columbia
## David A. Clarke School of Law
Juvenile and Special Education Law Clinic

4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
(202) 274-7314
(202) 274-5583 (fax)
cnecatlett@mail2world.com

February 15, 2005

Lisa Russell
Director of Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

RE: Maurice Pimble
DOB: █████785

Dear Ms. Russell:

I represent Maurice Pimble regarding his special education needs. Maurice is currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. Maurice was identified as Learning Disabled on January 30, 2001 while attending Roosevelt High School. At that point, an IEP meeting was conducted. Although there is evidence that Maurice had an IEP, there are no records of it. The law requires that an IEP be conducted every year and that evaluations be conducted triannually. 34 C.F.R. § 300.536(b). Almost four years have elapsed since Maurice's last evaluation. According to my records, Maurice requested a special education evaluation on November 15, 2004, and D.C.P.S. personnel have not yet conducted the evaluation. This request was made while Maurice was at the District of Columbia Jail. Therefore, D.C.P.S. had an opportunity to evaluate him while he was in the District and neglected to act in conformity with the regulations.

Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1) – which states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Also, pursuant to 34 C.F.R. § 300.350, "each public agency must (1) provide special education and related services for a child with a disability in accordance with the child's IEP; and (2) make good effort to assist the child to achieve the goals and objectives or benchmarks listed in an IEP."

In a facsimile dated November 29, 2004, Victoria Kunkoski, Maurice's former law student advocate, expressed the urgency of an expedited evaluation and offered to contact independent evaluators to help accelerate the process. In light of Maurice's unmet special education needs, I request that Maurice be evaluated immediately in North Carolina. Alternatively, I am willing to contact independent evaluators to evaluate Maurice at D.C.P.S.' expense.

I also request that I receive adequate notice in writing supporting or contesting my request for the independent evaluation. Pursuant to 34 C.F.R. § 300.503(b), "[t]he notice...must include (1) [a] description of the action proposed or refused by the agency; (2) [a]n explanation of why the agency proposes or refuses to take the action; (3) [a] description of any other options that the agency considered and the reasons why those options were rejected".

Please contact me if you have any questions or concerns. You can reach me at (202)274-7314 or by letter at the address listed at the top of this letterhead.

Sincerely,

Cynthia N. Catlett
Law Student Advocate



University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2nd Floor
Washington, D.C. 20008

Telephone: (202) 202-274-7314
FAX: (202) 274-5569

## FASCIMILE TRANSMITTAL SHEET

DATE: February 16, 2005

TO: Lisa Russell

FAX NUMBER: 202-442-5518, 202-442-5517

FROM: Cynthia N. Cearett

UDC-DCSL FAX NO: 202-274-5569

RE: Maurice Pimble Evaluation

TOTAL PAGES: (Including this cover sheet) 3

FAX OPERATOR:

FAX OPERATOR PHONE:

BRIEF MESSAGE: Please respond in writing to this fax. Thanks!!

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

21

 

TRANSMISSION VERIFICATION REPORT

```
TIME  : 02/16/2005 09:17
NAME  : DACSL LEGAL CLINICS
FAX   : 2022745569
TEL   :
SER.# : BROE2J354480
```

```
DATE,TIME          02/16  09:16
FAX NO./NAME       9-7835211
DURATION           00:01:05
PAGE(S)            03
RESULT             OK
MODE               FINE
                   ECM
```

22

**MP4     Letter to Mr. Snipes regarding communications with Ms. Russell and  request for special education evaluation.**



University of the District of Columbia
**David A. Clarke School of Law**
**Juvenile and Special Education Law Clinic**
**4200 Connecticut Avenue, N.W. 39/213**
**Washington, D.C. 20008**



202) 274-7314
(202) 274-5583 (fax)

Michael Snipes
Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

March 21, 2005

Dear Mr. Snipes:

Along with my supervisor, Joseph Tulman, through the University of the District of Columbia, David A. Clarke School of Law – Juvenile and Special Education Law Clinic, I represent Maurice Pimble regarding his special education needs. Maurice was enrolled in DC Public Schools since first grade and attended several DCPS schools thereafter. One of my colleagues went to all of the schools Mr. Pimble attended (Meyer Lower Campus, Rudolph Elementary School, Thomson Jr. High School, Raymond, and Roosevelt) searching for any and all special education evaluations conducted for Mr. Pimble, and none of these records were in his academic file. Lisa Russell, Director of Special Education for Incarcerated Youth, confirmed that according to your records a team of DCPS personnel previously evaluated Mr. Pimble and that your office has evaluations on file. I request, pursuant to 34 C.F.R § 300.501, that you provide me, on behalf of Mr. Pimble, with any and all evaluations, IEP's, and other academic records (including report cards and standardized test results). I can pick these records up at your office. I request that any and all evaluation records, report cards, and IEP's on record be made available to me.

I have attempted to contact Lisa Russell six times this week. I have left her three messages regarding these records as well as scheduling an independent evaluation for Mr. Pimble in North Carolina. I have found an independent evaluator willing to evaluate Mr. Pimble, and I am forwarding to you this psychologist's Curriculum Vitae. On February 15, 2005 I sent Ms. Russell a letter requesting an independent evaluation for Mr. Pimble. I have not heard from her in regards to my request. I am attaching to this fax the letter I faxed and mailed Ms. Russell.

I really appreciate your help in assisting me in these matters. Please contact me if you have any questions. You can reach me at (202) 274-7314.

Thank you,

Cynthia Catlett
Law Student Advocate

1

 

TRANSMISSION VERIFICATION REPORT

```
TIME   : 03/21/2005 11:58
NAME   : DACSL LEGAL CLINICS
FAX    : 2022745569
TEL    :
SER.#  : BROE2J354480
```

```
DATE,TIME          03/21  11:50
FAX NO./NAME       94425518
DURATION           00:08:31
PAGE(S)            16
RESULT             OK
MODE               FINE
                   ECM
```

25



University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2ⁿᵈ Floor
Washington, D.C. 20008

Telephone: (202) **274-7314**
FAX: (202) 274-5569

## FASCIMILE TRANSMITTAL SHEET

DATE: **March 21, 2005**

TO: **Michael Sniper**

FAX NUMBER: **202-442-5518**

FROM: **Cynthia Catlett**

UDC-DCSL FAX NO: 202-274-5569

RE: **Evaluation Request / Maurice Pimple**

**16 pages**

TOTAL PAGES: (Including this cover sheet)

FAX OPERATOR:

FAX OPERATOR PHONE:

BRIEF MESSAGE: **Thanks. Please respond in writing to my Requests.**
**Cynthia Catlett**

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

**MP5      Letter to Ms. Russell regarding special education evaluation, 4/4/05**

University of the District of Columbia
**David A. Clarke School of Law**
Juvenile and Special Education Law Clinic

4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
(202) 274-7314
(202) 274-5583 (fax)
cnecatlett@mail2world.com



April 4, 2005

Lisa Russell
Director of Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

RE: Maurice Pimble
DOB: ███/85

Dear Ms. Russell:

You and I spoke on March 23, 2005, about Maurice Pimble, specifically, whether D.C.P.S. is responsible for evaluating Maurice Pimble in North Carolina. You said that once D.C. students transfer to a Federal Bureau of Prison facility, D.C.P.S is no longer under any obligation to educate them, even if these inmates are eligible for special education and related services under the I.D.E.A.

You also said that Maurice was evaluated in 2001 and had an IEP in place, but that D.C.P.S does not have an IEP or evaluations on record for that year. Additionally, you noted that in October of 2004, Maurice was evaluated in D.C. Jail and that you have Multidisciplinary Team (MDT) notes from that evaluation. You also said Maurice was receiving special education at D.C. Jail.

I would like to thank you for faxing to the legal clinic Maurice's most recent IEP. I am again requesting, that you forward to me (by facsimile) a copy of any and all records you have on file for Maurice Pimble. I am also requesting a copy of the records of specialized instruction and related services offered to Maurice while he was at D.C. Jail. Further, pursuant to 34 C.F.R. § 300.503, I request that you respond in writing to the denial of my request for an evaluation. Under section 300.503, you are required to provide, in writing, your reasons for denying a request.



Please contact me if you have any questions or concerns. You can reach me at (202) 274-7314 or by letter at the address listed at the top of this letterhead. My facsimile number is (202) 274-5583.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

CC: Michael Snipes
    Maurice Pimble

29



TRANSMISSION VERIFICATION REPORT

```
                                    TIME   : 04/04/2005 12:25
                                    NAME   : DACSL LEGAL CLINICS
                                    FAX    : 2022745569
                                    TEL    :
                                    SER.#  : BROE2J354480
```

```
        DATE,TIME              04/04  12:24
        FAX NO./NAME           94425518
        DURATION               00:01:02
        PAGE(S)                03
        RESULT                 OK
        MODE                   FINE
                               ECM
```

University of the District of Columbia
David A. Clarke School of Law
Legal Clinic
4200 Connecticut Avenue, N.W.
Building 38, 2ⁿᵈ Floor
Washington, D.C. 20008

Telephone: (202) 274-5576
    FAX:  (202) 274-5569



## FASCIMILE TRANSMITTAL SHEET

DATE: April 4, 2005

TO: Lisa Russell

FAX NUMBER: 202-442-5518

FROM: Cynthia Cottette

UDC-DCSL FAX NO: 202-274-5569

RE: Maurice Rimple

TOTAL PAGES: (including this cover sheet) 3

FAX OPERATOR:

FAX OPERATOR PHONE:

BRIEF MESSAGE: Please respond in writing to my request

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

31

**MP6    Letter to Ms. Russell
regarding lack of records available to
DCPS, 4/12/05**



**University of the District of Columbia**
**David A. Clarke School of Law**

**Cynthia Catlett**
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008

(202) 274-7314
(202) 274-5583 (fax)

April 12, 2005

Lisa Russell
Director of Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

Re:    Maurice Pimble
DOB: ███/85

Dear Ms. Russell:

You and I spoke on April 5, 2005, in reference to Maurice Pimble's educational records and the fact that your record of his educational background is incomplete. In that conversation, we discussed where Maurice was attending school in the 2000-2001 school year and where he first received special education and related services. You said that according to your records Maurice was attending Roosevelt High School when D.C. Public Schools personnel identified his learning disability, but that you did not have any records of which schools he attended or of the evaluation conducted on January 30, 2001.

I have records that place Maurice in the seventh grade at Johnson Jr. High School on February 2, 2001. According to these records, Maurice was enrolled at Johnson Jr. High School on February 2, 2001. However, I have received records from Roosevelt High School that indicate that Maurice enrolled in the eighth grade in the 2000-2001 school year and in the ninth grade in the 2001-2002 school year. I also have records that place him in the fifth grade during the 1999-2000 school year at Raymond Elementary School.

In the April 5th conversation I asked you whether Maurice had skipped any grades. According to the records that I have received from DCPS, it seems as if Maurice skipped the sixth grade and completed the seventh and eighth grades at the same time at different schools. I offered to send you these records. I am attaching them to this letter.

33

We also discussed working together in terms of deciphering whether Maurice did skip grades and when/where he first received special education and related services. I am attaching to this letter the following documents:

(1) A standardized test showing that Maurice was in the fifth grade in the 1999-2000 school year at Raymond Elementary School;

(2) A report card from Johnson Jr. High School showing that Maurice was enrolled at Johnson Jr. High School on February 2, 2001; and

(3) A report card from Roosevelt High School stating that Maurice was enrolled in the eighth grade from 2000-2001, and in the ninth grade from 2001-2002.

Please contact me directly at (202) 274-7314 so we can discuss this matter further.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

34

Document Name: untitled

```
SIS - STUD                RAYMOND ELEMENTARY SCHOOL          Dec 08,
[DISPLAY]                     Student Master Record          04:21 PM

  Student ID:       7729524              Status:            I
                                         Grade/School Yr:   05 99/00
  Last Name:        PIMBLE               Homeroom:             New
  Given Names:      MAURICE A            Program:
  Called Name:                           Locker/Comb:          0
  Address Line 1:   1469 MERIDIAN PLSCE, NW   Previous School:   302  Fi
  Address Line 2:                        Admission Date:    03/04/98
  City:             WASHINGTON           Admission Code:    A3 Calen
  State:            DC                    Withdrawal Date:   10/13/99
  Zip Code:         20010                Withdrawal Code:   W1
  Tel No/Area/Code: 635-0130  (202)      Transf To School:  285  Fi
  Parent/Guardian:  LEWIS, TWANDWA       Date Transferred:  11/03/99
  P/G Relationship: 1  MOTHER            Graduation Rule:
  Sex/Ethnic Code:  M  B  BLACK          Graduation Date:
  Birthdate:        ████/85              Schedule Changed:
  Verified With:                                            1 2 3 4
  Soc Sec No:       ████████             Data Flags:
  Counselor Name:   BERNARD GRAYSON      Report Flags:      N N N N
  Scheduling Priority:                   Res/Sped/Att:         0
  Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On
  Message:
```

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

## REPORT FORM

02/05/01
*JOHNSON JUNIOR HIGH SCHOOL*
REPORT TO PARENTS ON STUDENT PROGRESS

STUDENT ID: 7729524      STUDENT NAME: PIMBLE, MAURICE A
GRADE:     07      HOMEROOM:     7423

189

| COURSE  SEC  SUBJECT TEACHER | COMMENTS | ADV 1 | ADV 2 | GRADES ADV 3 | ADV 4 | FINAL | EARN CRED | CLAS ABSEN ADV Y |
|---|---|---|---|---|---|---|---|---|
| B17    05 CROSSON | EXPLOR KEYBOARD | P | P | | | P | | 0 |
| C35    05 PATTERSON | LIFE MGMT EXCELLENT INITIATIVE EXCELLENT BEHAVIOR | B | B | | | | 11 | 1 |
| C35    06 PATTERSON | LIFE MGMT GOOD PARTICIPATION | B | B | | | | 11 | |
| E01S   06 CARTER | ENGLISH 7 EXCELLENT BEHAVIOR GOOD PARTICIPATION | B | B | | | | 11 | 12 |
| H11S   05 PATTERSON | W. HEM. GEO. SP EXCELLENT BEHAVIOR GOOD PARTICIPATION | B | B | | | | 11 | 14 |
| M01S   06 PATTERSON | FUND. OF MATH S GOOD PARTICIPATION EXCELLENT BEHAVIOR | B | B | | | | 11 | 12 |

HOMEROOM ABSENCES: 14.0     EXCUSED: 0.0  UNEXCUSED: 14.0     TARDY: 11

MAURICE A PIMBLE
2343 PITTS PLACE S.E.
WASHINGTON,, DC 20020

36

Document Name: untitled

| SIS - STUD [DISPLAY] | JOHNSON JUNIOR HIGH SCHOOL | Dec 08, 20 |
|---|---|---|
| | Student Master Record | 02:05 PM |

Student ID:              7729524                        Status:                I
                                                        Grade/School Yr:       08 00/01
Last Name:           PIMBLE                             Homeroom:              8312 New:
Given Names:         MAURICE A                          Program:
Called Name:                                            Locker/Comb:               0
Address Line 1:      D.C. VILLIAGE LANE                 Previous School:    285  File
Address Line 2:      #2A                                Admission Date:     09/05/00
City:                WASHINGTON                         Admission Code:     A5 Calendr
State:               DC                                 Withdrawal Date:
Zip Code:            20032                              Withdrawal Code:
Tel No/Area/Code:    561-8090  (202)                    Transf To School:   459  File
Parent/Guardian:     LEWIS, TWANDYA                     Date Transferred:   09/17/01
P/G Relationship:    1  MOTHER                          Graduation Rule:
Sex/Ethnic Code:     M  B  BLACK                        Graduation Date:
Birthdate:           ▓▓▓▓/85                            Schedule Changed:   06/13/01
Verified With:                                                              1 2 3 4 5
Soc Sec No:          ▓▓▓▓▓▓▓
Counselor Name:      KEELING                            Data Flags:
Scheduling Priority: 1                                  Report Flags:       N N N N N
Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On   Res/Sped/Att:          0 B
Message:

Student ID: 7729524          PIMBLE, MAUR                                    M-09-I-01/02-

| Grd | Year | Abbr | Sec | Crse Text | Grade Lvl | In Cnt | Cum GPA | Cred | Term 1 Mrk | Credit | Term 2 Mrk | Credit | Term 3 Mrk | Credit | Term 4 Mrk | Credit | Exm Mrk | Avg Mrk | Final Mrk | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2. | 08 | 00/01 I21 | 02 | MECH DRAW I | 07 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | | 0.000 | | | | 0.000 |
| 3. | 08 | 00/01 N01 | 06 | FUND. OF MATH S | 07 | Y | Y | Y | B | 0.000 | B | 0.000 | F | 0.000 | | 0.000 | | | | 0.000 |
| 4. | 08 | 00/01 M15 | 04 | LIFE MGMT | 10 | Y | Y | Y | | 0.000 | | 0.000 | D | 0.000 | | 0.000 | | | | 0.000 |
| 5. | 08 | 00/01 M15 | 05 | LIFE MGMT | 10 | Y | Y | Y | B | 0.000 | B | 0.000 | | 0.000 | | 0.000 | | | | 0.000 |
| 6. | 08 | 00/01 M15 | 06 | LIFE MGMT | 10 | Y | Y | Y | B | 0.000 | B | 0.000 | | 0.000 | | 0.000 | | | | 0.000 |
| 7. | 08 | 00/01 N02 | 02 | READING COMPREN | 09 | Y | Y | Y | | 0.000 | | 0.000 | | 0.000 | | 0.000 | | | | 0.000 |
| 8. | 08 | 00/01 S01 | 04 | LIFE SCIENCE | 07 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | | 0.000 | | | | 0.000 |
| 9. | 09 | 01/02 H21 | 21 | DC HIS&GOV | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | F | 0.000 | | 0.000 | | | F | 0.000 |
| 10. | 09 | 01/02 H23 | 21 | WORLD GEOGRAPHY | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | | 0.000 | | 0.000 | | | F | 0.000 |
| 11. | 09 | 01/02 M14 | 21 | MATH FOUND PT I | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | F | 0.000 | * | 0.000 | | | F | 0.000 |
| 12. | 09 | 01/02 N11 | 21 | DEVEL.READ I | 09 | Y | Y | Y | | 0.000 | F | 0.000 | | 0.000 | | 0.000 | | | | 0.000 |
| 13. | 09 | 01/02 S21 | 21 | BIOLOGY | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | F | 0.000 | * | 0.000 | | | | 0.000 |
| 14. | 09 | 01/02 V02 | 21 | COMP APPL I | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | | 0.000 | | 0.000 | | | F | 0.000 |

USE SPECIAL KEYS TO SCROLL OR EXIT

1(023,035)

TRANSMISSION VERIFICATION REPORT

```
TIME   : 04/12/2005 13:34
NAME   : DACSL LEGAL CLINICS
FAX    : 2022745569
TEL    :
SER.# : BROE2J354480
```

```
DATE,TIME          04/12  13:32
FAX NO./NAME       94425518
DURATION           00:02:12
PAGE(S)            07
RESULT             OK
MODE               FINE
                   ECM
```

39



University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2nd Floor
Washington, D.C. 20008

Telephone: (202) _____
      FAX: (202) 274-5569

## FASCIMILE TRANSMITTAL SHEET

DATE: *April 12, 2005*

TO: *Lisa Russell*

FAX NUMBER: *202 - 442 - 5518*

FROM: *Cynthia Catlett*

UDC-DCSL FAX NO: 202-274-5569

RE: *Maurice Pimble*

TOTAL PAGES: (Including this cover sheet) *7*

FAX OPERATOR: _____

FAX OPERATOR PHONE: _____

BRIEF MESSAGE: *Here you go! Thanks. Call me so we can figure this out.*
*Cynthia*

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

40

**MP7    Letter to Mr. Horton regarding special education evaluation, 4/12/05**

**University of the District of Columbia**
**David A. Clarke School of Law**

**Cynthia Catlett**
**Juvenile and Special Education Law Clinic**
**4200 Connecticut Avenue, N.W. 39/213**
**Washington, D.C. 20008**

(202) 274-7314
(202) 274-5583 (fax)



April 12, 2005

Mr. Horton
Education Director
Rivers Correctional Institution
145 Parker's Fishery Rd
Winton, NC  27986

Re: Maurice Pimble
Inmate No: 35565-007

Dear Mr. Horton:

Along with my supervisor, Professor Joseph Tulman, I represent Maurice Pimble in regard to his special education needs. Maurice is currently incarcerated at Rivers Correctional Institution (RCI). District of Columbia Public Schools personnel identified Maurice as learning disabled -- and thus eligible for special education services -- on January 30, 2001. The law states, "Individuals who are incarcerated are entitled to receive a free appropriate public education if prior to their incarceration they had either been evaluated or had an Individualized Education Plan." 20 U.S.C. 1412(a)(1)(B)(ii), 34 C.F.R. 300.311(a)(1)(2). Maurice satisfies both criteria.

The Federal Bureau of Prison is responsible for administering the educational rights provisions provided in the Individuals with Disabilities Education Act (IDEA) for District of Columbia Code felony offenders who are in BOP custody. D.C.'s educational obligations include the obligation to provide special education and related services to its prisoners. *See* 20 U.S.C. 1412(a)(1)(B)(ii), 34 C.F.R. 300.311(a)(1)(2). The Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights when it gained custody of D.C. Code felony offenders through the National Capital Revitalization Act of 1997. That Act makes the BOP responsible for the education of D.C. Code felony offenders.

I am requesting that the Federal Bureau of Prison comply with the IDEA. The law provides that Maurice is entitled to an Individualized Education Plan (IEP) every year and triennial evaluations. *See* 34 C.F.R. §300.536(b). Maurice's last evaluation was on January 30, 2001. Maurice's triennial re-evaluation is fifteen months overdue.



Since Maurice is now in the custody of the Federal Bureau of Prison, I am requesting that the BOP provide Maurice with the necessary evaluations in order to secure his success in his academic endeavors. I have contacted evaluators near Winton, NC willing to conduct the necessary evaluations. Also, pursuant to 34 C.F.R. 500.502, Maurice is entitled to private evaluations. In case personnel at Rivers Correctional Institution are not qualified to perform the requisite evaluations, I am requesting that Maurice receive a private evaluation.

I am also requesting that the Federal Bureau of Prison adjust Maurice's current IEP. This IEP was developed at the D.C. Jail by D.C. Public School personnel on October 1, 2004 and states that "Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability." Further, it states, "Maurice requires ... small structured environment that cannot be met in the general education classroom." This IEP is inappropriate because the comments at the end of the document do not correspond with the fact that the same evaluators identified Maurice as requiring only 20% of special education. My position, as the comments on the same IEP suggest, is that Maurice requires a 100% special education academic environment. I am attaching Maurice's most recent IEP to this letter so that your educators can accommodate Maurice's learning disability.

According to Lisa Russell, Director of Incarcerated Youth for the District of Columbia Public Schools, Maurice was receiving special education at the D.C. Jail. In assuming the District of Columbia's educational responsibilities, the Federal Bureau of Prison also assumed the commitment to educate D.C. Code offenders. By not providing special education for Maurice, the Federal Bureau of Prison would be depriving Maurice of a right conferred to him by the laws of the District of Columbia.

You may contact me directly at (202) 274-7314 or via facsimile at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia Catlett
Law Student Advocate

cc.:    Maurice Pimble
        Marianne Cantwell

 

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Pimble**    First **Maurice**    MI

Student ID **772952**  Soc. Sec. No. ▓▓▓▓  Age: **18**  Grade **9**

Gender ☒M ☐F   Date of Birth ▓▓ **85**  Ethnic Group **African American**

Address **1845 Ontario Pl. NW**
House No.    Street Name    Quadrant    Apartment #
**Washington DC 20003**
City    State    Zip Code

☐ Non-attending

Attending School _____  Home School _____

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS

Parent **Alfred Hobdy**

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

House No.   Street Name   Quad   Apt. No.   City   State   Zip Code

Telephone: Home _____  Work _____

### II. CURRENT INFORMATION

Date of IEP Meeting: **10/1/04**

Date of Last IEP Meeting: **1/30/01**

Date of Most Recent Eligibility Decision: **1/30/01**

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: **TAL**

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION | |
|---|---|---|---|
| ESY | | TRANSITION | X |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | N. Lang | Oral _____ |
| Parent | English | English | English | N. Lang | Rdg./ Written _____ |
| Home | English | English | English | N. Lang | Instrument: _____  Date: _____ |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./ Min  D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks/mos |
|---|---|---|---|---|---|
| Specialized Instruction | ✓ | 6 hr  week | Spe. Ed. Teacher | 10/4/04 | 10 Mos |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **TOTAL** | **6** | **Hours Per Week** | | | |

### V. Disability(ies)    **Learning Disabled**

Percent of time in Specialized Instruction and Related Services
☒ 0-20%   ☐ 21-60%   ☐ 61-100%

☐ (Check if setting is general Ed.)

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)    Print and sign your name below.

Maureen Kemp
Maurice Pimble
Lia Queensder
Sophia Thomas

Maure Kemp
unavailable
Lia Queensder
Sophia Thomas

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _____  Date _____



| Student Name | Maurice Pimble | Managing School | | DCPS - IEP Page 2 of 4 |
| Student ID Number | 7729521 | DOB ■■■■ 85   Attending School | DOC/DCJal | |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**     Additional Comments: ☐

**Academic Areas: (Evaluator)** Special Educator

Math Strengths:
Student is able to add and subtract with regrouping

Impact of disability on educational performance in general education curriculum:
Student disability impact his ability to perform Grade level work

Reading Strengths:
Student is able to read some sight words

Impact of disability on educational performance in general education curriculum:
Student disability impacts on academic success

**Score(s) When Available**
Math Cal. 3.0
Math Rsa. ____
See goal page: ____
Date: ____
Rdg. Com ____
Rdg. Basic 2.0
Written Ex. ____
See goal page: ____
Date: 2-5-01

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp. Lang. ____
Rec- Lang. ____
Artic ____
Voice ____
Fluency ____
Exp. Voc. ____
Rec. Voc. ____
See goal page: ____
Date: ____

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**

See goal page: ____
Date: ____

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page: ____
Date: ____

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page: ____
Date: ____

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page: ____
Date: ____

45

| Student Name | Maurice Pimble | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 7729534 | DOB: ___85 | Attending School | DOC/DC Acad | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: ___ |
|---|---|---|---|

Area addressed by goal: **Academics Mathematics**

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will be able to demonstrate a years growth in Mathematics with 80% accuracy

Provider(s): **Special Educator**

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to multiply whole numbers with 80% accuracy | | monthly |
| Maurice will be able to divide whole number with 80% accuracy | | monthly |
| Maurice will be able to solve word problems involving multiplication and division with 80% accuracy | | monthly |
| Maurice will be able to add and subtract fractions and decimals with 80% accuracy | | monthly |
| Maurice will be able to multiply and divide fractions and decimals with 80% accuracy | | monthly |
| Maurice will be able to complete percentage with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

46

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | | DOB | Attending School | Doc / Dcclail | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: ☐ |
|---|---|---|---|

Area addressed by goal: _Academics - Written Expressions_

ANNUAL GOAL: (including mastery criteria.)

Maurice will be able to demonstrate one years growth in Written expression with 80% accuracy

Provider(s): Special Education

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to use correct Capitalization with 80% accuracy | | Monthly |
| Maurice will be able to use correct punctuation with 80% accuracy | | Monthly |
| Maurice will be able to draft an essay with 80% accuracy. | | Monthly |
| Maurice will be able to use a dictionary with 80% accuracy. | | Monthly |
| Maurice will be able to use the internet to conduct research with 80% accuracy | | Monthly |
| Maurice will identify complete sentences with 80% accuracy | | Monthly |

EVALUATION PROCEDURE(S)

☑ Portfolio  ☐ Log  ☐ Chart  ☑ Test  ☑ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4



| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 7729524 | DOB ___85 | Attending School DOC/DC Jail | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐      Goal Number: ___

Area addressed by goal: _Academic - Reading_

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will demonstrate a years growth in Reading Comprehension and vocabulary skills with 80% Accuracy.

Provider(s): Special Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to identify analogies with 80% accuracy | | monthly |
| Maurice will be able to draw inferences from materials read with 80% accuracy. | | monthly |
| Maurice will able to identify supporting details with 80% accuracy. | | monthly |
| Maurice will be able to distinguish facts from opinion with 80% accuracy | | monthly |
| Maurice will be able to identify the main idea of a reading selection with 80% accuracy | | monthly |
| Maurice will be able to use context clues to define unfamiliar words with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio ☐ Log ☐ Chart ☐ Test ☐ Documented Observation ☐ Report ☐ Other ___

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

48

| Student Name | Maurice Pimble | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 0729524 | DOB ███-85 | Attending School | DOC/DC Jail | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ |
|---|---|---|

Area addressed by goal: _____

**ANNUAL GOAL - (including mastery criteria.)**

Maurice will reduce his inability to refrain from impulsive behaviors

Provider(s): Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will process in counseling sessions Situations when he had difficulty impulsive behavior | | Weekly |
| Maurice will identify situations in which he successfully refrained from engaging in impulsive behavior | | Weekly |
| Maurice use existing skills coupled with newly learned skills from counseling sessions to refrain from impulsive behaviors | | Weekly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**                    Information obtained

☑ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☐ Report  ☐ Other in counseling sessions



| Student Name **Maurice Pimble** | Managing School | DCPS - TRANSITION SERVICES PLAN PAGE 1 OF 2 |
|---|---|---|
| Student ID Number **7729524**  DOB ~~85~~ | Attending School **DC jail / Doc** | |

Date Developed: _____

## DCPS TRANSITION SERVICES PLAN

Note: The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

I. *Record student's post-secondary goals and interests.*

Employment: _____

Community Participation: _____

Post-Secondary Education and Training: _____

Independent Living: _____

II. *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
|---|---|
| 2004 - 2005 | GED Instruction |
| | |
| | |
| | |
| | |

III. *Transition Services Needed.*
*Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Employment**  If service is not needed, provide explanation. | | TBD |
| **Community Participation**  If service is not needed, provide explanation. | | TBD |
| **Post - Secondary Education and Training**  If service is not needed, provide explanation. | | TBD |
| **Independent and Adult Living**  If service is not needed, provide explanation. | | TBD |

District of Columbia Public Schools    07-02-2001    Division of Special Education  IEP Attachment C  Transition Services Plan  Page 1 of 2

50



| Student Name | Maurice Amble | Managing School | | DCPS - TRANSITION SERVICES PLAN PAGE 2 OF 2 |
|---|---|---|---|---|
| Student ID Number | 7729534 | DOB ___-85 | Attending School DC(jed) / DOC | |

Date Developed: _____

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | | |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | | |
| **Other** | | |

**IV.**

| Projected Exit Category *(check one)* | High School Diploma Status | | Projected Exit Date (M/D/Y) |
|---|---|---|---|
| DC High School Diploma | # Credits Earned toward graduation | | |
| High School Certificate at age 21 | G-E-D | | |
| High School Certificate *prior* to age 21 | # Community Service Hours Completed | | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| | | |
| | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

Examples of Agency Linkages Needed for Transition
- Rehabilitation Services Administration (RSA)
- Mental Retardation and Developmental Disabilities Administration (MRDDA)
- Commission on Mental Health Services (CMES)
- UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

District of Columbia Public Schools    07-02-2001    Division of Special Education    IEP Attachment C  Transition Services Plan  Page 2 of 2

51

| Student Name | Maurice Pimble | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 0729524 | DOB ___-85 | Attending School | DOC/DC Jail | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ☑ Yes ☐ No

Explanation for removal out of regular education classroom.

Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability. Maurice requires behavior intervention and small structured environment that cannot be met in the general education classroom.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr/Min | D/W/M | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

Timing/Scheduling: extended time, extra break
Setting: small group and preferential seating
Presentation: behavior modification
Response: write in test booklet
Equipment: calculator

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☐ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio: _____

☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☑ Level IV (Describe the alternative assessment)

N/A

## XII. Areas Requiring Specialized Instruction and Related Services:

☑ Reading          ☐ Physical/Sensory       ☐ Transition
☑ Mathematics      ☐ Social Emotional        ☐ Vocational
☑ Written Expression ☐ Physical Development   ☐ Independent Living
☐ Other: _____                              ☐ Speech/Language
☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**Modifications:**
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | Reject cannot meet student needs | Continue school failure |
| Combination General Education | Reject cannot meet student needs | Ability to participate with non-disabled peers |
| Out of General Education | Accept will meet student need | Impact on self-esteem |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate services

Location for Services | DOC/DC Jail |

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

52



```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME : 04/12/2005 14:18
                              NAME : DACSL LEGAL CLINICS
                              FAX  : 2022745569
                              TEL  :
                              SER.# : BROE2J354480
```

```
   DATE,TIME              04/12  14:12
   FAX NO./NAME           930573440
   DURATION               00:05:32
   PAGE(S)                12
   RESULT                 OK
   MODE                   FINE
                          ECM
```

**MP8**      **Letter to Ms. Cantwell,**
**4/11/05**

**University of the District of Columbia**
**David A. Clarke School of Law**

**Cynthia Catlett**
**Juvenile and Special Education Law Clinic**
**4200 Connecticut Avenue, N.W. 39/213**
**Washington, D.C. 20008**

(202) 274-7314
(202) 274-5583 (fax)



April 11, 2005

Marianne Cantwell
General Counsel for Prison Industries, Education
and Vocational Training Division
Federal Bureau of Prisons
320 1st Street, NW
Washington, DC 20534

Re: Maurice Pimble
Inmate No: 35565-007
Special Education Needs

Dear Ms. Cantwell:

On March 21, 2005, I submitted a Due Process Hearing Request at the Student Hearing Office of D.C. Public Schools on behalf of my client, Maurice Pimble (Inmate # 35565-007). Maurice is currently incarcerated at Rivers Correctional Institution (RCI), a Federal Bureau of Prisons facility. Prior to his incarceration at RCI, Maurice was at the D.C. Jail awaiting placement at a Federal Bureau of Prisons facility. At that time, Maurice was pending re-evaluation by D.C. Public School personnel in order to assess his special education needs.

Since 1997, the Federal Bureau of Prisons (BOP) has been responsible for administering and implementing the educational rights provisions in the IDEA for District of Columbia Code felony offenders who are in BOP custody. The Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights when it gained custody of D.C. Code felony offenders through The National Capital Revitalization Act of 1997. That Act makes the BOP responsible for the "custody, care, subsistence, education, treatment, and training" of D.C. Code felony offenders. D.C.'s educational obligations include the obligation to provide special education and related services to its prisoners. *See, e.g.,* 20 U.S.C. §1412 (a)(1)(B)(ii), 34 C.F.R. §300.311 (a)(1)(2). In assuming the responsibility of providing for the education of D.C. Code felony offenders, the BOP assumed DC's IDEA responsibility to educate students with special education needs.

In a recent conversation, Lisa Russell, D.C. Public Schools' Director of Special Education for Incarcerated Youth, stated her position, which is that D.C. Public Schools is not responsible for D.C. students who are incarcerated in the federal system. Prior to passage of the National Capital Revitalization Act, D.C. Public Schools was responsible for educating inmates with special education needs if prior to their incarceration they had been identified as eligible for special education.

55

In a provision specifying the transfer of parental rights to a child at the age of majority, the IDEA specifically mentions prisoners incarcerated in federal facilities. 24 U.S.C. §1415(m)(1)(d). Although the implementing regulations fail to mention federal incarceration facilities, an interpretation that the IDEA does not reach federal prisoners would disregard the plain meaning of the statute.

Furthermore, the BOP is acting under the color of state law in housing D.C. prisoners and the right to public education for individuals with disabilities vests under D.C. administrative practices prior to incarceration, and those rights cannot be stripped by BOP officials acting under state law.

For the abovementioned reasons, the Federal Bureau of Prisons is obligated to attend this hearing, since it is obligated to provide special education to D.C. Code offenders in its facilities. The hearing is scheduled for **April 25, 2005 at 3:00 p.m.** at the Student Hearing Office, 825 North Capitol Street, N.E. 8th floor. I am attaching to this letter a copy of the Hearing Request.

If you have any questions or concerns regarding this matter, please contact me directly at (202) 274-7314 or via facsimile at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia Catlett
Law Student Advocate

56

**University of the District of Columbia**
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, D.C. 20008

Telephone: (202) 274-5576
    FAX: (202) 274-5569



## FASCIMILE TRANSMITTAL SHEET

DATE: April 11, 2005

TO: Marianne Cantwell

FAX NUMBER: 202-305-7344 0

FROM: Cynthia N Catlett

UDC-DCSL FAX NO: 202-274-5569

RE: Maurice Pimble / Inmate # 35565-007

TOTAL PAGES: (including this cover sheet) 6

FAX OPERATOR:

FAX OPERATOR PHONE:

BRIEF MESSAGE: Please call me if there are any questions regarding this matter at (202) 274-7384. This fax is in re to Maurice Pimble inmate # 35565-007

ATTENTION! Thank you.

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

57

TRANSMISSION VERIFICATION REPORT

```
                                   TIME  : 04/11/2005 15:36
                                   NAME  : DACSL LEGAL CLINICS
                                   FAX   : 2022745569
                                   TEL   :
                                   SER.# : BROE2J354480
```

```
        DATE,TIME              04/11  15:33
        FAX NO./NAME           930573440
        DURATION               00:03:02
        PAGE(S)                06
        RESULT                 OK
        MODE                   FINE
                               ECM
```

58

**MP9      Letter from Ms. Cantwell, 4/14/05**



**U.S. Department of Justice**
**UNICOR**
Federal Bureau of Prisons

Washington, DC 20534
**Office of the Assistant Director**

| | |
|---|---|
| **facsimile** | Fax: (202) 305-7340 |
| **TRANSMITTAL** | Telephone: (202) 305-3500 |

Date: 4/14/05

To: Cynthia Catlett

Fax: (202) 274-5569

From: Doug Colborne, Ast. Gen. Counsel

Fax: (202) 305-7340

Pages: 12 + cover

Comments:

Prinsle case

Feel free to call me to discuss.
(202) 305-3870.

Doug



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_____

*Washington, D.C. 20534*

April 14, 2005

Cynthia Catlett
Juvenile and Special Education Law Clinic
University of the District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008

   RE:  Maurice Pimble, Register Number 25565-007

Dear Ms. Catlett:

   This is in response to your letter dated April 11, 2005,
regarding the above-referenced individual, who is currently
incarcerated in the custody of the Federal Bureau of Prisons
(BOP).  You requested that the BOP appear at a hearing
tentatively scheduled for April 25, 2005, in order to ensure
implementation of Mr. Pimble's individualized education program
(IEP) and his free, appropriate public education (FAPE) rights.

   As I have indicated through earlier correspondences with
members of the Juvenile and Special Education Law Clinic, the
IDEA, as reflected by its implementing regulations, is applicable
only to states, and to local and private entities within the
states.  34 C.F.R. § 300.2.  As I am sure you are aware, the BOP,
as a component of the United States Department of Justice (DOJ),
is a federal civilian agency.

   As was appropriately recognized by Hearing Office St. Clair
in a similar case, <u>Gibson v. DCPS</u>, the IDEA is not applicable to
the Federal Bureau of Prisons, and a DCPS hearing officer has no
jurisdiction over the Federal Bureau of Prisons.  A copy of that
opinion is attached, along with the hearing officer's Disposition
of Petition for Reconsideration in the same case, in which the
hearing officer again found that the BOP is not obligated to
establish procedures to ensure the availability of FAPE.
Therefore, while the BOP respects the authority of DCPS's student
hearing officers to ensure the IDEA is properly administered, any
further action sought by your office should be limited to Mr.
Primble's relationship with DCPS and not the BOP.

61

Nonetheless, consistent with 18 U.S.C. § 3624(f), the BOP does strive to meet the unique learning needs of each mentally capable person committed to the custody of the United States Attorney General on a fair and non-discriminatory basis. To the extent BOP education and psychology staff identify any special education needs, Mr. Pimole will be provided appropriate educational programming as described in published BOP policies, such as Program Statement 5350.25, <u>Literacy Programs</u>, and Program Statement 5300.21, <u>Education, Training and Leisure Time Program Standards</u>. These policies, as well as other national policies, may be obtained from the BOP's web site, <u>www.bop.gov.</u>

I trust you will find this information useful. Should you have any additional questions, please feel free to contact me, or Assistant General Counsel Douglas S. Goldring, at (202) 305-3500.

Sincerely,

*Marianne S. Cantwell*

Marianne S. Cantwell
General Counsel
Industries, Education and
Vocational Training Division

cc:  Jeffrey Phoenix, Student Hearing Officer Coordinator
     Student Hearing Office, DCPS
     825 North Capital Street, NE (8th Floor)
     Washington, DC 20002

62

01/25/2005 15:59 FAX 202 442 5098        OFF.OF GENERAL COUNSEL                    ☑002

# District of Columbia Public Schools

## Office of Management Services

### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | |
|---|---|
| In the Matter of )<br><br>DOMINIC GIBSON, adult inmate,  )<br>Date of Birth: ████████, 1979  )<br><br>Petitioner,  )<br><br>versus  )<br><br>**The District** of Columbia Public Schools,  )<br>Home School: N.A.,  )<br>Attending: (incarcerated at the United States )<br>Penitentiary Atlanta, Atlanta, Ga.)  )<br><br>Respondent.  )  | **IMPARTIAL<br>DUE PROCESS HEARING**<br><br>**DECISION AND ORDER**<br><br>Request Date:  November 22, 2004<br>Hearing Date:  December 17, 2004<br><br>Held at:  825 North Capitol Street, NE<br>Eighth Floor<br>Washington, D.C. 20002 |

Counsel for the Adult Inmate:

University of the District of Columbia
David A. Clark School of Law
Juvenile and Special Education Law Clinic
Att: Joseph B. Tulman, Esq., Supervising Atty
4200 Connecticut Avenue, NW
Building 38  Second Floor
Washington, D.C. 20008

District of Columbia Public Schools:

Michael Levy, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i

## INDEX of NAMES for Dominic Gibson
**Hearing Date:** December 17, 2004

Appearing on behalf of DCPS:  None.

Appearing on behalf of the adult inmate:

1. Dominic Gibson **
2. John J. Irving, Law Student Advocate

**Gave testimony via telephone.

ii

## INTRODUCTION

On November 22, 2004, the Law Student Advocate filed the herein Request for Mediation/Hearing on behalf of the adult inmate complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the adult inmate then at United States Penitentiary Atlanta, Atlanta, Ga., Registration No 10437-007. Specifically, the Law Student Advocate complained of violation of the Hearing Officer's Decision (HOD) issued in this matter November 2, 1999, Inmate Document No 2, wherein the inmate was awarded three years of compensatory education; that, to date, DCPS had not delivered the compensatory education nor any special education services to the inmate. For relief, the Law Student Advocate requested an ORDER to DCPS to comply with the November 2, 1999 HOD, an award for additional compensatory for the period starting November 2, 1999 through ▮▮▮▮▮▮▮▮ 2001, the inmates 22nd birthday. As further relief, the Law Student Advocate requested an ORDER to United States Department of Justice, Federal Bureau of Prisons (FBOP) to deliver special educations services to the inmate, or in the alternative, an ORDER to the FBOP to transfer the inmate to a District of Columbia correctional facility whereat special education services could be delivered.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 3:00 P.M., Friday, December 17, 2004 at DCPS Headquarters, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations

## ISSUES:

1. Is the November 2, 1999 Compensatory Education Award enforceable?

2. Is the inmate entitled to compensatory education for the period between November 2, 1999 and his 22nd birthday, ▮▮▮▮▮▮▮▮, 2001?

3. Is IDEA applicable to the United States Department of Justice, Federal Bureau of Prisons?

4. Is the Federal Bureau of Prison obligated to deliver special education services to District of Columbia inmates in their custody under Pub. L. 105-33, Section 11201 et. seq?

1 of 5 pages

65

# SUMMARY OF THE EVIDENCE and FINDINGS OF FACT

By facsimile dated December 10, 2004, the adult inmate disclosed 22 documents.

At the hearing DCPS introduced a copy of the December 13, 2004 facsimile from the Industries, Education and Vocational Training Division, Federal Bureau of Prisons (FBOP) to DCPS; it was marked DCPS Document No 1.

The documents were placed into the record and are referenced/footnoted herein where relevant.

The Law Student Advocate represented that the inmate was identified as a child with a disability in the District of Columbia during January 1996[1] and that DCPS did not deliver any special education services to the inmate, neither under a current IEP nor the November 2, 1999 Compensatory Education Award[2]; that, with the exception of Sussex II State Prison, Waverly, Virginia, no incarcerating institution outside the District of Columbia allowed the delivery of any special education services to the inmate. The Law Student Advocate argued that when the inmate was transferred from the District of Columbia Department of Corrections to the FBOP, DCPS and/or the FBOP were obligated to provide a FAPE to the inmate under the National Capital Revitalization Act, Pub. L. 105-33, Section 11201, et seq; that 20 U.S.C. 1415(m)(1)(D) envisioned the obligation on the part of Federal correctional institution to provide a FAPE to eligible inmates.

The Attorney-Advisor argued that the three year Statute of Limitations in the District of Columbia prevented enforcement of the November 2, 1999 HOD, and that a Due Process Hearing under 34 CFR 300.507 did not have jurisdiction over the FBOP as 34 CFR 300.2 did not confer such jurisdiction.

Other than DCPS Document No 1, DCPS did not place evidence into the record.

The adult inmate testified via telephone from the United States Penitentiary Atlanta, Atlanta, Georgia, that he had not receive any special education services since being at the penitentiary; that from the penitentiary, he requested special education services from the FBOP and, to date, had received no response. The inmate testified that he enrolled in a class at the penitentiary but stopped attending because the material was too advanced for him. The inmate testified that pay for work done at the penitentiary was related to educational achievement, and that if he could learn more, he would be paid more for his work at the penitentiary. The inmate testified that he very much wanted special education services.

In consideration of the testimony, documents and argument herein, the hearing officer found the following facts:

1. The inmate was eligible for a FAPE in the District of Columbia from January 1999 thru his transfer from the District of Columbia Department of Corrections to the Unites States Department of Justice, Federal Bureau of Prisons or his 22nd birthday, whichever date is the earliest.

2 of 5 pages

---

[1] At the behest of U. D. C. Law School, the latest IEP for the inmate was completed independently at the D.C. Jail on August 14, 2000.

[2] Records reflect that DCPS offered a residential placement to the student on February 5, 1996 but that the parent refused the placement.

2. DCPS made no credible effort to deliver a FAPE or compensatory education to the inmate after November 2, 1999.

# DISCUSSION and CONCLUSIONS OF LAW

## I

DCPS will deliver to the inmate the compensatory education awarded in the November 2, 1999 Hearing Officer's Determination along with that awarded in DISCUSSION II, below, when the inmate's circumstances permit delivery.

The record did not reveal an effort on the part of DCPS to comply with the November 2, 1999 Hearing Officer's Determination. In fact, DCPS made no effort to make a FAPE available to the inmate after that date. The November 2, 1999 award remains outstanding as DCPS continued to violate IDEA after that date. DCPS was obligated to make a FAPE available to the inmate until his 22nd birthday or the responsibility for his education was placed on the Federal Bureau of Prisons, whichever date is the earliest.

## II

The inmate is awarded additional compensatory education.

Mindful that compensatory education is an equitable remedy, the inmate is awarded compensatory education from November 2, 1999 to ████████, 2001, his 22nd birthday, or date the responsibility for his education was placed on Federal Bureau of Prisons, whichever date is the earliest. This award is based on the fact that, from the record, DCPS made no effort to make a FAPE available to the inmate after November 2, 1999.

## III

IDEA is not applicable to the United States Department of Justice, Federal Bureau of Prisons.

34 CFR 300.300 requires DCPS to fully evaluate every child residing in the District of Columbia who is suspected of having a disability and, ages 3 through 21, including inmates under certain circumstances, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement.

In the Hearing Officer's Determination issued in this matter on November 2, 1999, Inmate Document No 2, it was established that the inmate was then entitled to a FAPE from the District of Columbia Public School (DCPS).

The instant hearing had jurisdiction over DCPS.

From what authority did the hearing have jurisdiction over the Federal Bureau of Prisons?

3 of 5 pages

67

The Law Student Advocate advanced two theories upon which the hearing officer could have asserted jurisdiction over the Bureau of Prisons: Pub. L. 105-33, Section 11201 et seq., where the responsibility, ". . .for the custody, care, subsistence, education, treatment and training . . ." of all D.C. Code offenders was placed on the Federal Bureau of Prisons and, secondly, 20 U.S.C. 1415(m)(1)(D) where parental rights under IDEA are transferred to ". . . to children . . . incarcerated in . . . Federal . . . correctional institutions" upon majority.

The interpretation of Pub. L. 105-33 urged upon the hearing officer was that the Law placed upon the FBOP the exact responsibility for education that was upon the District of Columbia prior to its enactment: that whatever educational obligation DCPS had to the inmate, after Pub. L. 105-33, the FBOP then had. The hearing officer was not persuaded. The hearing officer understood the Law, not as a transfer of anything; rather it placed responsibility, all of it and as the FBOP considered appropriate, for the education, custody, care, subsistence, treatment and training of D.C. Code offenders on the FBOP. Under the Law, the FBOP decides what, if any, education is appropriate for the inmate.

At 34 CFR 300.2(b)(iv), the applicability of Title 34, CFR, Part 300, to "State and local juvenile and adult correctional facilities," is clearly defined; federal correctional facilities are not mentioned. There is no basis for asserting jurisdiction over the FBOP in 34 CFR 300.2.

As pointed out by the Law Student Advocate, an inference from 20 U.S.C. 1415(m)(1)(D) could be made that the Congress intended IDEA to apply to the FBOP: why else would a Federal Law transferring parental rights under IDEA to inmates incarcerated in Federal institutions be enacted? A question not fully explored at the hearing was what, if any, were parental rights under IDEA regarding a minor in a Federal correctional institution/facility. Still, as 34 CFR 300.2 sets out the applicability of Part 300 and Federal correctional institutions/ facilities are not mentioned therein, the conclusion that Part 300 is not applicable to the FBOP was forced upon the hearing officer.

Lastly under this DISCUSSION, this hearing convened under 34 CFR 300.507 and did not have jurisdiction over the United States Department of Justice, Federal Bureau of Prisons.

## IV

### Issue IV was mooted.

Without jurisdiction over the Federal Bureau of Prisons, the hearing officer mooted Issue IV.

In consideration of the foregoing, the hearing officer made the following

## ORDER

1. When the circumstances of the inmate permit delivery of compensatory education, DCPS shall convene an MDT meeting during which the form

4 of 5 pages

68

and delivery of compensatory education set out in
DISCUSSIONS I and II, above, will be discussed
and determined. The November 2, 1999 HOD is
incorporated herein.

2. The MDT will first determined if the inmate is
then in need of and will benefit from the said
compensatory education. In regard to this
determination, the MDT is authorized to complete
evaluation of the inmate.

3. In the event the MDT determines that the inmate/
former inmate either does not need the compensatory
or will not benefit from it, the MDT is authorized to
CANCEL this award.

4. For disputes under this ORDER, either party may
request a hearing.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of
competent jurisdiction within thirty (30) days of the issue date of this decision.**

Date: _January 14, 2005_

H. St. Clair, Esq., Hearing Officer

Issued: _1-14-05_
Student Hearing Office, DCPS

5 of 5 pages

03/17/2005 14:11 FAX 202 442 5098        OFF. OF GENERAL COUNSEL                    ⊠002/006

# District of Columbia Public Schools

## Office of Management Services
### _confidential_

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

|  |  |  |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL** |
|  | ) | **DUE PROCESS HEARING** |
| **DOMINIC GIBSON**, adult inmate | ) |  |
| Date of Birth: ████████, 1979 | ) | **DISPOSITION of PETITION** |
|  | ) | **for RECONSIDERATION** |
| Petitioner, | ) |  |
|  | ) |  |
| versus | ) |  |
|  | ) |  |
| **The District of Columbia Public Schools**, | ) |  |
| Home School: N.A., | ) |  |
| Attending: (incarcerated at the United States | ) |  |
| Penitentiary Atlanta, Atlanta, Ga.) | ) |  |
|  | ) |  |
| Respondent. | ) |  |

Counsel for the Adult Inmate:        **University of the District of Columbia**
                                      **David A. Clark School of Law**
                                      **Juvenile and Special Education Law Clinic**
                                      Att: Joseph B. Tulman, Esq., Supervising Atty
                                      4200 Connecticut Avenue, NW
                                      Building 38   Second Floor
                                      Washington, D.C. 20008

District of Columbia Public Schools:   Michael Levy, Esq., Attorney-Advisor
                                       **Office of the General Counsel, DCPS**
                                       825 North Capitol Street, NE  9th Floor
                                       Washington, D.C. 20002

1 of 3 pages

## JURISDICTION

The proceeding was authorized by Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations

## STATEMENT of the CASE

A Request for Mediation/Hearing on behalf of the adult inmate at the United States Penitentiary Atlanta, Atlanta, Ga., Registration No. 10437-007 was filed on November 22, 2004. A hearing was held on Friday, December 17, 2004, at DCPS Headquarters, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. A DECISION & ORDER unfavorable to the inmate, in part, and favorable, in part, was issued on January 14, 2005. On February 15, 2005, the inmate filed the herein Petition for Reconsideration.

The Petition argued that the DECISION & ORDER issued on January 14, 2005 contained two errors:

**I. The Hearing Officer Failed to Recognize the Federal Bureau of Prisons' Responsibility to Provide a Free Appropriate Public Education to Dominic Gibson Pursuant to the National Capital Revitalization and Self Government Act of 1997 and 20 U.S.C. 1415(m)(1)(D), and**

**II. Hearing Officer St. Clair Erred in Delegating to the Multi-Disciplinary Team (MDT) the Authority to Terminate Dominic's Compensatory Education Award**

Argument I did not advance an argument not made at the December 17, 2004 hearing. Still, mention of 20 U.S.C. 1415(a) seemed indicated. Speaking to the obligation of State education agencies, State agencies and local education agencies to establish procedures to ensure the availability of FAPE, the section makes clear that those agencies receiving assistance under IDEA are obliged to establish the procedures and to conduct hearings under 20 U.S.C. 1415(f) and then with respect to and within such agencies. The United States Department of Justice, Federal Bureau of Prisons, is not such an agency. DISCUSSIONS and CONCLUSIONS of LAW III & IV in the DECISION & ORDER issued in this matter January 14, 2005 are REITERATED.

In response to Argument II, it is noted that compensatory education is an equitable remedy not to be compared to compensatory damages; it is appropriately awarded and delivered to the student who needs and can benefit from the services. Because of the uncertainty as to

2 of 3 pages

71

availability of the inmate to receive the compensatory education award, it was appropriate revisit the appropriateness of the compensatory services on the occasion of the inmate's availability to receive the services. Paragraph 4 of the ORDER provided for resort to Due Process by either party in the event of a dispute under the ORDER, whether concerning the continued appropriateness of the compensatory education award or some other dispute. See *Mathew Reid, et. el. vs. District of Columbia* Civil Action 02cv1611 (RBW), 2004.

In consideration of the foregoing, the herein **Petition for Reconsideration** is **DENIED**.


This is **THE FINAL ADMINISTRATIVE DECISION**. Appeal can be made to a court of competent jurisdiction within thirty (30) days of the issue date of this decision.


_____  Date: March 11 2005
H. St. Clair, Esq., Hearing Officer


Issued: _____3-11-05_____
Student Hearing Office, DCPS


3 of 3 pages

72

**MP10**    **Most Recent IEP, 10/1/04**

2nd
Refax



# D.C. PUBLIC SCHOOLS
## OFFICE OF SPECIAL EDUCATION
*MAIN NUMBER (202) 442-4800*
*FAX NUMBER (202) 442-5517, 442-5518*

### FACSIMILE TRANSMITTAL SHEET

TO: Cynthia Cahett    FROM: Lisa Russell

COMPANY: UDC Law Clinic    DATE: 3/25/05

FAX NUMBER: (202) 274-5583    TOTAL NO. OF PAGES INCLUDING COVER:

PHONE NUMBER:    SENDER'S REFERENCE NUMBER:

RE: Maurice Pmbri    YOUR REFERENCE NUMBER:

☐ URGENT   ☑ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

10/04   IEP developed @ DC Jail

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Pimsbe**    First **Maurice**    MI

Student ID **272952** 1a. Soc. No. ▓▓▓▓    Age: **18**    Grade **9**

Gender ☒ M ☐ F    Date of Birth ▓▓, **85**    Ethnic Group **African American**

Address **1865**    Street Name **Ontario Pl. NW**    Quadrant    Apartment #

**Washington DC    20003**

☐ Non-attending

Attending School ____    Home School ____

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS

Parent **Alfred Hobdy**

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code

Telephone: Home ____    Work ____

## II. CURRENT INFORMATION

Date of IEP Meeting: **10/1/04**

Date of Last IEP Meeting: **1/30/01**

Date of Most Recent Eligibility Decision: **1/30/01**

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: **TAL**

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION | |
|---|---|---|---|
| ESY | | TRANSITION | X |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | N. Lang |
| Parent | English | English | English | N. Lang |
| Home | English | English | English | N. Lang |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral ____
Rdg./Written ____
Instrument ____
Date: ____

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./Min  D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | | ✓ | | 6 hr | week | Spec. Ed. Teacher | 10/4/04 | 10 Mos |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | 6 | | Hours Per Week | | | | |

## V. Disability(ies)

**Learning Disabled**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%    ☐ 21-60%    ☐ 61-100%

Percent of time NOT in a Regular Education Setting ____

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Maureen Kemp    Maureen Kemp
Maurice Pimble    unavailable
Leo Quander    Leo Quander
Tyisha Thomas    Sophia Turner

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature ____    Date ____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

75

| Student Name | Maurice Pimble | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 7729-211 | DOB 85 | Attending School | DOC/DCJal | Page 2 of 4 |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**    Additional Comments: ☐

Academic Areas: (Evaluator) Special Educator

Math Strengths: Student is able to add and subtract with regrouping

Impact of disability on educational performance in general education curriculum:
Student disability impact his ability to perform Grade level work

Reading Strengths: Student is able to read some sight words

Impact of disability on educational performance in general education curriculum:
Student disabilities impacts on academic success

Score(s) When Available
Math Cal. 3.0
Math Rea.
See goal page:
Date:

Rdg. Com.
Rdg. Basic 2.0
Written Ex.
See goal page:
Date: 2-5-01

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
Exp. Lang.
Rec- Lang.
Artic
Voice
Fluency
Exp. Voc.
Rec. Voc.
See goal page:
Date:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) /Results When Available

See goal page:
Date:

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

See goal page:
Date:

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

See goal page:
Date:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

See goal page:
Date:

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 77295 34 | DOB ███ 85 | Attending School DOC/DC Jail | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ___ |

Area addressed by goal: _Academics Mathematics_

**ANNUAL GOAL: (including mastery criteria.)**

Maurice will be able to demonstrate a years growth in Mathematics with 80% Accuracy

Provider(s): _Special Educator_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to multiply whole numbers with 80% accuracy | | monthly |
| Maurice will be able to divide whole number with 80% accuracy | | monthly |
| Maurice will be able to solve word problems involving multiplication and division with 80% Accuracy | | monthly |
| Maurice will be able to add and subtract fractions and decimals with 80% Accuracy | | monthly |
| Maurice will be able to multiply and divide fractions and decimals with 80% Accuracy | | monthly |
| Maurice will be able to complete percentage with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☑ Portfolio  ☐ Log  ☐ Chart  ☑ Test  ☑ Documented Observation  ☐ Report  ☐ Other ___

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | | DOB | | Page 3 of 4 |
| | | Attending School | DOC / DcJail | |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐        Goal Number: ☐

Area addressed by goal: *Academics - Written Expressions*

**ANNUAL GOAL: (including mastery criteria.)**

Maurice will be able to demonstrate one years growth in Written expression with 80% accuracy

**Provider(s):** Special Education

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to use correct Capitalization with 80% accuracy | | Monthly |
| Maurice will be able to use correct punctuation with 80% accuracy | | Monthly |
| Maurice will be able to draft an essay with 80% accuracy | | monthly |
| Maurice will be able to use a dictionary with 80% accuracy | | monthly |
| Maurice will be able to use the internet to conduct research with 80% accuracy | | monthly |
| Maurice will identify complete sentences with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☑ Portfolio   ☐ Log   ☐ Chart   ☑ Test   ☑ Documented Observation   ☐ Report   ☐ Other _____

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 7729524 | DOB | ___-85 | Attending School DOC/DC Jail | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ |
|---|---|---|

Area addressed by goal: Academic - Reading

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will demonstrate a years growth in Reading Comprehension and vocabulary skills with 80% Accuracy.

Provider(s): Special Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to identify analogies with 80% accuracy | | monthly |
| Maurice will be able to draw inferences from materials read with 80% accuracy. | | monthly |
| Maurice will able to identify supporting details with 80% accuracy. | | monthly |
| Maurice will be able to distinguish facts from opinion with 80% accuracy | | monthly |
| Maurice will be able to identify the main idea of a reading selection with 80% accuracy | | monthly |
| Maurice will be able to use context clues to define unfamiliar words with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☑ Portfolio ☐ Log ☐ Chart ☐ Test ☐ Documented Observation ☐ Report ☐ Other _____

| Student Name | Maurice Pimble | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 0229524 | DOB ████-85 | Attending School | DOC/DC Jail | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**     Additional Comments: ☐

Area addressed by goal: _____     Goal Number: ☐

ANNUAL GOAL: (including mastery criteria.)

Maurice will reduce his inability to refrain
from impulsive behaviors

Provider(s): Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will process in counseling sessions situations when he had difficulty impulsive behavior | | Weekly |
| Maurice will identify situations in which he successfully refrained from engaging in impulsive behavior | | Weekly |
| Maurice use existing skills coupled with newly learned skills from counseling sessions to refrain from impulsive behaviors | | Weekly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☑ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☐ Report  ☐ Other     Information obtained in counseling sessions

| Student Name | Maurice Pimble | Managing School | | DCPS - TRANSITION SERVICES PLAN PAGE 1 OF 2 |
| Student ID Number | 7729524 | DOB _____ 55 | Attending School DCjay 1Doc | |

Date Developed: _____

## DCPS TRANSITION SERVICES PLAN

**Note:** The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.** *Record student's post-secondary goals and interests.*

Employment: _____

Community Participation: _____

Post-Secondary Education and Training: _____

Independent Living: _____

**II.** *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
| --- | --- |
| 2004 - 2005 | GED Instruction |
| | |
| | |
| | |
| | |

**III.** *Transition Services Needed.*
   Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
| --- | --- | --- |
| **Employment** If service is not needed, provide explanation. | | TBD |
| **Community Participation** If service is not needed, provide explanation. | | TBD |
| **Post - Secondary Education and Training** If service is not needed, provide explanation. | | TBD |
| **Independent and Adult Living** If service is not needed, provide explanation. | | TBD |

District of Columbia Public Schools    07-02-2001    Division of Special Education   IEP Attachment C   Transition Services Plan   Page 1 of 2

81

| Student Name | Maurice Amble | Managing School | | DCPS - TRANSITION |
|---|---|---|---|---|
| Student ID Number | 7729534 | DOB | 85 | SERVICES PLAN |
| | | Attending School | DCjed / DOC | PAGE 2 OF 2 |

Date Developed: _____

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | | |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | | |
| **Other** | | |

**IV.**

| Projected Exit Category (check one) | High School Diploma Status | Projected Exit Date (M/D/Y) |
|---|---|---|
| DC High School Diploma | # Credits Earned toward graduation | |
| High School Certificate at age 21 | G-E-D | |
| High School Certificate prior to age 21 | # Community Service Hours Completed | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| | | |
| | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

Examples of Agency Linkages Needed for Transition
- Rehabilitation Services Administration (RSA)
- Mental Retardation and Developmental Disabilities Administration (MRDDA)
- Commission on Mental Health Services (CMES)
- UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

District of Columbia Public Schools    07-02-2001    Division of Special Education    IEP Attachment C  Transition Services Plan  Page 2 of 2

82

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 0729524 | DOB ____-85 | Attending School DOC/DC Jail | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ☐ Yes ☐ No

Explanation for removal out of regular education classroom.

Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability. Maurice requires behavior intervention and small structured environment that cannot be met in the general education classroom

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr/Min | D/W/M | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

| Timing/Scheduling: | extended time, extra break |
|---|---|
| Setting: | Small group and preferential seating |
| Presentation: | Behavior modification |
| Response: | Wrote in test booklet |
| Equipment: | Calculator |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☐ Level III   Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio:

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☒ Level IV   (Describe the alternative assessment)

N/A

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☐ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | Reject Cannot meet student needs | Continue school failure |
| Combination General Education | Reject Cannot meet student needs | Ability to participate with nondisabled peers |
| Out of General Education | Accept will meet student need | Impact on self esteem |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate Services

Location for Services   DOC/DOC Jail

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

83

# MP11    Report Card from Roosevelt High School

```
                                    Student History                          10:02

Student ID: 7729524      PIMBLE, MAURICE                      M-09-I-01/02-

Grd Year  ----------Crse----------  -Grade-  --In Cum-- --Term 1-- --Term 2-- --Term 3-- --Term 4-- Exm Avg --Final---
          Abbr  Sec   Text          Lvl Cnt  GPA  Cred Mrk Credit Mrk Credit Mrk Credit Mrk Credit Mrk Mrk Mrk Credit

. 08 00/01 I21   02  MECH DRAW I     07  Y    Y    Y       0.000      0.000  F  0.000      0.000             0.000
. 08 00/01 M01   06  FUND. OF MATH S 07  Y    Y    Y    B  0.000  B   0.000     0.000      0.000             0.000
. 08 00/01 M15   04  LIFE MGMT       10  Y    Y    Y       0.000      0.000  D  0.000      0.000             0.000
. 08 00/01 M15   05  LIFE MGMT       10  Y    Y    Y    B  0.000      0.000     0.000      0.000             0.000
. 08 00/01 M15   06  LIFE MGMT       10  Y    Y    Y    B  0.000  B   0.000     0.000      0.000             0.000
. 08 00/01 N02   02  READING COMPREN 09  Y    Y    Y       0.000      0.000  F  0.000      0.000             0.000
. 08 00/01 S01   04  LIFE SCIENCE    07  Y    Y    Y       0.000      0.000  F  0.000      0.000             0.000
. 09 01/02 H21   21  DC HIS&GOV      09  Y    Y    Y    F  0.000  F   0.000     0.000      0.000          F  0.000
. 09 01/02 H23   21  WORLD GEOGRAPHY 09  Y    Y    Y       0.000      0.000  F  0.000   *  0.000             0.000
. 09 01/02 M14   21  MATH FOUND PT I 09  Y    Y    Y    F  0.000  F   0.000     0.000      0.000          F  0.000
. 09 01/02 N11   21  DEVEL.READ I    09  Y    Y    Y       0.000      0.000  F  0.000   *  0.000             0.000
. 09 01/02 S21   21  BIOLOGY         09  Y    Y    Y    F  0.000  F   0.000  F  0.000   *  0.000             0.000
. 09 01/02 V02   21  COMP APPL I     09  Y    Y    Y    F  0.000  F   0.000     0.000      0.000          F  0.000

E SPECIAL KEYS TO SCROLL OR EXIT

1(023,035)
```

85

# MP12    Student Master Record from Johnson Junior High School

Document Name: untitled  

```
SIS - STUD                JOHNSON JUNIOR HIGH SCHOOL          Dec 08, 20
[DISPLAY]                    Student Master Record             02:05 PM

   Student ID:        7729524           Status:                 I
                                        Grade/School Yr:        08 00/01
   Last Name:         PIMBLE            Homeroom:               8312 New:
   Given Names:       MAURICE A         Program:
   Called Name:                         Locker/Comb:              0
   Address Line 1:    D.C. VILLIAGE LANE Previous School:       285  File
   Address Line 2:    #2A               Admission Date:         09/05/00
   City:              WASHINGTON        Admission Code:         A5 Calendr
   State:             DC                Withdrawal Date:
   Zip Code:          20032             Withdrawal Code:
   Tel No/Area/Code:  561-8090  (202)   Transf To School:        459  File
   Parent/Guardian:   LEWIS, TWANDYA    Date Transferred:       09/17/01
   P/G Relationship:  1  MOTHER         Graduation Rule:
   Sex/Ethnic Code:   M  B  BLACK       Graduation Date:
   Birthdate:            /85            Schedule Changed:       06/13/01
   Verified With:                                              1 2 3 4 5
   Soc Sec No:
   Counselor Name:    KEELING           Data Flags:
   Scheduling Priority: 1               Report Flags:          N N N N N
   Press 'RETURN' To Accept This Student Or 'NEXT' To Go On   Res/Sped/Att:  0 B
   Message:
```

# MP13     Report Card from Johnson Jr. High School



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## REPORT FORM

02/05/01

*JOHNSON JUNIOR HIGH SCHOOL*
REPORT TO PARENTS ON STUDENT PROGRESS

STUDENT ID: 7729524          STUDENT NAME: PIMBLE, MAURICE A
GRADE:        07             HOMEROOM:        7423

189

| COURSE SEC SUBJECT TEACHER | COMMENTS | ADV 1 | ADV 2 | ADV 3 | ADV 4 | FINAL | EARN CRED | CLASS ABSENCE ADV YTD |
|---|---|---|---|---|---|---|---|---|
| B17    05 CROSSON | EXPLOR KEYBOARD | P | P | | | P | | 0 |
| C35    05 PATTERSON | LIFE MGMT  EXCELLENT INITIATIVE  EXCELLENT BEHAVIOR | B | B | | | | | 11   12 |
| C35    06 PATTERSON | LIFE MGMT  GOOD PARTICIPATION | B | B | | | | | 11   12 |
| E01S   06 CARTER | ENGLISH 7  EXCELLENT BEHAVIOR  GOOD PARTICIPATION | B | B | | | | | 11   12 |
| H11S   05 PATTERSON | W. HEM. GEO. SP  EXCELLENT BEHAVIOR  GOOD PARTICIPATION | B | B | | | | | 11   14 |
| M01S   06 PATTERSON | FUND. OF MATH S  GOOD PARTICIPATION  EXCELLENT BEHAVIOR | B | B | | | | | 11   12 |

HOMEROOM ABSENCES: 14.0    EXCUSED: 0.0  UNEXCUSED: 14.0    TARDY: 11

MAURICE A PIMBLE
2343 PITTS PLACE S.E.
WASHINGTON,, DC 20020

89

**MP14    Student Master Record from Raymond Elementary School**

Document Name: untitled

```
SIS - STUD                RAYMOND ELEMENTARY SCHOOL           Dec 08,
[DISPLAY]                    Student Master Record            04:21 PM

Student ID:        7729524              Status:           I
                                        Grade/School Yr:  05 99/00
Last Name:         PIMBLE               Homeroom:            New
Given Names:       MAURICE A            Program:
Called Name:                            Locker/Comb:       0
Address Line 1:    1469 MERIDIAN PLSCE, NW   Previous School:  302  Fi
Address Line 2:                         Admission Date:   03/04/98
City:              WASHINGTON           Admission Code:   A3 Calen
State:             DC                   Withdrawal Date:  10/13/99
Zip Code:          20010                Withdrawal Code:  W1
Tel No/Area/Code:  635-0130  (202)      Transf To School:  285  Fi
Parent/Guardian:   LEWIS, TWANDWA       Date Transferred: 11/03/99
P/G Relationship:  1   MOTHER           Graduation Rule:
Sex/Ethnic Code:   M  B  BLACK          Graduation Date:
Birthdate:         ████/85              Schedule Changed:
Verified With:
Soc Sec No:        ███████████                            1 2 3 4
Counselor Name:    BERNARD GRAYSON      Data Flags:
Scheduling Priority:                    Report Flags:     N N N N
                                        Res/Sped/Att:          0
Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On
Message:
```

# MP15     Fifth Grade Report Card, 1998 – 1999

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 5TH GRADE REPORT CARD 1998-99
(Page one of three)

Student Name: Maurice Pimble

ID#: 729524

School: Raymond

Teacher: Morgan

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **READING** | 2 | 2 | 2 | 1 |
| Uses word attack skills & vocabulary strategies | — | √ | √ | √ |
| Learns and uses new vocabulary | √ | √ | √ | √ |
| Reads and comprehends 25 books | √ | √ | √ | √ |
| Recognizes literary devices (e.g. simile, exaggeration) | √ | √ | √ | √ |
| Compares/contrasts literary works | NI | NI | √ | √ |
| Locates and uses information | NI | √ | √ | — |

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **WRITING** | 2 | 2 | 2 | 1 |
| Writes set of instructions | NI | NI | NI | — |
| Writes detailed narrative | √ | √ | √ | √ |
| Writes research report | NI | √ | √ | — |
| Writes response to literature | NI | NI | √ | √ |
| Uses correct grammar, capitalization & spelling | √ | √ | √ | √ |
| Uses writing process | √ | √ | √ | √ |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **LISTENING SKILLS** | 2 | 2 | 2 | 1 |
| Exhibits appropriate audience behavior | √ | √ | √ | √ |
| Comprehends oral presentations | √ | √ | √ | √ |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **SPEAKING SKILLS** | 2 | 2 | 2 | 2 |
| Gives oral directions | NI | NI | NI | √ |
| Participates in group discussions | √ | √ | √ | √ |
| Makes oral presentations | √ | √ | + | √ |

| **INSTRUCTIONAL LEVEL** | above level | on level | below level |
|---|---|---|---|
| **Reading** | | | |
| 1st Advisory | — | √ | |
| 2nd Advisory | — | √ | |
| 3rd Advisory | — | √ | |
| 4th Advisory | — | | √ |
| **Mathematics** | | | |
| 1st Advisory | — | √ | |
| 2nd Advisory | — | √ | |
| 3rd Advisory | — | √ | |
| 4th Advisory | — | √ | |

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **MATHEMATICS** | 2 | 1 | 2 | 1 |
| Computes using whole numbers | √ | √ | √ | √ |
| Applies place value concepts | √ | √ | √ | √ |
| Describes & compares quantities | + | √ | √ | √ |
| Computes using fractions | NI | NI | √ | — |
| Computes using decimals | NI | NI | √ | √ |
| Identifies geometric figures | √ | √ | √ | — |
| Estimates/measures objects | NI | √ | √ | √ |
| Collects, organizes & displays data on charts, graphs and tables | NI | + | + | + |
| Models & solves problems | NI | √ | √ | √ |

**Reporting Key:**

For overall grade in subject area:

4 = Exceeds the standard (Advanced)
Student takes initiative to exceed the standard; consistently produces excellent work, applying skills/concepts correctly; shows creativity and insight.

3 = Meets the standard (Proficient)
Student produces work that meets the standard; frequently produces very good work of high quality; applies skills/concepts correctly.

2 = Approaches the standard (Basic)
Student shows a basic working knowledge of skills/concepts; produces satisfactory work; usually applies skills/concepts correctly.

1 = Does not meet the standard (Below Basic)
Student does not show basic working knowledge of skills/concepts; seldom produces work of satisfactory quality.

For skills/expectations within subject area:
+ = Excellent          -- = Unsatisfactory
√ = Satisfactory       NI = Not Introduced

93

**MP16    Fifth Grade Report Card, 1999**



**SECOND SEMESTER 1999 – 2000**
Part A

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 5TH GRADE REPORT CARD

Student Name: Pimble Maurice

### Grade Placement September, 2000 _____

| Advisory | 3rd | 4th |
|---|---|---|
| **READING** | 2 | — |
| Uses word attack skills & vocabulary strategies | ✓ | |
| Learns and uses new vocabulary | ✓ | |
| Reads and comprehends 25 books | ✓ | |
| Recognizes literary devices (e.g. simile, exaggeration) | ✓ | |
| Compares/contrasts literary works | ✓ | |
| Locates and uses information | ✓ | |
| **WRITING** | 2 | — |
| Writes set of instructions | — | — |
| Writes detailed narrative | ✓ | |
| Writes research report | ✓ | |
| Writes response to literature | ✓ | |
| Uses correct grammar, capitalization & spelling | ✓ | |
| Uses writing process | ✓ | |
| **LISTENING SKILLS** | 2 | — |
| Exhibits appropriate audience behavior | ✓ | |
| Comprehends oral presentations | ✓ | |
| **SPEAKING SKILLS** | 2 | — |
| Gives oral directions | ✓ | |
| Participates in group discussions | ✓ | |
| Makes oral presentations | | |

| INSTRUCTIONAL LEVEL | above level | on level | below level |
|---|---|---|---|
| **Reading** | | | |
| 3rd Advisory | — | ✓ | — |
| 4th Advisory | — | — | — |
| **Mathematics** | | | |
| 1st A | | | |
| 2nd Adv | | | |
| 3rd Advisory | — | ✓ | — |
| 4th Advisory | — | — | — |

| Advisory | 3rd | 4th |
|---|---|---|
| **MATHEMATICS** | 2 | — |
| Computes using whole numbers | ✓ | — |
| Applies place value concepts | ✓ | — |
| Describes & compares quantities | ✓ | — |
| Computes using fractions | ✓ | — |
| Computes using decimals | ✓ | — |
| Identifies geometric figures | ✓ | — |
| Estimates/measures objects | ✓ | — |
| Collects, organizes & displays data on charts, graphs and tables | ✓ | — |
| Models & solves problems | ✓ | — |

**Reporting Key:**
For overall grade in subject area:
4 = Exceeds the standard (Advanced)
Student takes initiative to exceed the standard; consistently produces excellent work, applying skills/concepts correctly; shows creativity and insight.
3 = Meets the standard (Proficient)
Student produces work that meets the standard; frequently produces very good work of high quality; applies skills/concepts correctly.
2 = Approaches the standard (Basic)
Student shows a basic working knowledge of skills/concepts; produces satisfactory work; usually applies skills/concepts correctly.
1 = Does not meet the standard (Below Basic)
Student does not show basic working knowledge of skills/concepts; seldom produces work of satisfactory quality.
For skills/expectations within subject area:
+ = Excellent          – = Unsatisfactory
√ = Satisfactory     NI = Not Introduced

95

**MP17    Stanford Achievement Test Series, 04/98 (5th Grade)**

# STANFORD

ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

TEACHER: OLIVER
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/98

**STUDENT REPORT**
**FOR**
**MAURICE A PIMBLE**

Age: 12 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 42 | 626 | 24-4 | 35.1 |
| Vocabulary | 30 | 18 | 638 | 33-4 | 40.7 |
| Reading Comp. | 54 | 24 | 620 | 24-4 | 35.1 |
| Total Mathematics | 78 | 27 | 596 | 24-4 | 35.1 |
| Problem Solving | 48 | 19 | 600 | 8-2 | 20.4 |
| Procedures | 30 | 8 | 589 | 12-3 | 25.3 |
| Partial Battery | 162 | 69 | NA | 7-2 | 18.9 |
| | | | | 17-3 | 30.0 |

NATIONAL GRADE PERCENTILE BANDS

1   10   30 50 70 90   99

CONTENT CLUSTERS

| | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| **Reading Vocabulary** | 18/ 30/ 30 | | ✓ | |
| Synonyms | 9/ 16/ 16 | | ✓ | |
| Context | 4/ 7/ 7 | | ✓ | |
| Multiple Meanings | 5/ 7/ 7 | | ✓ | |
| **Reading Comprehension** | 24/ 54/ 54 | | ✓ | |
| Recreational | 10/ 18/ 18 | | ✓ | |
| Textual | 6/ 18/ 18 | ✓ | | |
| Functional | 8/ 18/ 18 | ✓ | | |
| Initial Understanding | 4/ 12/ 12 | | ✓ | |
| Interpretation | 12/ 24/ 24 | | ✓ | |
| Critical Analysis | 4/ 9/ 9 | | ✓ | |
| Process Strategies | 4/ 9/ 9 | | ✓ | |
| **Mathematics: Problem Solving** | 19/ 48/ 48 | ✓ | | |
| Measurement | 2/ 6/ 6 | ✓ | | |
| Estimation | 2/ 4/ 4 | | ✓ | |
| Problem-Solving Strategies | 0/ 5/ 5 | ✓ | | |
| Number & No. Relationships | 4/ 6/ 6 | | ✓ | |
| Number Systems & No. Theory | 2/ 5/ 5 | | ✓ | |
| Patterns & Functions | 2/ 3/ 3 | | ✓ | |
| Algebra | 1/ 3/ 3 | | ✓ | |
| Statistics | 2/ 6/ 6 | ✓ | | |
| Probability | 1/ 3/ 3 | | ✓ | |
| Geometry | 3/ 7/ 7 | | ✓ | |
| **Mathematics: Procedures** | 8/ 30/ 30 | ✓ | | |
| Computation/Symbolic Notation | 3/ 10/ 10 | ✓ | | |
| Computation in Context | 4/ 16/ 16 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |

| | | Below Average | Average | Above Average |
|---|---|---|---|---|

STANFORD LEVEL/FORM: Intermediate 2/T
1995 NORMS: Spring    National

OTHER INFO: 2————    Copy 02

97


**STANFORD**

*ACHIEVEMENT TEST SERIES, NINTH EDITION*
SELECT

TEACHER:   OLIVER
SCHOOL:    RAYMOND ELEM SCH - 302
DISTRICT:  DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE:      05
TEST DATE:  04/98

**STUDENT REPORT with
PERFORMANCE STANDARDS FOR
MAURICE A. PIMBLE**

Age: 12 Yrs  11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 42 | BASIC |
| Vocabulary | 30 | 18 | BASIC |
| Reading Comp. | 54 | 24 | BELOW BASIC |
| Total Mathematics | 78 | 27 | BELOW BASIC |
| Problem Solving | 48 | 19 | BELOW BASIC |
| Procedures | 30 | 8 | BELOW BASIC |

Performance Standards are content-referenced items that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance, indicating that students are prepared for the next grade. At the high school level this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond the grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

**N O T E S**

STANFORD LEVEL/FORM: Intermediate 2/T
1995 NORMS: Spring          National

OTHER INFO: 2--------      Copy 02

98

# STANFORD

ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

TEACHER: OLIVER
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/98

STUDENT REPORT
FOR
MAURICE A PIMBLE
Age: 12 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 42 | 626 | 24-4 | 35.1 |
| Vocabulary | 30 | 18 | 638 | 33-4 | 40.7 |
| Reading Comp. | 54 | 24 | 620 | 24-4 | 35.1 |
| Total Mathematics | 78 | 27 | 596 | 8-2 | 20.4 |
| Problem Solving | 48 | 19 | 600 | 12-3 | 28.3 |
| Procedures | 30 | 8 | 589 | 7-2 | 18.9 |
| Partial Battery | 162 | 69 | NA | 17-3 | 30.0 |

NATIONAL GRADE PERCENTILE BANDS

| CONTENT CLUSTERS | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| Reading Vocabulary | 18/ 30/ 30 | | ✓ | |
| Synonyms | 9/ 16/ 16 | | ✓ | |
| Context | 4/ 7/ 7 | | ✓ | |
| Multiple Meanings | 5/ 7/ 7 | | ✓ | |
| | | | | |
| Reading Comprehension | 24/ 54/ 54 | | ✓ | |
| Recreational | 10/ 18/ 18 | | ✓ | |
| Textual | 6/ 18/ 18 | ✓ | | |
| Functional | 8/ 18/ 18 | | ✓ | |
| Initial Understanding | 4/ 12/ 12 | ✓ | | |
| Interpretation | 12/ 24/ 24 | | ✓ | |
| Critical Analysis | 4/ 9/ 9 | | ✓ | |
| Process Strategies | 4/ 9/ 9 | | ✓ | |
| | | | | |
| Mathematics: Problem Solving | 19/ 48/ 48 | ✓ | | |
| Measurement | 2/ 6/ 6 | | ✓ | |
| Estimation | 2/ 4/ 4 | | ✓ | |
| Problem-Solving Strategies | 0/ 5/ 5 | ✓ | | |
| Number & No. Relationships | 4/ 6/ 6 | | ✓ | |
| Number Systems & No. Theory | 2/ 5/ 5 | | ✓ | |
| Patterns & Functions | 2/ 3/ 3 | | ✓ | |
| Algebra | 1/ 3/ 3 | | ✓ | |
| Statistics | 2/ 6/ 6 | ✓ | | |
| Probability | 1/ 3/ 3 | ✓ | | |
| Geometry | 3/ 7/ 7 | | | ✓ |
| | | | | |
| Mathematics: Procedures | 8/ 30/ 30 | ✓ | | |
| Computation/Symbolic Notation | 3/ 10/ 10 | ✓ | | |
| Computation in Context | 4/ 16/ 16 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |

STANFORD LEVEL/FORM: Intermediate 2/T
1995 NORMS: Spring    National

Scores based on normative data copyright © 1996 by Harcourt Brace & Co.

OTHER INFO: 2------    Copy 02
Process No. 1989162-15500  1-2590-78701-2

99

# STANFORD

**ACHIEVEMENT TEST SERIES, NINTH EDITION**
SELECT

**STUDENT REPORT with PERFORMANCE STANDARDS FOR MAURICE A PIMBLE**

TEACHER: OLIVER
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/98

Age: 12 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 42 | BASIC |
| Vocabulary | 30 | 18 | BASIC |
| Reading Comp. | 54 | 24 | BELOW BASIC |
| Total Mathematics | 78 | 27 | BELOW BASIC |
| Problem Solving | 48 | 19 | BELOW BASIC |
| Procedures | 30 | 8 | BELOW BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test section on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

# N O T E S

STANFORD LEVEL/FORM: Intermediate 2/T
1995 NORMS: Spring    National

OTHER INFO: 2——    Copy 02
Process No. 19891422-1550011-2590-78702-2

Scores based on normative data copyright © 1996 by Harcourt Brace & Co.

**MP18    Stanford Achievement Test Series, 09/98 (5th Grade)**

# STANFORD

### *ACHIEVEMENT TEST SERIES, NINTH EDITION*
SELECT

TEACHER: MORGAN – 30
SCHOOL: RAYMOND ELEM SCH – 302
DISTRICT: D C PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 09/98

## STUDENT REPORT with PERFORMANCE STANDARDS FOR
### MAURICE A IIMBLE

Age: 13 Yrs 04 Mos.
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 50 | BASIC |
| Vocabulary | 30 | 23 | PROFICIENT |
| Reading Comp. | 54 | 27 | BELOW BASIC |
| Total Mathematics | 78 | 36 | BELOW BASIC |
| Problem Solving | 48 | 17 | BELOW BASIC |
| Procedures | 30 | 19 | BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in each subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance, indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

## NOTES

STANFORD LEVEL/FORM: Intermediate 1/S
1995 NORMS: Fall    National

OTHER INFO: 2—1—    Copy 01
Process No. 19892120-296-056-5037-01647-1

# STANFORD

### ACHIEVEMENT TEST SERIES, NINTH EDITION
### SELECT

**STUDENT REPORT**
**FOR**
**MAURICE A PIMBLE**

TEACHER: MORGAN - 30
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: D C PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 09/98

Age: 13 Yrs. 04 Mos.
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 50 | 617 | 22-3 | 33.7 |
| Vocabulary | 30 | 23 | 638 | 37-4 | 43.0 |
| Reading Comp. | 54 | 27 | 607 | 19-3 | 31.5 |
| Total Mathematics | 78 | 36 | 593 | 11-3 | 24.2 |
| Problem Solving | 48 | 17 | 575 | 6-2 | 13.1 |
| Procedures | 30 | 19 | 623 | 39-4 | 44.1 |
| Partial Battery | 162 | 86 | NA | 21-5 | 32.9 |

## NATIONAL GRADE PERCENTILE BANDS

1    10    30  50   70    90    99

| CONTENT CLUSTERS | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| **Reading Vocabulary** | 23/ 30/ 30 | | ✓ | |
| Synonyms | 11/ 16/ 16 | | ✓ | |
| Context | 7/ 7/ 7 | | | ✓ |
| Multiple Meanings | 5/ 7/ 7 | | ✓ | |
| | | | | |
| **Reading Comprehension** | 27/ 54/ 54 | ✓ | | |
| Recreational | 8/ 18/ 18 | | ✓ | |
| Textual | 10/ 18/ 18 | | ✓ | |
| Functional | 9/ 18/ 18 | ✓ | | |
| Initial Understanding | 6/ 12/ 12 | ✓ | | |
| Interpretation | 12/ 24/ 24 | ✓ | | |
| Critical Analysis | 5/ 9/ 9 | | ✓ | |
| Process Strategies | 4/ 9/ 9 | | ✓ | |
| | | | | |
| **Mathematics: Problem Solving** | 17/ 48/ 48 | ✓ | | |
| Concepts/Whole No. Comput. | 2/ 4/ 4 | | ✓ | |
| Number Sense and Numeration | 1/ 6/ 6 | ✓ | | |
| Geometry and Spatial Sense | 2/ 6/ 6 | | ✓ | |
| Measurement | 3/ 10/ 10 | | ✓ | |
| Statistics and Probability | 5/ 6/ 6 | | ✓ | |
| Fraction and Decimal Concepts | 2/ 6/ 6 | ✓ | | |
| Patterns & Relationships | 1/ 3/ 3 | | ✓ | |
| Estimation | 1/ 3/ 3 | ✓ | | |
| Problem-Solving Strategies | 0/ 4/ 4 | | ✓ | |
| | | | | |
| **Mathematics: Procedures** | 19/ 30/ 30 | | ✓ | |
| Number Facts | 3/ 3/ 3 | H/ | | |
| Computation/Symbolic Notation | 7/ 12/ 12 | | ✓ | |
| Computation in Context | 7/ 12/ 12 | | ✓ | |
| Rounding | 2/ 3/ 3 | | ✓ | |

| | | Below Average | Average | Above Average |
|---|---|---|---|---|

STANFORD LEVEL/FORM: Intermediate 1;S
1995 NORMS: Fall    National

OTHER INFO: 2----1-    Copy 01
Process No. 19892120-290.2056-5037-01646-1



**STANFORD**

*ACHIEVEMENT TEST SERIES, NINTH EDITION*
SELECT

TEACHER: MORGAN - 30
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: D C PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE:    05
TEST DATE: 09/98

**STUDENT REPORT** with
**PERFORMANCE STANDARDS FOR**
**MAURICE A PIMBLE**

Age: 13 Yrs 04 Mos.
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 50 | BASIC |
| Vocabulary | 30 | 23 | PROFICIENT |
| Reading Comp. | 54 | 27 | BELOW BASIC |
| Total Mathematics | 78 | 36 | BELOW BASIC |
| Problem Solving | 48 | 17 | BELOW BASIC |
| Procedures | 30 | 19 | BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in a given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance, indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

**N O T E S**

STANFORD LEVEL/FORM: Intermediate 1/S
1995 NORMS:  Fall     National

OTHER INFO:  2----1-     Copy 0t
Process No. 10802120-296-0056-9037-01647-1

110

# MP19    Stanford Achievement Test Series, 04/99 (5th Grade)

# STANFORD

ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

**STUDENT REPORT**
FOR
**MAURICE A PIMBLE**

Age: 13 Yrs 11 Mos
Student No: 7729524

TEACHER: MORGAN
SCHOOL: RAYMOND ELEM SCH  402
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE:  05
TEST DATE: 04/99

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 34 | 610 | 14-3 | 27.2 |
| Vocabulary | 30 | 17 | 632 | 29-4 | 38.3 |
| Reading Comp. | 54 | 17 | 598 | 11-3 | 24.2 |
| Total Mathematics | 78 | 40 | 623 | 25-4 | 35.8 |
| Problem Solving | 48 | 27 | 627 | 34-4 | 41.3 |
| Procedures | 30 | 13 | 618 | 22-3 | 33.7 |
| Partial Battery | 162 | 74 | NA | 23-4 | 34.4 |

### NATIONAL GRADE PERCENTILE BANDS

| CONTENT CLUSTERS | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| **Reading Vocabulary** | 17/ 30/ 30 | | ✓ | |
| Synonyms | 11/ 16/ 16 | | ✓ | |
| Context | 3/ 7/ 7 | ✓ | | |
| Multiple Meanings | 3/ 7/ 7 | ✓ | | |
| | | | | |
| **Reading Comprehension** | 17/ 54/ 54 | ✓ | | |
| Recreational | 7/ 18/ 18 | ✓ | | |
| Textual | 6/ 18/ 18 | ✓ | | |
| Functional | 4/ 18/ 18 | ✓ | | |
| Initial Understanding | 5/ 12/ 12 | ✓ | | |
| Interpretation | 6/ 24/ 24 | ✓ | | |
| Critical Analysis | 3/ 9/ 9 | ✓ | | |
| Process Strategies | 3/ 9/ 9 | ✓ | | |
| | | | | |
| **Mathematics: Problem Solving** | 27/ 48/ 48 | | ✓ | |
| Measurement | 2/ 6/ 6 | ✓ | | |
| Estimation | 2/ 4/ 4 | | ✓ | |
| Problem-Solving Strategies | 3/ 5/ 5 | | ✓ | |
| Number & No. Relationships | 2/ 6/ 6 | ✓ | | |
| Number Systems & No. Theory | 4/ 5/ 5 | | ✓ | |
| Patterns & Functions | 3/ 3/ 3 | H✓ | | |
| Algebra | 0/ 3/ 3 | | ✓ | |
| Statistics | 3/ 6/ 6 | | ✓ | |
| Probability | 3/ 3/ 3 | | | ✓ |
| Geometry | 5/ 7/ 7 | | ✓ | |
| | | | | |
| **Mathematics: Procedures** | 13/ 30/ 30 | ✓ | | |
| Computation/Symbolic Notation | 5/ 10/ 10 | ✓ | | |
| Computation in Context | 7/ 16/ 16 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |

06

Scores based on normative data copyright © 1996 by Harcourt Brace & Company. All rights reserved.

# STANFORD

ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

TEACHER: MORGAN
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/99

STUDENT REPORT with
PERFORMANCE STANDARDS FOR
MAURICE A PIMBLE

Age: 13 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 34 | BELOW BASIC |
| Vocabulary | 30 | 17 | BASIC |
| Reading Comp. | 54 | 17 | BELOW BASIC |
| Total Mathematics | 78 | 40 | BELOW BASIC |
| Problem Solving | 48 | 27 | BASIC |
| Procedures | 30 | 13 | BELOW BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in each subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

Below Basic indicates little or no mastery of fundamental knowledge and skills.

Basic denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

Proficient represents solid academic performance indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

Advanced signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

## NOTES

STANFORD LEVEL/FORM: Intermediate 2/T
1995 NORMS: Spring    National

OTHER INFO: 2—5—    Copy 02
Process No. 199201-1590021-2669-19387-2

# MP20    Student Master Record from Rudolph Elementary School

Document Name: untitled

```
SIS - STUD                    RUDOLPH ELEMENTARY SCHOOL
[DISPLAY]                        Student Master Record              Nov 29,
                                                                    01:30 PM

   Student ID:          7729524             Status:
                                            Grade/School Yr:        I
   Last Name:           PIMBLE              Homeroom:               05 97/98
   Given Names:         MAURICE A           Program:                0206 New
   Called Name:                             Locker/Comb:
   Address Line 1:      5501 7TH STREET, NW Previous School:         306  Fi
   Address Line 2:                          Admission Date:         09/12/94
   City:                WASHINGTON          Admission Code:         A1 Calen
   State:               DC                  Withdrawal Date:        11/07/97
   Zip Code:            20011               Withdrawal Code:        W1
   Tel No/Area/Code:    635-0131  (202)     Transf To School:        326  Fi
   Parent/Guardian:     TAYLOR,GARY         Date Transferred:       11/07/97
   P/G Relationship:    0   PARENT          Graduation Rule:
   Sex/Ethnic Code:     M  B  BLACK         Graduation Date:
   Birthdate:           ▓▓▓▓/85             Schedule Changed:
   Verified With:
   Soc Sec No:          000 00 0000                                 1 2 3 4
   Counselor Name:                          Data Flags:
   Scheduling Priority:                     Report Flags:           N N N N
   Press 'RETURN' To Accept This  Student   Res/Sped/Att:                  0
   Message:                       Or 'NEXT' To Go On
```

*withdrawal from*
*one To DcPschool*
*To another DcPs*
*school*

**MP21    Report Card, Rudolph Elementary School (4th Grade)**



#609 1982
53P0341

 **STRICT OF COLUMBIA PUBLIC SCHOOLS** 

**REPORT OF PUPIL PROGRESS**
**ELEMENTARY GRADES 1A — 6B**

| PUPIL | | SCHOOL | GRADE | TEACHER |
|---|---|---|---|---|
| **Pimble** | | Semester #1 | | |
| Last Name    First Name | | Semester #2  Rudlph C | 4 | Jhson |
| ID # | | | | |
| School Year    19___ — 19___ | | | | |

| GRADING SCALE | A | B | C | D | U |
|---|---|---|---|---|---|
| Progress | Excellent | Very Good | Good | Minimum | Unsatisfactory |
| % of Mastery | 100 – 93 | 92 – 85 | 84 – 78 | 77 – 70 | Below 70% |

*Dear Parent,*

*You are encouraged to confer frequently with your child's teacher. Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.*

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| **MATHEMATICS** | | | | D |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | | | 4B | 4B |
| Below Grade Level | | | | |
| **READING** | | | | C |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | | | 4B | 4B |
| Below Grade Level | | | | |
| **LANGUAGE** | | | C | A |
| **SPELLING** | | | B | C- |
| **HANDWRITING** | | | D+ | D |
| **SOCIAL STUDIES** | | | B | D |
| **SCIENCE** | | | B | C |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | | | P | B |
| MUSIC | | | D | U |
| HEALTH/PHYSICAL EDUCATION | | | B | B+ |
| FRENCH/SPANISH | | | A | A |
| CITIZENSHIP | | | P | B |

The following behaviors are in need of improving:

| | Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | Advisory 1 2 |
|---|---|---|---|---|---|
| ☐ ☐ | ☐ ☐ | Demonstrates appropriate behavior | | ☐ ☐ | ☐ ☐ Works independently |
| | | | | | ☐ ☐ Makes effective use of time |
| ☐ ☐ | ☐ ☐ | Works effectively with others | | ☐ ☐ | ☐ ☐ Completes required homework assignments |
| ☐ ☐ | ☐ ☐ | Follows established rules | | ☐ ☐ | ☐ ☐ Completes work on time |
| ☐ ☐ | ☐ ☐ | Shares ideas and talents | | | |
| ☐ ☐ | ☐ ☐ | Listens attentively | | ☐ ☐ | ☐ ☐ Does his best consistently |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | | | ( | O |
| DAYS ABSENT | | | 2 | 2 |

Teacher Comments:                    Conference
                                     Date _____

November _____

Teacher Comments:                    Conference
                                     Date _____

January _____

Teacher Comments:                    Conference
                                     Date _____

April 97

Teacher Comments:                    Conference
                                     Date _____

Have a nice summer

June 97

**February Placement**

Grade _____

Teacher Signature _____

**September Placement**

Grade 5A

Teacher Signature De Quindra Johnson

111

# MP22    Report Card, Rudolph Elementary School (3rd Grade)

#609 1982
53P0341

 

**DISTRICT OF COLUMBIA PUBLIC SCHOOL**
REPORT OF PUPIL PROGRESS
ELEMENTARY GRADES 1A — 6B

| PUPIL | | SCHOOL | GRADE | TEACHER |
|---|---|---|---|---|
| **Pistle, Maurice** | Semester #1 | **Rudolph** | **3A** | M. Wright |
| Last Name          First Name | Semester #2 | Rudolph | 3A | M. Wright |
| ID # 7729524 | | | | |
| School Year 19 94 – 19 95 | | | | |

| GRADING SCALE | A | B | C | D | U |
|---|---|---|---|---|---|
| Progress | Excellent | Very Good | Good | Minimum | Unsatisfactory |
| % of Mastery | 100 – 93 | 92 – 85 | 84 – 78 | 77 – 70 | Below 70% |

*Dear Parent,*
   *You are encouraged to confer frequently with your child's teacher.  Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.*

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| MATHEMATICS | | U | | U |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | 3A | 3A | 3A | 3A |
| Below Grade Level | | | | |
| READING | | U | | U |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | 3A | 3A | 3A | 3A |
| Below Grade Level | | | | |
| LANGUAGE | | U | | U |
| SPELLING | | U | U | U |
| HANDWRITING | | D | D | D |
| SOCIAL STUDIES | | U | | U |
| SCIENCE | D | U | U | U |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | C | C | C | C |
| MUSIC | | C | C | C |
| HEALTH/PHYSICAL EDUCATION | B | B | B | D |
| FRENCH, SPANISH | | | U | U |
| CITIZENSHIP | | D | D | D |

The following behaviors are in need of improving:

| Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | Advisory 1 2 |
|---|---|---|---|---|
| ☐ ☐ | ☐ ☐ | Demonstrates appropriate behavior | ☐ ☐ | ☐ ☐ Works independently |
| | | | | ☐ ☐ Makes effective use of time |
| ☐ ☐ | ☐ ☐ | Works effectively with others | ☐ ☐ | ☐ ☐ Completes required homework assignments |
| ☐ ☐ | ☐ ☐ | Follows established rules | ☐ ☐ | ☐ ☐ Completes work on time |
| ☐ ☐ | ☐ ☐ | Shares ideas and talents | ☐ ☐ | ☐ ☐ Does his best consistently |
| ☐ ☐ | ☐ ☐ | Listens attentively | | |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | 2 | | | |
| DAYS ABSENT | | 11 | 17 | 19 |

Teacher Comments:                Conference Date _____

November ____

Teacher Comments:                Conference Date _____

January ____

Teacher Comments:                Conference Date _____
Maurice has been absent too many days this school year.
April 24 1995   Grade 3

Teacher Comments:                Conference Date _____
June 9, 1995

February Placement
Grade A
Teacher Signature _____

September Placement
Grade 3A
Teacher Signature M. Wright

113

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT PROGRESS PLAN
MATHEMATICS OBJECTIVES CHECKLIST

SPP-M-3A - Rev. 1982
53PO430

Student _Maurice Pimble_  Student Number _7729524_  School _Rudolph_

Classroom Teacher _M. Wright_   Mathematics Teacher _____

Instructional Level: 3A

Number of Objectives: 33
Number of Critical Objectives: 8
*Critical Skills

| Mastery Advisory 1 | 2 | Code | Objectives |
|---|---|---|---|
| | | | **OBJECTIVES IN INSTRUCTIONAL SEQUENCE** |
| | | | **CLUSTER I** |
| | ✓ | *WM-3 | Multiply a one-digit number by a one-digit number. (basic multiplication facts) (For first semester: include basic facts through 5 × 9 only.) |
| | | S-7 | Name the pair(s) of one-digit factors of a given number. |
| | | WD-1 | Name the division facts that are related to the basic multiplication facts. |
| | | *WD-2 | Divide a one- or two-digit number by a one-digit number. (The quotient is a one-digit number with a remainder.) |
| | | MCLn-5 | Convert a measurement given in feet, to yards and feet or to a whole number of yards. (Limit given measurement to 29 feet.) |
| | | | **CLUSTER II** |
| ✓ | | NR-1 | Identify and write the Roman numerals that name the same numbers as the Arabic numerals "1" through "10." |
| | | NR-2 | Identify and write the Roman numeral associated with a given Arabic numeral less than forty. |
| | | NW-22 | Identify and name a given three-digit number in expanded notation. |
| | | NW-23 | Rename and write a given three-digit number as: ones; tens and ones; hundreds, tens, and ones. |
| | | *NW-24 | Round a two-digit number to the nearest ten; a three-digit number to the nearest hundred and to the nearest ten. |
| | | | **CLUSTER III** |
| ✓ | ✓ | WA-11 | Add two three-digit numbers with regrouping from ones to tens place only. (Limit sum to less than one thousand.) |
| ✓ | ✓ | WA-12 | Add two three-digit numbers with regrouping from tens to hundreds only. (Limit sum to less than one thousand.) |
| ✓ | | WS-8 | Subtract a two-digit number from a three-digit number with regrouping from the hundreds to the tens only. |
| ✓ | | WS-9 | Subtract a two-digit number from a three-digit number with regrouping. |
| | | WA-13 | Add two three-digit number with regrouping. (Limit sum to less than one thousand.) |
| | | NW-25 | Using symbols "<", "=" and "=", compare two three-digit numbers. |
| | | *WS-10 | Subtract a three-digit number from a three-digit number with regrouping. |
| | | WA-14 | Add four or more two-digit numbers. (Limit sum to less than one thousand.) |
| | | | **CLUSTER IV** |
| | | RN-7 | Order a given set of like common fractions. (halves, thirds, fourth, sixths, eighths, tenths) |
| | | CFA-1 | Add two like fractions, each having a value less than ONE. (No renaming is required.) |
| | | CFS-1 | Subtract a fraction from a fraction having the same denominator. (No renaming is required.) |
| | | CFA-2 | Add three or more like unit fractions. (No renaming is required.) |
| | | RN-8 | Order unit fractions: 1/2, 1/3, 1/4, 1/5, 1/6, 1/8, 1/10. |
| | | RN-9 | Given an appropriate set, identify 1/2, 1/4, 1/8, 1/3, 1/6, 1/5, 1/10 of the set. |
| | | *RN-10 | Given an appropriate set, identify a specific fractional part: halves, fourths, eighths; thirds, sixths, fifths, tenths. |
| | | ND-1 | Identify and write the decimal fraction equivalent of a common fraction whose denominator is ten. (2/10 = .2) |
| | | DA-1 | Add three or more decimal fractions (tenths only) whose sum is less than ONE. |
| | | *DA-2 | Add money expressions using dollar sign and decimal point. (Limit sum to $10.00) |
| | | *DS-1 | Subtract money expressions using dollar sign and decimal point. (Limit sum to $10.00) |
| | | | **CLUSTER V** |
| | | WM-4 | Multiply a two-digit multiple of ten by a one-digit number. |
| | | WD-3 | Divide a two-digit multiple of ten by a one-digit number. (The quotient is a multiple of ten.) |
| | | *WM-5 | Multiply a two-digit number by a one-digit number with no regrouping. |
| | | WD-4 | Divide a two-digit number by a one-digit number. (Each digit in the dividend must be a multiple of the divisor.) |

| | Advisory 1 | 2 | Total |
|---|---|---|---|
| Number of Critical Objectives | 5 | 2 | 1 |
| Number of Other Objectives | 5 | 3 | 6 |
| Total | | | 8 |

114

DISTRICT OF COLUMBIA PUBLIC SCHOOL
STUDENT PROGRESS PLAN
READING OBJECTIVES CHECKLIST

SPP-R-3A-1982
53PO550

Student __Maurice Pimble__    Student Number __7729524__ School __Rudolph__

Classroom Teacher __M. Wright__    Reading Teacher _____

Instructional Level: 3A

Number of Objectives : 19
Number of Critical Objectives: 6
*Critical Objectives

| Mastery Advisory 1 | 2 | Code | Objectives | |
|---|---|---|---|---|
| | | | **WORD PERCEPTION** | |
| ✓ | | WP/C-9 | Distinguish Consonant Digraph Sounds | |
| ✓ | | *WP/C-10 | Apply a Rule for Phonetic Irregularities | |
| | | WP/VOW-11 | Identify Digraphs | |
| | | WP/V-7 | Describe Heteronyms | |
| | ✓ | *WP/SA-12 | Construct Possessive Forms | |
| | | WP/SA-13 | Construct Contractions | |
| | | WP/SA-14 | Identify Syllables | |
| | | | **COMPREHENSION** | |
| | | *C/MI-3 | Distinguish Main Idea in Words and Phrases or Story | |
| | | C/S-4 | Order Paragraphs | |
| | | C/MØP-3 | Distinguish Mood | |
| | | C/PR-5 | State Time Relationships | |
| | | C/FL-2 | Identify Similies | |
| | | *C/PO-3 | Describe Outcomes | |
| | | *C/FO-3 | Distinguish Fact From Opinion | |
| | | C/FJ-2 | Distinguish Choice of Judgement | |
| | | | **STUDY SKILLS** | |
| | | *SS/FD-3 | Follow Written Multi-Step Directions | |
| | | SS/CC-1 | Order Titles | |
| | | SS/O-1 | Identify Topics | |
| | | SS/D-8 | Distinguish the Location of Words in a Dictionary Using the Quarters Division | |

MINIMUM NUMBER OF OBJECTIVES INCLUDING CRITICAL TO BE MASTERED AT THIS INSTRUCTIONAL LEVEL.

| | Advisory 1 | 2 | Total |
|---|---|---|---|
| Number of Critical Objectives | 0 | 1 | 1 |
| Number of Other Objectives | 2 | 1 | 3 |
| Total | 2 | 2 | 4 |

115

# MP23     Report Card, Rudolph Elementary School (2nd Grade)




### DISTRICT OF COLUMBIA PUBLIC SCHOOL
### REPORT OF PUPIL PROGRESS
### ELEMENTARY GRADES 1A — 6B

| PUPIL | | | |
|---|---|---|---|
| Pimble, Maurice | | | |

**Last Name**    **First Name**

ID# 7729524

School Year 19 93 - 19 94

|  | SCHOOL | GRADE | TEACHER |
|---|---|---|---|
| Semester #1 | | | |
| Semester #2 | Rudolph | 2B | W. Harris |

**GRADING SCALE**

| Progress | A | B | C | D | U |
|---|---|---|---|---|---|
| % of Mastery | Excellent | Very Good | Good | Minimum | Unsatisfactory |
| | 100 – 93 | 92 – 85 | 84 – 78 | 77 – 70 | Below 70% |

Dear Parent,

You are encouraged to confer frequently with your child's teacher. Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| MATHEMATICS | | C | | C |
| *Instructional Level* | | | | |
| Above Grade Level | | | | |
| On Grade Level | | | | |
| Below Grade Level | | 2A | 2B | 2B |
| READING | | B | | D |
| *Instructional Level* | | | | |
| Above Grade Level | | | | |
| On Grade Level | | | | |
| Below Grade Level | | 2A | 2B | |
| LANGUAGE | | C | B | C |
| SPELLING | | C | C+ | C |
| HANDWRITING | | C | B | B |
| SOCIAL STUDIES | | C | B | B |
| SCIENCE | | C | B | B |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | | A | A A | A |
| MUSIC | | C+ | C+ | |
| HEALTH/PHYSICAL EDUCATION | | B | B | |
| FRENCH, SPANISH | | | | |
| CITIZENSHIP | | B | A | A |

**The following behaviors are in need of improving:**

| | Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | | Advisory 1 2 |
|---|---|---|---|---|---|---|
| | ☐ ☐ | ☐ ☐ Demonstrates appropriate behavior | | ☐ ☐ | ☐ ☐ Works independently | |
| | | ☐ ☐ Works effectively with others | | | ☐ ☐ Makes effective use of time | |
| | ☐ ☐ | ☐ ☐ Follows established rules | | ☐ ☐ | ☐ ☐ Completes required homework assignments | |
| | ☐ ☐ | ☐ ☐ Shares ideas and talents | | ☐ ☐ | ☐ ☐ Completes work on time | |
| | ☐ ☐ | ☐ ☐ Listens attentively | | ☐ ☐ | ☐ ☐ Does his best consistently | |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | | 13 | 19 | |
| DAYS ABSENT | | 13 | 17 | |

Teacher Comments:

Conference Date _____

November _____

Teacher Comments: Student School attendance is beginning to effect attendance has academic performance. He January 1994 delves his good citizen ship.
Conference Date 1-Feb. 1994

**February Placement**

Grade _____

Teacher Signature _____

Teacher Comments: Maurice has shown improvement, but his attendance has been affecting his academic good citizenship. He has
Conference Date 2/94 April 1994

Teacher Comments:

Conference Date _____

June _____

**September Placement**

Grade 3

Teacher Signature _____

117

**MP24    Report Card, (1st Grade)**




#609 1982
53P0341

**DISTRICT OF COLUMBIA PUBLIC SCHOOL**
**REPORT OF PUPIL PROGRESS**
**ELEMENTARY GRADES 1A – 6B**

| PUPIL | | SCHOOL | GRADE | TEACHER |
|---|---|---|---|---|
| Pimble | | Semester #1 | | |
| Last Name   First Name | | | 1A | |
| ID # | | Semester #2 | | |
| School Year 19__ – 19__ | | | | |

**GRADING SCALE**

| Progress | A | B | C | D | U |
|---|---|---|---|---|---|
| | Excellent | Very Good | Good | Minimum | Unsatisfactory |
| % of Mastery | 100 – 93 | 92 – 85 | 84 – 78 | 77 – 70 | Below 70% |

Dear Parent,

   You are encouraged to confer frequently with your child's teacher.  Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| MATHEMATICS | ▮ | U | ▮ | U |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | 1A | 1A | 1A | 1A |
| Below Grade Level | | | | |
| READING | ▮ | U | ▮ | U |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | 1A | 1A | 1A | 1A |
| Below Grade Level | | | | |
| LANGUAGE | | U | U | U |
| SPELLING | | U | U | U |
| HANDWRITING | C | C | D | |
| SOCIAL STUDIES | C | C | C | C |
| SCIENCE | C | C | C | C |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | | | | C |
| MUSIC | | | | C |
| HEALTH/PHYSICAL EDUCATION | | | | C |
| FRENCH, SPANISH | N/A | N/A | N/A | N/A |
| CITIZENSHIP | | C | | C |

**The following behaviors are in need of improving:**

| Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | Advisory 1 2 | |
|---|---|---|---|---|---|
| ☑ ☑ | ☐ ☐ | Demonstrates appropriate behavior | ☑ ☑ | ☐ ☐ | Works independently |
| ☐ ☐ | ☐ ☐ | Works effectively with others | ☑ ☑ | ☐ ☐ | Makes effective use of time |
| ☐ ☐ | ☐ ☐ | Follows established rules | ☑ ☑ | ☐ ☐ | Completes required homework assignments |
| ☑ ☑ | ☐ ☐ | Shares ideas and talents | ☑ ☑ | ☐ ☐ | Completes work on time |
| ☑ ☑ | ☐ ☐ | Listens attentively | ☑ ☑ | ☐ ☐ | Does his best consistently |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | | 7 | 2 | 2 |
| DAYS ABSENT | 17 | 15 | | 21 |

**Teacher Comments:**                     Conference
                                                          Date ____

November ___

**Teacher Comments:**                     Conference
                                                          Date ____

January ___

**February Placement**
Grade 1A

Teacher Signature ____

**Teacher Comments:**                     Conference
Please... ...                              Date ____
...
April ___ ...

**Teacher Comments:**                     Conference
                                                          Date ____
Read, write and work with
...
June ___

**September Placement**
Grade 1A

Teacher Signature ____

119

**MP25**     **Progress Report, 2/9/93**

| | |
|---|---|
| Persists with a task until completed | N |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | N |
| Asks and answers questions clearly | N |
| Listens to and makes appropriate comments | N |
| Recognizes words used frequently | N |
| Selects appropriate books to read or browse | N |
| Reads for meaning | N |
| Writes for meaning | N |
| Shows flexible and logical thinking | N |
| Understands and uses words appropriately | N |
| Uses techniques of editing | N |

Writes:
☑ Emergent writer   ☐ Early writer   ☐ Fluent writer

Reads:
☑ Emergent reader   ☐ Early reader   ☐ Fluent reader

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | N |
| Makes and describes observations | N |
| Predicts/discusses outcomes of experiments | N |
| Represents scientific conclusions in variety of ways | N |
| Explores materials and problems with curiosity | N |
| Identifies, extends, and creates patterns | N |
| Sorts, classifies and compares objects | N |
| Makes appropriate estimates | N |
| Computes mentally | N |

Creates/interprets graphs: N  ☐ concrete  ☐ pictorial  ☐ symbolic

| | |
|---|---|
| Describes and classifies geometric solids and shapes | N |
| Measures in ☐ non-standard  ☐ standard units | N |

Understands concepts of operations:
☐ addition        ☐ subtraction
☐ multiplication  ☐ division

| | |
|---|---|
| Compares and orders quantities/numbers | N |

Understands place value to ☐ two digits  ☐ three digits

STUDENT'S COMMENTS: 

TEACHER'S COMMENTS: *Please continue to work with Maurice at home. His attendance is very important.*

Alice C. Riggs
**Teacher's Signature**

Ivandisa Lewis
**Parent's Signature**

Copyright © 1992, District of Columbia Public Schools

# MP26    Progress Report, 6/18/93

# EARLY CHILDHOOD UNITS AND DEMONSTRATION CENTERS

### District Of Columbia Public Schools
## EARLY LEARNING YEARS: Pre-K–3rd Grade
## CONTINUOUS PROGRESS REPORT
### School Year 1992-1993

NAME *Pimble, Maurice*   AGE *8*   REPORT DATE *June 18, 199[3]*

SCHOOL *Meyer Lower Campus*   Days Present *155*   Days Absent *25*   Days Absent Excused ___   Days Tardy *10*

CODES: E - ESTABLISHED AND FREQUENTLY OBSERVED: Does consistently on a regular basis
S - SOMETIMES OBSERVED: Emerging, requires support
N - NOT YET EXPECTED

## Personal and Social Development

| | |
|---|---|
| Shows empathy and caring for others | E |
| Displays self-confidence | S |
| Is willing to take risks | S |
| Finds humor in situations | E |
| Demonstrates self-control | S |
| Plans work and makes choices | S |
| Shows willingness to try something new | E |
| Works independently | E |
| Shares and takes turns | E |
| Deals with problem situations constructively | S |
| Persists with a task until completed | S |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | S |
| Asks and answers questions clearly | S |
| Listens to and makes appropriate comments | S |
| Recognizes words used frequently | S |
| Selects appropriate books to read or browse | S |
| Reads for meaning | S |
| Writes for meaning | S |
| Shows flexible and logical thinking | S |
| Understands and uses words appropriately | S |
| Uses techniques of editing | S |

Writes:
☐ Emergent writer   ☑ Early writer   ☐ Fluent writer

Reads:
☐ Emergent reader   ☑ Early reader   ☐ Fluent reader

## Physical Development

| | |
|---|---|
| Moves with increasing balance and control | S |
| Shows increasing eye-hand coordination | S |
| Uses writing and drawing tools with increasing control | S |

## Creative Arts

| | |
|---|---|
| Experiments with new materials and activities | S |
| Shows interest in music, movement, arts, drama | S |
| Uses imagination in drama, arts, and projects | S |
| Plans, designs, and completes creative projects | S |

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | S |
| Makes and describes observations | S |
| Predicts/discusses outcomes of experiments | S |
| Represents scientific conclusions in variety of ways | S |
| Explores materials and problems with curiosity | S |
| Identifies, extends, and creates patterns | S |
| Sorts, classifies and compares objects | S |
| Makes appropriate estimates | S |
| Computes mentally | S |
| Creates/interprets graphs: ☐ concrete ☑ pictorial ☐ symbolic | |
| Describes and classifies geometric solids and shapes | S |
| Measures in ☐ non-standard ☑ standard units | |
| Understands concepts of operations: | |
| ☑ addition   ☑ subtraction | |
| ☐ multiplication   ☐ division | |
| Compares and orders quantities/numbers | |
| Understands place value to ☑ two digits ☐ three digits | |

STUDENT'S COMMENTS:

123

| Personal and Social | |
|---|---|
| Plans work, initiates choices | S |
| Shows willingness to try something new | E |
| Works independently | E |
| Shares and takes turns | E |
| Deals with problem situations constructively | S |
| Persists with a task until completed | S |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | S |
| Asks and answers questions clearly | S |
| Listens to and makes appropriate comments | S |
| Recognizes words used frequently | S |
| Selects appropriate books to read or browse | S |
| Reads for meaning | S |
| Writes for meaning | S |
| Shows flexible and logical thinking | S |
| Understands and uses words appropriately | S |
| Uses techniques of editing | S |

Writes:
- [ ] Emergent writer  [x] Early writer  [ ] Fluent writer

Reads:
- [ ] Emergent reader  [x] Early reader  [ ] Fluent reader

| Artistic Expression | |
|---|---|
| Shows interest in artistic experiences | S |
| Uses imagination in dramatic play/projects | |
| Plans, designs, and completes creative projects | S |

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | S |
| Makes and describes observations | S |
| Predicts/discusses outcomes of experiments | S |
| Represents scientific conclusions in variety of ways | S |
| Explores materials and problems with curiosity | S |
| Identifies, extends, and creates patterns | S |
| Sorts, classifies and compares objects | S |
| Makes appropriate estimates | S |
| Computes mentally | S |

Creates/interprets graphs: [ ] concrete  [x] pictorial  [ ] symbolic

| | |
|---|---|
| Describes and classifies geometric solids and shapes | S |

Measures in [ ] non-standard  [x] standard units

Understands concepts of operations:
- [x] addition  [x] subtraction
- [ ] multiplication  [ ] division

Compares and orders quantities/numbers

Understands place value to [x] two digits  [ ] three digits

**STUDENT'S COMMENTS:** _____

**TEACHER'S COMMENTS:** I'm very pleased with Maurice progress please continue to work with him. Maurice has improved in his Reading and writing skills tremendously. You should praise him for his efforts and encourage him to continue to read and write over the summer. He should do well in second grade.

Alice C. Diggs                    Miss Rila Gee

Teacher's Signature                Parent's Signature
Gr. 2, in Sept.

Copyright © 1992, District of Columbia Public Schools

# MP27    Student Residence and Data Verification Form, 1997 – 1998 (5th Grade)



**District of Columbia Public Schools**

# STUDENT RESIDENCE AND DATA VERIFICATION FORM
## School Year 1997-98

*Nowak*

**DEAR PARENT:**

To assist the local school in updating your child's records, please complete this section fully and sign the form to certify that this section contains correct information. The form should be completed and returned to your child's school within three (3) school days. Thank you for your continued support and cooperation.

**To be completed by the parent/guardian:**

Legal Name: Maurice Anthony Dimble Jr.          Date of Birth: ▒▒-85

Place of Birth (Country): Wash D.C.          Social Security Number: _____

Race/Ethnic Origin: Black

Street Address: 5 Thomas Circle NW.          Sex: M

City/State/Zip: Wash DC. 20005          Ward: _____

Enrolled in School in the U.S. before September 1994 ?     Yes X     No _____     Month 9     Year 94

School attended in June 1997: ~~Ports~~ Rudloph Elem          Primary Language Spoken in the Home: English

Parent(s)/Legal Guardian's Name: _____

Residency Status:  ☒ D.C. Resident (Student & parent or legal guardian live in D.C.)     ☐ Nonresident (Student &/or parent live outside D.C.)

Parent/Guardian's Street Address: 5 Thomas Circle N.W.

Parent/Guardian's City/State/Zip: Wash DC. 20005

Home phone: (202) 371-0088          Business phone: ( )

Occupation: _____

In case of emergency notify (Last, First name): Taylor, Luella

Emergency address: 49 Due St N.E.

Emergency phone: (202) 635-0131          Relationship: Grandmother

I completed this form and I certify that the information above is accurate. I understand that providing false information for purposes of defrauding the government is punishable by law. I also understand that failure to provide the required proof of residence may result in an investigation for compliance with Public Law 86-725, "District of Columbia Non-Resident Tuition Act"; a tuition bill for my child's enrollment in a District of Columbia public school; and/or exclusion of my child from the D.C. Public Schools.

*Swandya Lewis*
Signature of Parent/Legal Guardian with Whom Student Lives or Adult Student          Date 11-13-97

**To be completed by the school:**

DCPS ID #: 7729534     School: Thomson

HOME ROOM: 15     GRADE: 5     Date of Enrollment: 11/17/97

Free/Reduced Lunch: Y ✓  N ___     Bilingual Services: LEP ___  NEP ___     Title 1: Y ✓  N ___

Special Education Services: _____     Level: _____     Attending: Y ___  N ___

*Robert Brice III*
Signature of School Official Certifying This Form

Enrolled as an Out-of-Boundary Student: Y ___  N ✓

126

MIS 09/97

**MP28**     5 DCMR 2201.9;
45 D.C. Reg. 5240

*45 D.C. REG. 5240*

DISTRICT OF COLUMBIA REGISTER

ISSUE: Volume 45, Number 32

ISSUE DATE: August 7, 1998

SUBJECT: EMERGENCY RULEMAKING

AGENCY: DISTRICT OF COLUMBIA EMERGENCY TRANSITIONAL
EDUCATION BOARD OF TRUSTEES

45 D.C. REG. 5240

**DISTRICT OF COLUMBIA
EMERGENCY TRANSITIONAL EDUCATION BOARD OF TRUSTEES**

**NOTICE OF EMERGENCY AND PROPOSED RULEMAKING**

The District of Columbia Emergency Transitional Education Board of Trustees
(Trustees), pursuant to the authority set forth in the February 12, 1998, Order of the
District of Columbia Financial Responsibility and Management Assistance Authority
("Authority"), hereby gives notice of emergency and proposed rulemaking taken by the
Trustees at their meeting held on June 24, 1998. The purpose of this rulemaking is to
eliminate the requirement that D.C. Public School students who are retained and have not
yet been referred for assessment and evaluation for special education services
automatically undergo such assessment and evaluation. Under the revised rule, as
proposed, such evaluation and assessment would be permissive, rather than mandatory.

This emergency is necessitated by the need to preserve the public welfare by eliminating
a requirement that is no longer necessary in light of the many intervention measures that
will be offered to students who are retained in School Year 1998-99 and subsequent years
which may obviate the need for special education evaluation. Pursuant to Board Rule
2201.9, as revised, students who are retained will still be referred for special education
assessment and evaluation if it is in their best interests to do so. However, unnecessary
resources will not be expended testing children who, for whatever reason, do not require
such evaluation and assessment.

The emergency rulemaking took effect following adoption by the Trustees and approval
by the Authority at its meeting of July 16, 1998. It shall expire within 120 days of July
16, 1998, or upon publication of a Notice of Final Rulemaking in the D.C. Register,
whichever occurs first. The Trustees also give notice of their intent to take final
rulemaking action to adopt this emergency and proposed rulemaking in not less than
thirty (30) days from the publication of this notice in the D.C. Register.

**Amend Section 2201.9 as follows:**

2201.9 If the student is retained, despite the intervention measures referenced in Section 2201.8, or, if no intervention measures are taken, and the student has not already undergone assessment and evaluation for special education services under the provisions of Chapter 30, then the student may be referred for assessment and evaluation under Chapter 30.

To:     Hearing Officer Dubrow

From:  Cynthia Catlett, Educational Advocate for Maurice Pimble

Date:   May 1, 2005

Re:     Joint Liability Between DC Public Schools and Federal Bureau of Prison to

        Educate Maurice Pimble

---

### ISSUE

Whether DC Public Schools and the Federal Bureau of Prisons have joint liability for providing Maurice Pimble, a DC Public School student in the custody of the Federal Bureau of Prisons, with a free appropriate public education as provided and described in the Individuals with Disabilities Education Act and whether DC Public School personnel are still responsible for providing compensatory education for Maurice.

### DISCUSSION

**I.      The Responsibility and Burden of Providing Maurice Pimble with Compensatory Education for the Continuous Denial of a Free Appropriate Public Education Rests with DC Public Schools.**

Compensatory education is a remedy against a state, and, for the purposes of the IDEA, the District of Columbia is the state actor that denied Maurice Pimble FAPE. Compensatory education is an equitable remedy to provide students who have been denied a Free Appropriate Public Education (FAPE). DC Public School personnel continuously denied Maurice a free appropriate public education and should rectify that wrong by providing Maurice with compensatory education, in order for Maurice to finally benefit from educational instruction.  In *Burlington Sch. Comm. v. Mass. Dept of*

1

*Educ.*, 471 U.S. 359 (1985), the Supreme Court held that retroactive relief in the form of compensatory education was appropriate since it merely requires the state to belatedly do that which it should have done all along.  In *Harris v. District of Columbia*, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *11, the court specifically provides compensatory education as a remedy for the denial of FAPE.

In the instant case, DC Public Schools (DCPS) is responsible for providing Maurice compensation for the denial of a FAPE throughout his enrollment at DC Public Schools from fall 1991, where Maurice was performing below average through January 2005, when Maurice transferred to the custody of the Federal Bureau of Prisons (BOP). While Maurice was at the DC Jail, DCPS was allegedly providing him with specialized instruction.  DC Public Schools has the burden of assessing and ensuring the effectiveness of its own efforts to educate children with disabilities. 34 C.F.R. § 300.1.

The IDEA, 20 U.S.C § 1412, specifically mentions the local educational agency's responsibility provide with a student with a free appropriate public education.  DCPS, as that agency, is responsible to provide Maurice with the education that it failed to provide. States that receive federal educational assistance must establish procedures to ensure that FAPE is available to students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Therefore, DCPS is liable for the denial of FAPE to Maurice in the form of compensatory education and not the Federal Bureau of Prisons, for the time Maurice should have been receiving special education and related services.

In *Reid v. District of Columbia* (2005), the United States Court of Appeals for the District of Columbia Circuit held that "[w]hen a school district deprives a disabled child of free appropriate public education in violation of the Individuals with Disability

2

131

Education Act, a court fashioning appropriate relief, as the statute allows, may order

compensatory education, i.e., replacement of educational services the child should have

received in the first place." *Reid v. District of Columbia,* 401 F.3d 516(D.C. Cir. 2005).

DCPS has the burden of compensating Maurice for the denial of FAPE because it is

DCPS and not the BOP that denied Maurice the right to special education for eleven

years. DCPS received federal educational assistance to provide special education and

related services to DC students and to comply with the IDEA, and failed to perform that

duty.

II.    **The Federal Bureau of Prisons' is Responsible for Providing a Free**
       **Appropriate Public Education to Maurice Pimble Pursuant to the National**
       **Capital Revitalization and Self Government Act of 1997 and 20 U.S.C.§**
       **1415(m)(1)(d).**

       A child who has a disability that adversely affects his or her educational

performance is entitled to a free, appropriate public education. 20 U.S.C. § 1401(8). A

FAPE must be in accordance with state administrative agency standards; must include an

appropriate elementary or secondary education in the state involved; must be based upon

an individualized educational program (IEP) designed for the child; and must be provided

by the state at no cost to the child or to the child's parent(s). 20 U.S.C. § 1401(8); 34

C.F.R § 300.8.

       A Hearing Officer operating under the auspices of the District of Columbia

Student Hearing Office has jurisdiction over the Federal Bureau of Prisons based on (1)

The National Capital Revitalization Act of 1997, through which Congress assigned to the

Federal Bureau of Prisons the District of Columbia's IDEA responsibilities for the

protection of educational rights, and (2) 20 U.S.C.§ 1415(m)(1)(d), a provision of the

IDEA that transfers parental rights under the IDEA to, *inter alia*, children incarcerated in

federal correctional institutions if the children are competent and if they have obtained

the age of majority.  In failing to assert jurisdiction and hold the BOP accountable, the

Hearing Officer would allow the BOP to continue denying Maurice his right to a free

appropriate public education pursuant to 20 U.S.C. §§ 1412(a)(1), 1411(i)(1)(c).

      **A.**     **Under the National Capital Revitalization and Self Government Act of 1997 the Federal Bureau of Prisons Assumed Responsibility to Provide Education to D.C. Prisoners and That Responsibility Must Include Providing Special Education and Related Services to Maurice Pimble.**

The BOP has assumed the District of Columbia's IDEA responsibilities for the

protection of educational rights under The National Capital Revitalization and Self

Government Act of 1997 (hereinafter referred to as the "D.C. Revitalization Act"), Pub.

L. 105-33, § 11201 *et seq.*

The Act states that the BOP is responsible for the "custody, care, subsistence,

*education*, treatment, and training" of D.C. Code felony offenders.  *Id.* (emphasis added).

D.C.'s educational obligations include the obligation to provide special education and

related services to its prisoners.  20 U.S.C. §1412 (a)(1)(B)(ii), 34 C.F.R. §300.311

(a)(1)(2).

This transfer from DCPS to the BOP of responsibility to educate D.C. inmates

encompasses DCPS' responsibility to provide Maurice with a free appropriate public

education.

      **B.**     **The Plain Meaning of 20 U.S.C.§ 1415(m)(1)(d) Grants Competent, Majority-Age Federal Prisoners the Right to Enforce Their Special Education Rights.**

The BOP has a duty to deliver special education and related services pursuant to

20 U.S.C.§ 1415(m)(1)(d), " – all rights accorded to parents under this part 20 USCS §§

1411 transfer to children who are incarcerated in an adult or juvenile Federal, State, or local correctional institution."   At 34 C.F.R. § 300.2(b)(iv), the applicability of Title 34, C.F.R., Part 300, to "State and local juvenile and adult correctional facilities," is clearly defined; while federal correctional facilities are not mentioned.  However, if the statute states that rights transfer, Maurice's right to special education transferred with him to his federal incarceration placement.

Regulators at the U.S. Department of Education drafted a regulatory provision that is inconsistent with congressional intent with regard to federal prisoners. The starting point in statutory interpretation is the language of the statute itself. "As in all cases involving statutory construction, the starting point must be the language employed by Congress, and the court assumes that the legislative purpose is expressed by the ordinary meaning of the words used. Thus absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63 at 68 (1981).

In *FEC v. Democratic Senatorial Campaign Committee*, the Supreme Court held that "the Court is the final authority on issues of statutory interpretation and must reject administrative constructions which are contrary to clear congressional intent". 454 U.S. 27, 32 (1981). "[I]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., et al.*, 467 U.S. 837, 843 (1984). Congress must have intended the IDEA to apply to inmates in federal facilities, when it enacted Federal Law transferring parental rights under the IDEA to inmates incarcerated in federal institutions.

In the instant case, Congress clearly intended the statute to apply to "children who are in [a] ... Federal ... correctional institution" 20 U.S.C. § 1415(m)(1)(D). Congress, however, did not prescribe how to provide those services and did not specify whether an eligible student in a federal incarceration facility would advance a complaint through the ordinary administrative hearing process. *Cf., e.g.,* 34 C.F.R. § 300.507(a) (right to an administrative hearing regarding denial of FAPE and other IDEA disputes). Rather than fill these gaps, regulators at the U.S. Department of Education drafted a regulatory provision that disregards congressional intent with regard to federal prisoners. The regulators simply deleted the word "federal" as a modifier of the phrase "correctional institution", thereby implying that the provision only applies to children in state facilities. The effect for persons who are eligible for special education and related services and who are convicted in criminal cases in the local courts of the District of Columbia would be to exclude them from IDEA services. Nothing in the statute can be interpreted to justify such a result.

The Supreme Court held that legislative regulations are given controlling weight " – unless they are arbitrary, capricious or manifestly contrary to the statute." *Cardoza-Fonseca*, 480 U.S. at 421. It is evident in the instant case that by excluding an entire category of persons covered by the statute, the drafters of the regulations were acting either arbitrarily or, more likely, capriciously. Either way, deleting the statutory language is manifestly contrary to Congressional intent. It is important for the Hearing Officer in the instant case to recognize -- and apply on behalf of Maurice Pimble -- the rights conferred by Congress to IDEA-eligible students in federal correctional institutions.

In recognizing the lack of specificity in the statute, Maurice Pimble urges the

Hearing Officer in the instant case to enforce (1) the plain language of the statute that grants IDEA-eligible federal prisoners the right to enforce the IDEA and (2) the D.C. Revitalization Act that establishes in the Federal Bureau of Prisoners an obligation – standing in the place of the District of Columbia -- to educate D.C. Code offenders who are incarcerated in the BOP.

## CONCLUSION

The burden of providing Maurice with compensatory education for the denial of FAPE from 1991 – 2005 is with DCPS. Case law, the IDEA, and the IDEA's implementing regulations place the burden of providing FAPE to a student on the local educational agency. States that receive federal educational assistance must establish procedures to ensure that FAPE is available to students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Further, DC Public Schools has the burden of assessing and ensuring the effectiveness of its own efforts to educate children with disabilities. 34 C.F.R. § 300.1. DCPS failed to provide Maurice with a free appropriate public education, and the retroactive remedy, in the form of compensatory education is owed to him by DC Public Schools.

Once Maurice was in the custody of the BOP, the BOP from that point onwards became responsible for educating Maurice and providing him with special education and related services. The BOP is responsible for administering the educational rights provisions provided in the IDEA for the District of Columbia code felony offenders under the Revitalization Act. The BOP is acting as the state in housing DC code felony offenders and is performing a state function by housing DC inmates. In assuming this responsibility, the BOP is subject to the administrative Due Process Hearings that DCPS

would be a party.

Notwithstanding the provisions of the Revitalization Act, the BOP is still responsible for educating federal prisoners pursuant to 20 U.S.C. § 1415(m)(1)(D). The IDEA, specifically 20 U.S.C. § 1415(m)(1)(d), states that you can enforce your rights when you are in federal prison. If you can enforce your rights when you are in federal prison, then you have rights. By relying on the regulatory provision drafted by Regulators at the U.S. Department of Education (34 C.F.R. § 300.2(b)(iv)) as opposed to the statute (20 U.S.C. § 1415(m)(1)(D)), one would be disregarding congressional intent for federal prisoners. Nothing in the statute can be interpreted to justify such a result.

The BOP is probably not vicariously liable for DCPS' denial of FAPE for eleven years. Compensatory education is an equitable remedy and retroactive relief to compensate a student from the state to belatedly do that which it should have done all along. The BOP is however responsible to provide D.C. Code offenders with a free appropriate public education pursuant to the DC Revitalization Act and 20 U.S.C. § 1415(m)(1)(d).

Respectfully Submitted,

Cynthia Catlett
Law Student Advocate

Cc:     Maurice Pimble
        Lenore Verra

8

137

To:        Hearing Officer Dubrow

From:      Cynthia Catlett, Education Advocate for Maurice Pimble

Date:      May 1, 2005

Re:        Exception to the Statute of Limitations for Maurice Pimble's claim for

           Compensatory Education.

---

## ISSUE

Whether the totality of DC Public School personnel's inactions and noncompliance with the Individuals with Disability Education Act and its implementing regulations warrants an exception to the three-year statute of limitations provided in D.C. Code § 12-301(8)?

## FACTS

On January 31, 2001, D.C. Public School personnel evaluated Maurice for special education needs, and they determined that Maurice is severely learning disabled. Maurice was fifteen years old at the time of this evaluation. Prior to January 31, 2001, DCPS personnel had never evaluated Maurice for any disability.

### *Educational History:  Maurice Attended DC Public Schools Throughout his Educational Career.*

Maurice attended Meyer Lower Campus, a D.C. Public Elementary School from 1991 until 1993. At Meyer Lower Campus, Maurice was enrolled in the first grade. Maurice did not pass the first grade.  He repeated that grade in 1992-1993.  (MP #24)

1

Maurice was enrolled at Rudolph Elementary School from 1993 until 1997. During the 1993–1994 school year, Maurice was enrolled in the second grade. He passed the second grade and proceeded to the third grade. (MP #23)

During the 1994–1995 school year, Maurice was enrolled in the third grade. He performed below average, receiving a "U" (for Unsatisfactory) in virtually every course. Maurice repeated the third grade. During the 1995–1996 school year, Maurice was enrolled in the third grade for a second time at Rudolph Elementary School. (MP #22)

During the 1996–1997 school year, Maurice was twelve years old in the fourth grade. In the 1997–1998 school year, Maurice began the school year at Rudolph Elementary School, but transferred to Raymond Elementary School where he continued with his studies in the fifth grade. During the 1998–1999 school year, Maurice was placed again in the fifth grade. He was enrolled at Raymond Elementary School and performed "below basic" in three out of six tested areas in Math and Reading. During the 1999–2000 school year at Raymond Elementary School, Maurice was enrolled in the fifth grade for the third time. Maurice was fifteen years old. (MP# 14, MP#15, MP #16, MP#17, MP#18, MP#19, MP#20)

In anticipation of the 2000–2001 school year and in light of Maurice's age, DCPS administrators "skipped" Maurice two grades. Maurice transferred schools and was enrolled for the 2000-2001 school year in the eighth grade at Johnson Junior High School. In January of that school year (i.e., January 2001), DCPS personnel identified Maurice as eligible for special education for the first time. (MP#12, MP#10)

During the 2001 – 2002 school year, Maurice was enrolled in the ninth grade at Roosevelt High School, and he failed every single course.(MP #11)

2

139

### *DC Public Schools' Inaction*

On November 15, 2004, Maurice requested from DCPS personnel that they evaluate him for eligibility for special education. At that time Maurice was incarcerated at the D.C. Jail. (MP #2)

On November 29, 2004, U.D.C. David A. Clarke School of Law (UDC-DCSL) education advocate Victoria Kunkoski, representing Maurice, requested from DCPS personnel expedited evaluations for Maurice. DCPS personnel did not respond to that request.(MP#2)

On February 15, 2005, UDC-DCSL education advocate Cynthia Catlett requested DCPS personnel (Lisa Russell) to conduct the overdue triennial evaluations for Maurice. DCPS personnel did not respond to this request. Subsequently, Maurice was transferred to the custody of the Federal Bureau of Prisons. (MP#3)

On March 21, 2005, Cynthia Catlett requested from Mr. Michael Snipes, head of the department for Special Education for Incarcerated Youth for DCPS, evaluations, IEP's, and other academic records (including report cards and standardized test results). Mr Snipes did not respond to that request. On March 21, 2005, Cynthia Catlett requested from Mr. Snipes independent evaluations for Maurice. Mr. Snipes did not respond to that request. (MP#4)

On March 21, 2005 a Due Process Hearing Request was filed on behalf of Maurice in order to request compensatory education for DCPS' consistent denial of a free appropriate public education for Maurice as well as expedited independent evaluations at the expense of DC Public Schools. (MP#1)

3

140

On March 23, 2005, Cynthia Catlett spoke with Ms. Lisa Russell from DCPS' department of Special Education for Incarcerated Youth, and Ms. Russell stated that once DC students transfer to a Federal Bureau of Prisons facility, DCPS is no longer under any obligation to educate them, even if these inmates are eligible for special education and related services under the Individual with Disabilities and Education Act. In the conversation on March 23, 2005, Ms. Russell also stated that neither she nor anyone else at DCPS had any records of Maurice's IEP or evaluations conducted on January 30, 2001. (MP#5)

On April 4, 2005, Cynthia Catlett again requested from Ms. Russell, any and all records DCPS had on file for Maurice. Further, Cynthia Catlett requested that DCPS respond in writing to the request for an independent special education evaluation. Ms. Russell did not respond to that request. (MP#5)

On April 12, 2005 after a conversation with Ms. Russell on April 5, 2005, Cynthia Catlett contacted Ms. Russell in regards to records DCPS had on file for Maurice. Ms. Russell did not respond. (MP#6)

## DISCUSSION

A.    **Pursuant to D.C. Code § 12-302 Maurice Could Only Enforce His Right to Compensatory Education When he Obtained the Age of Majority.**

"When a person entitled to maintain an action is, at any time the right of action accrues (1) under 18 years of age; or (2) non compos mentis; or (3) imprisoned …he may bring an action within five years…". D.C. Code § 12-302. This provision of the D.C. Code specifically deals with a plaintiff's disability. Prior to May 19, 2003, Maurice did not and could not bring his claim for compensatory education to DC Public Schools. First, Maurice did not know he had a right to compensatory education.

4

141

Secondly, Maurice was not aware that DC Public Schools had an obligation to identify him as a student with a disability and had a duty to accommodate him.

**B.**     **Borrowing D.C. Code § 12-301(8) as the Statute of Limitations for DC Public Schools' Consistent Denial of FAPE for Maurice Would Frustrate the Policy Embodied in the Individuals with Disabilities Education Act.**

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C.S. § 1401 *et seq.*, does not provide a statute of limitations for claims arising under its Act. 20 U.S.C. § 1415(b)(1)(E), (b)(2), (e)(2).  Courts usually interpret congressional silence on a statute of limitations period as instruction to apply the most closely analogous statute of limitations under state law (tort liability/personal injury statute of limitations). DelCostello v. International Bhd. of Teamsters, 462 U.S. 151 (1983).  Courts defer to the state's most analogous statute of limitations unless borrowing the statute of limitations is inconsistent or would "frustrate the policy" embodied in the federal law or policy.  See Wilson v. Garcia, 471 U.S. 261, 266 (1985).  The District of Columbia, D.C. Code § 12-301(8) provides a three-year statute of limitations for actions in which a limitation is not specifically prescribed. DC Code §12-302 provides a five year statute of limitations for minors prior to them obtaining the age of majority.  Maurice's claim is within the statute of limitations in both statutes.[1]

In determining whether the statute of limitations frustrates the policy of the federal statute, courts look at the purpose of the statute and regulation.  It is well established that the purpose of the IDEA is to ensure special education rights to eligible students. 20 U.S.C.S. § 1400(b)(9).  In Murphey v.Timberlane Regional School District

---

[1] If compensatory education is an equitable remedy, then similar to injunctive relief the statute of limitations should not start running.  Some causes of action are equitable (because they are created by courts of equity, back when equity and law were two separate court systems).  Some remedies are equitable, namely injunctions, because they were created by courts of equity not law. Statute of limitations are not applicable to these remedies or causes of action.

(1994), the United States Court of Appeals for the First Circuit stated that borrowing a

state's statute of limitations should be on a case-by-case basis. 22 F.3d 1186 (1994). The

court emphasized in <u>Murphey</u> that it was imperative that courts not overlook the purpose

of the IDEA in deciding whether the state's statute of limitations apply.

**C.    DC Public Schools has Consistently Denied Maurice a Free Appropriate Public Education Starting at the Age of Six When Maurice First Enrolled at a D.C. Public School, and for the Eleven Years He Attended DC Public Schools Thereafter.**

In <u>Hammond v. District of Columbia</u>, 2001 U.S. Dist. LEXIS 25845, plaintiffs

sued the District of Columbia and Arlene Ackerman, Superintendent of D.C. Public

Schools, alleging that District of Columbia Public Schools failed to provide Nathan

Hammond with a free appropriate public education (FAPE), provided by the Individuals

with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et .seq*. In a Due Process

Hearing on the issue of compensatory education, the Hearing Officer determined that

D.C. Code § 12-301(8) barred plaintiff's claims for the period outside the statute of

limitations period. Plaintiffs in the instant case requested compensatory education for the

denial of FAPE for the period of 1992 – 1997. The Hearing Officer found that claims

prior to the 1996-1997 school year were barred by the statute of limitations.

Plaintiffs appealed to the United States District Court for the District of Columbia

and the Hearing Officer's determination was reversed in regards to compensatory

education for the period prior to the 1996-1997 school year. In reversing the denial of

compensatory education for the period prior to 1996, Judge Kessler applied the

"continuing violation doctrine", stating that compensatory education claims prior to 1994

were timely. A "continuing violation" is "one that could be reasonably expected to be

made the subject of a lawsuit when it first occurred because its character as a violation

6

143

did not become clear until it was repeated during the statute of limitations period."

Taylor v.  FDIC, 328 U.S. App. D.C. 52 (D.C. Cir. 1997).

Judge Kessler further held that the Hearing Officer erred in determining when the plaintiffs claim accrued even if the statute of limitations actually applied.  Accrual of the statute of limitations in IDEA claims is governed by federal law and the *claim only accrues when parents know or have reason to know of the injury or event that is a basis for their claim*.  No mechanical formula controls the accrual determination. See Murphey v.Timberlane Regional School District 22 F.3d 1186 (1994).

Maurice's claim accrued when he retained counsel in November of 2004.  Prior retaining counsel, Maurice was not aware of his right to special education or his right to enforce his claim for compensatory education against DC Public Schools under the IDEA.  Maurice has suffered concrete injury as a result of DC Public School's consistent disregard for his rights.

C.    **DCPS' Continuous Denial of a Free Appropriate Public Education for Maurice Warrants an Exception to D.C. Code § 12-301(8).**

Maurice has unquestionably continuously been denied a free appropriate public education.  In Hammond v. District of Columbia (2001), the court concluded that it was the totality of DCPS initial inactions and subsequent inactions, which constitutes an ongoing violation of FAPE.  In the instant case, the denial of FAPE has been consistent from the time Maurice enrolled at a DC Public School in the fall of 1991 through his stay at D.C. Jail ending January of 2005.

- DCPS violated the IDEA, 20 U.S.C.S. § 1400 et seq., and its implementing regulations.

- DCPS personnel violated "Child Find" from the time Maurice entered DC Public Schools. "Child Find" requires that "all children with disabilities in the state ...regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 300.125(a)(1).

- DCPS personnel violated 5 DCMR § 2201.9. Prior to 1998, if a student was held back in school and the student had not been referred for assessment and evaluation for special education, D.C. Municipal Regulations mandated that DCPS evaluate the student for special education.

- Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Maurice was identified as learning disabled on January 30, 2001, DCPS personnel waited three years to develop a new IEP, in violation of 34 C.F.R. § 300.343(c)(1).

- DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child." DCPS personnel did not use Maurice's evaluation in the development of his most recent IEP. On numerous occasions, Lisa Russell, Director of Special Education for Incarcerated Youth, stated that DCPS did not have those evaluations on record.

8

145

- DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child." Lisa Russell, on behalf of DCPS, stated on numerous occasions that they do not have Maurice's IEP or evaluations conducted on January 30, 2001.

- DCPS personnel violated 34 C.F.R § 300.536. The law requires that a child be evaluated at least once every three years. Maurice's last evaluation was on January 30, 2001. To date, DCPS has not reevaluated Maurice.

- DCPS personnel violated 34 C.F.R §300.502. Maurice was entitled to request an independent educational evaluation. On November 15, 2004 Maurice requested from DCPS that they authorize an independent evaluation.

- DCPS personnel violated 34 C.F.R. §300.503(a)(ii). This provision of the law requires that DCPS personnel respond in writing if they refuse to initiate an evaluation; DCPS personnel did not respond in writing to Maurice's request.

- DCPS personnel violated 34 C.F.R. 300.502(b). This provision of the law requires that if Maurice requests an independent educational evaluation, the public agency "... must without unnecessary delay either (i) initiate a hearing under §300.507 to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under §300.507 that the evaluation obtained ... did not meet agency criteria." DCPS personnel did not take the steps mandated by this provision.

9

- In failing to provide Maurice was his educational records, DCPS personnel violated 34 C.F.R. § 300.501. Once Maurice reached the age of majority, his parents' rights transferred to him, giving him the right to "... (1) inspect and review all education records with respect to – (i) the identification, evaluation, and educational placement of the child and (ii) the provision of FAPE ..." 34 C.F.R. § 300.501(a)(1)(i), 34 C.F.R. § 300.501(a)(1)(ii) and 34 C.F.R § 300.517.

### 1. *DCPS personnel consistently denied Maurice a free appropriate public education.*

It took DCPS personnel ten years to evaluate Maurice. Maurice entered the DC Public School system in the Fall of 1991 and was only evaluated for Special Education on January 30, 2001. At that point in time, Maurice had consistently performed below average in every grade in school. Further, Maurice had been held back in school in the first grade, third grade, and completed the fifth grade in three years. It was only when DCPS skipped Maurice from the fifth to the eighth grade that DCPS evaluated Maurice.

DCPS personnel violated "Child Find". "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(1).

### 2. *DCPS personnel failed to properly identify Maurice as a student with a disability.*

Prior to 1998, if a student was held back in school and the student had not been referred for assessment and evaluation for special education, D.C. Municipal Regulations mandated that DCPS evaluate the student for special education. 5 DCMR 2201.9. In

10

147

1998 this requirement was eliminated and it became optional for DCPS to evaluate and assess students who are retained and had not previously been referred for assessment and evaluation for special education.

DCPS personnel did not evaluate or refer Maurice for special education evaluations when he was retained in the first grade in 1992. DCPS personnel also did not evaluate or refer Maurice for assessment and evaluation for special education in 1995 when Maurice repeated the third grade. DCPS personnel also failed to evaluate Maurice in 1998 when he repeated the fifth grade.

3. *Maurice's current IEP is inappropriate.*

Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Maurice was identified as learning disabled on January 30, 2001, DCPS personnel waited three years to develop a new IEP, in violation of 34 C.F.R. § 300.343(c)(1).

Maurice's most recent IEP was developed at D.C. Jail by DC Public School personnel on October 1, 2004 and states that "Maurice is unable to be academically successful in the regular education classroom." This IEP is inappropriate because the comments at the end of the document do not correspond with the fact that the same evaluators identified Maurice as requiring only 0%-20% of special education. My position, as the comments on the same IEP suggest, is that Maurice requires 100% special education academic environment.

11

148

The law requires that a student be evaluated every three years and that the results of the initial evaluation are used by the IEP team in meeting the requirements of §§300.340 – 300.350. 34 C.F.R. §300.320. DCPS personnel did not use Maurice's evaluation in the development of his most recent IEP. On numerous occasions, Lisa Russell, Director of Special Education for Incarcerated Youth, stated that DCPS did not have those evaluations on record. Ms. Russell also specifically said that the IEP team did not use Maurice's evaluation in developing his most recent IEP. Further, DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child."

4. *Maurice's Special Education Evaluations are Fifteen Months Overdue.*

The law requires that a child be evaluated at least once every three years. 34 C.F.R § 300.536. Maurice's last evaluation was on January 30, 2001. DCPS personnel has not reevaluated Maurice since the evaluation on January 20, 2001. Further, Lisa Russell from the department of Special Education for Incarcerated Youth at DCPS, has stated on numerous occasions that these evaluations were lost and that DCPS does not have them on record.

5. *DCPS personnel denied Maurice's right to independent special education evaluations. DCPS further failed to act pursuant to the regulations by not responding in writing to numerous requests for evaluations.*

Maurice is entitled to request an independent educational evaluation. 34 C.F.R §300.502. When a student with a disability reaches the age of majority, all rights accorded to parents transfer to the student. 34 C.F.R §300.517. Therefore, Maurice's

149

parents rights to request independent evaluations transferred to Maurice when he turned eighteen.

Maurice requested an initial evaluation on November 15, 2004. The law requires that DCPS personnel respond in writing if they refuse to initiate an evaluation. 34 C.F.R. §300.503(a)(ii). To date, I have requested that DCPS respond in writing to my request for independent special education evaluations three times. Victoria Kunkoski, former law student advocate from the Juvenile and Special Education Clinic at the University of the District of Columbia, requested an evaluation on behalf of Maurice on November 29, 2005. Ms. Kunkoski requested expedited evaluations and offered to contact independent evaluators, but also did not receive a response to her request.

Further the law requires that if Maurice requests an independent educational evaluation, the public agency "... must without unnecessary delay either (i) initiate a hearing under §300.507 to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under §300.507 that the evaluation obtained ... did not meet agency criteria." 34 C.F.R. 300.502(b). DCPS personnel did not initiate a hearing in regards to the request for an independent evaluation and also did not respond to numerous requests for independent evaluations.

### 6. DCPS personnel violated 34 C.F.R. § 300.501 by not providing Maurice with his educational records.

Once Maurice reached the age of majority his parents rights transferred to him, giving him the right to "... (1) inspect and review all education records with respect to -- (i) the identification, evaluation, and educational placement of the child and (ii) the provision of FAPE ..." 34 C.F.R. § 300.501(a)(1)(i), 34 C.F.R. § 300.501(a)(1)(ii) and 34 C.F.R § 300.517.

13                                                                                                                                        150

- On March 21, 2005, Cynthia Catlett requested from Mr. Snipes any and all evaluations, IEP's and other academic records (including report cards and standardized test results) for Maurice. Mr. Snipes did not respond to this request.

- On April 4, 2005, Cynthia Catlett requested from Ms. Russell a copy of the records of specialized instruction and related services offered to Maurice at D.C. Jail. Ms. Russell did not respond to that request.

- On April 12, 2005, Cynthia Catlett sent Ms. Russell a letter regarding Maurice's educational background after a conversation where Ms. Russell said that DCPS did not have any records of Maurice's evaluation conducted on January 30, 2001. In that letter Cynthia Catlett shared educational records with Ms. Russell, in order to show her how Maurice was in desperate need of special education evaluations and services and how he had been denied a free appropriate public education throughout his academic career.

**D.     MAURICE PIMBLE REQUIRES COMPENSATORY EDCUATION TO BE MADE WHOLE AFTER DCPS FAILED TO PROVIDE HIM WITH FAPE FROM FALL 1991 – JANUARY 2005, LIMITING RELIEF TO THREE YEARS WILL DEPRIVE MAURICE OF THE EDUCATION HE IS ENTITLED TO UNDER THE IDEA.**

Maurice Pimble is entitled to compensatory education equivalent to eleven years for DCPS' consistent denial of FAPE. Compensatory education was found to be "appropriate relief" when a disabled child was denied FAPE under the IDEA and implementing regulations. See Walker v. District of Columbia, 157 F. Supp. 2d 11, 30 (D.D.C., 2001) and Harris v. District of Columbia, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *3 (D.D.C., 1992). Diatta further found the right to compensatory education results when the school district knew of should have known that a disabled student was receiving an inappropriate education. Diatta v. District of

14

151

Columbia, 319 F. Supp. 2d 57, 64 (D.D.C., 2004). Maurice was denied FAPE from Fall 1991 through January 2005. DCPS "should have known" that Maurice was receiving an inappropriate education. By the time DCPS evaluated Maurice, he had repeated first, third and fifth grade and had consistently performed below average.

District of Columbia hearing officers have authority under the IDEA to award compensatory education upon their determination that a disabled student was denied FAPE. See Harris, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *11. Additionally, hearing officers have broad discretion to fashion appropriate relief in consideration of the particular needs of a disabled child to meet the unique circumstances of the case. Burlington, 471 U.S. at 369, and Harris, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *13. Rowley requires compensatory education awards to provide the disabled child with a "basic floor of opportunity" that affords "some educational benefit." See Rowley, *458 U.S.* at 201. Maurice seeks a compensatory education that will confer the same educational benefit that he was denied between Fall 1991 through January 2005. According to Reid a day for day award is not justified without facts and specific circumstances to support the need for such a remedy. See Reid v. District of Columbia, 310 F Supp. 2d 137, 150. We contend the facts and circumstances of Maurice's denial clearly justify eleven years of compensatory education. This is true because Maurice is 19 years old and is only eligible for special education services until his 22nd birthday. Due to DCPS's long-term denial of FAPE, Maurice is poorly positioned in all areas related to his academics. Maurice reads and performs mathematics between a second and third grade level.

## CONCLUSION

DCPS personnel have continuously refused to act in compliance with the

Individuals with Disability Education Act.  If the Hearing Officer in the instant case limits the request for compensatory education to three years, he would be denying Maurice the right to special education.  Further, nothing in the IDEA limits compensatory education awards to three years.  Maurice's claim is still within the time period provided in D.C. Code § 12-301(8) and in order to be made "whole", Maurice will need eleven years of compensatory education, since he is performing at a second and third grade level in reading and math. (MP #10).

　　　　Compensatory education is an equitable remedy.  Maurice has undeniably been denied FAPE for over 11 years.  I am requesting eleven years of compensatory education in order to give Maurice the opportunity to receive an education.  The statute of limitations is not an issue in the instant case because Maurice was a minor prior to May 19, 2003 and could not enforce his right to receive special education.  Further, case law has provided exceptions to the tolling of the statute of limitations, as provided in Hammond.  Because of DCPS's long-term denial of FAPE, Maurice is poorly positioned in all areas related to his academics.

　　　　　　　　　　　　　　　　　　Respectfully Submitted,

Cynthia N. Catlett
Law Student Advocate

cc.:    Maurice Pimble
　　　Lenore Verra, DCPS

16

153

**UNIVERSITY OF THE DISTRICT OF COLUMBIA**
**DAVID A. CLARKE SCHOOL OF LAW**
**LEGAL CLINICS**
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC 20008
Telephone: (202) 274- 7314    Fascimile: (202) 274-5569



**FASCIMILE TRANSMITTAL AND COVER SHEET**

**TO:** Hearing Officer Dubrow

Agency/Organization  Hearing Office

Facsimile Number  202 - 4425556

**FROM:** Cynthia Catlett

**DATE:** — May 2, 2005

Brief message  Here are the two briefs in
Support of Maurice Pimble.
Thank you. Cynthia Catlett

Memo #1
Statute of
limitations
total 16 pages
Memo #2
BOP 2 DCPS
total 8 pages

☞ This cover sheet is the 1st of 25 pages.

If there are any errors in this transmittal, please call me.

I can be reached at (202) 274 - 7314 (office) or (202) 274-5569.

**ATTENTION!**

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

154

## ATTENDANCE SHEET

| STUDENT'S NAME: | Maurice Pimble | |
|---|---|---|
| **HEARING DATE:** | 5/8/05 | |
| *Tele Cor* **PRINTED NAME** | **ON BEHALF OF DCPS OR STUDENT** | **TITLE** |
| Leouria Werra | DCPS | |
| Joe Tulman | Student | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Impartial Hearing Officer

# UNIVERSITY OF THE DISTRICT OF COLUMBIA
## David A. Clarke School of Law

Joseph B. Tulman
Professor of Law
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008
(202) 274-7317
(202) 274-5583 (fax)

JTulman@udc.edu
http://www.law.udc.edu

May 19, 2005

Sy DuBow
Independent Hearing Officer
Student Hearing Office
VIA FACSIMILE: 442-5556

In re Maurice Pimble, DOB: ████-85

Dear Mr. DuBow:

I am writing to request more time to provide information to you regarding the charges and expenses that will be associated with independent evaluations for Maurice Pimble. As you know, we had a due process hearing in this matter on April 25, 2005 and a status hearing last Friday, May 13, 2005. During the status hearing, you instructed me to provide information to you regarding the independent evaluations by the close of business on Tuesday, May 17th. I have not yet been able to put together that information, and I am writing to request an extension until May 26th. I would note that this delay does not prejudice D.C. Public Schools personnel and that I have been attempting to contact Ms. Verra, attorney-advisor for DCPS, since Tuesday of this week in order to discuss the matter.

I can confirm that we will not have a problem gaining access for evaluators to Maurice at the Rivers Correctional Institution. Within the past two months, Maurice's public defender has accomplished an evaluation (for other purposes) by a private evaluator of Maurice at Rivers.

Sincerely,

Joseph B. Tulman
Attorney for Maurice Pimble

cc: Lenore Verra, DCPS

156

University of the District of Columbia

David A. Clarke School of Law
4200 Connecticut Avenue, NW
Washington, DC 20008

(202) 274-7400
(202) 274-5583 (FAX)



## FACSIMILE TRANSMITTAL SHEET

Date: 5-19-05

To: SY DUBOW, INDEPENDENT HEARING OFFICER

Fax Number: 202 442-5556

From: JOE TULMAN

Subject: MAURICE PIMBLE, DOB: ███-85

Total Pages (including cover sheet): 2

Fax Operator: _____

Fax Operator Telephone #: _____

Comments: REQUEST FOR EXTENSION OF TIME TO PROVIDE INDEPENDENT EDUCATIONAL EVALUATION INFORMATION ON COSTS

# UNIVERSITY OF THE DISTRICT OF COLUMBIA

David A. Clarke School of Law

Joseph B. Tulman
Professor of Law
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008
(202) 274-7317
(202) 274-5583 (fax)

JTulman@udc.edu
http://www.law.udc.edu

May 26, 2005

Sy DuBow
Independent Hearing Officer
Student Hearing Office
VIA FACSIMILE: 442-5556

In re Maurice Pimble, DOB: ▮▮-85

Dear Mr. DuBow:

I am pleased to report that we have arranged for a psycho-educational evaluation and a clinical psychological evaluation for Maurice Pimble, to be conducted at the Rivers Correctional Institution, by psychologists Tina Lepage and Kristen Clark Wynns. (I am attaching a curriculum vitae for each to this letter.) These evaluators have agreed to conduct the evaluations at the rates specified in the DCPS Superintendent's Directive 530.6 of March 20, 2002, i.e., $1540 for the psycho-educational and $770 for the clinical psychological, with an hourly rate of $110.

As we have discussed, these evaluators will have to travel approximately three hours each way in order to conduct the evaluations at Rivers.1  The travel costs associated with the evaluation are as follows:  travel with an overnight stay – $387; travel without an overnight stay – $205.  I believe that the determinative factor as to whether an overnight stay will be required is how much testing Maurice will be able to tolerate and accomplish (with valid results) in a single day.  I believe that these proposed costs are remarkably reasonable, and, frankly, I was surprised that the evaluators were willing to lower their rates in order to accommodate our request that they accept the DCPS rates.

---

1 We have not been able to locate evaluators who are able and willing to conduct the evaluations who are closer to Winton, NC (where the Rivers facility is located).  We offered the DCPS representative an opportunity to provide any names or contact information of evaluators who were closer to Winton.  In addition, we originally requested that DCPS conduct these evaluations when Maurice was available for evaluation in the District of Columbia, and DCPS personnel failed to arrange and conduct the evaluations.

I have previously confirmed -- in my letter of May 19, 2005 -- that we will not have a problem gaining access for evaluators to Maurice at the Rivers Correctional Institution.

I have not included a cost for a speech and language evaluation or for a neuropsychological evaluation. Unfortunately, DCPS personnel have not been able to provide copies of the initial evaluations that they conducted on Maurice in 2001 and so we are not clear as to whether a speech-language and a neuropsychological are needed. I propose to await recommendations from the clinical and psycho-educational evaluators, Drs. Lepage and Wynns, before determining whether to request these additional evaluations.

Sincerely,

Joseph B. Tulman
Attorney for Maurice Pimble

cc: Lenore Verra, DCPS
    Maurice Pimble

encs. CV's for Tina Lepage and Kristen Clark Wynns

159

# TINA LEPAGE

1703 Legion Road, Suite 204
Chapel Hill, NC 27517

Telephone: (919) 933-5355
Email: tlepage@lepageassociates.com

---

## *HIGHLIGHTS OF QUALIFICATIONS*

Nine years clinical experience, with five years of clinical program management. Seventeen years experience counseling and managing counseling programs. Advanced degrees in both psychology and management.

## *PROFESSIONAL EXPERIENCE: CLINICAL*

**Lepage Associates Solution-Based Psychological Services**, Chapel Hill, NC, 2003 – Present.

*Licensed Clinical Psychologist*
- Summary: Provide psychological services to include therapy, evaluations, coaching and consultation. Sole owner of Lepage Associates private practice; manage all facets of business and supervise all Associates.
- Provide individual, couples, family and group therapy to adults, college students, and teenagers; supervise therapy of Associates serving children, adolescents, and adults.
- Conduct psychological, juvenile forensic, and custody evaluations; supervise psychoeducational evaluations of Associates.
- Provide coaching and consultation to family law attorneys, people divorcing, school personnel, business managers and personnel, and other mental health professionals.

**Fairfax County Government, Mental Health Services**, Fairfax, VA, 2000 – 2002.

*Licensed Clinical Psychologist*
- Summary: Worked at two offices serving as clinical director, treating psychologist, and forensic evaluator.
*At Sunrise II Dual-Diagnosis Treatment Center, as Clinical Director and treating Psychologist:*
- Clinical oversight of program and supervision of staff. Responsible for program planning, quality assurance, program evaluation, and staff development. Final say on all clinical decisions.
- Decided on appropriateness of admissions, readmissions, discharges, and aftercare services for clients.
- Determined appropriate course of treatment for clinically complex dually-disordered adolescents and their families. Decided treatment priorities and problem solved barriers to treatment, including systemic, case management and dynamic issues.
- Supervised, trained and coached clinical staff. Provided supervision of interventions and of personal and professional dynamics of the counselor that affected the case.
- Provided individual therapy and process group for clients dually-diagnosed with both a substance abuse problem and a mental health diagnosis. Diagnostic types included conduct disorder, attention-deficit and disruptive behavior, mood and anxiety disorders, bipolar, substance-related disorders, post traumatic stress, learning disorders, parent-child relational problems, problems related to abuse and neglect, and emerging personality disorders. Also provided family therapy to families of all clients.
*At the Juvenile Forensic Evaluation Program, as Forensic Evaluator:*
- Completed psychological assessments for the Juvenile and Domestic Relations Court. Evaluations included (1) full psychological batteries to assist judges in case disposition, (2) targeted assessments for case managers, probation officers, and treating clinicians regarding specific intervention and treatment needs, and (3) emergency assessments to determine if a client was suicidal, homicidal, or in need of hospitalization.
- Clinical representative on the Interdisciplinary Team and the Diagnostic Team, which brought together professionals from a variety of disciplines to advise the Court regarding case disposition.
- Provided case consultation to numerous outside agencies and represented program as clinical guest speaker.
- Supervised doctoral level interns on assessment and therapy cases.

**Virginia Polytechnic Institute and State University (VT), Thomas E. Cook Counseling Center (CCC),** Blacksburg, VA, 1999 – 2000.

*Therapist*
•Summary: Provided psychological services to students and consultation to administrators and professors.
•Provided individual and couples therapy.  Diagnostic types included depression, general anxiety, panic, bipolar, paranoid schizophrenia, bereavement, anorexia nervosa, bulimia, alcohol abuse, somatoform, attention deficit, abuse history, anger management, obsessions, dissociation, interpersonal difficulties (skills deficit and Axis II), identity issues/self-exploration, parent-child relational problems, partner relational problems, adjustment, and career and academic concerns.
•Provided group therapy to include general process groups, topic groups, and psychoeducational groups.
•Performed intakes to determine which therapist(s) or service(s) would be most helpful to the client.
•Intervened in crisis situations both during and after hours.  On-call approximately 150 hours per semester.
•Consulted with psychiatrists, psychiatric nurses, health center staff, administrators and professors.
•Supervised the clinical work of doctoral-level practicum students.
•Performed psychological assessments on clients referred by their therapists; provided confidential psychological reports to assist therapists with diagnostic clarification and treatment planning.
•Administered career and academic testing to assist clients with career decisions and study skills.
•Conducted outreach to include facilitating a group for students judicially referred due to an alcohol-related offense and teaching the Family Therapy section in a master's level counseling theories class.
•Studied the effect of an eight-week, semi-structured process group on gender interactions in intimate relationships, with an emphasis on communication and behavior.  In conjunction with colleague, designed research project, led group, wrote facilitator's manual for future groups, and wrote research paper (Men & Women Sharing: The Effect of Group Therapy on Healthy Relationship Behaviors and Attitudes).
•Participated as a member of the Intern Selection Committee; interviewed and ranked candidates.

**Arlington County Juvenile and Domestic Relations Court,** Arlington, VA, 1997 – 1998.  Part-time.

*Therapist*
•Summary: Provided psychological services to juveniles convicted of criminal offenses, juveniles found by the court to be in need of supervision, and adults convicted of domestic criminal offenses.
•Provided court-ordered individual, group, and family therapy.  Individual therapy was with both juveniles and adults typically convicted of assault and battery.  Group therapy was with adolescent females involved with the court for a variety of offenses; also led a group with their parents, and, in some cases, separate family therapy.  Diagnostic types included conduct disorder, attention-deficit and disruptive behavior, substance-related disorders, post traumatic stress, learning disorders, parent-child relational problems, narcissistic, paranoid, antisocial, and problems related to abuse and neglect.
•Coordinated services with middle schools and high schools, providing individual and group therapy to adolescents in an after-school delinquency diversion program for students beginning to act out in school.
•Interviewed and assessed clients referred by their probation officers; provided intake reports to assist probation officers with intervention recommendations.
•Performed court-ordered psychological assessment.  Provided psychological reports to assist with decisions regarding intervention and treatment for offenders, and to determine parental fitness and the best interests of the child in custody cases.
•Consulted with psychologists and psychiatrists at residential treatment facilities and detention centers.

**The Women's Center,** Community Counseling Center, Vienna, VA, 1996 – 1997.  Part-time.

*Therapist*
•Summary: Provided psychological services in an outpatient capacity to a clientele of primarily women, with some men and children in couples and family therapy.

- Provided individual, couples, and family therapy. Diagnostic types included depression, dysthymia, generalized anxiety, partner relational problems, narcissistic, histrionic, and borderline.
- Performed psychological assessment on clients referred by their therapists; provided confidential psychological reports to assist therapists with diagnostic clarification and treatment planning.
- Performed psychological assessment on parents and children ordered by Child Protective Services to receive testing; provided confidential psychological reports to assist social workers with treatment and custody recommendations.
- Presented in-services to Center staff on a variety of clinical topics.
- Co-led Self-Esteem Workshop.
- Performed intake coordination duties and answered calls from people in immediate crisis.

## _PROFESSIONAL EXPERIENCE: COUNSELING & PROGRAM MANAGEMENT_

<u>Georgetown University, Office of Student Employment Counseling</u>, Washington, DC, 1993 – 1999.

*Program Manager/Counselor*
- Summary: Modified and managed professional development program to serve students and businesses. Initial problem assessment: Program conceptually sound, but underutilized and poorly organized.
- Lead projects to revitalize marketing and outreach efforts to leading businesses.
- Designed, in conjunction with the Information Technology Department, a web-based employment referral system; modernized all administrative aspects of operation.
- Enhanced employment referral service to increase direct assistance offered to students and businesses.
- Represented Georgetown as liaison between students and businesses, having direct contact with thousands of students and hundreds of employers.
- Mediated disputes between students and their employers, and advised on solutions to workplace problems.
- Served on committee planning the future of student employment at Georgetown, to include the integration of other offices currently run separately.
- Supervised and trained staff of 10-15 employees yearly; coordinated all administrative facets of program.
- Wrote articles for bi-monthly department newsletter.
- Counseled Georgetown students regarding career planning and job searching.

<u>Comprehensive Learning Concepts, Inc., Career Services Department</u>, Alexandria, VA, 1991-1993.

*Program Manager/Counselor*
- Summary: Designed and managed professional development program for business providing training in network engineering and technologies, information technology, and computer programming. Initial problem assessment: Technical training was excellent, but both clientele and placement staff lacked adequate skill in preparation for competitive marketing for employment.
- Established employment preparation program to increase clients' knowledge, motivation, and confidence.
- Program used as a model implemented at six other training locations nationwide.
- Developed relationships with area businesses; acted as liaison between students and employers to assist students in securing employment. Reestablished internship program with both private and public sectors.
- Provided one-on-one career counseling.
- Conducted employment preparation seminars for all training classes. Seminars sized: 5 to 40.
- Mediated disputes between students and employers and students and professors.
- Wrote and compiled information from several sources into booklets used as instructional materials.

<u>Department of Defense, Family Support Center</u>, United States Air Base, Athens, Greece, 1988 – 1991.

*Program Manager/Counselor*
- Summary: Designed and managed personal and professional development program for the Family Support Center. Initial problem assessment: Existing program formats had been developed for military bases stateside, and were ill suited to meet the needs of an overseas base clientele. New concept needed.

- Researched needs of base population through interviews with management of numerous agencies and questionnaires of personnel. Developed program centered on both professional and personal development. Personal development was an important adjunct as the initial clientele were military dependents that routinely faced depression due to extremely limited job opportunities, the small base environment, and culture shock. Later expanded program to include military personnel of all ages and ranks transitioning into the civilian world as the base closed and the military downsized.
- Program quickly became the most widely used on the base.
- Designed a 10-seminar series; conducted seminars. Seminars sized: 5 to 50.
- Provided one-on-one counseling: self-assessment, motivation, course of action, follow-through.
- Acted as guest speaker at meetings and events to provide information and encourage participation. Audiences sized: typically 200-500.
- Publicized program through numerous media resources, to include articles for local newspapers and interviews for radio broadcast.
- Served in a leadership capacity on several community boards.
- Recruited, trained and supervised administrative staff, volunteers, and externs.
- Reviewed client critiques; continually expanded program to meet changing needs of clients.

### *SEMINARS/WORKSHOPS DESIGNED & IMPLEMENTED*

| | | |
|---|---|---|
| Solution-Based Living: Making Moving Forward a Way of Life | Career Trends Career Anchors | "High On Life" Men & Women Sharing |
| Building Resilience | Resume Writing & | Birth Control Methods |
| Assertiveness Training | Cover Letters | Sexually Transmitted |
| Goal Setting | Merchandising Volunteer | Diseases |
| Effective Communication | Experience for Job Credit | Self-Esteem |
| Time Management | Effective Interviewing | Self-Assessment |
| Financial Management | Job Search Strategies | Creative Teaching |

### *EDUCATION*

**Doctor of Clinical Psychology**, American School of Professional Psychology (ASPP; APA accredited), Arlington, VA, 2000. Dissertation: Bridging Psychology and Law in Effective Custody Evaluations. Final GPA 3.9.

**Master of Clinical Psychology**, ASPP, Arlington, VA, 1998. Master's Thesis: The Best Interests of the Child in Custody: A Bridge Between Psychology and Law. Final GPA 3.85.

**Master of Public Administration**, Troy State University, AL, 1991 (Studied at European Division - Athens Campus, Greece). Electives in Psychology: Cross-Cultural Counseling, Lifespan Development. Master's Thesis: Substance Abuse in the Work Place: Incidence, Effects, and a Cost Benefit Analysis of Employee Assistance Programs as a Possible Solution. Final GPA 4.0.

**Bachelor of Science, Child Development & Family Relationships**, University of Maine, Orono, 1988. Concentration in Substance Abuse Counseling during first two years of study. Final GPA 3.7.

### *LICENSES & CONTINUING EDUCATION*

**Licensed Clinical Psychologist**, North Carolina # 2865 & Virginia # 0810002972.
**Certified Health Services Provider-Psychologist (HSP-P)**, North Carolina.
**Conducting Custody Evaluations**, Three day training with Dr. Barry Bricklin & Dr. Gail Elliot of Bricklin Associates and the Professional Academy of Custody Evaluators, Atlanta, GA, May 2002.

**Juvenile Forensic Evaluation**, One week training with the Institute of Law, Psychiatry, and Public Policy, University of Virginia, Charlottesville, 2002. Certifies as Juvenile Forensic Expert able to conduct evaluations for Competency to Stand Trial, the Insanity Defense, Pre-Sentencing, and Risk Assessment.
**Rational Emotive Behavior Therapy Intensive Training**, Nine-hour training with Dr. Albert Ellis, 1998.
**Aggression Replacement Training (ART)**, Eight-hour aggression management and moral reasoning training with licensed Court Psychologist, Arlington County Court, VA, 1998.
**The Talking Cure: Psychotherapy and the Brain**, Lecture presented by psychiatrist Dr. Susan Vaughan, Smithsonian Lecture Series, Smithsonian Institute, Washington, DC, 1997.
**Additional course work** completed at Georgetown University, Washington, DC: Abnormal Psychology, Theories of Personality, and Writing Re-Creatively, 1993-1994.
**Powerful Presentation Skills Seminar**, National Seminars Group - Rockhurst College Continuing Education Center, Inc., Washington, DC, 1992.

164

# Kristen Clark Wynns

## Curriculum Vitae

**Current Address**
276 Victoria Hills Drive, South
Fuquay-Varina, NC 27526
Telephone: (919) 552-7402 (home)
email: kristywynns@yahoo.com

| | |
|---|---|
| **EDUCATION** | **Doctor of Philosophy**, Clinical Psychology, August, 2003 APA Accredited Program in Clinical Psychology at University of North Carolina at Greensboro (UNCG) **Master of Arts**, Clinical Psychology, May, 2000 University of North Carolina at Greensboro **Bachelor of Arts,** *Summa Cum Laude,* Psychology, 1997 Peace College, Raleigh, North Carolina |
| **LICENSE** | Psychological Associate #2427 |

**HONORS AND AWARDS**
  Departmental Research Award (1999, 2001)
  Summer Graduate Research Award – The Graduate School at UNCG (1999)
  Phi Theta Kappa National Honor Society
  Psi Chi National Honor Society in Psychology
  Who's Who Among American Colleges (1997)
  Social Science Award (1995, 1997) (awarded to the best student in social sciences)
  Flowe Scholarship (1993 – 1997)

**PROFESSIONAL AFFILIATION**
  American Psychological Association (1997 – present)
  APA Division 53 – Division of Clinical Child Psychology (1999 – present)

**EMPLOYMENT**

Psychologist, Lepage Associates, Chapel Hill, NC          April 2004 – present
  - Provide psychotherapy to children, adolescents, adults, couples and families, with a specialization in child/adolescent clients.
  - Provide psychoeducational and psychological assessment services to adults, adolescents, and children.

  Supervisor: Tina Lepage, Psy.D.

Psychologist, Shigley Family Services, Raleigh, NC          April 2004 – present
  - Lead a multidisciplinary team conducting comprehensive early intervention evaluations of children ages two and up.

Wynns   2

- Provide psychoeducational assessment services to adolescents and children.

Supervisor: Hal Shigley, Ph.D.

Predoctoral Clinical Psychology Intern, Pine Rest Christian Mental Health Services
Grand Rapids, MI                          September 2002 – August 2003
- Provided psychological services to children, adolescents, adults, and families within a
  diverse population.
- Coordinated treatment with psychiatrists, primary care physicians, employee
  assistance programs, and social workers.
- Participated in interdisciplinary child/adolescent team meetings.

Supervisors: Pam White, Ph.D and Brett May, Ph.D.

Research Assistant, Frank Porter Graham Child Development Center, Chapel Hill, NC
                                          1997-1998
Duties: Coded videotaped marital interaction interviews, entered and verified data, and
  worked on a manuscript. Volunteered for additional research experience by reviewing
  the criminal records of 100 juvenile delinquent males at a training school under the
  supervision of Dr. Janis Kupersmidt.

Supervisor: Martha J. Cox, Ph.D.

Intern, Dorothea Dix Mental Hospital, Raleigh, NC, January 1996 – May 1996
  Duties: Assisted director of Adolescent Unit and interacted with patients. I was
  assigned to a bipolar patient with whom I visited weekly, was allowed access to her
  charts, and consulted with her social worker about her progress.

Intern, Autism Group Home, Raleigh, NC, January 1996 – May 1996
  Duties: Assisted residents with their behavior modification programs and schedules,
  participated in interdisciplinary team meetings, and consulted with the staff
  psychologist.

**PRACTICA/CLINICAL EXPERIENCE**
  Advanced Practicum in Specialty Services for Individuals with AD/HD
                                          July 2001 – May 2002
  University of North Carolina at Greensboro AD/HD Specialty Clinic
- Provided comprehensive psychological assessments services to children,
  adolescents, and adults with psychological disturbances that included hyperactivity
  and inattention-spectrum difficulties.
- Coordinated double-blind stimulant medication trials with Clinic staff psychiatrist
  or client's medical doctor.
- Co-lead parent training group for parents of children with AD/HD.

Supervisor: Arthur Anastopoulos, Ph.D.

Therapist/Clinician at UNCG Psychology Clinic                    1999 – 2002
- Provided outpatient-based psychotherapy with adult, adolescent, and child clients from the Greensboro community, with a specialization in child/adolescent clients. Client population is diverse with respect to racial and socioeconomic backgrounds and spans the range of DSM-IV psychopathologies.
- Provided intellectual, psychological, and comprehensive psychological assessment services to adults, adolescents, and children from the Greensboro community.
- Consulted with staff psychiatrist on cases with medication needs.
- Conducted psychological assessments for employment screening for police officer applicants within the Greensboro community.

Supervisors: Susan Keane, Ph.D., Dennis McKnight, Ph.D., Matthew Paradise, Ph.D.

Therapist/Clinician Guilford County Mental Health Center – Child and Family Services
                                                                 1999 – 2001
- Provided individual and family therapy to children, adolescents, and their families.
- Provided personality and psychological assessments of children and adolescents.
- Conducted weekly intake interviews and school/daycare observations.
- Participated in multidisciplinary child team meetings with a "System of Care" philosophy.
- Consulted with psychiatrists on medication needs and with the community (teachers, daycare workers, Department of Social Services workers, and school counselors).

Supervisor: Tom Keane, Ph.D.

## RESEARCH
Doctoral Dissertation                                            2001 - 2003
  *Marital Conflict and Adolescents' Adjustment: Examining Multiple Protective Factors*
  Defended March, 2003.

Doctoral Preliminary Exam                                       2000 – 2001
  *Marital Conflict and Children's Adjustment: A Cognitive-Emotional Framework*
  Passed May, 2001

Master's Thesis                                                 1999 – 2000
  *Interparental Conflict, Parent-Adolescent Relations and Adolescent Friendships.*
  Defended April, 2000.

Research Assistant, Peer Relations Lab                          1998 – present
  Data collection using interviews and sociometric ratings in local elementary schools.
  Supervisor: Susan P. Keane, Ph.D.

Research Assistant, University of North Carolina – Greensboro     Summer 1999
  Duties: Worked on a longitudinal funded grant – collected data on four-year olds and their mothers and coded videotaped parent-child interactions.

Wynns    4

Supervisor: Susan Calkins, Ph.D.
Research Assistant, Peace College                          1995 - 1997
    Duties: Data collection, data entry, and statistical analysis.
    Supervisor: Korrel Kanoy, Ph.D.

Graduate Student Grant for travel and research – UNCG          April, 2001

**PUBLICATIONS**
Clark, K*. & Kanoy, K. (1998). Parents' Marital Status, Father-Daughter Intimacy, and
    Young Adult Female's Dating Relationships. Journal of Divorce and Remarriage, 29,
    167 – 179. *Clark is my maiden name.

**CONFERENCE PRESENTATIONS**
Wynns, K. C. (2003). *Isolated Children: How to Help from a Christian Perspective.*
    Presented at the Children's Ministry Conference, Grand Rapids, Michigan.
Wynns, K. C. (2001). *Interparental Conflict, Parent-Adolescent Relations and*
    *Adolescent Friendships.* Poster presented at the Society for Research in Child
    Development, Minneapolis, Minnesota
Wynns, K. C. (2000). *Interparental Conflict, Parent-Adolescent Relations and*
    *Adolescent Friendships.* Presented at UNCG Graduate Research Colloquium.
Clark, K. (1997). *Parents' Marital Status, Father-Daughter Intimacy, and*
    *Young Adult Female's Dating Relationships.* Paper presented at the National
    Conference for Undergraduate Research, Austin, Texas.
Clark, K. (1997). *Parents' Marital Status, Father-Daughter Intimacy, and*
    *Young Adult Female's Dating Relationships* . Poster presented at the Southeastern
    Psychological Association Conference, Atlanta, Georgia.

**INVITED TALKS**
"Letting Go of the Past"
"Anger Management"
"Vulnerability in Relationships" (Divorce recovery groups, 2003).
"Mental Preparation for the Race" (Gazelle Sports, 2003).
"How to Teach your Kids about Money" (Teachers and staff at private school, 2003).
"Women and Stress"
"Self-esteem: What it is and isn't"
"Enhancing Relationships between Parents/Grandparents and Children"
(Church groups, 2002).
"Coping with Holiday Stress" (Staff at Christian Youth and Family Services, 2002).
 "The Psychology of Terrorism" (100 high-school students from four surrounding
schools). UNCG Division of Continuing Learning.  September, 2001

**TEACHING EXPERIENCE**
Instructor       Department of Human Services – Central Carolina Community College
Spring 2004     Group Process I for Undergraduate students
Supervisor: Leigh Beam, Lead Instructor for Human Services

Wynns   5

Instructor       Department of Psychology – UNCG          Summer 2001
General Psychology for Undergraduate Students
Duties: Responsible for all phases of teaching including the preparation and
administration of lectures, selection of reading materials and assignments, construction of
examinations, and the assignment of course grades.
Supervisor: Timothy Johnston, Ph.D., Head of Department of Psychology

**VOLUNTEER EXPERIENCE**
Mentor, "Adopt a Youth" program                       Summer 2003
Served as a mentor to a high school student with emotional/behavior problems
Hillside Community Church, Grand Rapids, MI
Mentor, "Adopt a Youth" program                       2000 – 2001
Served as mentor/role model to a middle school student
First Baptist Church, Greensboro, NC

169



University of the District of Columbia

David A. Clarke School of Law
4200 Connecticut Avenue, NW
Washington, DC 20008

(202) 274-7400
(202) 274-5583 (FAX)

## FACSIMILE TRANSMITTAL SHEET

Date: 5-26-05

To: SY DUBOW, HEARING OFFICER

Fax Number: 442-5556

From: JOE TULMAN

Subject: MAURICE PIMBLE IEE's

Total Pages (including cover sheet): 13

Fax Operator: _____

Fax Operator Telephone #: _____

Comments: _____
_____
_____
_____
_____

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION

## SPECIAL EDUCATION DUE PROCESS HEARING

### CONFIDENTIAL

### INTERIM ORDER

**STUDENT:** Maurice Pimble          **DATE OF BIRTH:** ███/85

**ADDRESS:** Federal Bureau of Prisons, North Carolina

**PRESENT SCHOOL ATTENDING:** Non/attending
**HOME SCHOOL:** N/A

**DATE OF HEARING:** April 25, 2005
**LEGAL MEMORANDUM FILED:** May 3, 2005

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| Maurice Pimble* | Student |
| Alfred Hobdy | Friend of student |
| (* Testified by telephone) | |

**Student's Representative:** Professor Joseph Tulman, Cynthia Catlett
**Address:** Clarke School of Law, UDC
**4200 Connecticut Ave., N.W.**
**Washington, D.C. 20008**
**FAX:** 202-274-5583

**School System's Representative:** Lenore Verra, Esq.
**Address:** 825 N. Capitol Street, N.E., Washington, D.C. 20002

171

**INTERIM ORDER**

Pursuant to the telephonic status conference held on May 13th 2005, counsel for DCPS agreed that DCPS would fund independent evaluations within the Superintendent's guidelines. Counsel for DCPS stated that DCPS would not agree to reimbursement for travel costs for the evaluators. This hearing officer requested counsel for the student to provide information on travel costs related to conducting these evaluations and whether Rivers Federal Correctional Institution would allow access. Counsel for the student has by letter of May 26th 2005 responded to those requests.

It is hereby **ORDERED** that:

**DCPS shall reimburse the evaluators for their travel costs to evaluate the student at Rivers Federal Correctional Institution upon proper documentation provided to DCPS.**

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: June 8, 2005

Date Issued:

2

172

HR:1
Start 3:15

# ATTENDANCE SHEET

| | | |
|---|---|---|
| **STUDENT'S NAME:** | Maurice Pimble | |
| **HEARING DATE:** | April 25, 2005 | |
| **PRINTED NAME** | **ON BEHALF OF DCPS OR STUDENT** | **TITLE:** |
| Cynthia Catlett | Student | Educational Advocate |
| Joseph B. Turman | Student | Attorney for Student |
| Lenore D. Verra | Student DCPS | Attorney-advisor |
| Twandyn Lewis | Student | mother |
| Alfred Hobdy | Student | uncle |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Impartial Hearing Officer

173

# UNIVERSITY OF THE DISTRICT OF COLUMBIA

## David A. Clarke School of Law
## Juvenile and Special Education Law Clinic

4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
(202) 274-7314
(202) 274-5583 (fax)

http://www.law.udc.edu



April 27, 2006

Leona Verra
Office of General Counsel
**VIA FACSIMILE**

RE:    Maurice Pimble (DOB: ████1985)

Dear Ms. Verra:

      I am writing to you in reference to the evaluations that will take place in Maurice Pimble's case. Please be advised that we have made arrangements for Maurice to get a speech/ language evaluation to be conducted on May 3rd. We are also in the process of arranging a neuropsychological evaluation based upon the recommendation by Dr. Fields in the Psycho-educational evaluation. Pursuant to the hearing officers determination on June 8, 2005 we believe that it is DCPS's obligation to pay for these evaluations.. If there are any questions in regard to this matter please call Professor Joe Tulman at (202) 274-7317. Thank you for your time.

Sincerely,

Elizabeth Baker and

Naoina Gartee

Law Student Advocate
Representing Maurice Pimble
(703) 618-5414

4200 CONNECTICUT AVE., N.W.
BUILDING 38, 2ND FL.
WASHINGTON, D.C. 20008
TELEPHONE: (202) 274-7314
FAX: (202) 274-5569

174

**INTERIM ORDER**

Pursuant to the telephonic status conference held on May 13th 2005, counsel for DCPS agreed that DCPS would fund independent evaluations within the Superintendent's guidelines. Counsel for DCPS stated that DCPS would not agree to reimbursement for travel costs for the evaluators. This hearing officer requested counsel for the student to provide information on travel costs related to conducting these evaluations and whether Rivers Federal Correctional Institution would allow access. Counsel for the student has by letter of May 26th 2005 responded to those requests.

It is hereby **ORDERED** that:

**DCPS shall reimburse the evaluators for their travel costs to evaluate the student at Rivers Federal Correctional Institution upon proper documentation provided to DCPS.**

Seymour DuBow, Esq.
Impartial Hearing Officer

Date filed: June 8, 2005

Date Issued:

6/8/05

2

# REPORT ON PSYCHO-EDUCATIONAL AND CLINICAL EVALUATIONS FOR MAURICE PIMBLE

Maurice Pimble, a twenty year old male presently incarcerated in the River Correctional Institution in Winton, North Carolina. He was brought to the DC Correctional Center for purposes of an appeal hearing for ineffective assistance of counsel in a criminal proceeding. He was authorized for psycho-educational and clinical assessments. It was in this facility that he was evaluated.

## REPORT ON PSYCHO-EDUCATIONAL EVALUATION OF MAURICE PIMBLE

**Date of Birth:** ███/85
**Dates of Evaluation:** 11/21-12/8/05
**Age:** 20 yrs.8 months
**Referred By Attorneys:** U.D.C. David A. Clarke School of Law

### Background

Mr. Pimble's background in the juvenile and adult criminal justice system is detailed elsewhere. His background in DC Public Schools is far less detailed and his family background is provided through clinical interviews and a social history. Access to Mr. Pimble for psychological testing required four separate visits. Conditions for testing were less than conducive to concentration. Nonetheless, Maurice was attentive and cooperative despite the poor environment. At one meeting he explained that he was unable to attend the previous appointment because along with everyone else, he was on lock-down.

Maurice describes his early life as chaotic and neglected His parents were together during his first seven years but they wee both drug users and dealers. He is the eldest of his mother's five children. One sister lives with her grandmother. Another sister and brother are presumably with their mother. Maurice doesn't know, however, where they are living these days. He says that he was kicked out of his mother's house when he was twelve because he didn't get along with her boy friends. He lived with various relatives after that. His father was incarcerated during that period of time. Life with his mother meant having to move every time

1

the rent was due and having the water cut off and other utilities terminated because even when his mother had money she spent it on drugs, never on food or rent. Because of her frequent evictions and consequent moves, Maurice attended different schools, was absent a lot, and was poorly equipped to study in school. He was retained at least three times in elementary school and although he had been referred for special education evaluations, never was evaluated and never placed in an appropriate educational environment to meet his learning disabilities. After leaving his mother's house he wound up with a paternal uncle and then with a friend of his uncle, Alfred Hobdy whom he calls "uncle". Mr. Hobdy, who coached boxing at a gym and felt that Maurice had a talent for the sport. Maurice learned to box and for a while found that gratifying. Then he began playing basketball and football at a local recreation center and stopped going to school altogether. He had changed schools five or six times when he finally got into a GED program at Links and Learn for a year and a half. After that he was in jail. He claims that he just wanted to be friends with the wrong people. His uncle told him he shouldn't hang out with the people who were partying. But, he says, he didn't know kids who were law-abiding.

Records indicate that Maurice was abused by his mother and her boy friend and frequently acted out against the men his mother brought home. His behavior in seventh grade brought him to the attention of the juvenile justice system He began using Marijuana and PCP when he was 15 years old. It is the opinion of his guardian, who is a regular visitor to Maurice since he's been incarcerated, that Maurice is easily influenced by others and is a follower rather than a leader. All of his history, as well as his own accounts and those of his guardian indicate that during the time he was in DCPS he was a very emotionally impaired child suffering the consequences of abuse both physical and mental and the customary consequences of hat abuse manifested as Learning Disabilities that interfere with academic performance.

<u>Psycho-educational Test Battery</u>

Wechsler Individual Achievement Test
Wechsler Adult Intelligence Scale (WAIS III)
Memory for Designs
Bender Gestalt

<u>Findings</u>

Maurice Pimble's Full Scale WAIS-III IQ is 75. This is in the low normal or borderline range of cognitive functioning. His Verbal Scale score is 78 and his Performance Scale score is 72. Usually such proximity in the two scale scores would suggest a very consistent pattern of low functioning, borderline ability. But while his scores on the tasks most influenced by formal education are quite consistent in the Mildly Mentally Retarded/Borderline range (Standard score 6), the Performance Scale subtests which are less influenced by formal education indicate that Mr. Pimble has been in the normal range in some conceptual and abstract functioning His score in Spatial Relations and Concrete relationships suggest that he is able to

2

learn to perform skilled work in mechanical and construction tasks.  The standard scores on the subtests are as follows:

| Verbal | | Performance | |
|---|---|---|---|
| Information | 6 | Picture Completion | 5 |
| Digit Span | 6 | Picture Arrangement | 6 |
| Vocabulary | 6 | Block Design | 8 |
| Arithmetic | 6 | Object Assembly | 8 |
| Conceptualization | 6 | Digit Symbol | 4 |

Although his Verbal Scale IQ is slightly higher that his Performance Scale IQ, and indicates lack of formal education, it also suggests that  this young man has been unable to communicate effectively and would feel marginal in peer groups because he lacks the common knowledge base that informs school and peer societies. In combination with these disparities, he has a very depressed understanding of social consequences or logical sequences and common sense judgment. He is operating at the level of mildly retarded in Language learning and possibly suffered some developmental delays in central nervous system processing (brain damage). His score of Average in spatial orientation and perceptual organization suggests that he was able, if presented with appropriate language arts learning tools, to have performed adequately at each grade level. Instead, he failed at least three times on his way through elementary school. Quite likely Maurice Pimble would have met the criteria for classification as Learning Disabled early in school.

Maurice's difficulties with visual memory as reflected in his Standard Score 5 on the Picture Completion subtest, is further reflected in his very poor showing on the Memory for Designs test. He remembered and accurately drew only four of the fifteen designs on the MFD test. This could also reflect a perceptual motor handicap commonly found in children with Learning Disabilities, but also a consequence of brain damage or Developmental Delays in psycho-motor functioning. Interestingly though (and this will also be addressed in the context of his Clinical evaluation since these tests are also clinical screening tools) while thee were anomalies in his designs on the Bender he was not required to reproduce them from memory and was therefore able to make reasonable approximations in copying the designs. This reflects adequate perceptual motor functioning but probable central nervous system damage.

Maurice Pimble's scores on the Wechsler Individual Achievement Test (WIAT were compared with his Full Scale IQ of 75 and more specifically with verbal and performance IQs which were within close range to reveal highly significant differences between his IQ and his Achievement. The latter is actually a reflection of his formal education and because his scores on the parts of the WAIS most affected by formal education were so low,  the actual achievement scores are even more

3

significantly depressed. All but two subtest scores are significant at the .01 level of confidence. The other two, Spelling and Reading Comprehension are significant at the .05 level.

The standard and percentile scores on the WIAT are as follows:

| | | |
|---|---|---|
| Basic Reading | 74 ................. | 4th percentile |
| Mathematics Reasoning | 64................. | 2nd percentile |
| Spelling | 69 ................ | 2nd percentile |
| Reading Comprehension | 75 ................ | 5th percentile |
| Numerical Operations | 58 .................0.3 percentile | |
| Listening Comprehension | 72 ................. 3rd percentile | |
| Oral Expression | 80 ................22nd percentile | |
| Written Expression | 60...................0.4 percentile | |

Maurice's subtest scores on Basic Reading, Reading Comprehension, Listening Comprehension and Oral Expression are consistent with his WAIS Verbal scale scores which also place him in the lowest quartile in IQ. However, when we examine the Composite Scores for Reading, Math, Language and Spelling, his standard score of 57 is significantly lower than his Full Scale IQ of 75 and places him at the 0.2 percentile at the significance level of .01 probability. This is especially notable in the difference between his level of Mathematical Reasoning and his performance of Numerical Operations.

### Conclusions

The Psycho-educational Testing illustrates several issues about Maurice Pimble's cognitive functioning and suggests two underlying handicapping conditions that interfere with his ability to learn.
*First, his formal education was not appropriate to his ability and needs. This may be consequent to brain processing impediments and anomalies. This hypothesis needs to be investigated by means of a neuropsychological examination. His performance in his early school years apparently indicated that he required Special Education services for Learning Disabilities.* The probable etiology of his Learning Disabilities was a combination of <u>Central Nervous System Anomalies (Neuropsychological processing or obstruction). He was referred for evaluation at that time but neither the evaluation nor the placement ever happened.</u>
*Second, there is and likely has always been an emotional impediment to learning given his early childhood traumatic and chaotic life experience. He is seriously Emotionally Disturbed. That has been studied through the clinical assessment(See attached report) regarding the clinical psychological assessment of Maurice Pimble.*

------------------------
**Rona M. Fields, Ph.D.**
**Licensed Clinical Psychologist**

4

## REPORT ON CLINICAL PSYCHOLOGICAL
## EVALUATION OF MAURICE PIMBLE

**Date of Birth:** ████/85
**Date of Evaluation:** 11/29/05
**Age:** 20 years 8 months
**Referred by Attorney:** U.D.C. David A. Clarke School of Law

### Background

Maurice Pimble's background has been noted above and in a social history report. To summarize in the context of this clinical report, there are some significant issues:

1. His parents were drug dealers and users who had little involvement with their children. Given the home circumstances as described by caseworkers/investigators from Social Services Abuse and Neglect investigations, Maurice had to be removed from the home for his health and safety. He was found by the court to have been severely abused and describes having been beaten up by a series of his mother's boy friends.

2. He recalls many times when there was no food, no lights, and no heat because his mother didn't pay rent nor utility bills and spent the food money on dope. That also entailed frequent moves because the rent was due and his mother had spent the rent money on illegal drugs instead.

3. He had to change schools frequently because of the family's moves and usually lacked clean and appropriate clothing to wear to school. He felt ashamed of himself and embarrassed and unable to relate with his peers.

4. He was thrown out of the house by his mother when he was twelve, he reports.

5

180

5. He felt he had been rejected by his mother and that his father didn't care about him from the time he was seven years old. After his foster uncle (who became his guardian) took an interest in him he wanted to please him but found it difficult to feel worthy.

At this time, the only visitor he has is that "uncle".

**Tests Administered**

**Thematic Apperception Test (TAT)**
**Projective Drawings:**
**Draw A Person**
**Self Portrait**
**House Tree Person**
**Clinical Interview**

**Findings**

The projective drawings indicate that Maurice feels "disconnected" from himself and from others. He also experiences feelings of instability and great insecurity. He has some concerns about his sexuality and a particular disconnectedness between mind and body. He is unable to control himself and/or to understand what he is thinking and feeling. His drawings also indicate emotional immaturity and lack contact features indicating that he is unable to connect with another person or tries to hide himself from others.  On the House-Tree -Person drawing, there is no connection between the figures and no connection is even possible. When asked to tell a story about his drawing, Mr. Pimble told the following story:
"They live up in the woods where thee are a lot of trees. He lives alone in the house. In the house is furniture, TV, clothes. The tree? It just grows real tall. It doesn't grow food. It's a tall tree."

The clinical interpretation of this story and the drawing is that neither the tree (male symbol) nor the house(female symbol) provide shade, comfort, nourishment, warmth nor access. *He is alone in the world in a "forest of (men) trees" that just exist.*

The drawings also project his sense of his own mental impairment, particularly processing problems. He has serious issues of low self- esteem and poor verbal comprehension. All of this, makes him particularly susceptible to the influence and leadership of others.

At the same time, Maurice is conflicted between feelings of guilt and dependency needs. He learned as a child that depending on others is painful and disappointing. More of this conflict and anxiety are revealed in his TAT stories. The Imports or themes of these stories are as follows:

1. When you find you cant do something you take lessons to learn how to do it better
2. because each person has his own thoughts and destination

3. and when your feelings are hurt you have trouble pulling yourself together but you learn to control yourself
4. or if you are told how to do something and don't do it and drop your responsibilities you now do what you are told.
5. If you are in a relationship you don't want it to go away but it does for awhile, then it returns
6. But when you get into a fight with weapons one goes to jail and the other to surgery.
7. on the other hand when two creatures are in a fight one can kill the other and consume it.
8. or you get into an argument with someone and cannot resolve it until you dream about it and awaken the next morning
9. and if you do something wrong you can almost kill yourself but get saved by the law enforcers who punish you for wrongdoing and you learn ever to do that again
10. but if you do something very hard, dangerous but good and do a good job of it, you are rewarded.

These stories reflect a strong concern with right and wrong and with achievement. However the also demonstrate that Maurice Pimble has little confidence in himself to succeed at doing what he knows is right. He feels weak and vulnerable. Important among these themes are the repeated instances of individuals in conflict with close ones and are unable or unmotivated for connecting with each other.

Conclusions

Mr. Pimble 's history and his clinical symptoms suggest he suffered an Attachment Disorder of childhood as well as probable toxicity in utero and abuse that included head trauma. The nutritional deficits in his childhood also contributed to the probability of central nervous system damage. Attachment Disorder of early childhood is a diagnosis consistent with his history of chaotic home environment and disrupted relationships. It is also consistent with his inability to feel connected with other people and places. His very poor self esteem and lack of emotional stability is consistent with a diagnosis of Anxiety Disorder and Chronic Post Traumatic Stress. These circumstances and consequence of childhood neglect and abuse would have made it difficult for Mr. Pimble to concentrate in school and to achieve learning objectives. His cognitive impairments were never addressed with special education although he was retained three or four times in elementary school. He is quite concerned with issues of right and wrong and cognizant of the need to follow rules and laws. However, he wants to be liked and is therefore easily led by peers who may not have the same standards of moral judgment. He expects punishment for his criminal actions and because he is naïve and low cognitive ability, committed actions for which he feels guilty. He also has difficulty with self- direction because of his weak ego or sense of self because he is Seriously Emotionally Disturbed. He fits the diagnosis Multiple Handicap because he has an emotional, mental and (probable)brain anomalies.

7

182

Neuropsychological testing of Maurice Pimble is essential to making a final diagnosis of his disabilities and is essential, also, to determining the etiology of his impairments.

### Recommendations for Educational and Psychological Remediation

Maurice Pimble needs one- on- one psychotherapy sessions to develop self esteem and confidence. Therapy needs to deal with his chronic Post Traumatic Stress Disorder, including the Dissociative phenomenon and flashbacks that interfere with his integration into present reality. But to be effective his therapy must include educational remediation. His Language Arts deficits can be addressed with an Orton-Gillingham method program. These are available on interactive CD for use by individuals. He will need training first to use a computer. This program includes speech and hearing and is therefore a complete sensory integration approach to learning.

His WAIS profile suggests that his Spatial Comprehension and Perceptual Organization skills might contribute to success in learning skills such as auto mechanics, heating and air conditioning mechanics and machine tool operations. There is every reason to believe that when Maurice Pimble has achieved literacy and job skills, he will also achieve confidence and self-esteem. He will need encouragement to persevere long enough to achieve a level of proficiency. Every attempt the ends in failure will further impair his fragile confidence. He is eager to learn a trade and to gain self-respect.

Maurice Pimble is <u>a Seriously Emotionally Disabled young man who was a Seriously Emotionally Disabled child</u> when he was attending the public schools of the District of Columbia. He is clearly Learning Disabled and has been Learning Disabled from his earliest days as a student in DCPS to the present time.

Rona M. Fields, Ph.D.
Licensed Clinical Psychologist

8

.183

UNIVERSITY OF THE DISTRICT OF COLUMBIA
DAVID A. CLARKE SCHOOL OF LAW
LEGAL CLINICS
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC 20008
Telephone: (202) 274-_____    Facsimile: (202) 274-5569

## FACSIMILE TRANSMITTAL AND COVER SHEET

**TO:** Leana Vespa

Agency/Organization DCPS Attorney

Facsimile Number 202-442-5556

**FROM:** Elizabeth Baker

**DATE:** 04/27/06

Brief message In Regard to Maurice Dimble.

---

☞ This cover sheet is the 1st of ____ pages.

If there are any errors in this transmittal, please call me.

I can be reached at (202)_____(office) or (202) 274-5569.

### ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

184

CURRICULUM VITAE

# RONA M. FIELDS
1618 MYRTLE ST. NW
WASHINGTON DC 20012
TEL: (202) 882-8833 (202) 545-1758 (FAX)
E-MAIL: RMFIELDS27@AOL.COM

**EDUCATION:**

| | | |
|---|---|---|
| B.A. | LAKE FOREST COLLEGE (HONORS IN PSYCHOLOGY) | |
| M.A. | LOYOLA UNIVERSITY OF CHICAGO(PSYCHOLOGY) | |
| PH.D. | UNIVERSITY OF SOUTHERN CALIFORNIA | |

## AREAS OF SPECIALIST QUALIFICATION:

DIPLOMATE, AMERICAN BOARD OF PROFESSIONAL DISABILITY CONSULTANTS

FELLOW: AMERICAN PSYCHOLOGICAL ASSOCIATION, DIVISION 27 AND DIVISION 46 AMERICAN BOARD OF FORENSIC EXAMINERS

LICENSED PSYCHOLOGIST WITH CLINICAL AND COUNSELING TRAINING, EXPERIENCE AND CREDENTIALS; EXPERIENCED CONSULTANT AND ADMINISTRATOR IN HEALTH CARE DELIVERY SYSTEMS. INTERNSHIPS: (BD. OF HEALTH, CITY OF CHICAGO)(PASADENA CITY SCHOOLS, PASADENA, CA)

PUBLISHED AND CONTRACTED RESEARCH AND CONSULTING IN TERRORISM; STUDIES OF SOCIAL CHANGE, VIOLENCE AND PREJUDICE; FORENSIC WORK IN CRIMINAL AND CONSTITUTIONAL LAW; PEACE-KEEPING OPERATIONS AND HOSTAGE NEGOTIATIONS; EXPERT WITNESS IN JUVENILE AND DOMESTIC COURTS; CONSULTANT AND RESEARCHER ON WOMEN IN DEVELOPMENT (HEALTH CARE AND ENERGY SYSTEMS); CONSULTANT ON IMMIGRATION, EXAMINATION AND TREATMENT OF TORTURE VICTIMS, CRISIS INTERVENTION, TREATMENT AND TRAINING OF CRISIS WORKERS.

## CIVIL SERVICE RATING: GS-14 (1978)

## LANGUAGE AND AREA EXPERIENCE:

READING FLUENCY IN SPANISH, PORTUGUESE, GERMAN; CONVERSATIONAL CAPACITY IN THOSE LANGUAGES AND GAELIC AND HEBREW. EXTENSIVE RESEARCH AND RESIDENCE IN WESTERN EUROPE AND THE MIDDLE EAST, CZECHOSLOVAKIA AND BULGARIA; RESEARCH AND TRAVEL IN CENTRAL AMERICA; RESIDENCE, RESEARCH AND WORK IN INDONESIA AND SOUTHEAST ASIAN COUNTRIES FOR UNITED NATIONS DEPARTMENTS; CONSULTATION AND RESEARCH IN AFRICA (ANGOLA, SOUTH AFRICA, LIBERIA, UGANDA, KENYA, TANZANIA AND NIGERIA); RESEARCH AND WORK ON HUMAN RIGHTS IN CHILE. AND ARGENTINA

HOSPITAL PRIVILEGES: NORTHERN VIRGINIA COMMUNITY HOSPITAL, ARLINGTON, VIRGINIA(NOW MOVED TO LOUDON)

D.C. GENERAL HOSPITAL (NOW CLOSED)

## POSITIONS HELD:

2006-2007    PRESIDENT, DISTRICT OF COLUMBIA PSYCHOLOGICAL ASSOCIATION

2004-2005    SENIOR RESEARCH FELLOW, CYBER SECURITY POLICY AND RESEARCH INSTITUTE, SCHOOL OF ENGINEERING AND APPLIED SCIENCES; GEORGE WASHINGTON UNIVERSITY, WASHINGTON, DC

1980-PRESENT    SR. ASSOCIATE OF ASSOCIATES IN COMMUNITY HEALTH AND DEVELOPMENT AND ASSOCIATES IN COMMUNITY PSYCHOLOGY (CLINICAL PRACTICE), WASHINGTON, D.C.

2006-2007    ADJUNCT PROFESSOR, SCHOOL OF EDUCATION AND MEDICAL SCHOOL, PSYCHIATRY HOWARD UNIVERSITY

1

2007-PRESENT        APPOINTED NATIONAL SPOKESPERSON FOR CHILDREN'S RIGHTS COUNCIL

2001        SENIOR PSYCHOLOGIST, NORTHERN VIRGINIA MENTAL HEALTH INSTITUTE, FAIRFAX, VIRGINIA (CLINICAL TREATMENT AND FORENSIC RESPONSIBILITIES) 1997-1999:

1998-1999    PEDIATRIC NEUROPSYCHOLOGIST, HEALTH SERVICES FOR CHILDREN WITH SPECIAL NEEDS, D.C. GENERAL HOSPITAL DEVELOPMENTAL EVALUATION TEAM

1997        ADJUNCT PROFESSOR, AMERICAN SCHOOL OF PROFESSIONAL PSYCHOLOGY-V, ROSLYN, VIRGINIA

1992        UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES CASEWORKER FOR UNACCOMPANIED MINORS

1991        SENIOR ASSOCIATE, PARTNERS IN INTERNATIONAL DEVELOPMENT, WASHINGTON, D.C.

1989-1990        VISITING LECTURER IN ANTHROPOLOGY MT. VERNON COLLEGE, WASHINGTON, D.C.

1989-1994    CLINICAL SUPERVISOR, CONNECTIONS, FALLS CHURCH, VA, CATHOLIC RELIEF SERVICES AGENCY FOR REFUGEE SERVICES

1986-1987        DIRECTOR OF BEHAVIORAL SCIENCES AND SR. VICE PRESIDENT, EMERGENCY SYSTEMS INTERNATIONAL, CLINICAL AND BEHAVIORAL SCIENCE SERVICES DIRECTOR

1986-1987    ASSOCIATE PROFESSOR, DEPARTMENT OF SOCIOLOGY, CLARK UNIVERSITY; WORCESTER, MASSACHUSETTS

1984        CLINICAL SUPERVISOR, FAMILY RELATIONS INSTITUTE, FALLS CHURCH, VA

1982-1983    GUEST PROFESSOR, DEPARTMENT OF SOCIOLOGY, AMERICAN UNIVERSITY OF BEIRUT; BEIRUT, LEBANON

1979-1982    ADJUNCT PROFESSOR OF PSYCHOLOGY, GEORGE MASON UNIVERSITY; FAIRFAX, VA

1977-1985    FOUNDER AND MEMBER OF THE BOARD OF DIRECTORS OF SOZIALWISSENSCHAFTLICHES INSTITUT FUR KATASTROPHEN UND UMFALLFORSCHUNG (SIFKU), KIEL, FEDERAL REPUBLIC OF GERMANY

1977-1982    MONTGOMERY COUNTY (MARYLAND) PUBLIC SCHOOLS – DIAGNOSTIC AND PROFESSIONAL SUPPORT SERVICES (DPST)
ADMINISTRATIVE UNIT, PSYCHOLOGIST SPECIALIST IN IMPLEMENTATION OF PL 94-142; PROGRAM DEVELOPMENT AND EVALUATION FOR HANDICAPPED CHILDREN; MCPS INTERAGENCY COORDINATOR FOR REFUGEE PROGRAMS (1980); CONTINUED TO REPRESENT AS CONSULTANT TO MCPS ON PSYCHOLOGICAL SERVICES SPECIAL NEEDS CHILDREN.

1977- 1987    ASSOCIATE, TRANSNATIONAL FAMILY RESEARCH INSTITUTE; BETHESDA, MARYLAND. POPULATION RESEARCH AND CONSULTING

1973-1976    MANAGEMENT CONSULTANT, BETSY HOGAN ASSOCIATES; BROOKLINE, MASSACHUSETTS

1972-1976    ASSOCIATE PROFESSOR OF SOCIOLOGY, CLARK UNIVERSITY; WORCESTER, MASSACHUSETTS

1971-1972    VISITING PROFESSOR, SCHOOL OF EDUCATION, CALIFORNIA STATE UNIVERSITY AT NORTHRIDGE

1971-1972    PROFESSOR, CALIFORNIA SCHOOL OF PROFESSIONAL PSYCHOLOGY; LOS ANGELES, CALIFORNIA

1968-1971    PROFESSOR OF PSYCHOLOGY AND HUMAN DEVELOPMENT, PACIFIC OAKS COLLEGE; PASADENA, CALIFORNIA

2

Rona M. Fields

1966-1972         ASSISTANT PROFESSOR, DEPARTMENT OF PSYCHOLOGY, CALIFORNIA STATE UNIVERSITY; LOS ANGELES (PART-TIME)

1968-1969         ASSISTANT PROFESSOR, DEPARTMENT OF PSYCHOLOGY, CALIFORNIA STATE UNIVERSITY AT LONG BEACH (PART-TIME)

1967-1969         ASSISTANT PROFESSOR, SCHOOL OF EDUCATION, CALIFORNIA STATE UNIVERSITY AT NORTHRIDGE (PART-TIME)

1964-1967         NDEA PROGRAM PSYCHOLOGIST, MONROVIA GUIDANCE CENTER; MONROVIA, CALIFORNIA

1963-1964         NIMH PROJECT PSYCHOLOGIST, BOARD OF HEALTH, DIVISION OF MENTAL HEALTH, COMMUNITY MENTAL HEALTH; CHICAGO, ILLINOIS

## PARTIAL LIST OF PUBLICATIONS:

BOOKS:         MARTYRDOM: THE PSYCHOLOGY, POLITICS AND THEOLOGY OF SELF SACRIFICE GREENWOOD/PRAEGER,, MARCH,2004
        THE FUTURE OF WOMEN (GENERAL HALL, INC., NEW YORK, 1985)
        NORTHERN IRELAND (TRANSACTION BOOKS, NEW BRUNSWICK, NEW JERSEY, 1980)
        SOCIETY UNDER SIEGE (TEMPLE UNIVERSITY PRESS, PHILADELPHIA, PENNSYLVANIA, 1976)
        THE ARMED FORCES MOVEMENT AND THE PORTUGUESE REVOLUTION (PRAEGER, NEW YORK, 1976)
        A SOCIETY ON THE RUN (PENGUIN. LTD., HAMMONDSWORTH, UK. 1973)

M.A. THESIS :   PERSONALITY DYNAMICS OF ADOLESCENT UNWED MOTHERS, LOYOLA UNIVERSITY OF CHICAGO, 1964

PH.D. DISSERTATION: THE BROWN BERETS: A PARTICIPANT OBSERVATION STUDY OF SOCIAL ACTION, UNIVERSITY OF SOUTHERN CALIFORNIA, 1970

MONOGRAPHS:      TEACHER EVALUATION OF THE CULTURALLY DIFFERENT CHILD, AMERICAN PSYCHOLOGICAL ASSOCIATION, JOURNAL SUPPLEMENT ABSTRACT SERVICE, 1974

        WOMEN AND THE LIFE CYCLE: FEMINISTS AND TRADITIONALISTS, AMERICAN PSYCHOLOGICAL ASSOCIATION, JOURNAL SUPPLEMENT ABSTRACT SERVICE, 1976

FORENSIC:       "INSIDE LEE MALVO'S MIND: BRAINWASHING? REACTIVE ATTACHMENT DISORDER? GUILTY? INSANE? IT'S FOR THE JURY TO DECIDE," THE LEGAL TIMES, DECEMBER 15,2003

        "The Science of Expert Opinion" Chapter VII in M.A. Shiffman, ed., Ethics in Forensic Science and Medicine; Charles C. Thomas, Springfield, Il. 2000

PUBLICATIONS ON TERRORISM AND TERRORISTS:
        "Xenophobia: The Consequence of Social Trauma" Trauma and Post-Traumatic Stress ; Vol.1 Ed. E.Carll; Praeger, New York, 2007

        "The Remarkable Normalcy of Dying to Kill in Holy War" Mental Disorders of the New Millenium.,Vol.2; Ed. Thomas Plante; Praeger, New York 2006

        "Palestinian Suicide Bombers" Chapter in The Psychology of Terrorism Volume 2 Ed. Chris Stout Praeger, New

        "PREDICTED FORMULA FOR A TERROR VOCATION" AND "WOMEN (PEACE) SOLDIERS", IN J.E. LUNDBERG, V. OTTO, B. RYBECK, WARTIME MEDICAL SERVICES (FOA, STOCKHOLM, SWEDEN, 1990)

3

Rona M. Fields

"PETE THE PARA: TERRORIZED INTO TERRORIST", IN O'DAY AND ALEXANDER, TERRORISM IN NORTHERN IRELAND (WHEATSHEAF, DIV. SIMON AND SHUSTER U.S.; 1989)

"PSYCHOLOGICAL SEQUELAE OF TERRORIZATION" IN ALEXANDER AND GLEASON, TERRORISM: A BEHAVIORAL PERSPECTIVE (PRAEGER, NEW YORK, 1981)

"VICTIMS OF TERROR", IN RAPPAPORT AND ALEXANDER, MORAL IMPLICATIONS OF TERRORISM (CRANE, RUSSEK & CO., NEW YORK; 1982)

"VICTIMS OF TERRORISM: THE EFFECTS OF PROLONGED STRESS", IN EVALUATION AND CHANGE; SPECIAL ISSUE ON SERVICES FOR SURVIVORS, 1980; ED. SALASIN

"CHILDREN OF VIOLENCE: VIOLENT CHILDREN" HISTORY OF CHILDHOOD QUARTERLY, FALL, 1979

"MOTIVATION ZU KATASTROPHEN: PSYCHOLOGICAL CONSEQUENCES", SIFKU-INFORMATIONEN, VOL. 2 NO. 2, 1979

"PEACEKEEPING AS HOSTAGE", THE NATION, APRIL, 1989, DUBLIN

"THE LOST CHILDREN OF WAR", WASHINGTON POST SUNDAY MAGAZINE, DECEMBER 18, 1988

"IRISHBATT: PEACEKEEPING IN LEBANON", IRISH ECHO, (SERIES OF ARTICLES, MARCH, 1988)

FEATURE WRITER AND OVERSEAS REPORTER FOR:
IRISH INDEPENDENT (DUBLIN, IRELAND); IRISH PRESS (DUBLIN, IRELAND); WORCESTER TELEGRAM (MASSACHUSETTS) ARTICLES AND FEATURES FROM 1974-PRESENT; INTER-PRESS SERVICE (THIRD WORLD NEWS AND FEATURE AGENCY – BASED IN ROME); BROADCAST JOURNALIST WITH KPFK; KTLA (LOS ANGELES, CALIFORNIA STATIONS); WAAB (WORCESTER MASSACHUSETTS); WCGY (NEW BEDFORD, MASSACHUSETTS); PACIFICA NEWS NETWORK, RTE (DUBLIN). ARTICLES INCLUDE:

"LOOKING BACKWARD", APA MONITOR, AUG.-SEPT. 1977

"KINDER UND KATASTROPHEN" BIE, MAGAZINE FOR EDUCATORS, FEDERAL REPUBLIC OF GERMANY, FEB. 1977

"NORDE, IRLANDE" WEST BERLIN EXTRA, (TWO PARTS) DEC. 1976, JANUARY, 1977

"THE FUTURE OF THE PORTUGUESE REVOLUTION" WIN MAGAZINE, JULY, 1976

"PATRIOT CHILDREN" CAPUCHIN ANNUAL REVIEW, 1975-6

"DR. STRANGELOVE IN NORTHERN IRELAND" THE NEW HUMANIST, SPRING, 1972

INVITED PARTICIPANT: NIH CONSENSUS CONFERENCE ON TRAUMATIC BRAIN INJURY AND REHABILITATION, OCTOBER 1998
CONTINUING EDUCATION PROGRAMS IN NEUROPSYCHOLOGY AT NIH, SEPT. 1998; APA WORKSHOPS, SAN FRANCISCO, 1998

PAPERS PRESENTED AT PROFESSIONAL MEETINGS: (A PARTIAL LISTING)

2005 AMERICAN PSYCHOLOGICAL ASSOCIATION CONVENTION OPENING SESSION "WELCOME TO THE DISTRICT OF COLUMBIA

2005 GUEST LECTURES ON BOOK, MARTYRDOM AT: HARVARD DIVINITY SCHOOL (MARCH) BOSTON COLLEGE(MARCH) BOSTON UNIVERSITY(MARCH) SANTA CLARA UNIVERSITY, CALIFORNIA(APRIL)

4

Rona M. Fields

2004 CEU PRESENTATION TO PHYSICIANS AT NORTHERN VIRGINIA COMMUNITY HOSPITAL " THE NEUROPSYCHOLOGY OF PAIN"

2004 GEORGE WASHINGTON UNIVERSITY , PSYCHIATRY RESIDENTS THE LAST FRONTIER: THE NEUROPSYCHOLOGY OF PAIN

2003 YALE UNIVERSITY, PROGRAM ON GENOCIDE, "MARTYRDOM, TERRORISM AND GENOCIDE"

2003 INVITED ADDRESS, DIVISION OF PERSONALITY AND SOCIAL PSYCHOLOGY AMERICAN PSYCHOLOGICAL ASSOCIATION
    TRIBUTE TO "MAGDA ARNOLD"

1998 "REFUGEES: HUMAN RIGHTS IN ECONOMIC GLOBALIZATION" INTERAMERICAN CONGRESS ON ECONOMIC GLOBALIZATION AND HUMAN RIGHTS, SANTIAGO, CHILE

1997 INTERNATIONAL SOCIETY FOR POLITICAL PSYCHOLOGY, KRAKOW, POLAND, (CO-CHAIR PANEL AND PRESENTATION) "THE POLITICAL PSYCHOLOGY AND IMPUNITY"

1997 APA ANNUAL CONVENTION, CHICAGO, ILLINOIS   "THE USE AND ABUSE OF PSYCHOLOGY BY GOVERNMENT INTELLIGENCE AGENCIES"

1996 INTER-AMERICAN SYMPOSIUM ON IMPUNITY, SANTIAGO, CHILE  "IMPUNITY OR HEALING"

1995   BRITISH AND EASTERN EUROPEAN PSYCHOLOGY GROUP, PSYCHOLOGY IN THE CHANGING EUROPE; BANSKA BYSTRICA, SLOVAKIA

1995 SECOND INTERNATIONAL CONFERENCE ON COMMUNITY HEALTH, GAZA COMMUNITY MENTAL HEALTH CENTER, GAZA, PALESTINE (TWO SEPARATE SYMPOSIA PRESENTATIONS)

1992 APA CENTENNIAL CONVENTION.  DIVISION 15. "THE TERRIBLE SECRET: SEXUAL VICTIMIZATION OF ACADEMIC WOMEN"; DIV. 19 "THE STRESS OF PEACEKEEPING" (TWO SYMPOSIA),

1992 WORLD CONGRESS INTERNATIONAL SOCIETY FOR TRAUMATIC STRESS STUDIES "LIFE AND DEATH ON A SMALL ISLAND" AND "THE MIND OF THE KHMER ROUGE CHILD"

1990 TWELFTH INTERNATIONAL CONFERENCE OF THE INTERNATIONAL POLITICAL PSYCHOLOGY ASSOCIATION, WASHINGTON, D.C., "HUMAN RIGHTS/TERRORISM"

1990 SECOND CONFERENCE ON WOMEN'S POLICY ISSUES, WASHINGTON, D.C., "THE GLASS LID ON THE ACADEMIC CAGE"

1989 WORLD FEDERATION OF MENTAL HEALTH, AUCKLAND, NEW ZEALAND, "PROLONGED TRAUMATIC STRESS"

1989 FOURTH INTERNATIONAL CONFERENCE ON PSYCHOLOGICAL STRESS IN WAR AND PEACE, TEL AVIV, ISRAEL

1988 AMERICAN PSYCHOLOGICAL ASSOCIATION, SYMPOSIUM, "A PREDICTIVE FORMULA FOR TERROR"

1987 SECOND ANNUAL CONFERENCE OF TRAUMATIC STRESS STUDIES, "TERRORIZED INTO TERRORISTS"

1987 THIRD INTERNATIONAL INTERDISCIPLINARY CONFERENCE ON WOMEN, DUBLIN, IRELAND, TWO WORKSHOPS

1986 AMERICAN PSYCHOLOGICAL ASSOCIATION ANNUAL CONVENTION, "PSYCHOLOGICAL PROFILE OF A TERRORIST" CIRP INVITED PANEL, WASHINGTON, D.C.

5

Rona M. Fields

1981   INVITED SYMPOSIUM, NATIONAL ASSOCIATION OF COMMUNITY HEALTH CENTERS, DALLAS, TEXAS

1981   INVITED PRESENTATION, STONE HOUSE CONFERENCE ON VICTIM SERVICES; NIH, WASHINGTON, D.C. (CONTRACTED BIBLIOGRAPHY ON TRAUMATIC STRESS)

1980   INTERNATIONAL CONFERENCE ON VICTIMOLOGY, WASHINGTON, D.C.

1980   NATIONAL ORGANIZATION FOR VICTIM ASSISTANCE (NOVA), PARTICIPATED IN CONSULTATION, PORTLAND, OREGON: "PSYCHOLOGICAL SEQUELAE OF TRAUMATIC VIOLENCE"

1980   INTERNATIONAL CONFERENCE ON SERVICES TO VICTIMS, NIH, ALSO PUBLISHED BIBLIOGRAPHY, WASHINGTON, D.C.

1980   INTERNATIONAL SOCIOLOGY ASSOCIATION SEMINAR ON WOMEN AND WORK, VARNA, BULGARIA; (AMERICAN PSYCHOLOGICAL ASSOCIATION CONVENTION IN MONTREAL, CANADA (TWO INVITED SYMPOSIA))

1979   INTERNATIONAL POLITICAL PSYCHOLOGY ASSOCIATION 2ND ANNUAL CONVENTION, "TERRORISM"

1979   UCLA INVITATIONAL CONFERENCE ON TERRORISM

1978   SECOND INTERNATIONAL CONFERENCE ON PSYCHOLOGICAL STRESS AND ADJUSTMENT IN TIMES OF WAR AND PEACE, JERUSALEM, ISRAEL

1976   CONFERENCE "CRISIS IN PORTUGAL", NEW ENGLAND POLITICAL SCIENCE ASSOCIATION, UNIVERSITY OF TORONTO

1976   INTERNATIONAL CONFERENCE ON "VIOLENCE IN INDUSTRIAL SOCIETIES", BRUSSELS, BELGIUM

1975     INTERNATIONAL STUDIES ASSOCIATION, "THE MOVIMENTO DAS FORCAS ARMADAS AND THE NON-STATE NATIONS OF PORTUGUESE AFRICA..." WASHINGTON, D.C.

1975   INTERNATIONAL CONFERENCE ON PSYCHOLOGICAL STRESS AND ADJUSTMENT IN TIMES OF WAR AND PEACE, "THE EFFECTS OF STRESS ON CHILDREN IN NORTHERN IRELAND", ISRAEL

1975   MINI CONFERENCE, COUNCIL OF WEST EUROPEAN STUDIES, "MFA: PORTUGAL FACES LEFT", YALE UNIVERSITY

## EXPERT WITNESS TESTIMONY:

1969          LOS ANGELES, CALIFORNIA
              JURY SELECTION

1972          DIMINISHED CAPACITY
              TESTS FOR JURY SELECTION

1976          NEW YORK STATE SUPREME COURT
              K-Z SYNDROME, DIMINISHED CAPACITY

1978          SAN FRANCISCO - FEDERAL COURT
              MMIGRATION LAW

1980          NEW YORK - FEDERAL COURT
              IMMIGRATION LAW

1981-1982     PHILADELPHIA, PA - CRIMINAL COURT
              COMBAT STRESS DISORDER

6

Rona M. Fields

| | |
|---|---|
| **1980** | **WASHINGTON, D.C. - WORKMAN'S COMPENSATION BOARD**<br>**POST TRAUMATIC STRESS DISORDER (PTSD)** |
| **1984** | **WASHINGTON, D.C. SUPERIOR COURT**<br>**JUVENILE** |
| | **PHILADELPHIA, PA CRIMINAL COURT**<br>**SPOUSAL ABUSE** |
| | **FAIRFAX COUNTY, VA DOMESTIC RELATIONS**<br>**SPOUSAL ABUSE** |
| | **MONTGOMERY COUNTY, MD CIVIL COURT**<br>**COMPETENCY** |
| **1986** | **PHILADELPHIA, PA CRIMINAL COURT**<br>**COMBAT STRESS/PTSD** |
| | **WASHINGTON, D.C. SUPERIOR COURT**<br>**JUVENILE - WASHINGTON, D.C.** |
| | **FAIRFAX COUNTY, VA JUVENILE COURT**<br>**JUVENILE DELINQUENCY** |
| **1987** | **WASHINGTON, D.C. SUPERIOR COURT**<br>**JUVENILE ABUSE AND NEGLECT** |
| | **ALEXANDRIA, VA DISTRICT COURT**<br>**COMPETENCY** |
| **1988** | **FAIRFAX COUNTY, VA CRIMINAL COURT**<br>**PTSD/COMBAT STRESS**<br>**SPOUSAL ABUSE**<br>**COMPETENCY** |
| **1990** | **MONTGOMERY COUNTY, MD CIVIL COURT**<br>**COMPETENCY** |
| **1993** | **FAIRFAX COUNTY, VA FAMILY DOMESTIC RELATIONS COURT**<br>**DEMENTIA COMPETENCY** |
| | **ALEXANDRIA, VA DISTRICT COURT**<br>**COMPETENCY** |
| | **PRINCE WILLIAM COUNTY, VA CRIMINAL COURT**<br>**CAPITAL SENTENCING**<br>**CRIMINAL/PTSD** |
| **1994** | **FAIRFAX COUNTY, VA FAMILY DOMESTIC RELATIONS COURT**<br>**JUVENILE CUSTODY** |
| | **ALEXANDRIA, VA DISTRICT COURT**<br>**COMPETENCY** |
| | **STATE OF FLORIDA CRIMINAL COURT SENTENCING APPEAL**<br>**CAPITOL OFFENSE** |

7

Rona M. Fields

PTSD/DISSOCIATIVE DISORDERS

WASHINGTON, D.C. WORKMAN'S COMPENSATION BOARD
PTSD

1995    WASHINGTON, D.C. SUPERIOR COURT, CRIMINAL DIVISION
COMPETENCY/CRIMINAL

WASHINGTON, D.C. SUPERIOR COURT
JUVENILE DELINQUENCY

FAIRFAX COUNTY, VA DISTRICT COURT
DOMESTIC ABUSE/CUSTODY
PTSD

1996    ALEXANDRIA, VA CRIMINAL COURT
CRIMINAL COMPETENCY/CULPABILITY

WASHINGTON, D.C. SUPERIOR COURT
JUVENILE

FAIRFAX COUNTY, VA CIRCUIT COURT
CHILD ABUSE

FAIRFAX COUNTY, VA CIRCUIT COURT
ADOPTION RIGHTS

FEDERAL COURT - ALEXANDRIA, VA
CRIMINAL CULPABILITY

1997    PRINCE WILLIAM COUNTY, VIRGINIA
TERMINATION OF PARENTAL RIGHTS

FEDERAL COURT-DISTRICT OF COLUMBIA
DIMINISHED CAPACITY-MENTAL RETARDATION

1998    FEDERAL COURT-ALEXANDRIA, VIRGINIA
CAPITAL HOMICIDE IN CONNECTION WITH DRUG CONSPIRACY

2000    DISTRICT COURT, ARLINGTON, VIRGINIA.
COMPETENCE TO STAND TRIAL (DIMINISHED CAPACITY SEXUAL OFFENSE)

CIRCUIT COURT, PRINCE WILLIAM COUNTY
RELINQUISHMENT OF PARENTAL RIGHTS

SUPERIOR COURT, WASHINGTON, D.C.
COMPENSATORY EDUCATION

U.S. COURT OF APPEALS
ABILITY OF A MENTALLY HANDICAPPED MINOR TO PARTICIPATE ADEQUATELY IN HIS OWN
DEFENSE AND RESPOND TO POLICE INTERROGATION.

CIRCUIT COURT, FAIRFAX COUNTY
FITNESS FOR UNSUPERVISED PARENTAL VISITATION

8

192

Rona M. Fields

2001                (THESE CASES WERE ENTERED IN MY CAPACITY AS SENIOR CLINICAL AND FORENSIC
            PSYCHOLOGIST AT NORTHERN VIRGINIA MENTAL HEALTH INSTITUTE):

            PRINCE WILLIAM COUNTY DISTRICT COURT
            COMPETENCE AND RESTORABILITY TO COMPETENCE

            ARLINGTON COUNTY CIRCUIT COURT
            MENTAL STATUS: CONTINUED INVOLUNTARY COMMITMENT

            ADJUDICATION REVIEW FOR NOT GUILTY BY REASON OF INSANITY (CONTINUED IN
            HOSPITAL PROGRAM)

            FAIRFAX COUNTY CIRCUIT COURT
            COMPETENCE FOR INFANT CUSTODY

2002        FOUR IMMIGRATION AND ASYLUM CASES US IMMIGRATION COURT IN NORTHERN
    VIRGINIA
2003        CHILD CUSTODY IN STAFFORD COUNTY; 2 SCHOOL LAW CASES IN D.C.
2004        CHILD CUSTODY FREDRICKSBURG,VA.; CRIMINAL CASE FREDRICKSBURG, VA.;
IMMIGRATION
2005        FOUR IMMIGRATION CASES; TORTURE/ASYLUM CASE; FAPE IDEA CASE APPEAL IN
DELAWARE;
                PARENTAL RIGHTS IN DC;
2006        SEXUAL HARRASSMENT IN THE WORKPLACE FEDERAL COURT

## KEYNOTE SPEAKER:

1988  ANNUAL CONFERENCE ON DISPLACED PERSONS IN THAILAND

1988  ORGANIZED AND PRESENTED 2 PAPERS AT INVITATIONAL CONFERENCE: POLITICAL SOCIALIZATION IN
    VIOLENCE, CENTER FOR INTERNATIONAL DEVELOPMENT, UNIVERSITY OF MARYLAND

1981  YMCA, D.C. METROPOLITAN AREA CONFERENCE ON THE FAMILY

1977  MARYLAND STATE PSYCHOLOGICAL ASSOCIATION

1977  AMERICAN ASSOCIATION OF WOMEN DEANS, NEW YORK, NY

1974  CONFERENCE ON REHABILITATION OF TORTURED PERSONS, MEDICAL FACULTY OF UNIVERSITY OF
LISBON, PORTUGAL

1971  NEW MEXICO STATE SCIENCE FAIR

## GUEST LECTURES: (A PARTIAL LISTING)

2004        "INTRODUCING MARTYRDOM", PRESENTATION IN RM. HC-8, US CAPITOL SPONSORED BY THE
            GEORGE WASHINGTON UNIVERSITY CENTER ON HOMELAND SECURITY POLICY AND THE
            CENTER FOR ADVANCED DEFENSE STUDIES, AMERICAN UNIVERSITY SCHOOL OF PUBLIC
            SERVICE( JANUARY, 20, 2004)
2003        YALE UNIVERSITY, COLLOQUIUM ON GENOCIDE STUDIES ( OCTOBER,2003)
1988        UNIVERSITY OF BERGEN, NORWAY
1987-1988   HAIFA UNIVERSITY, ISRAEL
1982-1983   GUEST PROFESSOR, AMERICAN UNIVERSITY OF BEIRUT, LEBANON
1983        DARTMOUTH UNIVERSITY MEDICAL SCHOOL, DANFORTH LECTURER
1979        UNIVERSITY OF CINCINNATI: WOMEN'S STUDIES SUSAN B. ANTHONY DAY
1978        INSTITUTE FOR ADVANCED STUDIES IN PSYCHOLOGY, LISBON, PORTUGAL
1977        KIBBUTZ AMIR, ISRAEL

9

Rona M. Fields

| | |
|---|---|
| 1976 | MEDICAL FACULTY, UNIVERSITY OF LISBON (APRIL) |
| 1975 | INSTITUTE FOR CRIMINOLOGY, UNIVERSITY OF OSLO, NORWAY |
| | INSTITUTE FOR PSYCHOLOGY, UNIVERSITY OF OSLO, NORWAY |
| | INSTITUTE FOR SOCIAL MEDICINE, UNIVERSITY OF OSLO, NORWAY |
| | PEACE RESEARCH INSTITUTE, OSLO, NORWAY |
| | STONEHILL COLLEGE: "IRELAND: A SOCIAL EXPERIMENT" (APRIL) |
| 1974 | UNIVERSITY COLLEGE, DUBLIN, IRISH LABOUR HISTORY SOCIETY (JULY) |
| 1973 | LONDON SCHOOL OF ECONOMICS (OCTOBER 25) |
| | ARTS CLUB, DUBLIN, IRELAND (OCTOBER 27) |

## CONSULTATIONS: (PARTIAL LISTING)

| | |
|---|---|
| 1992 | UNHCR AND US CATHOLIC CONFERENCE |
| JUNE, 1992 | DIVISION OF MILITARY PSYCHOLOGISTS, REPUBLIC OF INDONESIA ARMY, BANDUNG, JAVA |
| 1989-1992 | CONNECTIONS, CATHOLIC CHARITIES; REFUGEE RESETTLEMENT |
| 1989 | ALEXANDRIA CITY SCHOOLS |
| 1989 | CABLE NEWS NETWORK SERIES, "WAGING PEACE" |
| 1989 | WILGESPRUIT FELLOWSHIP CENTRE, RODEPOORT, REPUBLIC OF SOUTH AFRICA |
| 1976-1980 | ALEXANDRIA CORRECTIONAL CENTER |
| 1986-1995 | ALEXANDRIA COMMUNITY DIVERSION PROGRAM |
| 1985-1986 | WOMEN'S MEDICAL CENTER OF WASHINGTON, D.C. |
| 1984-1985 | GEORGETOWN UNIVERSITY, CENTER FOR STRATEGIC INTERNATIONAL STUDIES BIOMASS PROJECT ON WOMEN IN DEVELOPMENT |
| 1984-PRESENT | DISABILITY DETERMINATION SERVICES, SOCIAL SECURITY ADMINISTRATION |
| | VOCATIONAL REHABILITATION SERVICES, SOCIAL SECURITY ADMINISTRATION |
| 1983 | PONTIFICAL MISSION TO LEBANON (FROM THE VATICAN) |
| 1982-PRESENT | MONTGOMERY COUNTY (MD.) PUBLIC SCHOOLS SPECIAL EDUCATION PROGRAMS |
| 1982-1989 | AMERICAN UNIVERSITY, B.C.I.U. CONSULTANT ON SOCIAL AND PSYCHOLOGICAL FACTORS IN EUROPE AND THE MIDDLE EAST |
| 1982-1983 | INTERNATIONAL CHRISTIAN AID, SIDON, LEBANON |
| 1981-1983 | ALEXANDRIA CENTERS FOR EMPLOYMENT; |
| | NIMH PROGRAM FOR VICTIM SERVICES; WOODROW WILSON SCHOOL, PRINCETON UNIVERSITY; PROJECT ON POLICY RESEARCH; FAMILY CONFERENCE, NATIONAL CAPITOL YMCA, METROPOLITAN WASHINGTON, D.C. |
| 1980-1984 | UNITED WAY, ALEXANDRIA, VIRGINIA |
| 1980-1984 | ELECTED SECRETARY OF THE ALEXANDRIA MAYOR'S COMMITTEE ON THE HANDICAPPED |
| 1979 | U.S. BUREAU OF ALCOHOL, TOBACCO AND FIREARMS |
| 1979 | OFFICE OF TECHNOLOGY ASSESSMENT PANEL ON TAGGANTS IN EXPLOSIVES |
| 1979 | NORTHERN VIRGINIA CRIMINAL JUSTICE ACADEMY |
| 1978-1984 | MAYOR'S COMMITTEE ON THE HANDICAPPED (ALEXANDRIA, VIRGINIA |
| 1978 | MUCKAMORE ABBEY HOSPITAL, BELFAST, NORTHERN IRELAND |
| 1977-1978 | MONTGOMERY COUNTY PUBLIC SCHOOLS, HANDICAPPED ADOLESCENTS |
| 1976 | AFFIRMATIVE ACTION CONSULTANT (BETSY HOGAN ASSOCIATES), (SINCE 1973) |
| 1975 | PEACE RESEARCH INSTITUTE OF OSLO, NORWAY |
| | CONSULTANT TO THE MINISTRY FOR SOCIAL COMMUNICATION (PORTUGAL) |
| 1975 | CONSULTANT TO THE MINISTRY FOR SOCIAL WELFARE (PORTUGAL) |
| 1973-1975 | AMNESTY INTERNATIONAL MEDICAL COMMISSION |
| 1973 | MINISTRY OF COMMUNITY RELATIONS, NORTHERN IRELAND (JANUARY) |
| | MINISTRY OF HEALTH AND WELFARE, NORTHERN IRELAND (JANUARY) |
| | SPECIAL COURTS TRIBUNAL, THE MAZE PRISON, NORTHERN IRELAND (JULY) |
| 1973 | EXPERT WITNESS TESTIMONY, NORTHERN IRELAND |
| 1972 | NORTHERN IRELAND CIVIL RIGHTS ASSOCIATION |
| | ASSOCIATION FOR LEGAL JUSTICE, BELFAST, NORTHERN IRELAND |

## LICENSES:

LICENSED PSYCHOLOGIST, STATE OF ILLINOIS, 1964-1978

10

Rona M. Fields

PUPIL PERSONNEL CREDENTIALS, STATE OF CALIFORNIA, 1966
REGISTERED PSYCHOLOGIST, STATE OF MASSACHUSETTS, 1973-1980
MARRIAGE, FAMILY AND CHILD COUNSELOR, STATE OF CALIFORNIA, 1966-1980
LICENSED PSYCHOLOGIST COMMONWEALTH OF VIRGINIA, 1978-PRESENT
LICENSED CLINICAL PSYCHOLOGIST, DISTRICT OF COLUMBIA, 1978-PRESENT
CERTIFIED SCHOOL PSYCHOLOGIST, STATE OF MARYLAND, 1977-PRESENT
DIPLOMATE, AMERICAN BOARD OF DISABILITY CONSULTANTS, 1990-PRESENT
FELLOW, AMERICAN BOARD OF FORENSIC EXAMINERS- FORENSIC PSYCHOLOGY

## AWARDS AND HONORS:

WHO'S WHO OF AMERICAN WOMEN - MARQUIS, 1976-PRESENT
AMNESTY INTERNATIONAL FELLOWSHIP AT THE PEACE RESEARCH INSTITUTE OF OSLO (NORWAY, 1975)
GAMMA PHI DELTA AWARD FOR WORK IN COMMUNITY HEALTH IN LOS ANGELES, CALIFORNIA, 1970
CITY OF PHILADELPHIA, MAYOR'S AWARD FOR WORK IN HUMAN RIGHTS, 1978
LAKE FOREST COLLEGE, DISTINGUISHED SERVICE AWARD FOR WORK IN HUMAN RIGHTS, 1978
ASSOCIATION FOR WOMEN IN PSYCHOLOGY – FOUNDING FOREMOTHER AWARD, 1984
STERLING PRICE WILLIAMS AWARD FOR OUTSTANDING SENIOR IN PSYCHOLOGY, LAKE FOREST COLLEGE, 1953

## PROFESSIONAL MEMBERSHIPS AND ACTIVITIES:
| | |
|---|---|
| 1968-PRESENT | AMERICAN PSYCHOLOGICAL ASSOCIATION |
| 1984-1989 | ASSOCIATION FOR WOMEN IN DEVELOPMENT |
| 1977-1980 | VIRGINIA STATE PSYCHOLOGICAL ASSOCIATION |
| 1974 | ROYAL SOCIETY FOR HEALTH (MEMBER) |
| 1974 | MASSACHUSETTS PSYCHOLOGICAL ASSOCIATION (MEMBER) |
| 1974-1998 | SOCIOLOGISTS FOR WOMEN IN SOCIETY |
| 1973-1974 | RESEARCH COMMITTEE OF THE MEDICAL COMMISSION OF AMNESTY INTERNATIONAL |
| 1973 | SOCIETY FOR THE PSYCHOLOGICAL STUDY OF SOCIAL ISSUES |
| 1972-1973 | AMERICAN PSYCHOLOGICAL ASSOCIATION TASK FORCE ON THE STATUS OF WOMEN IN PSYCHOLOGY |
| 1973-1990 | AMERICAN SOCIOLOGICAL ASSOCIATION |
| 1973-1976 | COORDINATOR, INTERNATIONAL COMMISSION OF HEALTH PROFESSIONALS |
| 1972-1973 | AMERICAN PSYCHOLOGICAL ASSOCIATION BOARD OF SOCIAL AND ETHICAL RESPONSIBILITY |
| 1972-1989 | NATIONAL WOMEN'S POLITICAL CAUCUS |
| 1972 | CALIFORNIA STATE PSYCHOLOGICAL ASSOCIATION, PEACE RESEARCH COMMITTEE |
| 1971 | CASPP, SOCIAL ISSUES COMMITTEE |
| 1968-PRESENT | ASSOCIATION FOR WOMEN IN PSYCHOLOGY |
| 1968-1972 | MEDICAL COMMITTEE FOR HUMAN RIGHTS |
| 1968-1980 | PSYCHOLOGISTS FOR SOCIAL ACTION, NATIONAL COORDINATOR, 1969-1972 |

## WORKSHOP COORDINATOR:
| | |
|---|---|
| 1985 | ZERO-GRAZING: THE GREENBELT MOVEMENT, NAIROBI, KENYA,(UN CONFERENCE ON WOMEN ) NGO FORUM) |
| 1982 | POLITICAL VIOLENCE AND CHANGE, UNIVERSITY OF MARYLAND |
| 1979-1982 | WORKSHOPS AT THE YMCA ON STRESS MANAGEMENT, TAUGHT AND COORDINATED TWICE A YEAR |
| 1974-1976 | WORCESTER IRISH CULTURE FESTIVAL, MARCH (FORTNIGHT) |
| 1973 | INTERNATIONAL FEMINIST PLANNING CONFERENCE (SIMMONS COLLEGE, BOSTON, MA, JUNE) |
| 1970 | THE SOCIAL AND EDUCATIONAL IMPLICATIONS OF PIAGET'S WORK (JUL.-AUG.) |
| 1970 | ERIC BERNE ON "SCRIPT ANALYSIS" (MARCH) |

## ADMINISTRATIVE EXPERIENCE:

BOARD OF ADVISORS, PEACE THROUGH EDUCATION, 1990 - 1992
BOARD OF DIRECTORS, AMERICAN CANCER SOCIETY, ALEXANDRIA, 1985 - 1990

11

Rona M. Fields

BOARD OF DIRECTORS, WOMEN'S MEDICAL CENTER OF WASHINGTON, D.C., 1985 - 1987
BOARD OF DIRECTORS, YMCA OF METROPOLITAN WASHINGTON, 1982 - 1984
VICE PRESIDENT, PRESIDENT, ALEXANDRIA YMCA 1978-84
SECRETARY, ALEXANDRIA MAYOR'S COMMITTEE FOR THE HANDICAPPED, 1980 - 1982
COORDINATOR FOR MONTGOMERY COUNTY PUBLIC SCHOOLS, HEALTH, SOCIAL SERVICES PROGRAM FOR INDOCHINA REFUGEES, 1979
ASSOCIATE DIRECTOR, NATIONAL CENTER FOR THE STUDY OF CORPORAL PUNISHMENT AND ITS
    ALTERNATIVES IN THE SCHOOLS,
    TEMPLE UNIVERSITY, 1977
DIRECTING OVERSEAS STUDENT PROJECT, NORTHERN IRELAND, 1972, 1993-1994
NATIONAL COORDINATOR OF PSYCHOLOGISTS FOR SOCIAL ACTION, 1969 - 1972
DIRECTOR, CHICANO (BROWN BERET) EAST LOS ANGELES FREE CLINIC, 1968 - 1969
ADMINISTRATOR FOR NDEA GRANT TO MONROVIA GUIDANCE CENTER (CA., 1964 - 1967)

## COURSES TAUGHT:

EMPIRICAL RESEARCH METHODS ETHNOLOGY
PHYSIOLOGICAL PSYCHOLOGY JUVENILE DELINQUENCY COURSE
INTRODUCTORY PSYCHOLOGY
DYNAMICS OF PERSONALITY ADJUSTMENT
PERSONALITY THEORY
LEARNING AND MOTIVATION
STUDY OF THE INDIVIDUAL CHILD
THE FAMILY
ETHICAL ISSUES IN RESEARCH
ADOLESCENT DEVELOPMENT
CHILD DEVELOPMENT
ADVANCED SEMINAR IN PERSONALITY
INTERPERSONAL RELATIONS
HUMAN DEVELOPMENT
SOCIOLOGICAL RESEARCH METHODS ANTHROPOLOGY
PSYCHOLOGICAL FACTORS IN MARRIAGE
CONTEMPORARY SYSTEMS IN PSYCHOLOGY
PSYCHOLOGICAL FOUNDATIONS IN EDUCATION SEMINAR
CLINICAL SOCIAL PSYCHOLOGY

CEU COURSES ON PSYCHOLOGY AND LAW
    REFUGEES/TORTURE SURVIVORS CEU
    SEMINAR IN SOCIAL PROBLEMS
WOMEN'S STUDIES
SEX ROLE SOCIALIZATION
HUMAN SEXUAL BEHAVIOR
CULTURE AND POLITICS IN IRELAND
PRISONS
    TESTS AND MEASUREMENTS
SEMINAR: TERRORISM IN SOCIAL CONTEXT
SELF AND SOCIETY (SOCIAL PSYCHOLOGY)
    MYTH, RITUAL AND SYMBOL (ANTHROPOLOGY)
    WORK CULTURE AND SOCIETY (ANTHROPOLOGY)
    WOMEN AND WORK (SOCIOLOGY)
    INTRODUCTION TO CULTURAL

HISTORY AND SYSTEMS IN PSYCHOLOGY
SOCIOLOGY OF EDUCATION
    ADVANCED APPLIED COMPUTER SCIENCES

COGNITIVE TESTING

12

# Motion To Reconvene Due Process Hearing

**To:**   Hearing Officer Sy Dubow, Student Hearing Office

**Fr:**   Colleen Archer, UDC-DCSL

**Dt:**   08/22/07

**Re:**   Maurice Pimble



RECEIVED

AUG 2 3 2007

STUDENT HEARING OFFICE

Along with my supervisor, Joe Tulman, through the University of the District of Columbia, David A. Clarke School of Law (UDC-DCSL) Juvenile and Special Education Legal Clinic, I represent Mr. Maurice Pimble (DOB: ▓▓/1985) in all matters related to his special education rights.

On March 21, 2005, UDC-DCSL, on our client's behalf, filed a due process complaint against DCPS pursuant to 20 U.S.C. §1415(f). (See attachment 1, Due Process Complaint of March 21, 2005.) That due process hearing was conducted on April 25, 2005. Hearing Officer Dubow ordered the hearing recessed. *Id.* at 1. Hearing Officer Dubow ordered that DCPS pay for independent evaluations for Mr. Pimble. Hearing Officer Dubow also ordered that the parties brief two issues. The two issues assigned were: 1) whether the statute of limitations barred Mr. Pimble's claim for compensatory education; and 2) the liability of DCPS and the Federal Bureau of Prisons to Educate Mr. Pimble. The briefs were due on May 1, 2005. On May I, 2005 UDC-DCSL submitted two briefs. (See attachment 2, Briefs Submitted.) Mr. Pimble has since been evaluated. (See attachment 3, Evaluations.)

DCPS failed to comply with Hearing Officer Dubow's order as DCPS did not brief the two assigned issues by the deadline. Accordingly, we respectfully move to reconvene the due process hearing. Further, we submit that the seventy-five day deadline is inapplicable as we completed the steps leading up to the due process hearing (i.e., the resolution period), and thus are moving to reconvene the hearing.

Mr. Pimble is currently located at Schuylkill Federal Correctional Facility. Mr. Pimble was denied FAPE and continued to be denied FAPE through his twenty-second birthday. DCPS failed to properly identify and evaluate Mr. Pimble. DCPS failed to have in place an appropriate IEP for Mr. Pimble. DCPS failed to supply Mr. Pimble's legal counsel with his education records after numerous attempts by UDC-DCSL to obtain them. DCPS denied Mr. Pimble FAPE, and appropriate remedies are due to him. Consequently, we request that Mr. Pimble be granted thirteen years of compensatory education.[1] Further we, request that DCPS develop a current IEP for Mr. Pimble, conduct any over due evaluations

Upon the grant of this motion, we request a pre-hearing scheduling conference pursuant to §400.1(B) of the Student Hearing Office Operating Manual. If you have any questions or concerns, please contact me by phone at (703) 717-8667 or by fax at (202) 274-5569 or Joe Tulman at (202) 274-7317 or by fax at (202) 274-5583.

---

1  No case law addresses directly whether D.C.P.S. is responsible for delivering special education and related services to D.C. inmates who have been identified as learning disabled before incarceration and virtue of the who are in the custody of the Bureau of Prisons by virtue of the Revitalization Act.

197

Sincerely,

*Colleen Archer*

Colleen Archer
Special Education Advocate

cc:    Sheila Hall, Student Hearing Office Coordinator
       fax:(202) 442-5556

       Erika Pierson, DCPS General Counsel
       fax: (202) 698-3825

       Maurice Pimble

# Attachment 1

**Due Process Complaint of March 21, 2005**

University of the District of Columbia
David A. Clarke School of Law

Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008
e-mail: cnecarlett@mail2world.com
(202) 274-7314
(202) 274-5583 (fax)



March 21, 2005

Jeffrey Phoenix
Student Hearing Office Coordinator
Student Hearing Office, DCPS
825 North Capital Street, NE (8th Floor)
Washington, DC 20002

Re:    **Maurice Pimble DOB:** ▆▆/1985
         **Due Process Hearing Request**

Dear Mr. Phoenix:

Along with my supervisor, Joseph Tulman, through The University of the District of Columbia, David A. Clarke School of Law -- Juvenile and Special Education Law Clinic, I represent Maurice Pimble regarding his special education needs. D.C.P.S. is failing and has failed to provide Maurice with a free appropriate public education (FAPE), as defined in the Individuals with Disabilities Education Act (IDEA) 20 U.S.C. § 1400, *et seq.*, and its implementing regulations. On behalf of my client, I request a hearing concerning this consistent failure to provide Maurice with FAPE. **I propose the following dates:** Monday, April 18, 2005; Wednesday, April 20, 2005; Friday, April 22, 2005; and Monday, April 25, 2005.

Maurice is a nineteen-year-old male who has been denied a free appropriate public education since the age of six, when he failed first grade at a DC Public School -- Meyer Lower Campus -- and DCPS did not evaluate him for any disability. From an early age, Maurice consistently performed below average in his academics. In a third grade report, Maurice's teacher Ms. Wright notified Maurice's parents that he was "in danger of repeating the third grade". Maurice then failed the third grade. While Maurice was in the fifth grade at Raymond Elementary School, he performed "Below Basic" in both Mathematics and Reading in the Stanford Achievement Test. "Below Basic" indicates "little or no mastery of fundamental knowledge and skills". Maurice failed every single subject in the ninth grade at Roosevelt High School.

## I. DCPS Failed to Properly Identify and Evaluate Maurice.

Maurice has consistently shown unsatisfactory performance in his academics. He repeated first grade at Meyer Lower Campus, and has consistently received "Unsatisfactory" grades as well as repeated "C"s, "D"s, and "F"s throughout elementary and middle school.

D.C.P.S. personnel did not identify Maurice's disability while he was enrolled at Meyer Lower Campus, where he repeated the first grade. D.C.P.S. personnel also did not identify his disability



when he was in Rudolph Elementary School, where he repeated the third grade and received "Unsatisfactory" in every subject except Handwriting.

D.C.P.S. personnel failed to identify Maurice as a child with disability throughout elementary school. "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(i). D.C.P.S. did not identify or evaluate Maurice promptly, and this failure to identify and evaluate him negatively affected his academic performance throughout his academic career.

## II.  Maurice's Current IEP is Inappropriate.
Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved."

Also, pursuant to 34 C.F.R. § 300.350, "each public agency must (1) provide special education and related services for a child with a disability in accordance with the child's IEP; and (2) make good effort to assist the child to achieve the goals and objectives or benchmarks listed in an IEP." Maurice's academic performance and records show that D.C.P.S. did not provide him with special education and related services from the time he repeated the first grade and the 10 years he attended school thereafter.

According to Lisa Russell, Director of Special Education for Incarcerated Youth, Maurice was evaluated and an IEP was conducted in the 2001 school year. However, there are no records of these evaluations or when they took place and, notwithstanding my requests on November 29, 2004 and February 15, 2005, DCPS personnel has not provided me with records of these evaluations.

Maurice has a right to the records of the evaluations performed in 2001. When a student with a disability obtains the age of majority, all rights previously accorded to the parents transfer to the student. 34 C.F.R. § 300.517(a)(1). According to 34 C.F.R. §§ 300.501(a)(1)(i), 300.501(a)(1)(ii), the parents of a child with a disability must be afforded an opportunity to " --- inspect and review all education records with respect to the identification, evaluation, and educational placement of the child; and the provision of FAPE to the child." This right transferred to Maurice when he reached the age of eighteen.

There are records documenting that Maurice was identified as learning disabled in the 2000 – 2001 school year and that he received special education services at Johnson Jr. High School while enrolled in the seventh grade. Maurice's performance shows that either D.C.P.S. did not evaluate him appropriately and/or failed to identify him as learning disabled in a timely fashion. As a result of D.C.P.S.'s failure to conduct prompt or legally sufficient evaluations, Maurice exhibited consistent failure in his academics.

Also, the law requires that D.C.P.S. conduct an IEP every year and that evaluations occur triennially. 34 C.F.R. §300.536(b). Almost four years have elapsed since Maurice's last evaluation. On November 29, 2004, Maurice requested special education evaluations, and D.C.P.S. personnel have not yet conducted the evaluations. D.C.P.S has also not responded to

that request, in violation of 34 C.F.R. § 300.503(b)(2) (requiring that D.C.P.S. provide "an explanation of why the agency … refuses to take the action"). On February 15, 2005, I requested that D.C.P.S. conduct an evaluation and D.C.P.S. again made no response – an express violation of 34 C.F.R. § 300.503(b)(2).

## III. DCPS Denied Maurice FAPE; Appropriate Remedies are Due.

On behalf of Maurice, I request an overdue comprehensive evaluation for him. Maurice is currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. Former law student advocate, Victoria Kunkoski, made a request for D.C.P.S. personnel to evaluate Maurice prior to his placement at Rivers Correctional Institution in Winton, North Carolina.

D.C.P.S.'s obligation to educate and provide Maurice with compensatory education is not relieved since "Individuals who are incarcerated are entitled to receive a FAPE if prior to their incarceration they had either been evaluated or had an Individualized Education Plan. 20 U.S.C. § 1412(a)(1)(B)(ii), 34 C.F.R. § 300.311(a)(1)(2). Maurice satisfies both criteria since he was identified as learning disabled in 2001, prior to his conviction on September 16, 2004.

Additionally, pursuant to The National Capital Revitalization Act of 1997, Pub. L. 105-33, § 11201 *et seq.*, the Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights; therefore, Maurice is still entitled to these evaluations and to special education and related services while he remains incarcerated at Rivers Correctional Institution, whether D.C.P.S. provides these services at their expense or whether the Federal Bureau of Prisons assumes this responsibility.

I also request compensatory education for the eleven years Maurice was denied FAPE (from first grade until ninth grade, including the grades he repeated) to meet Maurice's special education needs. *Burr. v. Ambach*, 863 F.2d 258 (1989). D.C.P.S. failed to identify, locate and evaluate Maurice in violation of 34 C.F.R. § 125(a)(1), consequentially denying him a free appropriate public education. Pursuant to 20 U.S.C. § 1401(8), "A child who has a disability that adversely affects his/her educational performance is entitled to a free, appropriate public education" (FAPE). A FAPE must be in accordance with state administrative agency standards; must include an appropriate elementary or secondary education in the state involved; must be based upon an individualized educational program (IEP) designed for the child; and must be provided by the state at no cost to the child or to the child's parent(s). 20 U.S.C. § 1401(8); 34 C.F.R § 300.13.

If you have any questions, please contact me at (202) 274-7314 or by fax at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

cc:    Veleter Mazyck, DCPS General Counsel
       Maurice Pimble

3

# Attachment 2

## Briefs Submitted

To:        Hearing Officer Dubrow

From:      Cynthia Catlett, Education Advocate for Maurice Pimble

Date:      May 1, 2005

Re:        Exception to the Statute of Limitations for Maurice Pimble's claim for

           Compensatory Education.

---

## ISSUE

Whether the totality of DC Public School personnel's inactions and noncompliance with the Individuals with Disability Education Act and its implementing regulations warrants an exception to the three-year statute of limitations provided in D.C. Code § 12-301(8)?

## FACTS

On January 31, 2001, D.C. Public School personnel evaluated Maurice for special education needs, and they determined that Maurice is severely learning disabled. Maurice was fifteen years old at the time of this evaluation. Prior to January 31, 2001, DCPS personnel had never evaluated Maurice for any disability.

### Educational History:  Maurice Attended DC Public Schools Throughout his Educational Career.

Maurice attended Meyer Lower Campus, a D.C. Public Elementary School from 1991 until 1993. At Meyer Lower Campus, Maurice was enrolled in the first grade. Maurice did not pass the first grade. He repeated that grade in 1992-1993. (MP #24)

1

Maurice was enrolled at Rudolph Elementary School from 1993 until 1997. During the 1993–1994 school year, Maurice was enrolled in the second grade. He passed the second grade and proceeded to the third grade. (MP #23)

During the 1994–1995 school year, Maurice was enrolled in the third grade. He performed below average, receiving a "U" (for Unsatisfactory) in virtually every course. Maurice repeated the third grade. During the 1995–1996 school year, Maurice was enrolled in the third grade for a second time at Rudolph Elementary School. (MP #22)

During the 1996–1997 school year, Maurice was twelve years old in the fourth grade. In the 1997–1998 school year, Maurice began the school year at Rudolph Elementary School, but transferred to Raymond Elementary School where he continued with his studies in the fifth grade. During the 1998–1999 school year, Maurice was placed again in the fifth grade. He was enrolled at Raymond Elementary School and performed "below basic" in three out of six tested areas in Math and Reading. During the 1999–2000 school year at Raymond Elementary School, Maurice was enrolled in the fifth grade for the third time. Maurice was fifteen years old. (MP# 14, MP#15, MP #16, MP#17, MP#18, MP#19, MP#20)

In anticipation of the 2000–2001 school year and in light of Maurice's age, DCPS administrators "skipped" Maurice two grades. Maurice transferred schools and was enrolled for the 2000-2001 school year in the eighth grade at Johnson Junior High School. In January of that school year (i.e., January 2001), DCPS personnel identified Maurice as eligible for special education for the first time. (MP#12, MP#10)

During the 2001 – 2002 school year, Maurice was enrolled in the ninth grade at Roosevelt High School, and he failed every single course.(MP #11)

2

## *DC Public Schools' Inaction*

On November 15, 2004, Maurice requested from DCPS personnel that they evaluate him for eligibility for special education. At that time Maurice was incarcerated at the D.C. Jail. (MP #2)

On November 29, 2004, U.D.C. David A. Clarke School of Law (UDC-DCSL) education advocate Victoria Kunkoski, representing Maurice, requested from DCPS personnel expedited evaluations for Maurice. DCPS personnel did not respond to that request.(MP#2)

On February 15, 2005, UDC-DCSL education advocate Cynthia Catlett requested DCPS personnel (Lisa Russell) to conduct the overdue triennial evaluations for Maurice. DCPS personnel did not respond to this request. Subsequently, Maurice was transferred to the custody of the Federal Bureau of Prisons. (MP#3)

On March 21, 2005, Cynthia Catlett requested from Mr. Michael Snipes, head of the department for Special Education for Incarcerated Youth for DCPS, evaluations, IEP's, and other academic records (including report cards and standardized test results). Mr Snipes did not respond to that request. On March 21, 2005, Cynthia Catlett requested from Mr. Snipes independent evaluations for Maurice. Mr. Snipes did not respond to that request. (MP#4)

On March 21, 2005 a Due Process Hearing Request was filed on behalf of Maurice in order to request compensatory education for DCPS' consistent denial of a free appropriate public education for Maurice as well as expedited independent evaluations at the expense of DC Public Schools. (MP#1)

3

On March 23, 2005, Cynthia Catlett spoke with Ms. Lisa Russell from DCPS'
department of Special Education for Incarcerated Youth, and Ms. Russell stated that once
DC students transfer to a Federal Bureau of Prisons facility, DCPS is no longer under any
obligation to educate them, even if these inmates are eligible for special education and
related services under the Individual with Disabilities and Education Act. In the
conversation on March 23, 2005, Ms. Russell also stated that neither she nor anyone else
at DCPS had any records of Maurice's IEP or evaluations conducted on January 30, 2001.
(MP#5)

On April 4, 2005, Cynthia Catlett again requested from Ms. Russell, any and all
records DCPS had on file for Maurice. Further, Cynthia Catlett requested that DCPS
respond in writing to the request for an independent special education evaluation. Ms.
Russell did not respond to that request. (MP#5)

On April 12, 2005 after a conversation with Ms. Russell on April 5, 2005, Cynthia
Catlett contacted Ms. Russell in regards to records DCPS had on file for Maurice. Ms.
Russell did not respond. (MP#6)

## DISCUSSION

A.    **Pursuant to D.C. Code § 12-302 Maurice Could Only Enforce His Right to
      Compensatory Education When he Obtained the Age of Majority.**

"When a person entitled to maintain an action is, at any time the right of
action accrues (1) under 18 years of age; or (2) non compos mentis; or (3) imprisoned
...he may bring an action within five years...". D.C. Code § 12-302. This provision of
the D.C. Code specifically deals with a plaintiff's disability. Prior to May 19, 2003,
Maurice did not and could not bring his claim for compensatory education to DC Public
Schools. First, Maurice did not know he had a right to compensatory education.

4

Secondly, Maurice was not aware that DC Public Schools had an obligation to identify him as a student with a disability and had a duty to accommodate him.

**B.    Borrowing D.C. Code § 12-301(8) as the Statute of Limitations for DC Public Schools' Consistent Denial of FAPE for Maurice Would Frustrate the Policy Embodied in the Individuals with Disabilities Education Act.**

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C.S. § 1401 *et seq.*, does not provide a statute of limitations for claims arising under its Act.  20 U.S.C. § 1415(b)(1)(E), (b)(2), (e)(2).  Courts usually interpret congressional silence on a statute of limitations period as instruction to apply the most closely analogous statute of limitations under state law (tort liability/personal injury statute of limitations). DelCostello v. International Bhd. of Teamsters, 462 U.S. 151 (1983).  Courts defer to the state's most analogous statute of limitations unless borrowing the statute of limitations is inconsistent or would "frustrate the policy" embodied in the federal law or policy.  See Wilson v. Garcia, 471 U.S. 261, 266 (1985).  The District of Columbia, D.C. Code § 12-301(8) provides a three-year statute of limitations for actions in which a limitation is not specifically prescribed. DC Code §12-302 provides a five year statute of limitations for minors prior to them obtaining the age of majority.  Maurice's claim is within the statute of limitations in both statutes.[1]

In determining whether the statute of limitations frustrates the policy of the federal statute, courts look at the purpose of the statute and regulation.  It is well established that the purpose of the IDEA is to ensure special education rights to eligible students.  20 U.S.C.S. § 1400(b)(9).  In Murphey v.Timberlane Regional School District

---

[1] If compensatory education is an equitable remedy, then similar to injunctive relief the statute of limitations should not start running.  Some causes of action are equitable (because they are created by courts of equity, back when equity and law were two separate court systems).  Some remedies are equitable, namely injunctions, because they were created by courts of equity not law. Statute of limitations are not applicable to these remedies or causes of action.

5

(1994), the United States Court of Appeals for the First Circuit stated that borrowing a

state's statute of limitations should be on a case-by-case basis.  22 F.3d 1186 (1994).  The

court emphasized in Murphey that it was imperative that courts not overlook the purpose

of the IDEA in deciding whether the state's statute of limitations apply.

**C.     DC Public Schools has Consistently Denied Maurice a Free Appropriate Public Education Starting at the Age of Six When Maurice First Enrolled at a D.C. Public School, and for the Eleven Years He Attended DC Public Schools Thereafter.**

In Hammond v. District of Columbia, 2001 U.S. Dist. LEXIS 25845, plaintiffs

sued the District of Columbia and Arlene Ackerman, Superintendent of D.C. Public

Schools, alleging that District of Columbia Public Schools failed to provide Nathan

Hammond with a free appropriate public education (FAPE), provided by the Individuals

with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et .seq*.  In a Due Process

Hearing on the issue of compensatory education, the Hearing Officer determined that

D.C. Code § 12-301(8) barred plaintiff's claims for the period outside the statute of

limitations period.  Plaintiffs in the instant case requested compensatory education for the

denial of FAPE for the period of 1992 – 1997.  The Hearing Officer found that claims

prior to the 1996-1997 school year were barred by the statute of limitations.

Plaintiffs appealed to the United States District Court for the District of Columbia

and the Hearing Officer's determination was reversed in regards to compensatory

education for the period prior to the 1996-1997 school year.  In reversing the denial of

compensatory education for the period prior to 1996, Judge Kessler applied the

"continuing violation doctrine", stating that compensatory education claims prior to 1994

were timely. A "continuing violation" is "one that could be reasonably expected to be

made the subject of a lawsuit when it first occurred because its character as a violation

6

did not become clear until it was repeated during the statute of limitations period." Taylor v. FDIC, 328 U.S. App. D.C. 52 (D.C. Cir. 1997).

Judge Kessler further held that the Hearing Officer erred in determining when the plaintiffs claim accrued even if the statute of limitations actually applied. Accrual of the statute of limitations in IDEA claims is governed by federal law and the *claim only accrues when parents know or have reason to know of the injury or event that is a basis for their claim*. No mechanical formula controls the accrual determination. See Murphey v. Timberlane Regional School District 22 F.3d 1186 (1994).

Maurice's claim accrued when he retained counsel in November of 2004. Prior retaining counsel, Maurice was not aware of his right to special education or his right to enforce his claim for compensatory education against DC Public Schools under the IDEA. Maurice has suffered concrete injury as a result of DC Public School's consistent disregard for his rights.

## C.    DCPS' Continuous Denial of a Free Appropriate Public Education for Maurice Warrants an Exception to D.C. Code § 12-301(8).

Maurice has unquestionably continuously been denied a free appropriate public education. In Hammond v. District of Columbia (2001), the court concluded that it was the totality of DCPS initial inactions and subsequent inactions, which constitutes an ongoing violation of FAPE. In the instant case, the denial of FAPE has been consistent from the time Maurice enrolled at a DC Public School in the fall of 1991 through his stay at D.C. Jail ending January of 2005.

- DCPS violated the IDEA, 20 U.S.C.S. § 1400 et seq., and its implementing regulations.

7

- DCPS personnel violated "Child Find" from the time Maurice entered DC Public Schools. "Child Find" requires that "all children with disabilities in the state ...regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 300.125(a)(1).

- DCPS personnel violated 5 DCMR § 2201.9. Prior to 1998, if a student was held back in school and the student had not been referred for assessment and evaluation for special education, D.C. Municipal Regulations mandated that DCPS evaluate the student for special education.

- Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Maurice was identified as learning disabled on January 30, 2001, DCPS personnel waited three years to develop a new IEP, in violation of 34 C.F.R. § 300.343(c)(1).

- DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child." DCPS personnel did not use Maurice's evaluation in the development of his most recent IEP. On numerous occasions, Lisa Russell, Director of Special Education for Incarcerated Youth, stated that DCPS did not have those evaluations on record.

8

211

- DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child." Lisa Russell, on behalf of DCPS, stated on numerous occasions that they do not have Maurice's IEP or evaluations conducted on January 30, 2001.

- DCPS personnel violated 34 C.F.R § 300.536. The law requires that a child be evaluated at least once every three years. Maurice's last evaluation was on January 30, 2001. To date, DCPS has not reevaluated Maurice.

- DCPS personnel violated 34 C.F.R §300.502. Maurice was entitled to request an independent educational evaluation. On November 15, 2004 Maurice requested from DCPS that they authorize an independent evaluation.

- DCPS personnel violated 34 C.F.R. §300.503(a)(ii). This provision of the law requires that DCPS personnel respond in writing if they refuse to initiate an evaluation; DCPS personnel did not respond in writing to Maurice's request.

- DCPS personnel violated 34 C.F.R. 300.502(b). This provision of the law requires that if Maurice requests an independent educational evaluation, the public agency "... must without unnecessary delay either (i) initiate a hearing under §300.507 to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under §300.507 that the evaluation obtained ... did not meet agency criteria." DCPS personnel did not take the steps mandated by this provision.

9

- In failing to provide Maurice was his educational records, DCPS personnel violated 34 C.F.R. § 300.501. Once Maurice reached the age of majority, his parents' rights transferred to him, giving him the right to "... (1) inspect and review all education records with respect to – (i) the identification, evaluation, and educational placement of the child and (ii) the provision of FAPE ..." 34 C.F.R. § 300.501(a)(1)(i), 34 C.F.R. § 300.501(a)(1)(ii) and 34 C.F.R § 300.517.

1. *DCPS personnel consistently denied Maurice a free appropriate public education.*

It took DCPS personnel ten years to evaluate Maurice. Maurice entered the DC Public School system in the Fall of 1991 and was only evaluated for Special Education on January 30, 2001. At that point in time, Maurice had consistently performed below average in every grade in school. Further, Maurice had been held back in school in the first grade, third grade, and completed the fifth grade in three years. It was only when DCPS skipped Maurice from the fifth to the eighth grade that DCPS evaluated Maurice.

DCPS personnel violated "Child Find". "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(1).

2. *DCPS personnel failed to properly identify Maurice as a student with a disability.*

Prior to 1998, if a student was held back in school and the student had not been referred for assessment and evaluation for special education, D.C. Municipal Regulations mandated that DCPS evaluate the student for special education. 5 DCMR 2201.9. In

10

213

*1998 this* requirement was eliminated and it became optional for DCPS to evaluate and assess students who are retained and had not previously been referred for assessment and evaluation for special education.

DCPS personnel did not evaluate or refer Maurice for special education evaluations when he was retained in the first grade in 1992. DCPS personnel also did not evaluate or refer Maurice for assessment and evaluation for special education in 1995 when Maurice repeated the third grade. DCPS personnel also failed to evaluate Maurice in 1998 when he repeated the fifth grade.

### 3. *Maurice's current IEP is inappropriate.*

Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Maurice was identified as learning disabled on January 30, 2001, DCPS personnel waited three years to develop a new IEP, in violation of 34 C.F.R. § 300.343(c)(1).

Maurice's most recent IEP was developed at D.C. Jail by DC Public School personnel on October 1, 2004 and states that "Maurice is unable to be academically successful in the regular education classroom." This IEP is inappropriate because the comments at the end of the document do not correspond with the fact that the same evaluators identified Maurice as requiring only 0%-20% of special education. My position, as the comments on the same IEP suggest, is that Maurice requires 100% special education academic environment.

11

The law requires that a student be evaluated every three years and that the results of the initial evaluation are used by the IEP team in meeting the requirements of §§300.340 – 300.350. 34 C.F.R. §300.320. DCPS personnel did not use Maurice's evaluation in the development of his most recent IEP. On numerous occasions, Lisa Russell, Director of Special Education for Incarcerated Youth, stated that DCPS did not have those evaluations on record. Ms. Russell also specifically said that the IEP team did not use Maurice's evaluation in developing his most recent IEP. Further, DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child."

4. *Maurice's Special Education Evaluations are Fifteen Months Overdue.*

The law requires that a child be evaluated at least once every three years. 34 C.F.R § 300.536. Maurice's last evaluation was on January 30, 2001. DCPS personnel has not reevaluated Maurice since the evaluation on January 20, 2001. Further, Lisa Russell from the department of Special Education for Incarcerated Youth at DCPS, has stated on numerous occasions that these evaluations were lost and that DCPS does not have them on record.

5. *DCPS personnel denied Maurice's right to independent special education evaluations. DCPS further failed to act pursuant to the regulations by not responding in writing to numerous requests for evaluations.*

Maurice is entitled to request an independent educational evaluation. 34 C.F.R §300.502. When a student with a disability reaches the age of majority, all rights accorded to parents transfer to the student. 34 C.F.R §300.517. Therefore, Maurice's

12

215

parents rights to request independent evaluations transferred to Maurice when he turned eighteen.

Maurice requested an initial evaluation on November 15, 2004. The law requires that DCPS personnel respond in writing if they refuse to initiate an evaluation. 34 C.F.R. §300.503(a)(ii). To date, I have requested that DCPS respond in writing to my request for independent special education evaluations three times. Victoria Kunkoski, former law student advocate from the Juvenile and Special Education Clinic at the University of the District of Columbia, requested an evaluation on behalf of Maurice on November 29, 2005. Ms. Kunkoski requested expedited evaluations and offered to contact independent evaluators, but also did not receive a response to her request.

Further the law requires that if Maurice requests an independent educational evaluation, the public agency "... must without unnecessary delay either (i) initiate a hearing under §300.507 to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under §300.507 that the evaluation obtained ... did not meet agency criteria." 34 C.F.R. 300.502(b). DCPS personnel did not initiate a hearing in regards to the request for an independent evaluation and also did not respond to numerous requests for independent evaluations.

### 6. DCPS personnel violated 34 C.F.R. § 300.501 by not providing Maurice with his educational records.

Once Maurice reached the age of majority his parents rights transferred to him, giving him the right to "... (1) inspect and review all education records with respect to -- (i) the identification, evaluation, and educational placement of the child and (ii) the provision of FAPE ..." 34 C.F.R. § 300.501(a)(1)(i), 34 C.F.R. § 300.501(a)(1)(ii) and 34 C.F.R § 300.517.

13

216

- On March 21, 2005, Cynthia Catlett requested from Mr. Snipes any and all evaluations, IEP's and other academic records (including report cards and standardized test results) for Maurice. Mr. Snipes did not respond to this request.

- On April 4, 2005, Cynthia Catlett requested from Ms. Russell a copy of the records of specialized instruction and related services offered to Maurice at D.C. Jail. Ms. Russell did not respond to that request.

- On April 12, 2005, Cynthia Catlett sent Ms. Russell a letter regarding Maurice's educational background after a conversation where Ms. Russell said that DCPS did not have any records of Maurice's evaluation conducted on January 30, 2001. In that letter Cynthia Catlett shared educational records with Ms. Russell, in order to show her how Maurice was in desperate need of special education evaluations and services and how he had been denied a free appropriate public education throughout his academic career.

**D.    MAURICE PIMBLE REQUIRES COMPENSATORY EDCUATION TO BE MADE WHOLE AFTER DCPS FAILED TO PROVIDE HIM WITH FAPE FROM FALL 1991 – JANUARY 2005, LIMITING RELIEF TO THREE YEARS WILL DEPRIVE MAURICE OF THE EDUCATION HE IS ENTITLED TO UNDER THE IDEA.**

Maurice Pimble is entitled to compensatory education equivalent to eleven years for DCPS' consistent denial of FAPE. Compensatory education was found to be "appropriate relief" when a disabled child was denied FAPE under the IDEA and implementing regulations. See Walker v. District of Columbia, 157 F. Supp. 2d 11, 30 (D.D.C., 2001) and Harris v. District of Columbia, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *3 (D.D.C., 1992). Diatta further found the right to compensatory education results when the school district knew of should have known that a disabled student was receiving an inappropriate education. Diatta v. District of

14

217

Columbia, 319 F. Supp. 2d 57, 64 (D.D.C., 2004). Maurice was denied FAPE from Fall 1991 through January 2005. DCPS "should have known" that Maurice was receiving an inappropriate education. By the time DCPS evaluated Maurice, he had repeated first, third and fifth grade and had consistently performed below average.

District of Columbia hearing officers have authority under the IDEA to award compensatory education upon their determination that a disabled student was denied FAPE. See Harris, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *11. Additionally, hearing officers have broad discretion to fashion appropriate relief in consideration of the particular needs of a disabled child to meet the unique circumstances of the case. Burlington, 471 U.S. at 369, and Harris, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *13. Rowley requires compensatory education awards to provide the disabled child with a "basic floor of opportunity" that affords "some educational benefit." See Rowley, 458 U.S. at 201. Maurice seeks a compensatory education that will confer the same educational benefit that he was denied between Fall 1991 through January 2005. According to Reid a day for day award is not justified without facts and specific circumstances to support the need for such a remedy. See Reid v. District of Columbia, 310 F Supp. 2d 137, 150. We contend the facts and circumstances of Maurice's denial clearly justify eleven years of compensatory education. This is true because Maurice is 19 years old and is only eligible for special education services until his 22nd birthday. Due to DCPS's long-term denial of FAPE, Maurice is poorly positioned in all areas related to his academics. Maurice reads and performs mathematics between a second and third grade level.

## CONCLUSION

DCPS personnel have continuously refused to act in compliance with the

15

Individuals with Disability Education Act. If the Hearing Officer in the instant case limits the request for compensatory education to three years, he would be denying Maurice the right to special education. Further, nothing in the IDEA limits compensatory education awards to three years. Maurice's claim is still within the time period provided in D.C. Code § 12-301(8) and in order to be made "whole", Maurice will need eleven years of compensatory education, since he is performing at a second and third grade level in reading and math. (MP #10).

Compensatory education is an equitable remedy. Maurice has undeniably been denied FAPE for over 11 years. I am requesting eleven years of compensatory education in order to give Maurice the opportunity to receive an education. The statute of limitations is not an issue in the instant case because Maurice was a minor prior to May 19, 2003 and could not enforce his right to receive special education. Further, case law has provided exceptions to the tolling of the statute of limitations, as provided in Hammond. Because of DCPS's long-term denial of FAPE, Maurice is poorly positioned in all areas related to his academics.

Respectfully Submitted,

Cynthia N. Catlett
Law Student Advocate

cc.:     Maurice Pimble
         Lenore Verra, DCPS

16

219

To:     Hearing Officer Dubrow

From:   Cynthia Catlett, Educational Advocate for Maurice Pimble

Date:   May 1, 2005

Re:     Joint Liability Between DC Public Schools and Federal Bureau of Prison to

        Educate Maurice Pimble

---

## ISSUE

Whether DC Public Schools and the Federal Bureau of Prisons have joint liability for providing Maurice Pimble, a DC Public School student in the custody of the Federal Bureau of Prisons, with a free appropriate public education as provided and described in the Individuals with Disabilities Education Act and whether DC Public School personnel are still responsible for providing compensatory education for Maurice.

## DISCUSSION

**I.    The Responsibility and Burden of Providing Maurice Pimble with Compensatory Education for the Continuous Denial of a Free Appropriate Public Education Rests with DC Public Schools.**

Compensatory education is a remedy against a state, and, for the purposes of the IDEA, the District of Columbia is the state actor that denied Maurice Pimble FAPE. Compensatory education is an equitable remedy to provide students who have been denied a Free Appropriate Public Education (FAPE). DC Public School personnel continuously denied Maurice a free appropriate public education and should rectify that wrong by providing Maurice with compensatory education, in order for Maurice to finally benefit from educational instruction.  In *Burlington Sch. Comm. v. Mass. Dept of*

1

*Educ.*, 471 U.S. 359 (1985), the Supreme Court held that retroactive relief in the form of compensatory education was appropriate since it merely requires the state to belatedly do that which it should have done all along. In *Harris v. District of Columbia*, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *11, the court specifically provides compensatory education as a remedy for the denial of FAPE.

In the instant case, DC Public Schools (DCPS) is responsible for providing Maurice compensation for the denial of a FAPE throughout his enrollment at DC Public Schools from fall 1991, where Maurice was performing below average through January 2005, when Maurice transferred to the custody of the Federal Bureau of Prisons (BOP). While Maurice was at the DC Jail, DCPS was allegedly providing him with specialized instruction. DC Public Schools has the burden of assessing and ensuring the effectiveness of its own efforts to educate children with disabilities. 34 C.F.R. § 300.1.

The IDEA, 20 U.S.C § 1412, specifically mentions the local educational agency's responsibility provide with a student with a free appropriate public education. DCPS, as that agency, is responsible to provide Maurice with the education that it failed to provide. States that receive federal educational assistance must establish procedures to ensure that FAPE is available to students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Therefore, DCPS is liable for the denial of FAPE to Maurice in the form of compensatory education and not the Federal Bureau of Prisons, for the time Maurice should have been receiving special education and related services.

In *Reid v. District of Columbia* (2005), the United States Court of Appeals for the District of Columbia Circuit held that "[w]hen a school district deprives a disabled child of free appropriate public education in violation of the Individuals with Disability

2

Education Act, a court fashioning appropriate relief, as the statute allows, may order compensatory education, i.e., replacement of educational services the child should have received in the first place." *Reid v. District of Columbia,* 401 F.3d 516(D.C. Cir. 2005). DCPS has the burden of compensating Maurice for the denial of FAPE because it is DCPS and not the BOP that denied Maurice the right to special education for eleven years. DCPS received federal educational assistance to provide special education and related services to DC students and to comply with the IDEA, and failed to perform that duty.

II.    **The Federal Bureau of Prisons' is Responsible for Providing a Free Appropriate Public Education to Maurice Pimble Pursuant to the National Capital Revitalization and Self Government Act of 1997 and 20 U.S.C.§ 1415(m)(1)(d).**

A child who has a disability that adversely affects his or her educational performance is entitled to a free, appropriate public education. 20 U.S.C. § 1401(8). A FAPE must be in accordance with state administrative agency standards; must include an appropriate elementary or secondary education in the state involved; must be based upon an individualized educational program (IEP) designed for the child; and must be provided by the state at no cost to the child or to the child's parent(s). 20 U.S.C. § 1401(8); 34 C.F.R § 300.8.

A Hearing Officer operating under the auspices of the District of Columbia Student Hearing Office has jurisdiction over the Federal Bureau of Prisons based on (1) The National Capital Revitalization Act of 1997, through which Congress assigned to the Federal Bureau of Prisons the District of Columbia's IDEA responsibilities for the protection of educational rights, and (2) 20 U.S.C.§ 1415(m)(1)(d), a provision of the IDEA that transfers parental rights under the IDEA to, *inter alia,* children incarcerated in

3

federal correctional institutions if the children are competent and if they have obtained

the age of majority.  In failing to assert jurisdiction and hold the BOP accountable, the

Hearing Officer would allow the BOP to continue denying Maurice his right to a free

appropriate public education pursuant to 20 U.S.C. §§ 1412(a)(1), 1411(i)(1)(c).

> A.    **Under the National Capital Revitalization and Self Government Act of 1997 the Federal Bureau of Prisons Assumed Responsibility to Provide Education to D.C. Prisoners and That Responsibility Must Include Providing Special Education and Related Services to Maurice Pimble.**

The BOP has assumed the District of Columbia's IDEA responsibilities for the

protection of educational rights under The National Capital Revitalization and Self

Government Act of 1997 (hereinafter referred to as the "D.C. Revitalization Act"), Pub.

L. 105-33, § 11201 *et seq.*

The Act states that the BOP is responsible for the "custody, care, subsistence,

*education*, treatment, and training" of D.C. Code felony offenders.  *Id.* (emphasis added).

D.C.'s educational obligations include the obligation to provide special education and

related services to its prisoners.  20 U.S.C. §1412 (a)(1)(B)(ii), 34 C.F.R. §300.311

(a)(1)(2).

This transfer from DCPS to the BOP of responsibility to educate D.C. inmates

encompasses DCPS' responsibility to provide Maurice with a free appropriate public

education.

> B.    **The Plain Meaning of 20 U.S.C.§ 1415(m)(1)(d) Grants Competent, Majority-Age Federal Prisoners the Right to Enforce Their Special Education Rights.**

The BOP has a duty to deliver special education and related services pursuant to

20 U.S.C.§ 1415(m)(1)(d), " – all rights accorded to parents under this part 20 USCS §§

4

1411 transfer to children who are incarcerated in an adult or juvenile Federal, State, or local correctional institution." At 34 C.F.R. § 300.2(b)(iv), the applicability of Title 34, C.F.R., Part 300, to "State and local juvenile and adult correctional facilities," is clearly defined; while federal correctional facilities are not mentioned. However, if the statute states that rights transfer, Maurice's right to special education transferred with him to his federal incarceration placement.

Regulators at the U.S. Department of Education drafted a regulatory provision that is inconsistent with congressional intent with regard to federal prisoners. The starting point in statutory interpretation is the language of the statute itself. "As in all cases involving statutory construction, the starting point must be the language employed by Congress, and the court assumes that the legislative purpose is expressed by the ordinary meaning of the words used. Thus absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63 at 68 (1981).

In *FEC v. Democratic Senatorial Campaign Committee,* the Supreme Court held that "the Court is the final authority on issues of statutory interpretation and must reject administrative constructions which are contrary to clear congressional intent". 454 U.S. 27, 32 (1981). "[I]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., et al.*, 467 U.S. 837, 843 (1984). Congress must have intended the IDEA to apply to inmates in federal facilities, when it enacted Federal Law transferring parental rights under the IDEA to inmates incarcerated in federal institutions.

5

In the instant case, Congress clearly intended the statute to apply to "children who are in [a] ... Federal ... correctional institution" 20 U.S.C. § 1415(m)(1)(D). Congress, however, did not prescribe how to provide those services and did not specify whether an eligible student in a federal incarceration facility would advance a complaint through the ordinary administrative hearing process. *Cf., e.g.,* 34 C.F.R. § 300.507(a) (right to an administrative hearing regarding denial of FAPE and other IDEA disputes). Rather than fill these gaps, regulators at the U.S. Department of Education drafted a regulatory provision that disregards congressional intent with regard to federal prisoners. The regulators simply deleted the word "federal" as a modifier of the phrase "correctional institution", thereby implying that the provision only applies to children in state facilities. The effect for persons who are eligible for special education and related services and who are convicted in criminal cases in the local courts of the District of Columbia would be to exclude them from IDEA services. Nothing in the statute can be interpreted to justify such a result.

The Supreme Court held that legislative regulations are given controlling weight " — unless they are arbitrary, capricious or manifestly contrary to the statute." *Cardoza-Fonseca*, 480 U.S. at 421. It is evident in the instant case that by excluding an entire category of persons covered by the statute, the drafters of the regulations were acting either arbitrarily or, more likely, capriciously. Either way, deleting the statutory language is manifestly contrary to Congressional intent. It is important for the Hearing Officer in the instant case to recognize -- and apply on behalf of Maurice Pimble -- the rights conferred by Congress to IDEA-eligible students in federal correctional institutions.

In recognizing the lack of specificity in the statute, Maurice Pimble urges the

Hearing Officer in the instant case to enforce (1) the plain language of the statute that grants IDEA-eligible federal prisoners the right to enforce the IDEA and (2) the D.C. Revitalization Act that establishes in the Federal Bureau of Prisoners an obligation -- standing in the place of the District of Columbia -- to educate D.C. Code offenders who are incarcerated in the BOP.

## CONCLUSION

The burden of providing Maurice with compensatory education for the denial of FAPE from 1991 – 2005 is with DCPS. Case law, the IDEA, and the IDEA's implementing regulations place the burden of providing FAPE to a student on the local educational agency. States that receive federal educational assistance must establish procedures to ensure that FAPE is available to students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Further, DC Public Schools has the burden of assessing and ensuring the effectiveness of its own efforts to educate children with disabilities. 34 C.F.R. § 300.1. DCPS failed to provide Maurice with a free appropriate public education, and the retroactive remedy, in the form of compensatory education is owed to him by DC Public Schools.

Once Maurice was in the custody of the BOP, the BOP from that point onwards became responsible for educating Maurice and providing him with special education and related services. The BOP is responsible for administering the educational rights provisions provided in the IDEA for the District of Columbia code felony offenders under the Revitalization Act. The BOP is acting as the state in housing DC code felony offenders and is performing a state function by housing DC inmates. In assuming this responsibility, the BOP is subject to the administrative Due Process Hearings that DCPS

7

226

would be a party.

Notwithstanding the provisions of the Revitalization Act, the BOP is still responsible for educating federal prisoners pursuant to 20 U.S.C. § 1415(m)(1)(D). The IDEA, specifically 20 U.S.C. § 1415(m)(1)(d), states that you can enforce your rights when you are in federal prison. If you can enforce your rights when you are in federal prison, then you have rights. By relying on the regulatory provision drafted by Regulators at the U.S. Department of Education (34 C.F.R. § 300.2(b)(iv)) as opposed to the statute (20 U.S.C. § 1415(m)(1)(D)), one would be disregarding congressional intent for federal prisoners. Nothing in the statute can be interpreted to justify such a result.

The BOP is probably not vicariously liable for DCPS' denial of FAPE for eleven years. Compensatory education is an equitable remedy and retroactive relief to compensate a student from the state to belatedly do that which it should have done all along. The BOP is however responsible to provide D.C. Code offenders with a free appropriate public education pursuant to the DC Revitalization Act and 20 U.S.C. § 1415(m)(1)(d).

Respectfully Submitted,

Cynthia Catlett
Law Student Advocate

Cc:    Maurice Pimble
       Lenore Verra

8

227

# Attachment 3

## Evaluations

CONFIDENTIAL          CONFIDENTIAL

## SPEECH AND LANGUAGE EVALUATION

**NAME:**                  **Maurice Pimble**
**DATE OF BIRTH:**         �it**785**
**AGE:**                   **21 years, 1 month**
**DATE OF ASSESSMENT:**    **06/27/06**
**REFERRED BY ATTORNEYS:** **U.D.C David A. Clark School of Law**

## EXAMINER

Marisa S. Harrell, M.S., CCC-SLP, Speech-Language Pathologist

## TESTS ADMINISTERED

Clinical Evaluation of Language Fundamentals – Fourth Edition (CELF-4)
Oral and Written Language Scales (OWLS)/ Listening Comprehension and Oral Expression
Scales
Goldman-Fristoe Test of Articulation – 2nd Edition (GFTA-2)
Hearing Screening

## REASON FOR EVALUATION

Maurice is currently incarcerated at the Rivers Federal Correctional Institution in Winton, North
Carolina. A speech and language evaluation was requested for Maurice by his attorneys at U.D.C
David A. Clark School of Law to determine Maurice's eligibility for services under the
Individuals with Disabilities Education Improvement Act of 2004 (IDEIA). Psychologist Rona
M. Fields conducted psycho-educational testing with Maurice in November and December of
2005. Please refer to her report for detailed background information about Maurice.

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 2          **Confidential**

## TEST RESULTS

### Clinical Evaluation of Language Fundamentals—4 (CELF-4)

The <u>Clinical Evaluation of Language Fundamentals – 4th Edition (CELF-4)</u> is an individually administered evaluation tool for the identification and diagnosis of language and communication disorders in students 5-21 years old.  Standard scores are reported with a mean = 100 and a standard deviation = 15.  Therefore, scores that fall between 85-115 are considered in the average range. Individual subtest scores are also reported with a mean = 10 and a standard deviation = 3. Subtest scores between 7-13 are considered in the average range. Maurice's scores are as follows:

| | Sum of Subtest Scaled Scores | Standard Score | Percentile Rank |
|---|---|---|---|
| Core Language | 30 | 85 | 16 |
| Receptive Language | 19 | 78 | 7 |
| Expressive Language | 23 | 87 | 19 |
| Language Content | 19 | 78 | 7 |
| Language Memory | 22 | 84 | 14 |
| Working Memory | 25 | 115 | 84 |

| Subtest Score | Raw Score | Scaled Score |
|---|---|---|
| **CORE LANGUAGE** | | |
| Formulated Sentences | 52 | 11 |
| Recalling Sentences | 68 | 6 |
| Word Classes-Total | 13 | 6 |
| Word Definitions | 21 | 7 |
| **RECEPTIVE LANGUAGE** | | |
| Understanding Spoken Paragraphs | 10 | 7 |
| Semantic Relationships | 13 | 5 |
| Word Classes-Receptive | 16 | 7 |
| **EXPRESSIVE LANGUAGE** | | |
| Word Classes-Expressive | 10 | 6 |
| Formulated Sentences | 52 | 11 |
| Recalling Sentences | 68 | 6 |
| **LANGUAGE CONTENT** | | |
| Word Definitions | 21 | 7 |
| Understanding Spoken Paragraphs | 10 | 7 |
| Sentence Assembly | 11 | 5 |

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 3       **Confidential**

| LANGUAGE MEMORY | | |
|---|---|---|
| Semantic Relationships | 13 | 5 |
| Formulated Sentences | 52 | 11 |
| Recalling Sentences | 68 | 6 |
| **WORKING MEMORY** | | |
| Number Repetition-Total | 14 | 7 |
| Familiar Sequences 1/2 | 39 | 18 |

Maurice's language skills as assessed by the <u>CELF-4</u> reflect mildly delayed receptive and expressive language skills.

The Receptive Language portion of the test includes the following subtests: Understanding Spoken Paragraphs, Semantic Relationships, and Word Classes-Receptive. Maurice performed in the low average range on the Understanding Spoken Paragraphs subtest, which evaluated his ability to a) sustain attention and focus while listening to spoken paragraphs of increasing length and complexity, b) understand oral narrative and text (critical thinking for text comprehension), c) answer questions about the content of the information given, and d) think critically to arrive at logical answers. Maurice demonstrated good attention and focus; however, as the paragraphs increased in length and complexity, it became more difficult for Maurice to answer the following question types: main idea, detail, inference, and prediction. Maurice performed in the below average range for the Semantic Relationships subtest, which evaluated his ability to interpret sentences that a) make comparisons, b) identify location or direction, c) specify time relationships, d) include serial order, or e) are expressed in passive voice. Maurice demonstrated difficulty with the following semantic relationships: sequential, comparative, and passive. Maurice performed in the low average range for the Word Classes-Receptive subtest, which evaluated his ability to understand relationships between words that are related by semantic class features.

The Expressive Language portion of the test includes the following subtests: Word Classes-Expressive, Formulated Sentences, and Recalling Sentences. Maurice performed in the low average range for the Word Classes-Expressive subtest, which evaluated his ability to understand and explain logical relationships in the meanings of associated words. Maurice performed in the average range for the Formulated Sentences subtest, which evaluated his ability to formulate complete, semantically and grammatically correct spoken sentences of increasing length and complexity using given words and contextual constraints imposed by illustrations. This subtest was a strength for him and his sentences were quite good. On the Recalling Sentences subtest, which evaluated his ability to a) listen to spoken sentences of increasing length and complexity, and b) repeat the sentences without changing word meanings, inflections, derivations or comparisons (morphology), or sentence structure (syntax), Maurice performed below average, indicating that he has not internalized complex sentence structures. He demonstrated the most difficulty with sentences containing subordinate clauses.

The Working Memory portion of the test includes the following supplementary subtests: Number Repetition and Familiar Sequences. Maurice performed in the above average range for Familiar

231

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 4    **Confidential**

Sequences and in the high average range for Number Repetition-Forward. However, he performed below average for Number Repetition-Backward.

Maurice demonstrated within normal limits pragmatic or social language skills throughout the testing session. He appropriately greeted the examiner, took conversational turns, maintained topics, made appropriate eye contact, and responded well to verbal praise. Maurice demonstrated appropriate attention and focus throughout the evaluation. He seemed motivated to do well and was concerned about answering questions correctly.

## Oral and Written Language Scales(OWLS)/ Listening Comprehension and Oral Expression Scales

This test is standardized and normed for ages three through twenty one and the standardization sample took into account the US Census data on sex, race, region and mother's education level. This test measures vocabulary and grammar as well as pragmatics (language function) and supralinguistics (higher-order thinking with language). It allows the examiner to measure a person's ability to understand and produce connected language not just single words and sentence structures. The OWLS includes items that measure advanced lexical skills, knowledge of idioms and complex syntactic structures as well as cognitively loaded messages that must be analyzed at different levels. It requires no reading or writing. The scores presented are based on an age of twenty one, which represents adult language. Standard scores are reported with a mean = 100 and a standard deviation = 15. Therefore, scores that fall between 85-115 are considered in the average range. Maurice's scores are as follows:

|  | Standard Score | Percentile | Age Equivalent |
|---|---|---|---|
| **Oral Composite** | 70 | 2 | 10y 6m |
| Listening Comprehension | 74 | 4 | 10y 6m |
| Oral Expression | 69 | 2 | 10y 6m |

Maurice's language skills as assessed by the <u>OWLS</u> reflect moderately delayed receptive language skills and severely delayed expressive language skills.

Receptively, Maurice demonstrated the most difficulty understanding supralinguistic test items including: humor, contextual cues, words with multiple meanings, figurative language, and logic. He also demonstrated some difficulty understanding complex sentences structures.

Expressively, Maurice presented as a concrete thinker and had difficulty using figurative language, forming appropriate requests based on contextual cues, and providing a detailed description so as to enable another person to identify who he was talking about. He also made grammatical errors such as switching verb tenses, using incorrect pronouns, and incorrectly combining clauses to form complex sentences.

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 5                 **Confidential**

## Goldman-Fristoe Test of Articulation-2nd edition (GFTA-2)

The Goldman-Fristoe Test of Articulation-2nd edition (GFTA-2) assesses an individual's articulation of the consonant sounds of Standard American English. Maurice's scores were as follows:

| Raw Score | Standard Score | Percentile |
|-----------|----------------|------------|
| 2 | 87 | 2 |

Maurice substituted /f/ for "th" in the words "bathtub" and "bath". This substitution is considered dialectically appropriate for African Americans. Maurice was 100% intelligible during today's evaluation and no concerns were noted about his articulation skills.

*Voice*: Within normal limits.
*Fluency*: Within normal limits. No stuttering or hesitations were noted.
*Oral Motor*: Face and lips are symmetrical and tongue is of normal size. Labial and lingual range of motion and coordination appear within normal limits. Oral motor skills are judged to be within normal limits.
*Hearing*: Maurice passed a hearing screening, given by this evaluator, prior to speech and language testing.
*Vision*: No concerns.

## SUMMARY AND RECOMMENDATIONS

Maurice's receptive and expressive language skills are below expected levels as measured by the OWLS. However, as measured by the CELF-4, a more structured, concrete, and visual test; his receptive skills are only mildly delayed and his expressive skills are in the low average range. This discrepancy between test scores indicates that when given structure, concrete information, and visual cues, Maurice is better able to understand and use language. Overall, his general communication is functional but grammatical and semantic errors are prevalent. Maurice is concrete in his thinking style and has difficulty understanding idioms and other figurative language. Attention to visual detail is a strength for him. Fluency, articulation, voice, and hearing are judged to be within normal limits. Speech and language therapy is recommended in order to improve Maurice's understanding and use of grammatical structures, semantics, and figurative language. Maurice was a pleasure to work with and if you have any questions or concerns please do not hesitate to call me at 919-602-2945.

*Marisa S. Harrell MS CCC SLP*
Marisa S. Harrell, M.S., CCC-SLP

233



ASSOCIATES IN COMMUNITY PSYCHOLOGY

# RONA M. FIELDS, Ph.D.

1618 MYRTLE ST., N.W., WASHINGTON, DC
20012

Tel:  202-882-8833
Fax:  202-545-1758
Email: rmfields27@aol.com

## REPORT ON PSYCHO-EDUCATIONAL AND CLINICAL EVALUATIONS FOR MAURICE PIMBLE

Maurice Pimble, a twenty year old male presently incarcerated in the River Correctional Institution in Winton, North Carolina. He was brought to the DC Correctional Center for purposes of an appeal hearing for ineffective assistance of counsel in a criminal proceeding. He was authorized for psycho-educational and clinical assessments. It was in this facility that he was evaluated.

## REPORT ON PSYCHO-EDUCATIONAL EVALUATION OF MAURICE PIMBLE

Date of Birth: ▓▓▓▓/85
Dates of Evaluation: 11/21-12/8/05
Age: 20 yrs.8 months
Referred By Attorneys: U.D.C. David A. Clarke School of Law

### Background

Mr. Pimble's background in the juvenile and adult criminal justice system is detailed elsewhere. His background in DC Public Schools is far less detailed and his family background is provided through clinical interviews and a social history. Access to Mr. Pimble for psychological testing required four separate visits. Conditions for testing were less than conducive to concentration. Nonetheless, Maurice was attentive and cooperative despite the poor environment. At one meeting he explained that he was unable to attend the previous appointment because along with everyone else, he was on lock-down.

Maurice describes his early life as chaotic and neglected His parents were together during his first seven years but they wee both drug users and dealers. He is the eldest of his mother's five children. One sister lives with her grandmother. Another sister and brother are presumably with their mother. Maurice doesn't know, however, where they are living these days. He says that he was kicked out of his mother's house when he was twelve because he didn't get along with her boy friends. He lived with various relatives after that. His father was incarcerated during that period of time. Life with his mother meant having to move every time

1

REGISTER OF HEALTH SERVICE PROVIDERS IN PSYCHOLOGY 21558

LIC. NO. DC. 907          LIC. NO. VA. 343

the rent was due and having the water cut off and other utilities terminated because even when his mother had money she spent it on drugs, never on food or rent. Because of her frequent evictions and consequent moves, Maurice attended different schools, was absent a lot, and was poorly equipped to study in school. He was retained at least three times in elementary school and although he had been referred for special education evaluations, never was evaluated and never placed in an appropriate educational environment to meet his learning disabilities. After leaving his mother's house he wound up with a paternal uncle and then with a friend of his uncle, Alfred Hobdy whom he calls "uncle". Mr. Hobdy, who coached boxing at a gym and felt that Maurice had a talent for the sport. Maurice learned to box and for a while found that gratifying. Then he began playing basketball and football at a local recreation center and stopped going to school altogether. He had changed schools five or six times when he finally got into a GED program at Links and Learn for a year and a half. After that he was in jail. He claims that he just wanted to be friends with the wrong people. His uncle told him he shouldn't hang out with the people who were partying. But, he says, he didn't know kids who were law-abiding.

Records indicate that Maurice was abused by his mother and her boy friend and frequently acted out against the men his mother brought home. His behavior in seventh grade brought him to the attention of the juvenile justice system. He began using Marijuana and PCP when he was 15 years old. It is the opinion of his guardian, who is a regular visitor to Maurice since he's been incarcerated, that Maurice is easily influenced by others and is a follower rather than a leader. All of his history, as well as his own accounts and those of his guardian indicate that during the time he was in DCPS he was a very emotionally impaired child suffering the consequences of abuse both physical and mental and the customary consequences of hat abuse manifested as Learning Disabilities that interfere with academic performance.

### Psycho-educational Test Battery

Wechsler Individual Achievement Test
Wechsler Adult Intelligence Scale (WAIS III)
Memory for Designs
Bender Gestalt

### Findings

Maurice Pimble's Full Scale WAIS-III IQ is 75. This is in the low normal or borderline range of cognitive functioning. His Verbal Scale score is 78 and his Performance Scale score is 72. Usually such proximity in the two scale scores would suggest a very consistent pattern of low functioning, borderline ability. But while his scores on the tasks most influenced by formal education are quite consistent in the Mildly Mentally Retarded/Borderline range (Standard score 6), the Performance Scale subtests which are less influenced by formal education indicate that Mr. Pimble has been in the normal range in some conceptual and abstract functioning His score in Spatial Relations and Concrete relationships suggest that he is able to

2

learn to perform skilled work in mechanical and construction tasks. The standard scores on the subtests are as follows:

| Verbal | | Performance | |
|---|---|---|---|
| Information | 6 | Picture Completion | 5 |
| Digit Span | 6 | Picture Arrangement | 6 |
| Vocabulary | 6 | Block Design | 8 |
| Arithmetic | 6 | Object Assembly | 8 |
| Conceptualization | 6 | Digit Symbol | 4 |

Although his Verbal Scale IQ is slightly higher that his Performance Scale IQ, and indicates lack of formal education, it also suggests that this young man has been unable to communicate effectively and would feel marginal in peer groups because he lacks the common knowledge base that informs school and peer societies. In combination with these disparities, he has a very depressed understanding of social consequences or logical sequences and common sense judgment. He is operating at the level of mildly retarded in Language learning and possibly suffered some developmental delays in central nervous system processing (brain damage). His score of Average in spatial orientation and perceptual organization suggests that he was able, if presented with appropriate language arts learning tools, to have performed adequately at each grade level. Instead, he failed at least three times on his way through elementary school. Quite likely Maurice Pimble would have met the criteria for classification as Learning Disabled early in school.

Maurice's difficulties with visual memory as reflected in his Standard Score 5 on the Picture Completion subtest, is further reflected in his very poor showing on the Memory for Designs test. He remembered and accurately drew only four of the fifteen designs on the MFD test. This could also reflect a perceptual motor handicap commonly found in children with Learning Disabilities, but also a consequence of brain damage or Developmental Delays in psycho-motor functioning. Interestingly though (and this will also be addressed in the context of his Clinical evaluation since these tests are also clinical screening tools) while thee were anomalies in his designs on the Bender he was not required to reproduce them from memory and was therefore able to make reasonable approximations in copying the designs. This reflects adequate perceptual motor functioning but probable central nervous system damage.

Maurice Pimble's scores on the Wechsler Individual Achievement Test (WIAT were compared with his Full Scale IQ of 75 and more specifically with verbal and performance IQs which were within close range to reveal highly significant differences between his IQ and his Achievement. The latter is actually a reflection of his formal education and because his scores on the parts of the WAIS most affected by formal education were so low, the actual achievement scores are even more

3

significantly depressed. All but two subtest scores are significant at the .01 level of confidence. The other two, Spelling and Reading Comprehension are significant at the .05 level.

The standard and percentile scores on the WIAT are as follows:

Basic Reading               74 ................. 4th percentile
Mathematics Reasoning       64................. 2nd percentile
Spelling                    69 ............... 2nd percentile
Reading Comprehension       75 ............... 5th percentile
Numerical Operations        58 .................0.3 percentile
Listening Comprehension     72 ................. 3rd percentile
Oral Expression             80 ...............22nd percentile
Written Expression          60...................0.4 percentile

Maurice's subtest scores on Basic Reading, Reading Comprehension, Listening Comprehension and Oral Expression are consistent with his WAIS Verbal scale scores which also place him in the lowest quartile in IQ. However, when we examine the Composite Scores for Reading, Math, Language and Spelling, his standard score of 57 is significantly lower than his Full Scale IQ of 75 and places him at the 0.2 percentile at the significance level of .01 probability.This is especially notable in the difference between his level of Mathematical Reasoning and his performance of Numerical Operations.

<u>Conclusions</u>

The Psycho-educational Testing illustrates several issues about Maurice Pimble's cognitive functioning and suggests two underlying handicapping conditions that interfere with his ability to learn.
*First, his formal education was not appropriate to his ability and needs. This may be consequent to brain processing impediments and anomalies. This hypothesis needs to be investigated by means of a neuropsychological examination. His performance in his early school years apparently indicated that he required Special Education services for Learning Disabilities. The probable etiology of his Learning Disabilities was a combination of Central Nervous System Anomalies (Neuropsychological processing or obstruction). He was referred for evaluation at that time but neither the evaluation nor the placement ever happened.*
*Second, there is and likely has always been an emotional impediment to learning given his early childhood traumatic and chaotic life experience. That has been studied through the clinical assessment(See attached repor) regarding the clinical psychological assessment of Maurice Pimble.*

Rona M. Fields, Ph.D.
Licensed Clinical Psychologist

4

237

*Part II*



ASSOCIATES IN COMMUNITY PSYCHOLOGY

# RONA M. FIELDS, PH.D.

1618 MYRTLE ST., N.W., WASHINGTON, DC
20012

Tel:  202-882-8833
Fax:  202-545-1758
Email: rmfields27@aol.com

## REPORT ON CLINICAL PSYCHOLOGICAL
## EVALUATION OF MAURICE PIMBLE

Date of Birth: ███/85
Date of Evaluation: 11/29/05
Age: 20 years 8 months
Referred by Attorney: U.D.C. David A. Clarke School of Law

### Background

Maurice Pimble's background has been noted above and in a social history report.
To summarize in the context of this clinical report, there are some significant issues:

1.  His parents were drug dealers and users who had little involvement with
    their children. Given the home circumstances as described by
    caseworkers/investigators from Social Services Abuse and Neglect
    investigations, Maurice had to be removed from the home for his health and
    safety. He was found by the court to have been severely abused and
    describes having been beaten up by a series of his mother's boy friends.

2.  He recalls many times when there was no food, no lights, and no heat
    because his mother didn't pay rent nor utility bills and spent the food money

on dope. That also entailed frequent moves because the rent was due and his mother had spent the rent money on illegal drugs instead.

3. He had to change schools frequently because of the family's moves and usually lacked clean and appropriate clothing to wear to school. He felt ashamed of himself and embarrassed and unable to relate with his peers.

4. He was thrown out of the house by his mother when he was twelve, he reports.

5. He felt he had been rejected by his mother and that his father didn't care about him from the time he was seven years old. After his foster uncle (who became his guardian) took an interest in him he wanted to please him but found it difficult to feel worthy.

At this time, the only visitor he has is that "uncle".

## Tests Administered

Thematic Apperception Test (TAT)
Projective Drawings:
Draw A Person
Self Portrait
House Tree Person
Clinical Interview

## Findings

The projective drawings indicate that Maurice feels "disconnected" from himself and from others. He also experiences feelings of instability and great insecurity. He has some concerns about his sexuality and a particular disconnectedness between mind and body. He is unable to control himself and/or to understand what he is thinking and feeling. His drawings also indicate emotional immaturity and lack contact features indicating that he is unable to connect with another person or tries to hide himself from others. On the House-Tree -Person drawing, there is no connection between the figures and no connection is even possible. When asked to tell a story about his drawing, Mr. Pimble told the following story:

"They live up in the woods where thee are a lot of trees. He lives alone in the house. In the house is furniture, TV, clothes. The tree? It just grows real tall. It doesn't grow food. It's a tall tree."

The clinical interpretation of this story and the drawing is that neither the tree (male symbol) nor the house(female symbol) provide shade, comfort, nourishment, warmth nor access. *He is alone in the world in a "forest of (men) trees" that just exist.*

The drawings also project his sense of his own mental impairment, particularly processing problems. He has serious issues of low self- esteem and poor verbal comprehension. All of this, makes him particularly susceptible to the influence and leadership of others.

At the same time, Maurice is conflicted between feelings of guilt and dependency needs. He learned as a child that depending on others is painful and disappointing.

6

More of this conflict and anxiety are revealed in his TAT stories. The Imports or themes of these stories are as follows:

1. When you find you cant do something you take lessons to learn how to do it better
2. because each person has his own thoughts and destination
3. and when your feelings are hurt you have trouble pulling yourself together but you learn to control yourself
4. or if you are told how to do something and don't do it and drop your responsibilities you now do what you are told.
5. If you are in a relationship you don't want it to go away but it does for awhile, then it returns
6. But when you get into a fight with weapons one goes to jail and the other to surgery.
7. on the other hand when two creatures are in a fight one can kill the other and consume it.
8. or you get into an argument with someone and cannot resolve it until you dream about it and awaken the next morning
9. and if you do something wrong you can almost kill yourself but get saved by the law enforcers who punish you for wrongdoing and you learn ever to do that again
10. but if you do something very hard, dangerous but good and do a good job of it, you are rewarded.

These stories reflect a strong concern with right and wrong and with achievement. However the also demonstrate that Maurice Pimble has little confidence in himself to succeed at doing what he knows is right. He feels weak and vulnerable. Important among these themes are the repeated instances of individuals in conflict with close ones and are unable or unmotivated for connecting with each other.

## Conclusions

Mr. Pimble 's history and his clinical symptoms suggest he suffered an Attachment Disorder of childhood as well as probable toxicity in utero and abuse that included head trauma. The nutritional deficits in his childhood also contributed to the probability of central nervous system damage. Attachment Disorder of early childhood is a diagnosis consistent with his history of chaotic home environment and disrupted relationships. It is also consistent with his inability to feel connected with other people and places. His very poor self esteem and lack of emotional stability is consistent with a diagnosis of Anxiety Disorder and Chronic Post Traumatic Stress. These circumstances and consequence of childhood neglect and abuse would have made it difficult for Mr. Pimble to concentrate in school and to achieve learning objectives. His cognitive impairments were never addressed with special education although he was retained three or four times in elementary school. He is quite concerned with issues of right and wrong and cognizant of the need to follow rules and laws. However, he wants to be liked and is therefore easily led by peers who

may not have the same standards of moral judgment.  He expects punishment for his criminal actions and because he is naïve and low cognitive ability, committed actions for which he feels guilty. He also has difficulty with self- direction because of his weak ego or sense of self.  He fits the diagnosis Multiple Handicap because he has an emotional, mental and (probable)brain anomalies. Neuropsychological testing of Maurice Pimble is essential to making a final diagnosis of his disabilities and is essential, also, to determining the etiology of his impairments.

### Recommendations for Educational and Psychological Remediation

Maurice Pimble needs one- on- one psychotherapy sessions to develop self esteem and confidence. Therapy needs to deal with his chronic Post Traumatic Stress Disorder, including the Dissociative phenomenon and flashbacks that interfere with his integration into present reality. But to be effective his therapy must include educational remediation. His Language Arts deficits can be addressed with an Orton-Gillingham method program. These are available on interactive CD for use by individuals. He will need training first to use a computer. This program includes speech and hearing and is therefore a complete sensory integration approach to learning.
His WAIS profile suggests that his Spatial Comprehension and Perceptual Organization skills might contribute to success in learning skills such as auto mechanics, heating and air conditioning mechanics and machine tool operations. There is every reason to believe that when Maurice Pimble has achieved literacy and job skills, he will also achieve confidence and self-esteem. He will need encouragement to persevere long enough to achieve a level of proficiency. Every attempt the ends in failure will further impair his fragile confidence. He is eager to learn a trade and to gain self-respect.


Rona M. Fields, Ph.D.
**Licensed Clinical Psychologist**

8

# DAVID W. STEWART, PH.D.
### LICENSED PSYCHOLOGIST
### 811 NINTH ST. SUITE 220
### DURHAM, NC 27705
### (919) 286-5051 (VOICE)
### (919) 286-5525 (FAX)

# PSYCHOLOGICAL EVALUATION

**Name: Maurice Pimble**
**Date of Birth:** ███████, 1985
**Date of Report: April 19, 2005**

## REFERRAL AND IDENTIFYING INFORMATION

Maurice Pimble is 19 year-old single black male currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. This psychological evaluation was requested by Mr. Pimble's attorney to address two issues of competency. On July 13, 2004, Mr. Pimble revoked his request for a new lawyer. His present attorney is asking for an opinion as to whether his decision was voluntary and knowing. On September 7, 2004, Mr. Pimble decided not to accept a plea deal that would have resulted in a shorter sentence than what he received by going to trial. His present attorney is asking for an opinion as to whether this decision was voluntary, intelligent, and knowing. Mr. Pimble is represented by Jennifer Daskal of the Public Defender Service for the District of Columbia.

## ASSESSMENT PROCEDURES

Mr. Pimble was interviewed and tested at the Rivers Correctional Institution on April 12, 2005. Prior to initiating formal assessment procedures, Mr. Pimble was informed as to the general purposes of the evaluation as well as the limits of confidentiality. He indicated that he understood these instructions and elected to fully cooperate with the assessment procedures. Mr. Pimble was administered the following psychological tests:

> Wechsler Adult Intelligence Scale-Third Edition (WAIS-III)
> Millon Clinical Multiaxial Inventory-III (MCMI-III)
> Rorschach Projective Test
> Mental Status Exam and Clinical Interview

242

Maurice Pimble
Psychological Evaluation
Page Two

In addition, transcripts from hearings on July 17 and September 9, 2004, and a copy of his arrest affidavit and investigative report were reviewed along with educational records and a portion of the Court Social Services report (12/10/04).

## FINDINGS

*Behavioral Observations:* Mr. Pimble was dressed in a prison-issued jump suit and was somewhat shy initially. He was responsive to directions and cooperated with the testing procedures throughout. Mr. Pimble tended to avoid eye contact and manifested a generally shy manner. His affect was limited and his mood was depressed. Mr. Pimble denied hallucinations or delusions or suicidal ideation. The test results are believed to be a valid indication of his current functioning.

*Intellectual Test Results:* Mr. Pimble was administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III) from which his IQ scores were derived. His Full Scale IQ, which is considered an indication of his global intellectual functioning, falls in the Borderline range of intellectual functioning (FSIQ = 78; within 74 - 83 with 95% confidence). His overall thinking and reasoning abilities exceed those of approximately 7% of adults his age.

The Verbal score is a measure of acquired knowledge, verbal reasoning, and comprehension of verbal information. His verbal reasoning abilities, as measured by the Verbal IQ, are in the Borderline range and above those of approximately 6% of his peers (VIQ = 77; within 73 - 83 with 95% confidence). The Verbal Comprehension Index (VCI) provides a measure of verbal acquired knowledge and verbal reasoning thus it is a purer measure of verbal comprehension than is the Verbal IQ. In Mr. Pimble's case, his Verbal Comprehension Index score is similar to his Verbal IQ score. His ability to understand and respond to verbally presented material is better than that of only 7% of others his age (VCI = 78; 95% Confidence Interval = 73 - 85).

The Performance score provides an indication of an individual's nonverbal reasoning, spatial processing skills, attentiveness to detail and visual-motor integration. His nonverbal reasoning abilities, as measured by the Performance IQ, are in the Low Average range and better than those of approximately 14% of his peers (PIQ = 84; within 78 - 92 with 95% confidence). The Perceptual Organization Index (POI) is actually a purer measure of nonverbal reasoning than is the Performance IQ. The POI measures fluid reasoning, spatial processing, attentiveness to detail and visual-motor integration. Mr. Pimble's Perceptual Organization Index score is identical to his Performance IQ score. His performance on the Perceptual Organization Index exceeds that of 14% of his age-mates (POI = 84; 95% Confidence Interval = 78 - 92).

*Personality Test Results:* Two specific personality tests were administered to Mr. Pimble, the Millon Clinical Multiaxial Inventory-III (MCMI-III) and the Rorschach Projective Test.

243

Maurice Pimble
Psychological Evaluation
Page Three

Mr. Pimble's responses to the MCMI-III were valid and allow for clinical interpretation. His responses suggest a broad tendency to magnify the level of experienced illness and/or a characterological inclination to complain or to be self-pitying. Equally possible is that this response style conveys feelings of vulnerability associated with current acute turmoil.

Data from the Millon Clinical Multiaxial Inventory-III suggest that Mr. Pimble is experiencing a significant psychological disorder with at least a moderate level of psychopathology characterizing his overall personality organization. Evidence indicates the presence of prominent anxiety and depressive disorders in this young man. He may appear to be edgy and apprehensive and manifest worrisome self-doubts especially regarding inadequacy. He is especially sensitive to public reproval. Depressive symptoms appear to be of a chronic nature. He exhibits a persistent level of downheartedness and poor self-esteem. He lacks a sense of belonging and feels unwanted much of the time.

Underlying dynamics suggest an intense conflict between dependency needs and feelings of guilt and self-condemnation. Although he would like to lean on others he has learned to anticipate pain and disillusionment. He has become pessimistic about the future, brooding over past events and feeling sorry for himself. Feelings of resentment are infrequently displayed as anger and discontent but mostly he projects a gloomy moodiness. He hesitates to stand on his own due to his own self-doubts; on the other hand, he fears he cannot depend on others. Disposed to anticipate disillusionment, he behaves in a helpless and inadequate manner feeling misunderstood, unappreciated and demeaned by others.

The Rorschach Projective Test provides an opportunity to confirm or reject hypotheses generated from the MCMI-III. Because it is not as apparent how to exaggerate or fake responses to the Rorschach, the degree of overlap in the data obtained can help determine the validity of results obtained from the self-report personality measures. In Mr. Pimble's case there was general confirmation of the data from the MCMI-III as well as some additional factors relating to his difficulties with adapting to reality and relating to others.

The Rorschach revealed evidence for a substantial impairment of Mr. Pimble's reality testing capacity whereby he tends to misperceive events and to form mistaken impressions of people and the significance of their actions. This liability is likely to result, at times, in instances of poor judgment in which he fails to anticipate the consequences of his actions and misconstrues what constitutes appropriate behavior. He appears to lack a consistent and well-defined coping style and has fewer resources available for coping with the ordinary demands of everyday living. There is evidence of marked oppositional tendencies associated with underlying feelings of anger and resentment toward people or the world in general. There is no evidence for the presence of delusional or psychotic thinking.

There is evidence for impairments in the areas of self-esteem and identifying with the people in his life. As a consequence, he likely has difficulty in establishing a clear and stable

244

Maurice Pimble
Psychological Evaluation
Page Four

sense of identity. His relationships with others is affected by his limited capacity to form close attachments to others. He shows little interest in engaging in collaborative or competitive relationships with others and he is more likely than most to demonstrate ineffective or maladaptive interpersonal behavior.

## DIAGNOSTIC IMPRESSIONS

According to the criteria established in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, TR, Mr. Pimble qualifies for the following diagnoses:

AXIS I: CLINICAL SYNDROMES

309.24 Adjustment Disorder with Anxiety
300.4 Dysthymic Disorder

AXIS II: PERSONALITY DISORDERS AND MENTAL RETARDATION

301.9 Personality Disorder Not Otherwise Specified with Schizoid
Features.
V62.89 Borderline Intellectual Functioning

AXIS III: GENERAL MEDICAL CONDITIONS

Deferred

AXIS IV: PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS

Legal Difficulties
Poor educational achievement
History of child abuse
Fragmented family of origin

AXIS V: GLOBAL ASSESSMENT OF FUNCTIONING

50 (Current)

Maurice Pimble
Psychological Evaluation
Page Five

## DISCUSSION, OPINIONS AND RECOMMENDATIONS

Mr. Pimble manifests current difficulties with anxiety and depression. His current circumstances certainly contribute to his symptoms but there is reason to believe that these problems were present before his incarceration. His childhood is marked by instability and physical abuse. Both parents were drug abusers and he spent time in shelters for the homeless. Although he qualifies for an Adjustment Disorder with Anxiety diagnosis there is reason to believe that he is predisposed to anxiety as the result of post-traumatic stress issues related to trauma in his childhood. Depressive symptoms appear to be chronic and related to poor self-esteem, feelings of rejection and lack of attachment. Apparently Mr. Pimble did not seek treatment for these problems, perhaps due to his lack of belief that anything could be done about them.

Personality disorders are longstanding maladaptive patterns of impairment in social and personal areas. Mr. Pimble manifests maladaptive behavioral patterns in his relations with others and perception of reality. Further evaluation would be required to more definitively diagnose these patterns. For now a diagnosis of Personality Disorder Not Otherwise Specified with Schizoid Features documents the presence of these adaptive difficulties.

Mr. Pimble also qualifies for a Borderline Intellectual Functioning diagnosis due to his performance on the intellectual measure (WAIS III). Although not mentally retarded, he cannot be expected to comprehend and understand information, particularly of verbal content, like the average citizen. Special accommodation would be required to insure that he is able to understand and then make important decisions based upon full knowledge of the facts.

With reference to the issues of referral, the data indicates that Mr. Pimble was not able to make a knowing, intelligent and voluntary decision with respect to the situation when he revoked his request for a new attorney and when he refused the plea offer. Based upon the content of the transcripts and Mr. Pimble's description of the circumstances, his ability to consider his options and make an intelligent decision were compromised in several ways. First, there is no evidence that his attorney took into consideration his intellectual limitations and thus explained matters in a way so that Mr. Pimble could fully understand his options. It also does not appear that his attorney then followed up with Mr. Pimble to insure that he was basing his decision on all the facts at hand.

Second, Mr. Pimble's problems with poor self-esteem and his issues with dependency make it unlikely that he would not be influenced by what he thought others wanted him to decide. In the situation of the courtroom he was likely intimidated by the judge and personnel and thus was not capable of making a voluntary decision about his request for a new attorney without feeling the pressure of the circumstances. Likewise he was likely similarly influenced in

Maurice Pimble
Psychological Evaluation
Page Six

his decision to refuse the plea offer and ended up making a decision that was not in his best
interests.

Third, there is evidence that, particularly under stress, Mr. Pimble has difficulties with
reality testing which can lead to poor judgments. Under these circumstances, he is likely to form
mistaken impressions of people and the significance of their actions. These mistaken perceptions
in combination with his limited decision-making skills under the best of circumstances would
lead to decisions that would not be in his best interests and be ultimately to his detriment.

David W. Stewart, Ph.D.
Licensed Psychologist
NC License 1043

247

# University of the District of Columbia



David A. Clarke School of Law
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, D.C. 20008
(202) 274-7314
(202) 274-5569 (fax)

RECEIVED
AUG 2 3 2007
HEARING OFFICE

### FACSIMILE TRANSMITTAL SHEET

To: _Sheila Hall, Student Hearing Office Coordinator_

Agency/Organization: _Student Hearing Office_

Fax Number: _(202) 442-5556_

From: _Colleen Archer, UDC-DCSL_

Date: _Aug. 23, 2007_

Brief Message: _Re: Maurice Pimble_

_____

_____

_____

This cover sheet is the 1st of _52_ pages.

Fax Operator: _____

Fax Operator Telephone: _____

If there are any errors in this transmittal, please contact the fax operator.

The information in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify the fax operator immediately by telephone and return the original by fax to the number listed above. Thank you.

248

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE

1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



### HEARING NOTICE

| MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:     Parent (or Representative): **J. Tulman**              Fax No.: **(202) 274-5583**


         LEA Legal Counsel:     **Q. Harris-Lindsey**               **(202)  442-5098**

RE:        **Pimble, Maurice**                       and (LEA)  DOB:
            Student's Name


FROM:     ___SHARON NEWSOME_____
            Special Education Student Hearing Office Coordinator

DATE SENT:         **9/26/07**                              **REVISED COPY**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on. Please be advised that the hearing has been scheduled for:

         DATE:        **10/31/07**                          **Reconvened 1/ 4/25/05**

         TIME:        **11:00 AM**

         AT:     1150 5th  Street, S. E. , Washington, D.C. 20003
                 1st   Floor

         ASSIGNED HEARING OFFICER: _____

[ ]  THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *__exclusively__* by the Hearing Officer, and cannot be made by **SHO** administrative staff.  Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[ √ ]  THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates.  If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer.  If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least __five business days__ prior to the hearing with copies to the Special Education Student Hearing Office.

249

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 09/26/2007 17:15
                              NAME  : STUDENT HEARING
                              FAX   : 2026983825
                              TEL   : 2026983819
                              SER.# : BROE6J471574
```

```
DATE,TIME          09/26  17:15
FAX NO./NAME       92022745583
DURATION           00:00:19
PAGE(S)            01
RESULT             OK
MODE               STANDARD
                   ECM
```

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE

1150 5ᵗʰ Street, S. E.
1ˢᵗ  Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



### HEARING NOTICE

| MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:      Parent (or Representative): J. Tulman          Fax No.:  (202)  274-5583

 

        LEA Legal Counsel:    **Q. Harris-Lindsey**              (202)  442-5098

RE:      **Pimble, Maurice**                          and (LEA)  DOB:
       Student's Name

FROM:    SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT:       **9/26/07**                           **REVISED COPY**

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on.
Please be advised that the hearing has been scheduled for:

        DATE:        10/31/07                          Reconvened l/ 4/25/05        250

        TIME:        11:00 AM

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME : 09/26/2007 17:52
                              NAME : STUDENT HEARING
                              FAX  : 2026983825
                              TEL  : 2026983819
                              SER.# : BROE6J471574
```

```
  DATE,TIME            09/26  17:52
  FAX NO./NAME         92024425098
  DURATION             00:00:27
  PAGE(S)              01
  RESULT               OK
  MODE                 STANDARD
                       ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825



### HEARING NOTICE

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:     Parent (or Representative): J. Tulman        Fax No.:  (202)  274-5583

        LEA Legal Counsel:   Q. Harris-Lindsey              (202)  442-5098

RE:     **Pimble, Maurice**                          and (LEA)  DOB:
        Student's Name

FROM:   ___SHARON NEWSOME___
        Special Education Student Hearing Office Coordinator

DATE SENT:     **9/26/07**                          **REVISED COPY**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on.
Please be advised that the hearing has been scheduled for:

        DATE:    **10/31/07**                      Reconvened f/ 4/25/05     251

        TIME:    **11:00 AM**

# UNIVERSITY OF THE DISTRICT OF COLUMBIA
## David A. Clarke School of Law



**Juvenile and Special Education Law Clinic**
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008
(202) 274-7314
(202) 274-5569 (fax)
http://www.law.udc.edu

## MOTION TO EXTEND TIME ALLOTED FOR A DUE PROCESS HEARING AND MOTION TO MOVE A DUE PROCESS HEARING TO THE D.C. JAIL.

TO:        Hearing Officer Dubow

FROM:    Alea Harmon, Student Advocate UDC-DCSL

RE:        Maurice Pimble (DOB: ▇▇/85)

DATE:    October 17, 2007

Dear Hearing Officer Dubow:

Along with our supervisor, Joe Tulman, through the University of the District of Columbia, David A. Clarke School of Law (UDC-DCSL) Juvenile and Special Education Clinic, Colleen Archer and I represent Maurice Pimble (DOB: ▇▇/85) in all matters related to his special education rights.

Mr. Pimble has a due process hearing scheduled on October 31, 2007 at 11:00 a.m. I respectfully request that you allot an additional two hours for the hearing to allow adequate time to hear all of our witnesses.

Mr. Pimble is currently incarcerated at the D.C. Jail. The D.C. Department of Corrections will not allow Mr. Pimble to leave the D.C. Jail to attend the special education hearing because of security concerns. However, we respectfully move to change the location of the hearing to preserve Mr. Pimble's right to attend. Accordingly, I also request an order to move the location of the hearing from the Student Hearing Office to the D.C. Jail to allow Mr. Pimble to be present at his hearing pursuant to the Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures Manual § 800.1.3.[1] We will take the steps necessary to obtain agreement from (or obtain a court order directed to) the D.C. Department of Corrections to accommodate the hearing at the D.C. Jail. We note that Department of Corretions

---

[1] "All parties have the right to be present when witnesses testify against them and to ask them questions concerning their views." Standard Operating Procedures Manual § 800.1.3.

252

administrators routinely conduct parole revocation and disciplinary hearings at the D.C. Jail. Thus, we know that administrators there are able to accommodate a hearing.

In responding to this motion, please contact me via facsimile at 202 274-5583 or at the above address. If you determine that we need to have a pre-hearing teleconference (pursuant to §400.1(D) of the SHO SOP) – with the attorney for DCPS -- regarding the scheduling and location of the hearing, you can reach me by phone at 202-320-8615 and Joe Tulman at 202-274-7317.


Respectfully submitted,

Alea Harmon
Law Student Advocate

253

# UNIVERSITY OF THE DISTRICT OF COLUMBIA
## David A. Clarke School of Law



**Juvenile and Special Education Law Clinic**
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008
(202) 274-7314
(202) 274-5569 (fax)
http://www.law.udc.edu

### MOTION TO EXTEND TIME ALLOTED FOR A DUE PROCESS HEARING AND MOTION TO MOVE A DUE PROCESS HEARING TO THE D.C. JAIL.

TO:         Hearing Officer Dubow

FROM:       Alea Harmon, Student Advocate UDC-DCSL

RE:         Maurice Pimble (DOB:▓▓▓85)

DATE:       October 18, 2007

Dear Hearing Officer Dubow:

Along with our supervisor, Joe Tulman, through the University of the District of Columbia, David A. Clarke School of Law (UDC-DCSL) Juvenile and Special Education Clinic, Colleen Archer and I represent Maurice Pimble (DOB: 5/19/85) in all matters related to his special education rights.

Mr. Pimble has a due process hearing scheduled on October 31, 2007 at 11:00 a.m. We respectfully request that you allot an additional two hours for the hearing to allow adequate time to hear all of our witnesses.

Mr. Pimble is currently incarcerated at the D.C. Jail. The D.C. Department of Corrections will not allow Mr. Pimble to leave the D.C. Jail to attend the special education hearing because of security concerns. However, we respectfully move to change the location of the hearing to preserve Mr. Pimble's right to attend. Accordingly, we also request an order to move the location of the hearing from the Student Hearing Office to the D.C. Jail to allow Mr. Pimble to be present at his hearing pursuant to the Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures Manual (SHO SOP) § 800.1.3.[1] We will take the steps necessary to obtain agreement from (or obtain a court order directed to) the D.C. Department of Corrections to accommodate the hearing at the D.C. Jail. We note that the Department of

---

[1] "All parties have the right to be present when witnesses testify against them and to ask them questions concerning their views." Standard Operating Procedures Manual § 800.1.3.

1

Oct 19 07 01:06a

p.1

Corrections administrators routinely conduct parole revocation and disciplinary hearings at the D.C. Jail. Thus, we know that administrators there are able to accommodate a hearing.

In responding to this motion, please contact me via facsimile at 202 274-5583 or at the above address. If you determine that we need to have a pre-hearing teleconference (pursuant to §400.1(D) of the SHO SOP) – with the attorney for DCPS -- regarding the scheduling and location of the hearing, you can reach me by phone at 202-320-8615 and Joe Tulman at 202-274-7317.


Respectfully submitted,

Alea Harmon and Colleen Archer
Law Student Advocates




## CETIFICATION OF SERVICE


I hearby certify, that a true copy of the foregoing motion was faxed to Q. Harris Lindsey,

legal counsel for the LEA, on this day, October 18, 2007.




Alea N. Harmon
Law Student Advocate

University of District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC 20008

Telephone: (202) 274-7317
Fax: (202) 274-5583

2

# UNIVERSITY OF THE DISTRICT OF COLUMBIA

**David A. Clarke School of Law**
**Juvenile and Special Education Law Clinic**

4200 Connecticut Avenue, N.W.
Washington, D.C.  20008
(202) 274-7314
(202) 274-5583 (fax)

http://www.law.udc.edu

October 24, 2007

Q. Harris Lindsey
Office of Legal Counsel
825 North Capital Street, N.E.
9th Floor, Suite 9095
Washington, D.C.  20002

Re:    Name:  Maurice Pimble
       DOB: ▓▓▓▓▓, 1985

Dear Ms. Harris Lindsey:

Pursuant to 34 C.F.R. § 300.512(b), Mr. Pimble will rely on any or all of the following witnesses* and documents at the hearing scheduled for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

## Witnesses

Maurice Pimble*
Alfred Hobdy, friend and mentor
Twandya Lewis, mother
Dr. Rona Fields, Licensed Clinical Psychologist
Marisa S. Harrell, Speech Language Pathologist*

## Documents Enclosed

| MP1 | Pre Hearing Motion to Include Discussion of the McKinney-Vento Homeless Assistance Act, 10/24/07 |
| MP2 | Pre Hearing Motion for Default Judgment against DCPS, 10/24/07 |

---

* Witnesses (Mr. Pimble and Ms. Harrell) may need to testify by telephone.  Regarding Mr. Pimble's availability, we are moving (in a separate document) to have the hearing conducted at the D.C. Jail so that Mr. Pimble can be present and participate in person.

256

| | |
|---|---|
| MP3 | Pre-Hearing Motion to Extend Time Provided for Hearing and to Change the Location of the Hearing, 10/18/07 |
| MP4 | Grievance Process initiated by Maurice Pimble, 2/8/07, 9/24/07 |
| MP5 | Motion to Reconvene, 9/24/07 |
| MP6 | Statute of Limitations Brief, 5/1/05 |
| MP7 | DCPS and BOP Liability Brief, 5/1/05 |
| MP8 | Request for a Hearing, 3/21/2005 |
| MP9 | Letter to Lisa Russell requesting special education evaluation, 11/29/04 |
| MP10 | Letter to Lisa Russell requesting special education evaluation, 2/15/05 |
| MP11 | Letter to Michael Snipes regarding communications with Ms. Russell and request for special education evaluation, 3/21/05 |
| MP12 | Letter to Ms. Russell regarding special education evaluation, 4/4/05 |
| MP13 | Letter to Ms. Russell regarding lack of records available to DCPS, 4/12/05 |
| MP14 | Letter to Mr. Horton regarding special education evaluation, 4/12/05 |
| MP15 | Letter to Ms. Marianne Cantwell, 4/11/05 |
| MP16 | Letter from Ms. Cantwell, 4/14/05 |
| MP17 | Letter to Harley Lappin, Director of BOP, 3/3/07 |
| MP18 | Letter to Michael Snipes, Director of Department of Special Education for Incarcerated Youth, 2/28/07 |
| MP19 | Letter to George Synder, Warden of Rivers Correctional Institution, 2/28/07 |
| MP20 | Letter to George Synder, Warden of Rivers Correctional Institution, 2/21/07 |
| MP21 | Most Recent IEP, 10/1/04 |
| MP22 | Report Card from Roosevelt High School, 00/01 through 01/02 |
| MP23 | Student Master Record from Johnson Junior High School, 09/05/00 through 09/17/01 |
| MP24 | Student Master Record for Johnson Junior High School, 09/05/00 through 09/17/01 |
| MP25 | Report Card from Johnson Junior High School, 02/05/01 |
| MP26 | Student Master Record form Raymond Elementary School 03/04/98 through 10/13/99 |
| MP27 | Fifth Grade Report Card, 1998-1999 |
| MP28 | Fifth Grade Report Card, 1999 |
| MP29 | Stanford Achievement Test Series, 04/98 (5th Grade) |
| MP30 | Stanford Achievement Test Series, 09/98 (5th Grade) |
| MP31 | Stanford Achievement Test Series, 04/99 (5th Grade) |
| MP32 | Student Master Record form Randolph Elementary School, 09/12/94 through 11/07/97 |
| MP33 | Report Card, Rudolph Elementary School (4th Grade) |
| MP34 | Report Card, Rudolph Elementary School (3rd Grade) |
| MP35 | Report Card, Rudolph Elementary School (2nd Grade) |
| MP36 | Report Card (1st Grade) |
| MP37 | Progress Report, 2/9/93 |
| MP38 | Progress Report, 6/18/93 |
| MP39 | Student Residence and Date Verification Form, 1997-1998 (5th Grade) |

| MP40 | Hearing Officer Order to Brief Issues (Statute of Limitations and DCPS Liability), 4/25/05 |
| MP41 | Speech and Language Evaluation, 6/27/06 |
| MP42 | Clinical Psychological Evaluation, 4/19/05 |
| MP43 | Psychological-Educational evaluation 11/21-12/8/05 |

In addition, Mr. Pimble reserves the right to examine any witnesses and to rely on any documents disclosed by the school system.

The issues for the hearing and the relief sought are set out in the Hearing Request and Pre-Hearing Motions. If you have any questions, please call me at (202) 320-8615.

Sincerely,

Alea Harmon
Law Student Advocate

Colleen Archer
Law Student Advocate

Joseph B. Tulman
Professor of Law
Attorney for Maurice Pimble


cc:    Maurice Pimble
       Hearing Officer Dubow


258

MP1   Pre Hearing Motion to Include Discussion of the McKinney-Vento Homeless Assistance Act, 10/24/07

# Motion to Discuss the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11431 et seq.)

**To:**   Hearing Officer Seymour DuBow

**From:** Colleen Archer, UDC-DCSL Juvenile and Special Education Clinic

**Date:**   October 23, 2007

**Re:**   Maurice Pimble, (DOB █████/85)

UDC-DCSL moves to acquire the right to discuss Subtitle B of title VII of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11431 et seq.) at the Due Process Hearing scheduled for October 31, 2007.

Specifically, DCPS violated 42 U.S.C. 11431§721 (Pub.L. 100-77, Title VII, § 721) which states:

> "(1) Each State educational agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education, including a public preschool education, as provided to other children and youths.
> (2) In any State that has a compulsory residency requirement as a component of the State's compulsory school attendance laws or other laws, regulations, practices, or policies that may act as a barrier to the enrollment, attendance, or success in school of homeless children and youths, the State will review and undertake steps to revise such laws, regulations, practices, or policies to ensure that homeless children and youths are afforded the same free, appropriate public education as provided to other children and youths.
> (3) Homelessness alone is not sufficient reason to separate students from the mainstream school environment.
> (4) Homeless children and youths should have access to the education and other services that such children and youths need to ensure that such children and youths have an opportunity to meet the same challenging State student academic achievement standards to which all students are held."

260

Maurice Pimble became homeless for a period of time in 1998 and then again in 2002 and 2003. UDC-DCSL will furnish witnesses that will testify to the fact that Maurice was indeed homeless during the specified time periods. Accordingly, DCPS failed to adhere to the rights afforded to homeless children in regard to Maurice Pimble.

Respectfully Submitted,

Colleen Archer
Law Student Representative

cc:    Quinne Harris-Lindsey, Esq., Counsel for DCPS
       Maurice Pimble

261