## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAURICE A. PIMBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-0344 (RJL) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ADMINISTRATIVE RECORD

Attached is an index and the record of the administrative proceedings at issue in this action.

Respectfully submitted,

PETER NICKLES
Acting Attorney General for the District
  of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH [012914]
Chief, Equity Section 2

/s/ *Juliane DeMarco*
JULIANE DEMARCO [490872]
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
Tel. - (202) 724-6614
Fax. - (202) 727-3625

August 26, 2008

**Index of Record**

|   |   | **Page** |
|---|---|---|
| 1. | Certification of Record | 1 |
| 2. | Due Process Hearing Request, 3/21/05 | 2-5 |
| 3. | Hearing Notice, 3/28/05 | 6 |
| 4. | Plaintiff's Disclosure Letter w/att., 4/18/05 | 7-8 |
| 5. | MP-1 Request for Hearing, 3/21/05 | 9-14 |
| 6. | MP-2 Letter to Lisa Russell requesting evaluation, 11/29/04 | 15-17 |
| 7. | MP-3 Letter to Lisa Russell requesting evaluation, 2/15/05 | 18-22 |
| 8. | MP-4 Letter to M. Snipes re: communication with Russell, 3/21/05 | 23-26 |
| 9. | MP-5 Letter to Lisa Russell re: special ed. evaluation, 4/4/05 | 27-31 |
| 10. | MP-6 Letter to Lisa Russell re: lack of records, 4/12/05 | 32-40 |
| 11. | MP-7 Letter to Horton re: special ed. evaluation, 4/12/05 | 41-53 |
| 12. | MP-8 Letter to Marianne Cantwell, 4/11/05 | 54-58 |
| 13. | MP-9 Letter to Marianne Cantwell, 4/14/05 | 59-72 |
| 14. | MP-10 Most Recent IEP, 10/1/04 | 73-83 |
| 15. | MP-11 Roosevelt High School Report Card, 00/01- 01/02 | 84-85 |
| 16. | MP-12 Johnson JHS Student Master Record, 9/5/00-9/17/01 | 86-87 |
| 17. | MP-13 Johnson JHS Report Card, 2/5/01 | 88-89 |
| 18. | MP-14 Raymond ES Student Master Record, 3/4/98-10/13/99 | 90-91 |
| 19. | MP-15 Fifth Grade Report Card, 1998-1999 | 92-93 |
| 20. | MP-16 Fifth Grade Report Card, 1999 | 94-95 |

21. MP-17 Stanford Achievement Test Series, 4/98                96-100

22. MP-18 Stanford Achievement Test Series, 9/98                101-104

23. MP-19 Stanford Achievement Test Series, 4/99                105-107

24. MP-20 Rudolph ES Student Master Record, 9/12/94-11/7/97     108-109

25. MP-21 Rudolph ES Report Card, 4th grade                     110-111

26. MP-22 Rudolph ES Report Card, 3rd grade                     112-115

27. MP-23 Rudolph ES Report Card, 2nd grade                     116-117

28. MP-24 Report Card, 1st grade                                118-119

29. MP-25 Progress Report, 2/9/93                               120-121

30. MP-26 Progress report, 6/18/93                              122-124

31. MP-27 Student Residence and Data Verification, 1997-1998 5th grade 125-126

32. MP-28 5 DCMR 2201.9; 45 D.C. Reg. 5240                      127-129

33. Plaintiff's Brief on Joint Liability to Hearing Officer ("HO"), 5/1/05  130-137

34. Plaintiff's Brief on Statute of Limitation to HO, 5/1/05    138-154

35. Telephone Conference Attendance sheet, 5/3/05               155

36. Request for Extension of Time to submit Cost Information, 5/19/05  156-157

37. Letter to HO on cost information, 5/26/05 w/att.            158-159

38. Curriculum Vitae of Tina Lepage                             160-164

39. Curriculum Vitae of Kristen Clark Wynns                     165-170

40. Hearing Officer's Interim Order, 6/8/05                     171-173

41. Letter advising DCPS of S & L.evaluation for Pimble, 4/27/06  174

42. Page 2 of HO Interim Order, 6/8/05                          175

3

43. Psycho-Educational Evaluation, 11/21-12/8/05          176-179

44. Clinical Evaluation, 11/29/05                          180-184

45. Curriculum Vitae of Rona Fields                        185-196

46. Motion to Reconvene Hearing, 8/22/07 w/att             197-198

47. Att.-1 Due Process Complaint, 3/21/05                  199-202

48. Att.-2 Plaintiff's Brief on Statute of Limitation to HO, 5/1/05    203-219

49. Plaintiff's Brief on Joint Liability to HO, 5/1/05     220-227

50. Att.-3 Evaluations -Speech and Language, 6/27/06       228-233

51. Psycho-Educational, 11/21-12/8/05                      234-237

52. Clinical Evaluation, 11/29/05                          238-241

53. Psychological Evaluation, 4/19/05                      242-248

54. Hearing Notice, 9/26/07                                249-251

55. Motion to Extend Time/Move Due Process Hearing, 10/17-10/18/07    252-255

56. Plaintiff's Disclosure letter w/att., 10/24/07         256-258

57. MP-1 Pre-Hearing Motion, 10/24/07                      259-261

58. MP-2 Pre-Hearing Motion for Default Judgment, 10/24/07    162-274

59. MP-3 Pre-Hearing Motion to extend time, 10/18/07       275-277

60. MP-4 Grievance Process Initiated by Pimble, 2/8/07, 9/24/07 [1]    278

61. MP-5 Motion to reconvene, 9/24/07                      279-281

62. MP-6 Brief on Statute of Limitation, 5/1/05            282-298

63. MP-7 Liability Brief, 5/1/05                           299-306

64. MP-8 Request for Hearing, 3/21/05                      307-310

---

[1]  Plaintiff had no document attached to MP-4. The District will supplement the record when a copy of MP-4 is provided.

4

65. MP-9 Letter to Lisa Russell requesting evaluation, 11/29/04     311-312

66. MP-10 Letter to Lisa Russell requesting evaluation, 2/15/05     313-315

67. MP-11 Letter to M. Snipes re: communication with Russel, 3/21/05     316-318

68. MP-12 Letter to Lisa Russell re: special ed. evaluation, 4/4/05     319-323

69. MP-13 Letter to Lisa Russell re: lack of records, 4/12/05     324-331

70. MP-14 Letter to Horton re: special ed. evaluation, 4/12/05     332-344

71. MP-15 Letter to Marianne Cantwell, 4/11/05     345-349

72. MP-16 Letter to Marianne Cantwell, 4/14/05     350-363

73. MP-17 Letter to H. Lappin, BOP, 3/3/07     364-367

74. MP-18 Letter to M. Snipes, 2/28/07     368-370

75. MP-19 Letter to G. Snyder, 2/28/07     371-373

76. MP-20 Letter to G. Snyder, 2/21/07     374-376

77. MP-21 Most Recent IEP, 10/1/04     377-384

78. MP-22 Roosevelt High School Report Card, 00/01- 01/02     385-386

79. MP-23 Johnson JHS Student Master Record, 9/5/00-9/17/01     387-388

80. MP-24 Johnson JHS Student Master Record, 9/5/00-9/17/01[2]     389

81. MP-25 Johnson JHS Report Card, 2/5/01     390-391

82. MP-26 Raymond ES Student Master Record, 3/4/98-10/13/99     392-393

83. MP-27 Fifth Grade Report Card, 1998-1999     394-395

84. MP-28 Fifth Grade Report Card, 1999     396-397

85. MP-29 Stanford Achievement Test Series, 4/98     398-401

86. MP-30 Stanford Achievement Test Series, 9/98     402-405

---

[2]   Duplicate of MP-23.

87.  MP-31 Stanford Achievement Test Series, 4/99                                        406-408

88.  MP-32 Rudolph ES Student Master Record, 9/12/94-11/7/97                   409-410

89.  MP-33 Rudolph ES Report Card, 4th grade                                              411-412

90.  MP-34 Rudolph ES Report Card, 3rd grade                                              413-416

91.  MP-35 Rudolph ES Report Card, 2nd grade                                             417-418

92.  MP-36 Report Card, 1st grade                                                                419-420

93.  MP-37 Progress Report, 2/9/93                                                              421-423

94.  MP-38 Progress report, 6/18/93                                                             424-426

95.  MP-39 Student Residence and Data Verification, 1997-1998 5th grade 427-428

96.  MP-40 HO Order to Brief the issues, 4/25/05                                          429-431

97.  MP-41 Speech and Language Evaluation, 7/27/06                                   432-437

98.  MP-42 Clinical Psychological Evaluation, 4/19/05                                  438-444

99.  MP-43 Psychological Educational evaluation 11/21-12/8/05                   445-453

100.  HOD, 11/8/07                                                                                        454-462

101.  Transcript of Hearing,   4/25/05                                                            463 *et seq.*

102.  Transcript of Hearing, 10/31/07

MP2    Pre Hearing Motion for
Default Judgment against
DCPS, 10/24/07

**UNIVERSITY OF THE DISTRICT OF
COLUMBIA**
**David A. Clarke School of Law**

**Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008**
(202) 274-7314
(202) 274-5569 (fax)
http://www.law.udc.edu



TO:         Hearing Officer Dubow

FROM:       Alea Harmon and Colleen Archer, Law Student Advocates UDC-DCSL

RE:         Maurice Pimble (DOB: ▆▆/85)

DATE:       October 24, 2007

**MOTION OF THE STUDENT, MAURICE PIMBLE, FOR DEFAULT
JUDGMENT BASED UPON THE FAILURE OF DCPS TO SUBMIT AN
ANSWER TO THE STUDENT'S COMPLAINT AND FAILURE TO SUBMIT
REQUIRED BRIEFS, AND, IN THE ALLTERNATIVE, MOTION OF THE
STUDENT TO BAR DCPS FROM RAISING AFFIRMATIVE DEFENSES BASED
UPON THE FAILURE OF DCPS TO SUBMIT AN ANSWER AND TO SUBMIT
REQUIRED BRIEFS.**

I.    **The Hearing Officer should exercise his discretion pursuant to SHO SOP §
      303(B)(2) and enter a default judgment against DCPS because they failed to
      answer Mr. Pimble's March 21, 2005 due process complaint as required by
      SHO SOP § 303(B)(1) and 34 C.F.R. § 300.508(e)(1).**

      A.  DCPS was required to submit an answer to Mr. Pimble's due process
          complaint within ten days of receipt, pursuant to SHO SOP § 303(B)(1) and
          34 C.F.R § 300.508(e)(1).

      B.  The attorney for DCPS never filed an answer to Mr. Pimble's due process
          complaint, as required by SHO SOP § 303(B)(1) and 34 C.F.R §
          300.508(e)(1).

      C.  The Hearing Officer may consider on a case-by-case basis the failure of DCPS
          to submit an answer within ten days in determining how to proceed,
          considering the equities of the circumstances, pursuant to SHO SOP §
          303(B)(2).

1

263

     D. Accordingly, Maurice Pimble respectfully moves for a default judgment
        against DCPS because DCPS representatives failed to plead their case.

**II.    The Hearing Officer should exercise his discretion pursuant to SHO SOP §
      600.1 and enter a default judgment against DCPS because they failed to
      timely submit the assigned briefs in writing to the Student Hearing Office as
      ordered.**

     A. On March 21, 2005, Mr. Pimble filed a due process complaint against DCPS
        pursuant to 20 U.S.C. § 1415(f). That hearing commenced on April 25, 2005.
        At the conclusion of the proceedings, the hearing officer, *inter alia,* ordered
        both parties to brief two issues. The two issues were (1) whether the statute of
        limitations bars Mr. Pimble's claim for compensatory education; and (2)
        whether DCPS and the Federal Bureau of Prisons are jointly liable to educate
        Mr. Pimble.

     B. On May 1, 2005 Cynthia Catlett, the law student advocate from UDC-DCSL,
        submitted the assigned briefs on Mr. Pimble's behalf.

     C. The attorney for DCPS never submitted the required briefs to the student
        hearing office as ordered.

     D. The Hearing Officer has the authority and responsibility to rule on procedural
        matters pursuant to SHO SOP § 600.1.

     E. Accordingly, Maurice Pimble respectfully moves for a default judgment
        against DCPS for failing to comply with the hearing officer's order.

**II.    In the alternative, pursuant to SHO SOP § 303(B)(2), the hearing officer
      should bar DCPS from raising any affirmative defenses because DCPS failed
      to submit an answer to Mr. Pimble's due process complaint as required by
      SHO SOP § 303(B)(1) and 34 C.F.R § 300.508(e)(1) and failed to submit the
      required briefs.**

     A. As noted above, DCPS failed to submit an answer to Mr. Pimble's due
        process complaint as required by SHO SOP § 303(B)(1) and 34 C.F.R §
        300.508(e)(1) and failed, as well, to raise any affirmative defenses to Mr.
        Pimble's due process complaint.

     B. The Hearing Officer may consider DCPS' failure to submit an answer to Mr.
        Pimble's complaint within ten days in determining how to proceed,
        considering the equities of the circumstances, pursuant to SOP § 303(B)(2).

     C. The Hearing Officer ordered both Mr. Pimble and DCPS to brief whether or
        not the statute of limitations bars some part of Mr. Pimble's claim for

compensatory education.  Cynthia Catlett, the law student advocate from UDC-DCSL, submitted the assigned briefs in a timely fashion on May 1, 2005.  DCPS failed to submit the brief as ordered.

D.  Accordingly, Mr. Pimble moves to bar DCPS from raising any affirmative defenses to Mr. Pimble's claims for failure to answer and failure to comply with the Hearing Officer's order.

Respectfully submitted,

Alea Harmon and Colleen Archer
Law Student Advocates

Joseph B. Tulman
Supervising Attorney
Counsel for Maurice Pimble
University of District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC  20008

Telephone: (202) 274-7317
Fax: (202) 274-5583

3

265

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE STUDENT, MAURICE PIMBLE, FOR DEFAULT JUDGMENT BASED UPON THE FAILURE OF DCPS TO SUBMIT AN ANSWER TO THE STUDENT'S COMPLAINT AND FAILURE TO SUBMIT REQUIRED BRIEFS, AND, IN THE ALLTERNATIVE, MOTION OF THE STUDENT TO BAR DCPS FROM RAISING AFFIRMATIVE DEFENSES BASED UPON THE FAILURE OF DCPS TO SUBMIT AN ANSWER AND TO SUBMIT REQUIRED BRIEFS.**

### FACTS

On March 21, 2005 Maurice Pimble, through his legal counsel at the University of the District of Columbia David A. Clarke School of Law (UDC-DCSL), filed a due process complaint against the District of Columbia Public Schools (DCPS) for a denial of FAPE pursuant to 20 U.S.C. § 1415(f). That due process hearing commenced on April 25, 2005 before Hearing Officer Dubow. Hearing Officer Dubow recessed the hearing and gave both parties interim orders. DCPS was ordered to pay for independent evaluations for Mr. Pimble. Further, both parties were ordered to brief the following two issues: (1) whether the statute of limitations bars Mr. Pimble's claim for compensatory education; and (2) whether DCPS and the Federal Bureau of Prisons are jointly liable to educate Mr. Pimble. On May 1, 2005 Cynthia Catlett, the law student advocate from UDC-DCSL, submitted the assigned briefs on Mr. Pimble's behalf. Lenora Verra, attorney for DCPS, requested an extension to file the required briefs and stated that settlement negotiations were ongoing between the parties. Ms. Verra never submitted the required briefs to the student hearing office as ordered. Furthermore, neither Ms. Verra nor any other attorney for DCPS ever submitted an answer to Mr. Pimble's due process complaint or raised any affirmative defenses thereto, even though DCPS was statutorily required to answer Mr. Pimble's complaint within ten days of receipt.

4

Colleen Archer, UDC-DCSL law student advocate, filed an unopposed motion to reconvene Mr. Pimble's due process hearing. The hearing is scheduled for October 31, 2007.

## DISCUSSION

**Mr. Pimble is entitled to a default judgment against DCPS pursuant to SHO SOP § 303(B)(2) because DCPS willfully failed to answer Mr. Pimble's March 21, 2005 due process complaint within ten days as required by SHO SOP § 303(B)(1) ) and 34 C.F.R. § 300.508(e)(1)**

The hearing officer should enter a default judgment against DCPS because they failed to submit an answer to Mr. Pimble's due process complaint. "Hearing officers may take the failure to so file [an answer] into consideration in determining how to proceed on a case by case basis, considering the equities of the circumstances." SOP § 300(B)(2). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). "A court is empowered to enter a default judgment against a defendant who fails to defend its case." Int'l Painters & Allied Trades Indus. Pension Fund v. Newburgh Glass & Glazing, LLC, 468 F. Supp. 2d 215, 216 (D.D.C. 2007). Courts generally do not favor default judgments, however, they are certainly available "when the adversarial process has been halted because of an essentially unresponsive party." Id. For example, in Sir Charles 2X v. District of Columbia, slip. op. 1, 13 (D.D.C. December 4, 1990), the Court entered a default judgment against the defendant for failing to answer the plaintiff's complaint. There, the plaintiff, Mr. Cox, an inmate in the D.C. Jail, argued that his legal papers were intentionally removed by prison staff during his transfer from a California jail. Id. at 1. The District of Columbia was served a copy of Mr. Cox's complaint on

August 3, 1990. Id. at 2. The defendant had twenty days to file an answer to the plaintiff's complaint. "Id. at 3. On September 10, 1990, the plaintiff filed a notice indicating that the District of Columbia had yet to respond to his complaint." Id. "On September 26, 1990, the plaintiff filed an affidavit for entry of default which was subsequently entered by the clerk pursuant to Rule 55(a). Id. "On October 3, 1990, plaintiff moved for a default judgment." Id. The District of Columbia argued "that its failure to file an answer or otherwise respond in time was inadvertent, due to numerous complaints recently filed by [the] plaintiff." Id. at 4. The Court was not persuaded by this argument. Id. at 10.

The plaintiff demonstrated that the District of Columbia repeatedly failed to timely respond to his pleadings. Id. at 5. Further, the plaintiff argued that the District of Columbia could not assert meritorious defenses to his claims. Id. at 12. The Court held that default judgment against the District of Columbia was proper because of repeated failure to respond. Id. at 13. Therefore, default judgment is proper against a party who is willfully unresponsive and/or consistently files untimely pleadings and motions.

Like the defendant in Sir Charles 2X, DCPS in the instant case failed to respond to the plaintiff's complaint and also to the hearing officer's order to brief two central issues. Therefore, the hearing officer should exercise his discretion, as provided in SOP § 300(B)(2), and enter a default judgment against DCPS for failure to submit an answer, as required by SHO SOP § 300(B)(1) and 34 C.F.R. § 300.508(e)(1), to Mr. Pimble's due process complaint.

268

**The hearing officer should exercise his authority pursuant to SHO SOP § 600.1 and enter a default judgment against DCPS because they failed to submit the assigned briefs in writing to the Student Hearing Office as ordered.**

The hearing officer should enter a default judgment against DCPS because they failed to submit the required briefs as ordered. "The Hearing Officer has the authority … to rule on procedural matters…" SHO SOP § 600.1. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a).[1] A court has the discretion to impose sanctions, including dismissal or default, when a party fails to follow a court order. O-J-R v. Ashcroft, 216 F.R.D. 150, 151 (D.D.C. 2003). For example, in Int'l Painters & Allied Trades Indus. Pension Fund, the court entered a default judgment against the defendants, Ellis, because they deliberately failed to answer the plaintiff's complaint. Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., 288 F. Supp. 2d 22, 24 (D.D.C. 2003). There, the defendant entered into a collective bargaining agreement with the International Union of Painters and Allied Trades District Council 11 (the Fund), which required monthly submissions to a fund on behalf of all employees in the bargaining unit. Id. "Ellis fell delinquent in its payments and failed to submit required remittance reports." Id. at 25. The plaintiffs filed a complaint for legal and equitable relief under ERISA on May 23, 2003, and effected service on Ellis on July 8, 2003." Id. Ellis failed to answer or otherwise respond by July 28, 2003, as required by the rules of civil procedure. Id. The parties were engaged in settlement negotiations during the month of July, but failed to reach an agreement. Id.

---

[1] The parallel D.C. Superior Court rule is identical. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, the Clerk or the Court shall enter the party's default." D.C. Sup. Ct. Civ. R. 55.

"On August 12, the Court, being unaware of the negotiations between the parties, issued an Order threatening dismissal if the Fund did not, by September 2, 2003, file a motion for entry of default, or in the alternative, submit an explanation as to why it had not done so." Id. "Complying with the Court's Order, the Fund filed a request for default on August 28, which the Clerk of the Court entered on September 5." Id. "Thereafter, the Court entered a default judgment against Ellis on September 10, 2003." Id.

Ellis filed a motion to vacate the default judgment on September 11, 2003. Id. at 26. The court denied the defendant's motion because the defendant willfully elected to submit an answer. Id. at 26. The defendant relied on the ongoing settlement negotiations with the Fund as an excuse not to file an answer to the plaintiff's complaint. Id. at 27. However, the court held that "the mere existence of such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders." Id. "By relying on the mere existence of settlement negotiations as an excuse for failing to fulfill its responsibilities to the Court the defendant has failed to protect its own interests in this litigation." Id. at 26. Therefore, the court will grant a default judgment when a party fails to submit an answer. Further, a settlement negotiation will not negate a party's obligation to comply with the rules of procedure and orders of the court.

Like Ellis, DCPS in the instant matter relied on a settlement negotiation to avoid compliance with a court order. There, Ellis failed to answer the plaintiff's complaint because the parties were negotiating an agreement. Id. Similarly, here, Ms. Verra, counsel for DCPS, requested an extension to submit the required briefs to Hearing Officer Dubow and stated that the parties were engaged in settlement negotiations;

8

270

however, the parties failed to settle the case. Cynthia Catlett, Law Student Advocate,

timely submitted the assigned briefs to the Student Hearing Office. DCPS never

submitted the required briefs as ordered. Therefore, the hearing officer should exercise

his discretion in SHO SOP § 600.1 and enter a default judgment against DCPS because of

their failure to comply with the hearing officer's order.

**Alternatively, the hearing officer should bar DCPS from raising any affirmative defenses pursuant to SHO SOP § 303(B)(2) because DCPS failed to submit an answer to Mr. Pimble's due process complaint as required by SHO SOP § 303(B)(1) and 34 C.F.R § 300.508(e)(1) or otherwise raise any affirmative defenses.**

DCPS' failure to submit an answer to Mr. Pimble's due process complaint should

bar them from raising affirmative defenses to Mr. Pimble's claims. "Hearing officers

may take the failure to so file [an answer] into consideration in determining how to

proceed on a case by case basis, considering the equities of the circumstances." SOP §

300(B)(2). "Affirmative defenses must be raised in the answer or they are waived,"

pursuant to Fed. R. Civ. P. 8(c) which provides in pertinent part, "In pleading to a

preceding pleading, a party shall set forth affirmatively … or any other matter

constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c); <u>Kroot v. District</u>

<u>of Columbia</u>, 800 F. Supp. 976, 980 (D.D.C. 1992). For example, in <u>Kroot</u>, the Court

held that the "defendants waived the statute of limitations and laches defenses by failing

to raise those defenses in the answer." <u>Id.</u> There, Mr. Kroot argued that he was entitled

to reimbursement from the District of Columbia for the costs of special education for

Joseph Kroot for the 1988-89 school year. <u>Id.</u> at 979. Both parties submitted motions

for summary judgment to the Court. <u>Id.</u> at 978. The District of Columbia argued in their

motion for summary judgment that Mr. Kroot's request for special education services

was barred by the statute of limitations. <u>Id.</u> at 980. "Defendants first raised the statute of

limitations and laches in their July 2, 1990, opposition to plaintiffs' motion for summary judgment -- approximately one year after plaintiffs filed the complaint, and there was no request to amend the answer to include such defenses." Id. The Court held that the District of Columbia waived all affirmative defenses because they failed to include those defenses in their answer. Id. Therefore, a party will waive affirmative defenses not raised in their answer to a due process complaint.

As in Kroot, the District of Columbia in the present case failed to raise affirmative defenses in an answer. In Kroot, the Court barred the District of Columbia from asserting affirmative defenses because they failed to raise them in their answer to Mr. Kroot's due process complaint. Id. Here, DCPS did not raise any affirmative defenses to Mr. Pimble's due process complaint. DCPS failed -- notwithstanding the hearing officer's order -- to submit an answer to Mr. Pimble's complaint. Furthermore, DCPS failed to brief whether the statute of limitations might bar Mr. Pimble's claim for compensatory education. Cynthia Catlett, the law student advocate from UDC-DCSL, submitted the assigned brief on May 1, 2005. Therefore, the hearing officer should exercise his discretion, as specified in SOP § 300(B)(2), and bar DCPS from raising any affirmative defenses to Mr. Pimble's claim because DCPS failed to submit an answer to Mr. Pimble's complaint, as required by SHO SOP § 300(B)(1) and 34 C.F.R. § 300.508(e)(1), or otherwise asserted any affirmative defenses in the assigned briefs.

10

272

## CONCLUSION

In light of the foregoing, Maurice Pimble, through his representatives, respectfully moves that the hearing officer grant a default judgment against DCPS, or in the alternative, bar DCPS from raising affirmative defenses to Mr. Pimble's claims.

Respectfully submitted,

Alea Harmon and Colleen Archer
Law Student Advocates

Joseph B. Tulman
Supervising Attorney
Counsel for Maurice Pimble
University of District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC  20008

Telephone: (202) 274-7317
Fax: (202) 274-5583

## **CERTIFICATION OF SERVICE**

We hereby certify, that a true copy of the foregoing motion was faxed to Q. Harris

Lindsey, general counsel for DCPS, on this day, October 24, 2007.


Alea N. Harmon and Colleen Archer
Law Student Advocates

Joseph B. Tulman
Supervising Attorney
Counsel for Maurice Pimble
University of District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC  20008

Telephone: (202) 274-7317
Fax: (202) 274-5583

12

274

MP3    Pre-Hearing Motion to Extend
Time provided for hearing and
to Change the Location of the
hearing, 10/18/07

# UNIVERSITY OF THE DISTRICT OF COLUMBIA
## David A. Clarke School of Law



**Juvenile and Special Education Law Clinic**
**4200 Connecticut Avenue, N.W. 38/207**
**Washington, D.C. 20008**
(202) 274-7314
(202) 274-5569 (fax)
http://www.law.udc.edu

## MOTION TO EXTEND TIME ALLOTED FOR A DUE PROCESS HEARING AND MOTION TO MOVE A DUE PROCESS HEARING TO THE D.C. JAIL.

TO:          Hearing Officer Dubow

FROM:    Alea Harmon, Student Advocate UDC-DCSL

RE:          Maurice Pimble (DOB: ████/85)

DATE:     October 18, 2007

Dear Hearing Officer Dubow:

Along with our supervisor, Joe Tulman, through the University of the District of Columbia, David A. Clarke School of Law (UDC-DCSL) Juvenile and Special Education Clinic, Colleen Archer and I represent Maurice Pimble (DOB: ████/85) in all matters related to his special education rights.

Mr. Pimble has a due process hearing scheduled on October 31, 2007 at 11:00 a.m. We respectfully request that you allot an additional two hours for the hearing to allow adequate time to hear all of our witnesses.

Mr. Pimble is currently incarcerated at the D.C. Jail. The D.C. Department of Corrections will not allow Mr. Pimble to leave the D.C. Jail to attend the special education hearing because of security concerns. However, we respectfully move to change the location of the hearing to preserve Mr. Pimble's right to attend. Accordingly, we also request an order to move the location of the hearing from the Student Hearing Office to the D.C. Jail to allow Mr. Pimble to be present at his hearing pursuant to the Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures Manual (SHO SOP) § 800.1.3.[1] We will take the steps necessary to obtain agreement from (or obtain a court order directed to) the D.C. Department of Corrections to accommodate the hearing at the D.C. Jail. We note that the Department of

---

[1] "All parties have the right to be present when witnesses testify against them and to ask them questions concerning their views." Standard Operating Procedures Manual § 800.1.3.

1          276

Corrections administrators routinely conduct parole revocation and disciplinary hearings at the D.C. Jail. Thus, we know that administrators there are able to accommodate a hearing.

In responding to this motion, please contact me via facsimile at 202 274-5583 or at the above address. If you determine that we need to have a pre-hearing teleconference (pursuant to §400.1(D) of the SHO SOP) – with the attorney for DCPS -- regarding the scheduling and location of the hearing, you can reach me by phone at 202-320-8615 and Joe Tulman at 202-274-7317.


Respectfully submitted,


Alea Harmon and Colleen Archer
Law Student Advocates


## CERTIFICATION OF SERVICE

I hereby certify, that a true copy of the foregoing motion was faxed to Q. Harris Lindsey,

legal counsel for the LEA, on this day, October 18, 2007.


Alea N. Harmon
Law Student Advocate

University of District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, DC 20008

Telephone: (202) 274-7317
Fax: (202) 274-5583

2        277

MP4    Grievance Process initiated by Maurice Pimble, 2/8/07, 9/24/07

# MP5   Motion to Reconvene, 9/24/07

# Motion To Reconvene Due Process Hearing

**To:**   Ms. Quinne Harris-Lindsey, Esq.

**Fr:**   Colleen Archer, UDC-DCSL

**Dt:**   09/24/07

**Re:**   Maurice Pimble

Along with my supervisor, Joe Tulman, through the University of the District of Columbia, David A. Clarke School of Law (UDC-DCSL) Juvenile and Special Education Legal Clinic, I represent Mr. Maurice Pimble (DOB: ████/1985) in all matters related to his special education rights.

On March 21, 2005, UDC-DCSL, on our client's behalf, filed a due process complaint against DCPS pursuant to 20 U.S.C. §1415(f).  (See attachment 1, Due Process Complaint of March 21, 2005.)  That due process hearing was conducted on April 25, 2005.  Hearing Officer Dubow ordered the hearing recessed.  *Id*. at 1.  Hearing Officer Dubow ordered that DCPS pay for independent evaluations for Mr. Pimble.  Hearing Officer Dubow also ordered that the parties brief two issues.  The two issues assigned were:  1) whether the statute of limitations barred Mr. Pimble's claim for compensatory education; and 2) the liability of DCPS and the Federal Bureau of Prisons to Educate Mr. Pimble.  The briefs were due on May 1, 2005.  On May I, 2005 UDC-DCSL submitted two briefs. (See attachment 2, Briefs Submitted.)  Mr. Pimble has since been evaluated.  (See attachment 3, Evaluations.)

DCPS failed to comply with Hearing Officer Dubow's order as DCPS did not brief the two assigned issues by the deadline.  Accordingly, we respectfully move to reconvene the due process hearing.  Further, we submit that the seventy-five day deadline is inapplicable as we completed the steps leading up to the due process hearing (i.e., the resolution period), and thus are moving to reconvene the hearing.

Mr. Pimble is currently located at Schuylkill Federal Correctional Facility.  Mr. Pimble was denied FAPE and continued to be denied FAPE through his twenty-second birthday.  DCPS failed to properly identify and evaluate Mr. Pimble.  DCPS failed to have in place an appropriate IEP for Mr. Pimble.  DCPS failed to supply Mr. Pimble's legal counsel with his education records after numerous attempts by UDC-DCSL to obtain them.  DCPS denied Mr. Pimble FAPE, and appropriate remedies are due to him.  Consequently, we request that Mr. Pimble be granted thirteen years of compensatory education.[1]   Further we, request that DCPS develop a current IEP for Mr. Pimble, conduct any over due evaluations

Upon the grant of this motion, we request a pre-hearing scheduling conference pursuant to §400.1(B) of the Student Hearing Office Operating Manual.  If you have any questions or concerns, please contact me by phone at (703) 717-8667 or by fax at (202) 274-5569 or Joe Tulman at (202) 274-7317 or by fax at (202) 274-5583.

---

[1]  No case law addresses directly whether D.C.P.S. is responsible for delivering special education and ▒d services to D.C. inmates who have been identified as learning disabled before incarceration and ▒ of the who are in the custody of the Bureau of Prisons by virtue of the Revitalization Act.

280

Sincerely,

Colleen Archer

Colleen Archer

Special Education Advocate

cc: Maurice Pimble

---

1   No case law addresses directly whether D.C.P.S. is responsible for delivering special education and related services to D.C. inmates who have been identified as learning disabled before incarceration and virtue of the who are in the custody of the Bureau of Prisons by virtue of the Revitalization Act.

# MP6   Statute of Limitations Brief, 5/1/05

To:          Hearing Officer Dubrow

From:        Cynthia Catlett, Education Advocate for Maurice Pimble

Date:        May 1, 2005

Re:          Exception to the Statute of Limitations for Maurice Pimble's claim for
             Compensatory Education.

---

## ISSUE

Whether the totality of DC Public School personnel's inactions and noncompliance with the Individuals with Disability Education Act and its implementing regulations warrants an exception to the three-year statute of limitations provided in D.C. Code § 12-301(8)?

## FACTS

On January 31, 2001, D.C. Public School personnel evaluated Maurice for special education needs, and they determined that Maurice is severely learning disabled. Maurice was fifteen years old at the time of this evaluation. Prior to January 31, 2001, DCPS personnel had never evaluated Maurice for any disability.

### *Educational History: Maurice Attended DC Public Schools Throughout his Educational Career.*

Maurice attended Meyer Lower Campus, a D.C. Public Elementary School from 1991 until 1993. At Meyer Lower Campus, Maurice was enrolled in the first grade. Maurice did not pass the first grade. He repeated that grade in 1992-1993. (MP #24)

283

Maurice was enrolled at Rudolph Elementary School from 1993 until 1997. During the 1993–1994 school year, Maurice was enrolled in the second grade. He passed the second grade and proceeded to the third grade. (MP #23)

During the 1994–1995 school year, Maurice was enrolled in the third grade. He performed below average, receiving a "U" (for Unsatisfactory) in virtually every course. Maurice repeated the third grade. During the 1995–1996 school year, Maurice was enrolled in the third grade for a second time at Rudolph Elementary School. (MP #22)

During the 1996–1997 school year, Maurice was twelve years old in the fourth grade. In the 1997–1998 school year, Maurice began the school year at Rudolph Elementary School, but transferred to Raymond Elementary School where he continued with his studies in the fifth grade. During the 1998–1999 school year, Maurice was placed again in the fifth grade. He was enrolled at Raymond Elementary School and performed "below basic" in three out of six tested areas in Math and Reading. During the 1999–2000 school year at Raymond Elementary School, Maurice was enrolled in the fifth grade for the third time. Maurice was fifteen years old. (MP# 14, MP#15, MP #16, MP#17, MP#18, MP#19, MP#20)

In anticipation of the 2000–2001 school year and in light of Maurice's age, DCPS administrators "skipped" Maurice two grades. Maurice transferred schools and was enrolled for the 2000-2001 school year in the eighth grade at Johnson Junior High School. In January of that school year (i.e., January 2001), DCPS personnel identified Maurice as eligible for special education for the first time. (MP#12, MP#10)

During the 2001 – 2002 school year, Maurice was enrolled in the ninth grade at Roosevelt High School, and he failed every single course. (MP #11)

284

## *DC Public Schools' Inaction*

On November 15, 2004, Maurice requested from DCPS personnel that they evaluate him for eligibility for special education. At that time Maurice was incarcerated at the D.C. Jail. (MP #2)

On November 29, 2004, U.D.C. David A. Clarke School of Law (UDC-DCSL) education advocate Victoria Kunkoski, representing Maurice, requested from DCPS personnel expedited evaluations for Maurice. DCPS personnel did not respond to that request.(MP#2)

On February 15, 2005, UDC-DCSL education advocate Cynthia Catlett requested DCPS personnel (Lisa Russell) to conduct the overdue triennial evaluations for Maurice. DCPS personnel did not respond to this request. Subsequently, Maurice was transferred to the custody of the Federal Bureau of Prisons. (MP#3)

On March 21, 2005, Cynthia Catlett requested from Mr. Michael Snipes, head of the department for Special Education for Incarcerated Youth for DCPS, evaluations, IEP's, and other academic records (including report cards and standardized test results). Mr Snipes did not respond to that request. On March 21, 2005, Cynthia Catlett requested from Mr. Snipes independent evaluations for Maurice. Mr. Snipes did not respond to that request. (MP#4)

On March 21, 2005 a Due Process Hearing Request was filed on behalf of Maurice in order to request compensatory education for DCPS' consistent denial of a free appropriate public education for Maurice as well as expedited independent evaluations at the expense of DC Public Schools. (MP#1)

285

On March 23, 2005, Cynthia Catlett spoke with Ms. Lisa Russell from DCPS' department of Special Education for Incarcerated Youth, and Ms. Russell stated that once DC students transfer to a Federal Bureau of Prisons facility, DCPS is no longer under any obligation to educate them, even if these inmates are eligible for special education and related services under the Individual with Disabilities and Education Act. In the conversation on March 23, 2005, Ms. Russell also stated that neither she nor anyone else at DCPS had any records of Maurice's IEP or evaluations conducted on January 30, 2001. (MP#5)

On April 4, 2005, Cynthia Catlett again requested from Ms. Russell, any and all records DCPS had on file for Maurice. Further, Cynthia Catlett requested that DCPS respond in writing to the request for an independent special education evaluation. Ms. Russell did not respond to that request. (MP#5)

On April 12, 2005 after a conversation with Ms. Russell on April 5, 2005, Cynthia Catlett contacted Ms. Russell in regards to records DCPS had on file for Maurice. Ms. Russell did not respond. (MP#6)

## DISCUSSION

**A.    Pursuant to D.C. Code § 12-302 Maurice Could Only Enforce His Right to Compensatory Education When he Obtained the Age of Majority.**

"When a person entitled to maintain an action is, at any time the right of action accrues (1) under 18 years of age; or (2) non compos mentis; or (3) imprisoned …he may bring an action within five years…". D.C. Code § 12-302. This provision of the D.C. Code specifically deals with a plaintiff's disability. Prior to May 19, 2003, Maurice did not and could not bring his claim for compensatory education to DC Public Schools. First, Maurice did not know he had a right to

286

Secondly, Maurice was not aware that DC Public Schools had an obligation to identify him as a student with a disability and had a duty to accommodate him.

**B.**    **Borrowing D.C. Code § 12-301(8) as the Statute of Limitations for DC Public Schools' Consistent Denial of FAPE for Maurice Would Frustrate the Policy Embodied in the Individuals with Disabilities Education Act.**

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C.S. § 1401 *et seq.*, does not provide a statute of limitations for claims arising under its Act. 20 U.S.C. § 1415(b)(1)(E), (b)(2), (e)(2). Courts usually interpret congressional silence on a statute of limitations period as instruction to apply the most closely analogous statute of limitations under state law (tort liability/personal injury statute of limitations). DelCostello v. International Bhd. of Teamsters, 462 U.S. 151 (1983). Courts defer to the state's most analogous statute of limitations unless borrowing the statute of limitations is inconsistent or would "frustrate the policy" embodied in the federal law or policy. See Wilson v. Garcia, 471 U.S. 261, 266 (1985). The District of Columbia, D.C. Code § 12-301(8) provides a three-year statute of limitations for actions in which a limitation is not specifically prescribed. DC Code §12-302 provides a five year statute of limitations for minors prior to them obtaining the age of majority. Maurice's claim is within the statute of limitations in both statutes.[1]

In determining whether the statute of limitations frustrates the policy of the federal statute, courts look at the purpose of the statute and regulation. It is well established that the purpose of the IDEA is to ensure special education rights to eligible students. 20 U.S.C.S. § 1400(b)(9). In Murphey v.Timberlane Regional School District

---

[1] If compensatory education is an equitable remedy, then similar to injunctive relief the statute of limitations should not start running. Some causes of action are equitable (because they are created by courts of equity, back when equity and law were two separate court systems). Some remedies are equitable, namely injunctions, because they were created by courts of equity not law. Statute of limitations are not applicable to these remedies or causes of action.

287

(

(1994), the United States Court of Appeals for the First Circuit stated that borrowing a state's statute of limitations should be on a case-by-case basis. 22 F.3d 1186 (1994). The court emphasized in <u>Murphey</u> that it was imperative that courts not overlook the purpose of the IDEA in deciding whether the state's statute of limitations apply.

C.    **DC Public Schools has Consistently Denied Maurice a Free Appropriate Public Education Starting at the Age of Six When Maurice First Enrolled at a D.C. Public School, and for the Eleven Years He Attended DC Public Schools Thereafter.**

In <u>Hammond v. District of Columbia</u>, 2001 U.S. Dist. LEXIS 25845, plaintiffs sued the District of Columbia and Arlene Ackerman, Superintendent of D.C. Public Schools, alleging that District of Columbia Public Schools failed to provide Nathan Hammond with a free appropriate public education (FAPE), provided by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et .seq.* In a Due Process Hearing on the issue of compensatory education, the Hearing Officer determined that D.C. Code § 12-301(8) barred plaintiff's claims for the period outside the statute of limitations period. Plaintiffs in the instant case requested compensatory education for the denial of FAPE for the period of 1992 – 1997. The Hearing Officer found that claims prior to the 1996-1997 school year were barred by the statute of limitations.

Plaintiffs appealed to the United States District Court for the District of Columbia and the Hearing Officer's determination was reversed in regards to compensatory education for the period prior to the 1996-1997 school year. In reversing the denial of compensatory education for the period prior to 1996, Judge Kessler applied the "continuing violation doctrine", stating that compensatory education claims prior to 1994 were timely. A "continuing violation" is "one that could be reasonably expected to be made the subject of a lawsuit when it first occurred because its character as a violation

288

did not become clear until it was repeated during the statute of limitations period."
Taylor v.  FDIC, 328 U.S. App. D.C. 52 (D.C. Cir. 1997).

Judge Kessler further held that the Hearing Officer erred in determining when the plaintiffs claim accrued even if the statute of limitations actually applied.  Accrual of the statute of limitations in IDEA claims is governed by federal law and the *claim only accrues when parents know or have reason to know of the injury or event that is a basis for their claim*.  No mechanical formula controls the accrual determination. See Murphey v.Timberlane Regional School District 22 F.3d 1186 (1994).

Maurice's claim accrued when he retained counsel in November of 2004.  Prior retaining counsel, Maurice was not aware of his right to special education or his right to enforce his claim for compensatory education against DC Public Schools under the IDEA.  Maurice has suffered concrete injury as a result of DC Public School's consistent disregard for his rights.

## C.    DCPS' Continuous Denial of a Free Appropriate Public Education for Maurice Warrants an Exception to D.C. Code § 12-301(8).

Maurice has unquestionably continuously been denied a free appropriate public education.  In Hammond v. District of Columbia (2001), the court concluded that it was the totality of DCPS initial inactions and subsequent inactions, which constitutes an ongoing violation of FAPE.  In the instant case, the denial of FAPE has been consistent from the time Maurice enrolled at a DC Public School in the fall of 1991 through his stay at D.C. Jail ending January of 2005.

- • DCPS violated the IDEA, 20 U.S.C.S. § 1400 et seq., and its implementing regulations.

289

- DCPS personnel violated "Child Find" from the time Maurice entered DC Public Schools. "Child Find" requires that "all children with disabilities in the state ...regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 300.125(a)(1).

- DCPS personnel violated 5 DCMR § 2201.9. Prior to 1998, if a student was held back in school and the student had not been referred for assessment and evaluation for special education, D.C. Municipal Regulations mandated that DCPS evaluate the student for special education.

- Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Maurice was identified as learning disabled on January 30, 2001, DCPS personnel waited three years to develop a new IEP, in violation of 34 C.F.R. § 300.343(c)(1).

- DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child." DCPS personnel did not use Maurice's evaluation in the development of his most recent IEP. On numerous occasions, Lisa Russell, Director of Special Education for Incarcerated Youth, stated that DCPS did not have those evaluations on record.

290

- DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child." Lisa Russell, on behalf of DCPS, stated on numerous occasions that they do not have Maurice's IEP or evaluations conducted on January 30, 2001.

- DCPS personnel violated 34 C.F.R § 300.536. The law requires that a child be evaluated at least once every three years. Maurice's last evaluation was on January 30, 2001. To date, DCPS has not reevaluated Maurice.

- DCPS personnel violated 34 C.F.R §300.502. Maurice was entitled to request an independent educational evaluation. On November 15, 2004 Maurice requested from DCPS that they authorize an independent evaluation.

- DCPS personnel violated 34 C.F.R. §300.503(a)(ii). This provision of the law requires that DCPS personnel respond in writing if they refuse to initiate an evaluation; DCPS personnel did not respond in writing to Maurice's request.

- DCPS personnel violated 34 C.F.R. 300.502(b). This provision of the law requires that if Maurice requests an independent educational evaluation, the public agency "... must without unnecessary delay either (i) initiate a hearing under §300.507 to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under §300.507 that the evaluation obtained ... did not meet agency criteria." DCPS personnel did not take the steps mandated by this provision.

291

- In failing to provide Maurice was his educational records, DCPS personnel violated 34 C.F.R. § 300.501. Once Maurice reached the age of majority, his parents' rights transferred to him, giving him the right to "... (1) inspect and review all education records with respect to – (i) the identification, evaluation, and educational placement of the child and (ii) the provision of FAPE ..." 34 C.F.R. § 300.501(a)(1)(i), 34 C.F.R. § 300.501(a)(1)(ii) and 34 C.F.R § 300.517.

## 1. *DCPS personnel consistently denied Maurice a free appropriate public education.*

It took DCPS personnel ten years to evaluate Maurice. Maurice entered the DC Public School system in the Fall of 1991 and was only evaluated for Special Education on January 30, 2001. At that point in time, Maurice had consistently performed below average in every grade in school. Further, Maurice had been held back in school in the first grade, third grade, and completed the fifth grade in three years. It was only when DCPS skipped Maurice from the fifth to the eighth grade that DCPS evaluated Maurice.

DCPS personnel violated "Child Find". "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(1).

## 2. *DCPS personnel failed to properly identify Maurice as a student with a disability.*

Prior to 1998, if a student was held back in school and the student had not been referred for assessment and evaluation for special education, D.C. Municipal Regulations mandated that DCPS evaluate the student for special education. 5 DCMR 2201.9. In

292

1998 this requirement was eliminated and it became optional for DCPS to evaluate and assess students who are retained and had not previously been referred for assessment and evaluation for special education.

DCPS personnel did not evaluate or refer Maurice for special education evaluations when he was retained in the first grade in 1992. DCPS personnel also did not evaluate or refer Maurice for assessment and evaluation for special education in 1995 when Maurice repeated the third grade. DCPS personnel also failed to evaluate Maurice in 1998 when he repeated the fifth grade.

### 3. *Maurice's current IEP is inappropriate.*

Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Maurice was identified as learning disabled on January 30, 2001, DCPS personnel waited three years to develop a new IEP, in violation of 34 C.F.R. § 300.343(c)(1).

Maurice's most recent IEP was developed at D.C. Jail by DC Public School personnel on October 1, 2004 and states that "Maurice is unable to be academically successful in the regular education classroom." This IEP is inappropriate because the comments at the end of the document do not correspond with the fact that the same evaluators identified Maurice as requiring only 0%-20% of special education. My position, as the comments on the same IEP suggest, is that Maurice requires 100% special education academic environment.

293

The law requires that a student be evaluated every three years and that the results of the initial evaluation are used by the IEP team in meeting the requirements of §§300.340 – 300.350. 34 C.F.R. §300.320. DCPS personnel did not use Maurice's evaluation in the development of his most recent IEP. On numerous occasions, Lisa Russell, Director of Special Education for Incarcerated Youth, stated that DCPS did not have those evaluations on record. Ms. Russell also specifically said that the IEP team did not use Maurice's evaluation in developing his most recent IEP. Further, DCPS personnel violated 34 C.F.R. § 300.346(a)(ii), which states that in developing each child's IEP, the IEP team shall "consider the results of the initial or most recent evaluation of the child."

4. *Maurice's Special Education Evaluations are Fifteen Months Overdue.*

The law requires that a child be evaluated at least once every three years. 34 C.F.R § 300.536. Maurice's last evaluation was on January 30, 2001. DCPS personnel has not reevaluated Maurice since the evaluation on January 20, 2001. Further, Lisa Russell from the department of Special Education for Incarcerated Youth at DCPS, has stated on numerous occasions that these evaluations were lost and that DCPS does not have them on record.

5. *DCPS personnel denied Maurice's right to independent special education evaluations. DCPS further failed to act pursuant to the regulations by not responding in writing to numerous requests for evaluations.*

Maurice is entitled to request an independent educational evaluation. 34 C.F.R §300.502. When a student with a disability reaches the age of majority, all rights accorded to parents transfer to the student. 34 C.F.R §300.517. Therefore, Maurice's

294

parents rights to request independent evaluations transferred to Maurice when he turned eighteen.

Maurice requested an initial evaluation on November 15, 2004. The law requires that DCPS personnel respond in writing if they refuse to initiate an evaluation. 34 C.F.R. §300.503(a)(ii). To date, I have requested that DCPS respond in writing to my request for independent special education evaluations three times. Victoria Kunkoski, former law student advocate from the Juvenile and Special Education Clinic at the University of the District of Columbia, requested an evaluation on behalf of Maurice on November 29, 2005. Ms. Kunkoski requested expedited evaluations and offered to contact independent evaluators, but also did not receive a response to her request.

Further the law requires that if Maurice requests an independent educational evaluation, the public agency "... must without unnecessary delay either (i) initiate a hearing under §300.507 to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under §300.507 that the evaluation obtained ... did not meet agency criteria." 34 C.F.R. 300.502(b). DCPS personnel did not initiate a hearing in regards to the request for an independent evaluation and also did not respond to numerous requests for independent evaluations.

### 6. DCPS personnel violated 34 C.F.R. § 300.501 by not providing Maurice with his educational records.

Once Maurice reached the age of majority his parents rights transferred to him, giving him the right to "... (1) inspect and review all education records with respect to – (i) the identification, evaluation, and educational placement of the child and (ii) the provision of FAPE ..." 34 C.F.R. § 300.501(a)(1)(i), 34 C.F.R. § 300.501(a)(1)(ii) and 34 C.F.R.S 300.517.

295

- On March 21, 2005, Cynthia Catlett requested from Mr. Snipes any and all evaluations, IEP's and other academic records (including report cards and standardized test results) for Maurice. Mr. Snipes did not respond to this request.

- On April 4, 2005, Cynthia Catlett requested from Ms. Russell a copy of the records of specialized instruction and related services offered to Maurice at D.C. Jail. Ms. Russell did not respond to that request.

- On April 12, 2005, Cynthia Catlett sent Ms. Russell a letter regarding Maurice's educational background after a conversation where Ms. Russell said that DCPS did not have any records of Maurice's evaluation conducted on January 30, 2001. In that letter Cynthia Catlett shared educational records with Ms. Russell, in order to show her how Maurice was in desperate need of special education evaluations and services and how he had been denied a free appropriate public education throughout his academic career.

**D.    MAURICE PIMBLE REQUIRES COMPENSATORY EDCUATION TO BE MADE WHOLE AFTER DCPS FAILED TO PROVIDE HIM WITH FAPE FROM FALL 1991 – JANUARY 2005, LIMITING RELIEF TO THREE YEARS WILL DEPRIVE MAURICE OF THE EDUCATION HE IS ENTITLED TO UNDER THE IDEA.**

Maurice Pimble is entitled to compensatory education equivalent to eleven years for DCPS' consistent denial of FAPE.  Compensatory education was found to be "appropriate relief" when a disabled child was denied FAPE under the IDEA and implementing regulations.  See Walker v. District of Columbia, 157 F. Supp. 2d 11, 30 (D.D.C., 2001) and Harris v. District of Columbia, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *3  (D.D.C., 1992).  Diatta further found the right to compensatory education results when the school district knew of should have known that a disabled student was receiving an inappropriate education.  Diatta v. District of

296

<u>Columbia</u>, 319 F. Supp. 2d 57, 64 (D.D.C., 2004). Maurice was denied FAPE from Fall 1991 through January 2005. DCPS "should have known" that Maurice was receiving an inappropriate education. By the time DCPS evaluated Maurice, he had repeated first, third and fifth grade and had consistently performed below average.

District of Columbia hearing officers have authority under the IDEA to award compensatory education upon their determination that a disabled student was denied FAPE. <u>See</u> <u>Harris</u>, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *11. Additionally, hearing officers have broad discretion to fashion appropriate relief in consideration of the particular needs of a disabled child to meet the unique circumstances of the case. <u>Burlington</u>, 471 U.S. at 369, and <u>Harris</u>, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *13. <u>Rowley</u> requires compensatory education awards to provide the disabled child with a "basic floor of opportunity" that affords "some educational benefit." See <u>Rowley</u>, *458 U.S.* at 201. Maurice seeks a compensatory education that will confer the same educational benefit that he was denied between Fall 1991 through January 2005. According to <u>Reid</u> a day for day award is not justified without facts and specific circumstances to support the need for such a remedy. <u>See</u> <u>Reid v. District of Columbia</u>, 310 F Supp. 2d 137, 150. We contend the facts and circumstances of Maurice's denial clearly justify eleven years of compensatory education. This is true because Maurice is 19 years old and is only eligible for special education services until his 22nd birthday. Due to DCPS's long-term denial of FAPE, Maurice is poorly positioned in all areas related to his academics. Maurice reads and performs mathematics between a second and third grade level.

## CONCLUSION

DCPS personnel have continuously refused to act in compliance with the

297

Individuals with Disability Education Act.  If the Hearing Officer in the instant case limits the request for compensatory education to three years, he would be denying Maurice the right to special education.  Further, nothing in the IDEA limits compensatory education awards to three years.  Maurice's claim is still within the time period provided in D.C. Code § 12-301(8) and in order to be made "whole", Maurice will need eleven years of compensatory education, since he is performing at a second and third grade level in reading and math. (MP #10).

Compensatory education is an equitable remedy.  Maurice has undeniably been denied FAPE for over 11 years.  I am requesting eleven years of compensatory education in order to give Maurice the opportunity to receive an education.  The statute of limitations is not an issue in the instant case because Maurice was a minor prior to May 19, 2003 and could not enforce his right to receive special education.  Further, case law has provided exceptions to the tolling of the statute of limitations, as provided in Hammond.  Because of DCPS's long-term denial of FAPE, Maurice is poorly positioned in all areas related to his academics.

Respectfully Submitted,

Cynthia N. Catlett
Law Student Advocate

cc.:    Maurice Pimble
        Lenore Verra, DCPS

298

# MP7   DCPS and BOP Liability Brief, 5/1/05

To:     Hearing Officer Dubrow

From:   Cynthia Catlett, Educational Advocate for Maurice Pimble

Date:   May 1, 2005

Re:     Joint Liability Between DC Public Schools and Federal Bureau of Prison to

        Educate Maurice Pimble

---

## ISSUE

Whether DC Public Schools and the Federal Bureau of Prisons have joint liability

for providing Maurice Pimble, a DC Public School student in the custody of the Federal

Bureau of Prisons, with a free appropriate public education as provided and described in

the Individuals with Disabilities Education Act and whether DC Public School personnel

are still responsible for providing compensatory education for Maurice.

## DISCUSSION

**I.      The Responsibility and Burden of Providing Maurice Pimble with
        Compensatory Education for the Continuous Denial of a Free Appropriate
        Public Education Rests with DC Public Schools.**

Compensatory education is a remedy against a state, and, for the purposes of the

IDEA, the District of Columbia is the state actor that denied Maurice Pimble FAPE.

Compensatory education is an equitable remedy to provide students who have been

denied a Free Appropriate Public Education (FAPE).  DC Public School personnel

continuously denied Maurice a free appropriate public education and should rectify that

wrong by providing Maurice with compensatory education, in order for Maurice to

finally benefit from educational instruction.  In *Burlington Sch. Comm. v. Mass. Dept of*

1

*Educ.,* 471 U.S. 359 (1985), the Supreme Court held that retroactive relief in the form of compensatory education was appropriate since it merely requires the state to belatedly do that which it should have done all along. In *Harris v. District of Columbia*, 1992 U.S. Dist. LEXIS 11831, No. Civ.A.91-1660, 1992 WL 205103 at *11, the court specifically provides compensatory education as a remedy for the denial of FAPE.

In the instant case, DC Public Schools (DCPS) is responsible for providing Maurice compensation for the denial of a FAPE throughout his enrollment at DC Public Schools from fall 1991, where Maurice was performing below average through January 2005, when Maurice transferred to the custody of the Federal Bureau of Prisons (BOP). While Maurice was at the DC Jail, DCPS was allegedly providing him with specialized instruction. DC Public Schools has the burden of assessing and ensuring the effectiveness of its own efforts to educate children with disabilities. 34 C.F.R. § 300.1.

The IDEA, 20 U.S.C § 1412, specifically mentions the local educational agency's responsibility provide with a student with a free appropriate public education. DCPS, as that agency, is responsible to provide Maurice with the education that it failed to provide. States that receive federal educational assistance must establish procedures to ensure that FAPE is available to students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Therefore, DCPS is liable for the denial of FAPE to Maurice in the form of compensatory education and not the Federal Bureau of Prisons, for the time Maurice should have been receiving special education and related services.

In *Reid v. District of Columbia* (2005), the United States Court of Appeals for the District of Columbia Circuit held that "[w]hen a school district deprives a disabled child of free appropriate public education in violation of the Individuals with Disability

2

301

federal correctional institutions if the children are competent and if they have obtained

the age of majority.  In failing to assert jurisdiction and hold the BOP accountable, the

Hearing Officer would allow the BOP to continue denying Maurice his right to a free

appropriate public education pursuant to 20 U.S.C. §§ 1412(a)(1), 1411(i)(1)(c).

> A.    Under the National Capital Revitalization and Self Government Act
>        of 1997 the Federal Bureau of Prisons Assumed Responsibility to
>        Provide Education to D.C. Prisoners and That Responsibility Must
>        Include Providing Special Education and Related Services to Maurice
>        Pimble.

The BOP has assumed the District of Columbia's IDEA responsibilities for the

protection of educational rights under The National Capital Revitalization and Self

Government Act of 1997 (hereinafter referred to as the "D.C. Revitalization Act"), Pub.

L. 105-33, § 11201 *et seq*.

The Act states that the BOP is responsible for the "custody, care, subsistence,

*education*, treatment, and training" of D.C. Code felony offenders.  *Id.* (emphasis added).

D.C.'s educational obligations include the obligation to provide special education and

related services to its prisoners. 20 U.S.C. §1412 (a)(1)(B)(ii), 34 C.F.R. §300.311

(a)(1)(2).

This transfer from DCPS to the BOP of responsibility to educate D.C. inmates

encompasses DCPS' responsibility to provide Maurice with a free appropriate public

education.

> B.    The Plain Meaning of 20 U.S.C.§ 1415(m)(1)(d) Grants Competent,
>        Majority-Age Federal Prisoners the Right to Enforce Their Special
>        Education Rights.

The BOP has a duty to deliver special education and related services pursuant to

20 U.S.C.§ 1415(m)(1)(d), " – all rights accorded to parents under this part 20 USCS §§

1411 transfer to children who are incarcerated in an adult or juvenile Federal, State, or local correctional institution." At 34 C.F.R. § 300.2(b)(iv), the applicability of Title 34, C.F.R., Part 300, to "State and local juvenile and adult correctional facilities," is clearly defined; while federal correctional facilities are not mentioned. However, if the statute states that rights transfer, Maurice's right to special education transferred with him to his federal incarceration placement.

Regulators at the U.S. Department of Education drafted a regulatory provision that is inconsistent with congressional intent with regard to federal prisoners. The starting point in statutory interpretation is the language of the statute itself. "As in all cases involving statutory construction, the starting point must be the language employed by Congress, and the court assumes that the legislative purpose is expressed by the ordinary meaning of the words used. Thus absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63 at 68 (1981).

In *FEC v. Democratic Senatorial Campaign Committee*, the Supreme Court held that "the Court is the final authority on issues of statutory interpretation and must reject administrative constructions which are contrary to clear congressional intent". 454 U.S. 27, 32 (1981). "[I]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., et al.,* 467 U.S. 837, 843 (1984). Congress must have intended the IDEA to apply to inmates in federal facilities, when it enacted Federal Law transferring parental rights under the IDEA to inmates incarcerated in federal institutions.

In the instant case, Congress clearly intended the statute to apply to "children who are in [a] ... Federal ... correctional institution" 20 U.S.C. § 1415(m)(1)(D). Congress, however, did not prescribe how to provide those services and did not specify whether an eligible student in a federal incarceration facility would advance a complaint through the ordinary administrative hearing process. *Cf., e.g.,* 34 C.F.R. § 300.507(a) (right to an administrative hearing regarding denial of FAPE and other IDEA disputes). Rather than fill these gaps, regulators at the U.S. Department of Education drafted a regulatory provision that disregards congressional intent with regard to federal prisoners. The regulators simply deleted the word "federal" as a modifier of the phrase "correctional institution", thereby implying that the provision only applies to children in state facilities. The effect for persons who are eligible for special education and related services and who are convicted in criminal cases in the local courts of the District of Columbia would be to exclude them from IDEA services. Nothing in the statute can be interpreted to justify such a result.

The Supreme Court held that legislative regulations are given controlling weight " – unless they are arbitrary, capricious or manifestly contrary to the statute." *Cardoza-Fonseca*, 480 U.S. at 421. It is evident in the instant case that by excluding an entire category of persons covered by the statute, the drafters of the regulations were acting either arbitrarily or, more likely, capriciously. Either way, deleting the statutory language is manifestly contrary to Congressional intent. It is important for the Hearing Officer in the instant case to recognize -- and apply on behalf of Maurice Pimble -- the rights conferred by Congress to IDEA-eligible students in federal correctional institutions.

In recognizing the lack of specificity in the statute, Maurice Pimble urges the

6

Hearing Officer in the instant case to enforce (1) the plain language of the statute that grants IDEA-eligible federal prisoners the right to enforce the IDEA and (2) the D.C. Revitalization Act that establishes in the Federal Bureau of Prisoners an obligation – standing in the place of the District of Columbia -- to educate D.C. Code offenders who are incarcerated in the BOP.

## CONCLUSION

The burden of providing Maurice with compensatory education for the denial of FAPE from 1991 – 2005 is with DCPS. Case law, the IDEA, and the IDEA's implementing regulations place the burden of providing FAPE to a student on the local educational agency. States that receive federal educational assistance must establish procedures to ensure that FAPE is available to students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Further, DC Public Schools has the burden of assessing and ensuring the effectiveness of its own efforts to educate children with disabilities. 34 C.F.R. § 300.1. DCPS failed to provide Maurice with a free appropriate public education, and the retroactive remedy, in the form of compensatory education is owed to him by DC Public Schools.

Once Maurice was in the custody of the BOP, the BOP from that point onwards became responsible for educating Maurice and providing him with special education and related services. The BOP is responsible for administering the educational rights provisions provided in the IDEA for the District of Columbia code felony offenders under the Revitalization Act. The BOP is acting as the state in housing DC code felony offenders and is performing a state function by housing DC inmates. In assuming this responsibility, the BOP is subject to the administrative Due Process Hearings that DCPS

7

305

would be a party.

Notwithstanding the provisions of the Revitalization Act, the BOP is still responsible for educating federal prisoners pursuant to 20 U.S.C. § 1415(m)(1)(D). The IDEA, specifically 20 U.S.C. § 1415(m)(1)(d),  states that you can enforce your rights when you are in federal prison.  If you can enforce your rights when you are in federal prison, then you have rights.  By relying on the regulatory provision drafted by Regulators at the U.S. Department of Education (34 C.F.R. § 300.2(b)(iv)) as opposed to the statute (20 U.S.C. § 1415(m)(1)(D)), one would be disregarding congressional intent for federal prisoners.  Nothing in the statute can be interpreted to justify such a result.

The BOP is probably not vicariously liable for DCPS' denial of FAPE for eleven years.  Compensatory education is an equitable remedy and retroactive relief to compensate a student from the state to belatedly do that which it should have done all along.  The BOP is however responsible to provide D.C. Code offenders with a free appropriate public education pursuant to the DC Revitalization Act and 20 U.S.C. § 1415(m)(1)(d).

Respectfully Submitted,

Cynthia Catlett
Law Student Advocate

Cc:    Maurice Pimble
       Lenore Verra

8

306

# MP8    Request for a Hearing, 3/21/2005

**University of the District of Columbia**
**David A. Clarke School of Law**

**Juvenile and Special Education Law Clinic**
**4200 Connecticut Avenue, N.W. 39/213**
**Washington, D.C. 20008**
e-mail: cnecatlett@mail2world.com
(202) 274-7314
(202) 274-5583 (fax)



March 21, 2005

Jeffrey Phoenix
Student Hearing Office Coordinator
Student Hearing Office, DCPS
825 North Capital Street, NE (8th Floor)
Washington, DC 20002

Re:     **Maurice Pimble  DOB: ████/1985**
**Due Process Hearing Request**

Dear Mr. Phoenix:

Along with my supervisor, Joseph Tulman, through The University of the District of Columbia, David A. Clarke School of Law – Juvenile and Special Education Law Clinic, I represent Maurice Pimble regarding his special education needs.  D.C.P.S. is failing and has failed to provide Maurice with a free appropriate public education (FAPE), as defined in the Individuals with Disabilities Education Act (IDEA) 20 U.S.C. § 1400, *et seq.*, and its implementing regulations.  On behalf of my client, I request a hearing concerning this consistent failure to provide Maurice with FAPE.  **I propose the following dates:** Monday, April 18, 2005; Wednesday, April 20, 2005; Friday, April 22, 2005; and Monday, April 25, 2005.

Maurice is a nineteen-year-old male who has been denied a free appropriate public education since the age of six, when he failed first grade at a DC Public School – Meyer Lower Campus -- and DCPS did not evaluate him for any disability.  From an early age, Maurice consistently performed below average in his academics.  In a third grade report, Maurice's teacher Ms. Wright notified Maurice's parents that he was "in danger of repeating the third grade".  Maurice then failed the third grade.  While Maurice was in the fifth grade at Raymond Elementary School, he performed "Below Basic" in both Mathematics and Reading in the Stanford Achievement Test. "Below Basic" indicates "little or no mastery of fundamental knowledge and skills".   Maurice failed every single subject in the ninth grade at Roosevelt High School.

## I. DCPS Failed to Properly Identify and Evaluate Maurice.

Maurice has consistently shown unsatisfactory performance in his academics.  He repeated first grade at Meyer Lower Campus, and has consistently received "Unsatisfactory" grades as well as repeated "C"s, "D"s, and "F"s throughout elementary and middle school.

D.C.P.S. personnel did not identify Maurice's disability while he was enrolled at Meyer Lower Campus, where he repeated the first grade.  D.C.P.S. personnel also did not identify his disability

308

when he was in Rudolph Elementary School, where he repeated the third grade and received "Unsatisfactory" in every subject except Handwriting.

D.C.P.S. personnel failed to identify Maurice as a child with disability throughout elementary school. "Child Find" requires that "all children with disabilities in the state ... regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." 34 C.F.R. § 125(a)(i). D.C.P.S. did not identify or evaluate Maurice promptly, and this failure to identify and evaluate him negatively affected his academic performance throughout his academic career.

**II. Maurice's Current IEP is Inappropriate.**
Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1). That provision states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved."

Also, pursuant to 34 C.F.R. § 300.350, "each public agency must (1) provide special education and related services for a child with a disability in accordance with the child's IEP; and (2) make good effort to assist the child to achieve the goals and objectives or benchmarks listed in an IEP." Maurice's academic performance and records show that D.C.P.S. did not provide him with special education and related services from the time he repeated the first grade and the 10 years he attended school thereafter.

According to Lisa Russell, Director of Special Education for Incarcerated Youth, Maurice was evaluated and an IEP was conducted in the 2001 school year. However, there are no records of these evaluations or when they took place and, notwithstanding my requests on November 29, 2004 and February 15, 2005, DCPS personnel has not provided me with records of these evaluations.

Maurice has a right to the records of the evaluations performed in 2001. When a student with a disability obtains the age of majority, all rights previously accorded to the parents transfer to the student. 34 C.F.R. § 300.517(a)(1). According to 34 C.F.R. §§ 300.501(a)(1)(i), 300.501(a)(1)(ii), the parents of a child with a disability must be afforded an opportunity to " -- inspect and review all education records with respect to the identification, evaluation, and educational placement of the child; and the provision of FAPE to the child." This right transferred to Maurice when he reached the age of eighteen.

There are records documenting that Maurice was identified as learning disabled in the 2000 – 2001 school year and that he received special education services at Johnson Jr. High School while enrolled in the seventh grade. Maurice's performance shows that either D.C.P.S. did not evaluate him appropriately and/or failed to identify him as learning disabled in a timely fashion. As a result of D.C.P.S.'s failure to conduct prompt or legally sufficient evaluations, Maurice exhibited consistent failure in his academics.

Also, the law requires that D.C.P.S. conduct an IEP every year and that evaluations occur triennally. 34 C.F.R. §300.536(b). Almost four years have elapsed since Maurice's last evaluation. On November 29, 2004, Maurice requested special education evaluations, and D.C.P.S. personnel have not yet conducted the evaluations. D.C.P.S has also not responded to

309

that request, in violation of 34 C.F.R. § 300.503(b)(2) (requiring that D.C.P.S. provide "an explanation of why the agency … refuses to take the action"). On February 15, 2005, I requested that D.C.P.S. conduct an evaluation and D.C.P.S. again made no response -- an express violation of 34 C.F.R. § 300.503(b)(2).

### III. DCPS Denied Maurice FAPE; Appropriate Remedies are Due.

On behalf of Maurice, I request an overdue comprehensive evaluation for him. Maurice is currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. Former law student advocate, Victoria Kunkoski, made a request for D.C.P.S. personnel to evaluate Maurice prior to his placement at Rivers Correctional Institution in Winton, North Carolina.

D.C.P.S.'s obligation to educate and provide Maurice with compensatory education is not relieved since "Individuals who are incarcerated are entitled to receive a FAPE if prior to their incarceration they had either been evaluated or had an Individualized Education Plan. 20 U.S.C. § 1412(a)(1)(B)(ii), 34 C.F.R. § 300.311(a)(1)(2). Maurice satisfies both criteria since he was identified as learning disabled in 2001, prior to his conviction on September 16, 2004.

Additionally, pursuant to The National Capital Revitalization Act of 1997, Pub. L. 105-33, § 11201 *et seq.*, the Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights; therefore, Maurice is still entitled to these evaluations and to special education and related services while he remains incarcerated at Rivers Correctional Institution, whether D.C.P.S. provides these services at their expense or whether the Federal Bureau of Prisons assumes this responsibility.

I also request compensatory education for the eleven years Maurice was denied FAPE (from first grade until ninth grade, including the grades he repeated) to meet Maurice's special education needs. *Burr. v. Ambach*, 863 F.2d 258 (1989). D.C.P.S. failed to identify, locate and evaluate Maurice in violation of 34 C.F.R. § 125(a)(1), consequentially denying him a free appropriate public education. Pursuant to 20 U.S.C. § 1401(8), "A child who has a disability that adversely affects his/her educational performance is entitled to a free, appropriate public education" (FAPE). A FAPE must be in accordance with state administrative agency standards; must include an appropriate elementary or secondary education in the state involved; must be based upon an individualized educational program (IEP) designed for the child; and must be provided by the state at no cost to the child or to the child's parent(s). 20 U.S.C. § 1401(8); 34 C.F.R § 300.13.

If you have any questions, please contact me at (202) 274-7314 or by fax at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

_____
Cynthia N. Catlett
Law Student Advocate

cc:    Veleter Mazyck, DCPS General Counsel
       Maurice Pimble

310

MP9    Letter to Lisa Russell
       requesting special education
       evaluation, 11/28/04

# UNIVERSITY OF THE DISTRICT OF COLUMBIA
## David A. Clarke School of Law



Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 38/207
Washington, D.C. 20008
(202) 274-7317
(202) 274-5583 (fax)

vkunkoski@msn.com

November 28, 2004

Lisa Russell
Director of Special Education for Incarcerated Youth
District of Columbia Public Schools
825 North Capitol Street, N.E.
Washington, DC 20002

RE:    Maurice Pimble
DOB:    ▆▆▆/85

Dear Ms. Russell:

Along with my supervisor, Professor Joe Tulman, I represent Maurice Pimble regarding his special education needs. Recently, on November 15, 2004, Maurice Pimble requested an initial evaluation for special education. Currently, Maurice is incarcerated in the District of Columbia Jail. Due to the serious nature of Maurice's circumstances, I believe that this process of identification and evaluation should be expedited. If needed, I can contact independent evaluators to help speed the process. I am quite sure that Maurice is a young man in need of special education services.

Please contact me if you have any questions or concerns. You can reach me at (240) 308-1092 or by letter at the address listed at the top of this letterhead.

Sincerely,

Victoria Kunkoski
Victoria Kunkoski
Law Student Advocate

cc:    Ray Bryant, Chief of Special Education Reform

312

MP10 Letter to Lisa Russell requesting special education evaluation, 2/15/05

University of the District of Columbia
**David A. Clarke School of Law**
Juvenile and Special Education Law Clinic

4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
(202) 274-7314
(202) 274-5583 (fax)
cnce⁣⁣@mail2world.com



February 15, 2005

Lisa Russell
Director of Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

RE: Maurice Pimble
DOB: ██85

Dear Ms. Russell:

I represent Maurice Pimble regarding his special education needs. Maurice is currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. Maurice was identified as Learning Disabled on January 30, 2001 while attending Roosevelt High School. At that point, an IEP meeting was conducted. Although there is evidence that Maurice had an IEP, there are no records of it. The law requires that an IEP be conducted every year and that evaluations be conducted triannually. 34 C.F.R. § 300.536(b). Almost four years have elapsed since Maurice's last evaluation. According to my records, Maurice requested a special education evaluation on November 15, 2004, and D.C.P.S. personnel have not yet conducted the evaluation. This request was made while Maurice was at the District of Columbia Jail. Therefore, D.C.P.S. had an opportunity to evaluate him while he was in the District and neglected to act in conformity with the regulations.

Maurice does not have an appropriate IEP in place, in violation of 34 C.F.R. § 300.343(c)(1) – which states that "each public agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved." Also, pursuant to 34 C.F.R. § 300.350, "each public agency must (1) provide special education and related services for a child with a disability in accordance with the child's IEP; and (2) make good effort to assist the child to achieve the goals and objectives or benchmarks listed in an IEP."

In a facsimile dated November 29, 2004, Victoria Kunkoski, Maurice's former law student advocate, expressed the urgency of an expedited evaluation and offered to contact independent evaluators to help accelerate the process. In light of Maurice's unmet special education needs, I request that Maurice be evaluated immediately in North Carolina. Alternatively, I am willing to contact independent evaluators to evaluate Maurice at D.C.P.S.' expense.

314

I also request that I receive adequate notice in writing supporting or contesting my request for the independent evaluation. Pursuant to 34 C.F.R. § 300.503(b), "[t]he notice…must include (1) [a] description of the action proposed or refused by the agency; (2) [a]n explanation of why the agency proposes or refuses to take the action; (3) [a] description of any other options that the agency considered and the reasons why those options were rejected".

Please contact me if you have any questions or concerns. You can reach me at (202)274-7314 or by letter at the address listed at the top of this letterhead.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

315

MP11   Letter to Michael Snipes
       regarding communications
       with Ms. Russell and request
       for special education
       evaluation, 3/21/05

University of the District of Columbia
**David A. Clarke School of Law**
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008



202) 274-7314
(202) 274-5583 (fax)

Michael Snipes
~~Student Hearing Office Coordinator~~
Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

March 21, 2005

Dear Mr. Snipes:

Along with my supervisor, Joseph Tulman, through the University of the District of Columbia, David A. Clarke School of Law – Juvenile and Special Education Law Clinic, I represent Maurice Pimble regarding his special education needs. Maurice was enrolled in DC Public Schools since first grade and attended several DCPS schools thereafter. One of my colleagues went to all of the schools Mr. Pimble attended (Meyer Lower Campus, Rudolph Elementary School, Thomson Jr. High School, Raymond, and Roosevelt) searching for any and all special education evaluations conducted for Mr. Pimble, and none of these records were in his academic file. Lisa Russell, Director of Special Education for Incarcerated Youth, confirmed that according to your records a team of DCPS personnel previously evaluated Mr. Pimble and that your office has evaluations on file. I request, pursuant to 34 C.F.R § 300.501, that you provide me, on behalf of Mr. Pimble, with any and all evaluations, IEP's, and other academic records (including report cards and standardized test results). I can pick these records up at your office. I request that any and all evaluation records, report cards, and IEP's on record be made available to me.

I have attempted to contact Lisa Russell six times this week. I have left her three messages regarding these records as well as scheduling an independent evaluation for Mr. Pimble in North Carolina. I have found an independent evaluator willing to evaluate Mr. Pimble, and I am forwarding to you this psychologist's Curriculum Vitae. On February 15, 2005 I sent Ms. Russell a letter requesting an independent evaluation for Mr. Pimble. I have not heard from her in regards to my request. I am attaching to this fax the letter I faxed and mailed Ms. Russell.

I really appreciate your help in assisting me in these matters. Please contact me if you have any questions. You can reach me at (202) 274-7314.

Thank you,

Cynthia Catlett

1

317

_____
Cynthia Catlett
Law Student Advocate

MP12  Letter to Ms. Russell
      regarding special education
      evaluation, 4/4/05

University of the District of Columbia
David A. Clarke School of Law
Juvenile and Special Education Law Clinic

4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
(202) 274-7314
(202) 274-5583 (fax)
cnecatlett@mail2world.com



April 4, 2005

Lisa Russell
Director of Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

RE: Maurice Pimble
DOB: ███/85

Dear Ms. Russell:

You and I spoke on March 23, 2005, about Maurice Pimble, specifically, whether D.C.P.S. is responsible for evaluating Maurice Pimble in North Carolina. You said that once D.C. students transfer to a Federal Bureau of Prison facility, D.C.P.S is no longer under any obligation to educate them, even if these inmates are eligible for special education and related services under the I.D.E.A.

You also said that Maurice was evaluated in 2001 and had an IEP in place, but that D.C.P.S does not have an IEP or evaluations on record for that year. Additionally, you noted that in October of 2004, Maurice was evaluated in D.C. Jail and that you have Multidisciplinary Team (MDT) notes from that evaluation. You also said Maurice was receiving special education at D.C. Jail.

I would like to thank you for faxing to the legal clinic Maurice's most recent IEP. I am again requesting, that you forward to me (by facsimile) a copy of any and all records you have on file for Maurice Pimble. I am also requesting a copy of the records of specialized instruction and related services offered to Maurice while he was at D.C. Jail. Further, pursuant to 34 C.F.R. § 300.503, I request that you respond in writing to the denial of my request for an evaluation. Under section 300.503, you are required to provide, in writing, your reasons for denying a request.

320

Please contact me if you have any questions or concerns. You can reach me at (202) 274-7314 or by letter at the address listed at the top of this letterhead.  My facsimile number is (202) 274-5583.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

CC:  Michael Snipes
Maurice Pimble

321



TRANSMISSION VERIFICATION REPORT

```
                                    TIME    :  04/04/2005 12:25
                                    NAME    :  DACSL LEGAL CLINICS
                                    FAX     :  2022745569
                                    TEL     :
                                    SER.# : BROE2J354480
```

```
       DATE,TIME                        04/04  12:24
       FAX NO./NAME                     94425518
       DURATION                         00:01:02
       PAGE(S)                          03
       RESULT                           OK
       MODE                             FINE
                                        ECM
```

322

University of the District of Columbia
David A. Clarke School of Law
Legal Clinic
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, D.C. 20008

Telephone: (202) 274-5576
FAX: (202) 274-5569



## FASCIMILE TRANSMITTAL SHEET

**DATE:** April 4, 2005

**TO:** Lisa Russell

**FAX NUMBER:** 202-442-5518

**FROM:** Cynthia Catlett

UDC-DCSL FAX NO: 202-274-5569

**RE:** Maurice Rimpus

**TOTAL PAGES:** (including this cover sheet) 3

**FAX OPERATOR:**

**FAX OPERATOR PHONE:**

**BRIEF MESSAGE:** Please respond in writing to
my request

**ATTENTION!**

The information

323

MP13   Letter to Ms. Russell
regarding lack of records
available to DCPS, 4/12/05

**University of the District of Columbia**
**David A. Clarke School of Law**

**Cynthia Catlett**
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008

(202) 274-7314
(202) 274-5583 (fax)

April 12, 2005

Lisa Russell
Director of Special Education for Incarcerated Youth
825 North Capitol Street, N.E.
Washington, DC 20002

Re:  Maurice Pimble
DOB: ████/85

Dear Ms. Russell:

You and I spoke on April 5, 2005, in reference to Maurice Pimble's educational records and the fact that your record of his educational background is incomplete. In that conversation, we discussed where Maurice was attending school in the 2000-2001 school year and where he first received special education and related services. You said that according to your records Maurice was attending Roosevelt High School when D.C. Public Schools personnel identified his learning disability, but that you did not have any records of which schools he attended or of the evaluation conducted on January 30, 2001.

I have records that place Maurice in the seventh grade at Johnson Jr. High School on February 2, 2001. According to these records, Maurice was enrolled at Johnson Jr. High School on February 2, 2001. However, I have received records from Roosevelt High School that indicate that Maurice enrolled in the eighth grade in the 2000-2001 school year and in the ninth grade in the 2001-2002 school year. I also have records that place him in the fifth grade during the 1999-2000 school year at Raymond Elementary School.

In the April 5th conversation I asked you whether Maurice had skipped any grades. According to the records that I have received from DCPS, it seems as if Maurice skipped the sixth grade and completed the seventh and eighth grades at the same time at different schools. I offered to send you these records. I am attaching them to this letter.

325

We also discussed working together in terms of deciphering whether Maurice did in fact skip grades and when/where he first received special education and related services. I am attaching to this letter the following documents:

(1) A standardized test showing that Maurice was in the fifth grade in the 1999-2000 school year at Raymond Elementary School;

(2) A report card from Johnson Jr. High School showing that Maurice was enrolled at Johnson Jr. High School on February 2, 2001; and

(3) A report card from Roosevelt High School stating that Maurice was enrolled in the eighth grade from 2000-2001, and in the ninth grade from 2001-2002.

Please contact me directly at (202) 274-7314 so we can discuss this matter further.

Sincerely,

Cynthia N. Catlett
Law Student Advocate

326

Document Name: untitled

```
SIS - STUD                    RAYMOND ELEMENTARY SCHOOL
[DISPLAY]                       Student Master Record              Dec 0
                                                                   04:21
   Student ID:          7729524

   Last Name:                                  Status:               I
   Given Names:          PIMBLE                 Grade/School Yr:    05 99/
   Called Name:          MAURICE A              Homeroom:
   Address Line 1:                              Program:                N
   Address Line 2:       1469 MERIDIAN PLSCE, NW Locker/Comb:
   City:                                        Previous School:       0
   State:                WASHINGTON             Admission Date:      302
   Zip Code:             DC                     Admission Code:    03/04/
   Tel No/Area/Code:     20010                  Withdrawal Date:   A3 Cal
   Parent/Guardian:      635-0130  (202)        Withdrawal Code:   10/13/
   P/G Relationship:     LEWIS, TWANDWA         Transf To School:   W1
   Sex/Ethnic Code:      1  MOTHER              Date Transferred:   285
   Birthdate:            M  B  BLACK            Graduation Rule:   11/03/
   Verified With:               /85             Graduation Date:
   Soc Sec No:                                  Schedule Changed:
   Counselor Name:       BERNARD GRAYSON
   Scheduling Priority:                         Data Flags:        1 2 3 4
   Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On  Report Flags:  N N N N
   Message:                                     Res/Sped/Att:
```



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## REPORT FORM
02/05/01



JOHNSON JUNIOR HIGH SCHOOL
REPORT TO PARENTS ON STUDENT PROGRESS



STUDENT ID: 7729524          STUDENT NAME: PIMBLE, MAURICE A
GRADE:        07              HOMEROOM:        7423

| COURSE SEC SUBJECT TEACHER | COMMENTS | ADV 1 | ADV 2 | ADV 3 | ADV 4 | FINAL | EARN CRED | A |
|---|---|---|---|---|---|---|---|---|
| B17    05 CROSSON | EXPLOR KEYBOARD | P | P | | | P | | |
| C35    05 PATTERSON | LIFE MGMT EXCELLENT INITIATIVE EXCELLENT BEHAVIOR | B | B | | | | 11 | |
| C35    06 PATTERSON | LIFE MGMT GOOD PARTICIPATION | B | B | | | | 11 | |
| E01S   06 CARTER | ENGLISH 7 EXCELLENT BEHAVIOR GOOD PARTICIPATION | B | B | | | | 11 | |
| H11S   05 PATTERSON | W. HEM. GEO. SP EXCELLENT BEHAVIOR GOOD PARTICIPATION | B | B | | | | 11 | |
| M01S   06 PATTERSON | FUND. OF MATH S GOOD PARTICIPATION EXCELLENT BEHAVIOR | B | B | | | | 11 | |

HOMEROOM ABSENCES: 14.0    EXCUSED: 0.0    UNEXCUSED: 14.0    TARDY: 11

MAURICE A PIMBLE
2343 PITTS PLACE S.E.
WASHINGTON,, DC 20020

328

Document Name: untitled

SIS - STUD
[DISPLAY]

**JOHNSON JUNIOR HIGH SCHOOL**
**Student Master Record**

Dec 08,
02:05 I

| | | |
|---|---|---|
| Student ID: | 7729524 | |

Last Name:                                    Status:                    I
Given Names:      PIMBLE                      Grade/School Yr:
Called Name:      MAURICE A                   Homeroom:          08 00/0
Address Line 1:                               Program:           8312 Ne
Address Line 2:   D.C. VILLIAGE LANE
City:             #2A                          Locker/Comb:
State:            WASHINGTON                   Previous School:        0
Zip Code:         DC                           Admission Date:    285  F
Tel No/Area/Code: 20032                        Admission Code:    09/05/0(
Parent/Guardian:  561-8090  (202)              Withdrawal Date:   A5 Calen
P/G Relationship: LEWIS, TWANDYA               Withdrawal Code:
Sex/Ethnic Code:  1  MOTHER                    Transf To School:     459  Fi
Birthdate:        M  B  BLACK                  Date Transferred:  09/17/01
Verified With:    ████████/85                  Graduation Rule:
Soc Sec No:       ██████████                   Graduation Date:
Counselor Name:   KEELING                      Schedule Changed:
Scheduling Priority: 1                                            06/13/01
Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On   Data Flags:    1 2 3 4 !
Message:                                       Report Flags:
                                               Res/Sped/Att:   N N N N N
                                                                     0

329

TRANSMISSION VERIFICATION REPORT

```
TIME    : 04/12/2005 13:34
NAME    : DACSL LEGAL CLINICS
FAX     : 2022745569
TEL     :
SER.#   : BROE2J354480
```

```
DATE,TIME           04/12  13:32
FAX NO./NAME        94425518
DURATION            00:02:12
PAGE(S)             07
RESULT              OK
MODE                FINE
                    ECM
```

330



University of the District of Columbia
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Ave., NW
Building 39, 2nd Floor
Washington, D.C. 20008

Telephone: (202) _____
       FAX: (202) 274-5569

## FASCIMILE TRANSMITTAL SHEET

DATE: *April 12, 2005*

TO: *Lisa Russell*

FAX NUMBER: *202 - 442 - 5518*

FROM: *Cynthia Catlett*
           UDC-DCSL FAX NO: 202-274-5569

RE: *Maurice Pimble*

TOTAL PAGES: (Including this cover sheet) *7*

FAX OPERATOR: _____

FAX OPERATOR PHONE: _____

BRIEF MESSAGE: *Here you go! Thanks. Call me so we can figure this out.*
                                    *Cynthia*

ATTENTION!

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this transmission in error, please notify us immediately by telephone and return the original by fax to the number listed above. Thank you.

331

MP14  Letter to Mr. Horton regarding special education evaluation, 4/12/05



University of the District of Columbia
David A. Clarke School of Law

Cynthia Catlett
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008

(202) 274-7314
(202) 274-5583 (fax)

April 12, 2005

Mr. Horton
Education Director
Rivers Correctional Institution
145 Parker's Fishery Rd
Winton, NC 27986

Re: Maurice Pimble
Inmate No: 35565-007

Dear Mr. Horton:

Along with my supervisor, Professor Joseph Tulman, I represent Maurice Pimble in regard to his special education needs. Maurice is currently incarcerated at Rivers Correctional Institution (RCI). District of Columbia Public Schools personnel identified Maurice as learning disabled -- and thus eligible for special education services -- on January 30, 2001. The law states, "Individuals who are incarcerated are entitled to receive a free appropriate public education if prior to their incarceration they had either been evaluated or had an Individualized Education Plan." 20 U.S.C. 1412(a)(1)(B)(ii), 34 C.F.R. 300.311(a)(1)(2). Maurice satisfies both criteria.

The Federal Bureau of Prison is responsible for administering the educational rights provisions provided in the Individuals with Disabilities Education Act (IDEA) for District of Columbia Code felony offenders who are in BOP custody. D.C.'s educational obligations include the obligation to provide special education and related services to its prisoners. See 20 U.S.C. 1412(a)(1)(B)(ii), 34 C.F.R. 300.311(a)(1)(2). The Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights when it gained custody of D.C. Code felony offenders through the National Capital Revitalization Act of 1997. That Act makes the BOP responsible for the education of D.C. Code felony offenders.

I am requesting that the Federal Bureau of Prison comply with the IDEA. The law provides that Maurice is entitled to an Individualized Education Plan (IEP) every year and triennial evaluations. See 34 C.F.R. §300.536(b). Maurice's last evaluation was on January 30, 2001. Maurice's triennial re-evaluation is fifteen months overdue.

333

Since Maurice is now in the custody of the Federal Bureau of Prison, I am requesting that the BOP provide Maurice with the necessary evaluations in order to secure his success in his academic endeavors. I have contacted evaluators near Winton, NC willing to conduct the necessary evaluations. Also, pursuant to 34 C.F.R. 500.502, Maurice is entitled to private evaluations. In case personnel at Rivers Correctional Institution are not qualified to perform the requisite evaluations, I am requesting that Maurice receive a private evaluation.

I am also requesting that the Federal Bureau of Prison adjust Maurice's current IEP. This IEP was developed at the D.C. Jail by D.C. Public School personnel on October 1, 2004 and states that "Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability." Further, it states, "Maurice requires ... small structured environment that cannot be met in the general education classroom." This IEP is inappropriate because the comments at the end of the document do not correspond with the fact that the same evaluators identified Maurice as requiring only 20% of special education. My position, as the comments on the same IEP suggest, is that Maurice requires a 100% special education academic environment. I am attaching Maurice's most recent IEP to this letter so that your educators can accommodate Maurice's learning disability.

According to Lisa Russell, Director of Incarcerated Youth for the District of Columbia Public Schools, Maurice was receiving special education at the D.C. Jail. In assuming the District of Columbia's educational responsibilities, the Federal Bureau of Prison also assumed the commitment to educate D.C. Code offenders. By not providing special education for Maurice, the Federal Bureau of Prison would be depriving Maurice of a right conferred to him by the laws of the District of Columbia.

You may contact me directly at (202) 274-7314 or via facsimile at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia Catlett
Law Student Advocate

cc.:    Maurice Pimble
        Marianne Cantwell

334

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of 4
Additional Comments: ☐

**I. IDENTIFICATION INFORMATION**

Student Name: Last _Pimble_    First _Maurice_    MI

Student ID _272952_ Soc. Sec. No. ▓▓▓▓▓

Gender ☒ M ☐ F    Date of Birth _____85    Ethnic Group _African American_    Age: _13_    Grade _9_

Address _1865 Ontario pl. NW_
House No.    Street Name    Quadrant    Apartment #

_Washington DC_    _2003_
City    State    Zip Code

☐ Non-attending
Attending School
☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS

Parent _Alfred Hobdy_

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home    Work

**II. CURRENT INFORMATION**

Date of IEP Meeting: _10/1/04_
Date of Last IEP Meeting: _1/30/01_
Date of Most Recent Eligibility Decision: _1/30/01_

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: _W_

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION |
| ESY | ☒ | TRANSITION |

**III. LANGUAGE**

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | N. Lang | Oral |
| Parent | English | English | English | N. Lang | Rdg./ Written |
| Home | English | English | English | N. Lang | Instrument: |
| | | | | | Date: |

**IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY**

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks/mos |
|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr/ Min | D/W/M | | | |
| Specialized Instruction | | ✓ | | 6 hr | week | Spe. Ed. Teacher | 10/4/04 | 10 mos |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | | 6 | Hours Per Week | | | | |

**V. Disability(ies)**    _Learning Disabled_

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%  ☐ 21-60%  ☐ 61-100%
Percent of time NOT in a Regular Education Setting

**VI. IEP TEAM** (Participants in the development of the IEP)

Print and sign your name below.

_Maureen Kemp_    _Maure Kemp_
_Maurice Pimble_    _unavailable_
_Lia Quander_    _Lia Quander_
_Tytha Thomas_    _Sophia Thomas_

_I AGREE_ with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    Date

Student Name __Maurice Pimble__

Student ID Number __7729524__    DOB __85__    Managing School

Attending School __Dcc/Dcla l__

DCPS - IEP
Page 2 of 4

**VII. Present Educational Performance Levels in Areas Affected by the Disability**

Additional Comments: ☐

Academic Areas: (Evaluator) __Special Educator__

Math Strengths:
Student is able to add and subtract with regrouping

Impact of disability on educational performance in general education curriculum:
Student disability impact his ability to perform
Grade level work

Reading Strength:
Student is able to read some sight words

Impact of disability on educational performance in general education curriculum:
Student disability impacts on academic success

Score(s) When Available
Math Cal. __3.0__
Math Rea. _____
See goal page: _____
Date: _____

Rdg. Com _____
Rdg. Basic __2.0__
Written Ex. _____
See goal page: _____
Date: __2-5-01__

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
Exp.Lang. _____
Rec-Lang. _____
Artic _____
Voice _____
Fluency _____
Exp. Voc. _____
Rec. Voc. _____
See goal page: _____
Date: _____

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) /Results
When Available
_____
_____
_____
See goal page: _____
Date: _____

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
_____
_____
_____
See goal page: _____
Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
_____
_____
See goal page: _____
Date: _____

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
See goal page: _____
Date: _____

336

| Student Name | Maurice Pimble | | | Managing School | | DCPS - ISP |
|---|---|---|---|---|---|---|
| Student ID Number | 77295;34 | DOB | ███85 | Attending School | DOC/DC Jail | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**     Additional Comments: ☐

Area addressed by goal: _Academics Mathematics_     Goal Number: [ ]

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will be able to demonstrate a years growth in Mathematics with 80% Accuracy

Provider(s): Special Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to multiply whole numbers with 80% accuracy | | monthly |
| Maurice will be able to divide whole number with 80% accuracy | | monthly |
| Maurice will be able to solve word problems involving multiplication and division with 80% accuracy | | monthly |
| Maurice will be able to add and subtract fractions and decimals with 80% Accuracy | | Monthly |
| Maurice will be able to multiply and divide fractions and decimals with 80% Accuracy | | monthly |
| Maurice will be able to complete percentage with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

337

Student Name: Maurice Pimble
Student ID Number:                   DOB:
Managing School:
Attending School: Doc / Oclail

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐

Goal Number: ☐

Area addressed by goal: *Academics - Written Expressions*

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will be able to demonstrate one years growth in written expression with 80% accuracy

Provider(s): Special Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to use correct Capitalization with 80% accuracy | | |
| Maurice will be able to use correct punctuation with 80% accuracy | | monthly |
| Maurice will be able to draft an essay with 80% accuracy | | monthly |
| Maurice will be able to use a dictionary with 80% accuracy | | monthly |
| Maurice will be able to use the internet to conduct research with 80% accuracy | | monthly |
| Maurice will identify complete sentences with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☑ Portfolio  ☐ Log  ☐ Chart  ☑ Test  ☑ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | Maurice Bimble | | | |
|---|---|---|---|---|
| Student ID Number | 2229524 | DOB ___-85 | Managing School | |
| | | | Attending School | DOC/DC Jail |

VIII. SPECIALIZED SERVICES     Additional Comments: ☐

DCPS - IEP
Page 3 of 4

Area addressed by goal: Academic - Reading     Goal Number: ☐

ANNUAL GOAL: (including mastery criteria)

Maurice will demonstrate a years growth in Reading Comprehension and vocabulary skills with 80% Accuracy

Provider(s): Special Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to identify analogies with 80% accuracy | | |
| Maurice will be able to draw inferences from materials read with 80% Accuracy | | monthly |
| Maurice will able to identify supporting details with 80% accuracy. | | monthly |
| Maurice will be able to distinguish facts from opinion with 80% accuracy | | monthly |
| Maurice will be able to identify the main idea of a reading selection with 80% Accuracy | | monthly |
| Maurice will be able to use context clues to define unfamiliar words with 80% accuracy | | Monthly |

EVALUATION PROCEDURE(S)

☑ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

Student Name **Maurice Pimble**
Student ID Number **2229524**    008___-85    Managing School _____
Attending School **DOC/DC Jail**

DCPS - IEP
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ |

Area addressed by goal: _____    Goal Number: ☐

ANNUAL GOAL - (Including mastery criteria.)

Maurice will reduce his inability to refrain from impulsive behaviors

Provider(s): **Social Worker**

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will process in counseling sessions situations when he had difficulty impulsive behavior | | |
| Maurice will identify situations in which he successfully refrained from engaging in impulsive behavior | | Weekly |
| Maurice use existing skills coupled with newly learned skills from counseling sessions to refrain from impulsive behaviors | | Weekly |
| | | Weekly |
| | | |
| | | |

EVALUATION PROCEDURE(S)
☑ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☐ Report  ☐ Other

Information obtained in counseling sessions

| Student Name | Maurice Pimble, | Managing School | | DCPS - TRANSITION SERVICES PLAN PAGE 1 OF 2 |
|---|---|---|---|---|
| Student ID Number | 7729524 | DOB ___-85 | Attending School  DCjay Doc | |

Date Developed: _____

## DCPS TRANSITION SERVICES PLAN

**Note:** The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.** *Record student's post-secondary goals and interests.*

Employment: _____

Community Participation: _____

Post-Secondary Education and Training: _____

Independent Living: _____

**II.** *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
|---|---|
| 2004 - 2005 | GED Instruction |
| | |
| | |
| | |

**III.** *Transition Services Needed.*
  *Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Employment  If service is not needed, provide explanation. | | TBD |
| Community Participation  If service is not needed, provide explanation. | | TBD |
| Post-Secondary Education and Training  If service is not needed, provide explanation. | | TBD |
| Independent and Adult Living  If service is not needed, provide explanation. | | TBD |

| Student Name | Maurice Amble | | Managing School | | DCPS - TRANSITION SERVICES PLAN |
|---|---|---|---|---|---|
| Student ID Number | 7729534 | DOB ___85 | Attending School | DCjail/Doc | PAGE 2 OF 2 |

Date Developed: _____

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | | |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | | |
| **Other** | | |

**IV.**

| Projected Exit Category *(check one)* | High School Diploma Status | Projected Exit Date (M/D/Y) |
|---|---|---|
| DC High School Diploma | # Credits Earned toward graduation | |
| High School Certificate at age 21 | G-E-D | |
| High School Certificate *prior* to age 21 | # Community Service Hours Completed | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

   Examples of Agency Linkages Needed for Transition
   - Rehabilitation Services Administration (RSA)
   - Mental Retardation and Developmental Disabilities Administration (MRDDA)
   - Commission on Mental Health Services (CMES)
   - UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9729524 | DOB ___-85 | Attending School DOC/DC Jail | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ☐ Yes ☐ No

Explanation for removal out of regular or ucation classroom.

Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability. Maurice requires behavior intervention and small structured environment that cannot be met in the general education classroom

### X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/WML | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | extended time, extra break |
| Setting: | Small group and preferential seating |
| Presentation: | Behavior modification |
| Response: | Write in test booklet |
| Equipment: | Calculator |

### XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☐ Level III (Describe non-uniform co ditions for level III) Tested under non-standa d conditions with permissible accommodations

☐ Level V Portfolio:

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☒ Level IV   (Describe the alternative assessment)

N/A

### XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other: _____
☐ None

☐ Physical/Sensory
☐ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual go al(s), objectives and/or modifications to address barriers in each area checked above.

### XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | Reject cannot meet student needs | Continue school failure |
| Combination General Education | Reject cannot meet student needs | Ability to participate with nondisabled peers |
| Out of General Education | Accept will meet student need | Impact on self esteem |

Modification(s)/Accommodation s) to address the harmful effects:

Specific scheduling to accommodate Services

| Location for Services | DOC/DC Jail |
|---|---|



TRANSMISSION VERIFICATION REPORT

```
                              TIME   :  04/12/2005 14:18
                              NAME   :  DACSL LEGAL CLINICS
                              FAX    :  2022745569
                              TEL    :
                              SER.#  :  BROE2J354480
```

```
        DATE,TIME                          04/12  14:12
        FAX NO./NAME                       930573440
        DURATION                           00:05:32
        PAGE(S)                            12
        RESULT                             OK
        MODE                               FINE
                                           ECM
```

344

# MP15  Letter to Ms. Marianne Cantwell, 4/11/05





**University of the District of Columbia**
**David A. Clarke School of Law**

**Cynthia Catlett**
**Juvenile and Special Education Law Clinic**
**4200 Connecticut Avenue, N.W. 39/213**
**Washington, D.C. 20008**

(202) 274-7314
(202) 274-5583 (fax)

April 11, 2005

Marianne Cantwell
General Counsel for Prison Industries, Education
and Vocational Training Division
Federal Bureau of Prisons
320 1st Street, NW
Washington, DC 20534

Re: Maurice Pimble
Inmate No: 35565-007
Special Education Needs

Dear Ms. Cantwell:

On March 21, 2005, I submitted a Due Process Hearing Request at the Student Hearing Office of D.C. Public Schools on behalf of my client, Maurice Pimble (Inmate # 35565-007). Maurice is currently incarcerated at Rivers Correctional Institution (RCI), a Federal Bureau of Prisons facility. Prior to his incarceration at RCI, Maurice was at the D.C. Jail awaiting placement at a Federal Bureau of Prisons facility. At that time, Maurice was pending re-evaluation by D.C. Public School personnel in order to assess his special education needs.

Since 1997, the Federal Bureau of Prisons (BOP) has been responsible for administering and implementing the educational rights provisions in the IDEA for District of Columbia Code felony offenders who are in BOP custody. The Federal Bureau of Prisons assumed the District of Columbia's IDEA responsibilities for the protection of educational rights when it gained custody of D.C. Code felony offenders through The National Capital Revitalization Act of 1997. That Act makes the BOP responsible for the "custody, care, subsistence, education, treatment, and training" of D.C. Code felony offenders. D.C.'s educational obligations include the obligation to provide special education and related services to its prisoners. *See, e.g.,* 20 U.S.C. §1412 (a)(1)(B)(ii), 34 C.F.R. §300.311 (a)(1)(2). In assuming the responsibility of providing for the education of D.C. Code felony offenders, the BOP assumed DC's IDEA responsibility to educate students with special education needs.

In a recent conversation, Lisa Russell, D.C. Public Schools' Director of Special Education for Incarcerated Youth, stated her position, which is that D.C. Public Schools is not responsible for D.C. students who are incarcerated in the federal system. Prior to passage of the National Capital Revitalization Act, D.C. Public Schools was responsible for educating inmates with special education needs if prior to their incarceration they had been identified as eligible for

346

In a provision specifying the transfer of parental rights to a child at the age of majority, the IDEA specifically mentions prisoners incarcerated in federal facilities. 24 U.S.C. §1415(m)(1)(d). Although the implementing regulations fail to mention federal incarceration facilities, an interpretation that the IDEA does not reach federal prisoners would disregard the plain meaning of the statute.

Furthermore, the BOP is acting under the color of state law in housing D.C. prisoners and the right to public education for individuals with disabilities vests under D.C. administrative practices prior to incarceration, and those rights cannot be stripped by BOP officials acting under state law.

For the abovementioned reasons, the Federal Bureau of Prisons is obligated to attend this hearing, since it is obligated to provide special education to D.C. Code offenders in its facilities. The hearing is scheduled for **April 25, 2005 at 3:00 p.m.** at the Student Hearing Office, 825 North Capitol Street, N.E. 8th floor. I am attaching to this letter a copy of the Hearing Request.

If you have any questions or concerns regarding this matter, please contact me directly at (202) 274-7314 or via facsimile at (202) 274-5569. You may also contact my supervising attorney, Joseph Tulman, at (202) 274-7317.

Sincerely,

Cynthia Catlett
Law Student Advocate

347

**University of the District of Columbia**
**David A. Clarke School of Law**
**Legal Clinic**
4200 Connecticut Avenue, N.W.
Building 38, 2nd Floor
Washington, D.C. 20008

Telephone: (202) 274-5576
FAX: (202) 274-5569



## FASCIMILE TRANSMITTAL SHEET

DATE: April 11, 2005

TO: Marianne Cantwell

FAX NUMBER: 202-305-7344 0

FROM: Cynthia N. Catlett

UDC-DCSL FAX NO: 202-274-5569

RE: Maurice Pimble / Inmate # 35565-007

TOTAL PAGES: (Including this cover sheet) — 6

FAX OPERATOR:

FAX OPERATOR PHONE:

BRIEF MESSAGE: Please call me if there are any questions
regarding this matter at (202) 274-7314!
This fax is in re to Maurice Pimble inmate # 35565-007

ATTENTION!  Thank you.

348

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader



TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 04/11/2005 15:36
                                    NAME  : DACSL LEGAL CLINICS
                                    FAX   : 2022745569
                                    TEL   :
                                    SER.# : BROE2J354480
```

```
    DATE,TIME                       04/11  15:33
    FAX NO./NAME                    930573440
    DURATION                        00:03:02
    PAGE(S)                         06
    RESULT                          OK
    MODE                            FINE
                                    ECM
```

349

# MP16 Letter from Ms. Cantwell, 4/14/05



**U.S. Department of Justice**
**UNICOR**
Federal Bureau of Prisons

Washington, DC 20534
**Office of the Assistant Director**

| | |
|---|---|
| **facsimile** | Fax: (202) 305-7340 |
| **TRANSMITTAL** | Telephone: (202)305-3500 |

Date: _4/14/05_

To: _Cynthia Catlett_

Fax: _(202) 274-5569_

From: _Doug Goodring, Ast. Gen. Counsel_

Fax: _(202) 305-7340_

Pages: _12 + cover_

Comments:

Please case

Feel free to call me to discuss.
(202) 305-3870.
Doug



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_Washington, D.C. 20534_

April 14, 2005

Cynthia Catlett
Juvenile and Special Education Law Clinic
University of the District of Columbia
David A. Clarke School of Law
4200 Connecticut Avenue, N.W. 39/213
Washington, D.C. 20008

    RE:  Maurice Pimble, Register Number 25565-007

Dear Ms. Catlett:

    This is in response to your letter dated April 11, 2005, regarding the above-referenced individual, who is currently incarcerated in the custody of the Federal Bureau of Prisons (BOP).  You requested that the BOP appear at a hearing tentatively scheduled for April 25, 2005, in order to ensure implementation of Mr. Pimble's individualized education program (IEP) and his free, appropriate public education (FAPE) rights.

    As I have indicated through earlier correspondences with members of the Juvenile and Special Education Law Clinic, the IDEA, as reflected by its implementing regulations, is applicable only to states, and to local and private entities within the states.  34 C.F.R. § 300.2.  As I am sure you are aware, the BOP, as a component of the United States Department of Justice (DOJ), is a federal civilian agency.

    As was appropriately recognized by Hearing Office St. Clair in a similar case, Gibson v. DCPS, the IDEA is not applicable to the Federal Bureau of Prisons, and a DCPS hearing officer has no jurisdiction over the Federal Bureau of Prisons.  A copy of that opinion is attached, along with the hearing officer's Disposition of Petition for Reconsideration in the same case, in which the hearing officer again found that the BOP is not obligated to establish procedures to ensure the availability of FAPE. Therefore, while the BOP respects the authority of DCPS's student hearing officers to ensure the IDEA is properly administered, any further action sought by your office should be limited to Mr. Primble's relationship with DCPS and not the BOP.

352

Nonetheless, consistent with 18 U.S.C. § 3624(f), the BOP does strive to meet the unique learning needs of each mentally capable person committed to the custody of the United States Attorney General on a fair and non-discriminatory basis. To the extent BOP education and psychology staff identify any special education needs, Mr. Pimble will be provided appropriate educational programming as described in published BOP policies, such as Program Statement 5350.25, <u>Literacy Programs</u>, and Program Statement 5300.21, <u>Education, Training and Leisure Time Program Standards</u>. These policies, as well as other national policies, may be obtained from the BOP's web site, <u>www.bop.gov.</u>

I trust you will find this information useful. Should you have any additional questions, please feel free to contact me, or Assistant General Counsel Douglas S. Goldring, at (202) 305-3500.

Sincerely,

Marianne S. Cantwell
General Counsel
Industries, Education and
Vocational Training Division

cc: Jeffrey Phoenix, Student Hearing Officer Coordinator
    Student Hearing Office, DCPS
    825 North Capital Street, NE (8th Floor)
    Washington, DC 20002

353

01/25/2005 15:59 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☐002

# District of Columbia Public Schools

## Office of Management Services

### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE 8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

|  |  |
|---|---|
| In the Matter of | ) |
|  | ) |
| DOMINIC GIBSON, adult inmate, | ) |
| Date of Birth: ▓▓▓▓▓▓ 1979 | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| versus | ) |
|  | ) |
| The District of Columbia Public Schools, | ) |
| Home School: N.A., | ) |
| Attending: (incarcerated at the United States | ) |
| Penitentiary Atlanta, Atlanta, Ga.) | ) |
|  | ) |
| Respondent. | ) |
|  | ) |

**IMPARTIAL
DUE PROCESS HEARING**

**DECISION AND ORDER**

Request Date:  November 22, 2004
Hearing Date:  December 17, 2004

Held at:  825 North Capitol Street, NE
Eighth Floor
Washington, D.C. 20002

Counsel for the Adult Inmate:

University of the District of Columbia
David A. Clark School of Law
Juvenile and Special Education Law Clinic
Att: Joseph B. Tulman, Esq., Supervising Atty
4200 Connecticut Avenue, NW
Building 38   Second Floor
Washington, D.C. 20008

District of Columbia Public Schools:

Michael Levy, Esq., Attorney-Advisor
Office of the General Counsel, DCPS
825 North Capitol Street, NE 9th Floor
Washington, D.C. 20002

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i

# INDEX of NAMES for Dominic Gibson

**Hearing Date:** December 17, 2004

Appearing on behalf of DCPS:  None.

Appearing on behalf of the adult inmate:

1. Dominic Gibson **
2. John J. Irving, Law Student Advocate

**Gave testimony via telephone.

ii

## INTRODUCTION

On November 22, 2004, the Law Student Advocate filed the herein Request for Mediation/Hearing on behalf of the adult inmate complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the adult inmate then at United States Penitentiary Atlanta, Atlanta, Ga., Registration No 10437-007. Specifically, the Law Student Advocate complained of violation of the Hearing Officer's Decision (HOD) issued in this matter November 2, 1999, Inmate Document No 2, wherein the inmate was awarded three years of compensatory education; that, to date, DCPS had not delivered the compensatory education nor any special education services to the inmate. For relief, the Law Student Advocate requested an ORDER to DCPS to comply with the November 2, 1999 HOD, an award for additional compensatory for the period starting November 2, 1999 through ▓▓▓▓▓▓, 2001, the inmates 22nd birthday. As further relief, the Law Student Advocate requested an ORDER to United States Department of Justice, Federal Bureau of Prisons (FBOP) to deliver special educations services to the inmate, or in the alternative, an ORDER to the FBOP to transfer the inmate to a District of Columbia correctional facility whereat special education services could be delivered.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 3:00 P.M., Friday, December 17, 2004 at DCPS Headquarters, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations

## ISSUES:

1. Is the November 2, 1999 Compensatory Education Award enforceable?

2. Is the inmate entitled to compensatory education for the period between November 2, 1999 and his 22nd birthday, ▓▓▓▓▓▓▓ 2001?

3. Is IDEA applicable to the United States Department of Justice, Federal Bureau of Prisons?

4. Is the Federal Bureau of Prison obligated to deliver special education services to District of Columbia inmates in their custody under Pub. L. 105-33, Section 11201 et. seq?

1 of 5 pages

# SUMMARY OF THE EVIDENCE and FINDINGS OF FACT

By facsimile dated December 10, 2004, the adult inmate disclosed 22 documents.
At the hearing DCPS introduced a copy of the December 13, 2004 facsimile from the Industries, Education and Vocational Training Division, Federal Bureau of Prisons (FBOP) to DCPS; it was marked DCPS Document No 1.
The documents were placed into the record and are referenced/footnoted herein where relevant.

The Law Student Advocate represented that the inmate was identified as a child with a disability in the District of Columbia during January 1996[1] and that DCPS did not deliver any special education services to the inmate, neither under a current IEP nor the November 2, 1999 Compensatory Education Award[2]; that, with the exception of Sussex II State Prison, Waverly, Virginia, no incarcerating institution outside the District of Columbia allowed the delivery of any special education services to the inmate. The Law Student Advocate argued that when the inmate was transferred from the District of Columbia Department of Corrections to the FBOP, DCPS and/or the FBOP were obligated to provide a FAPE to the inmate under the National Capital Revitalization Act, Pub. L. 105-33, Section 11201, et seq; that 20 U.S.C. 1415(m)(1)(D) envisioned the obligation on the part of Federal correctional institution to provide a FAPE to eligible inmates.

The Attorney-Advisor argued that the three year Statute of Limitations in the District of Columbia prevented enforcement of the November 2, 1999 HOD, and that a Due Process Hearing under 34 CFR 300.507 did not have jurisdiction over the FBOP as 34 CFR 300.2 did not confer such jurisdiction.

Other than DCPS Document No 1, DCPS did not place evidence into the record.
The adult inmate testified via telephone from the United States Penitentiary Atlanta, Atlanta, Georgia, that he had not receive any special education services since being at the penitentiary; that from the penitentiary, he requested special education services from the FBOP and, to date, had received no response. The inmate testified that he enrolled in a class at the penitentiary but stopped attending because the material was too advanced for him. The inmate testified that pay-for work done at the penitentiary was related to educational achievement, and that if he could learn more, he would be paid more for his work at the penitentiary. The inmate testified that he very much wanted special education services.

In consideration of the testimony, documents and argument herein, the hearing officer found the following facts:

1. The inmate was eligible for a FAPE in the District of Columbia from January 1999 thru his transfer from the District of Columbia Department of Corrections to the Unites States Department of Justice, Federal Bureau of Prisons or his 22nd birthday, whichever date is the earliest.

2 of 5 pages

---

[1] At the behest of U. D. C. Law School, the latest IEP for the inmate was completed independently at the D.C. Jail on August 14, 2000.
[2] Records reflect that DCPS offered a residential placement to the student on February 5, 1996 but that the parent refused the placement.

357

2. DCPS made no credible effort to deliver a FAPE or compensatory education to the inmate after November 2, 1999.

# DISCUSSION and CONCLUSIONS OF LAW

## I

**DCPS will deliver to the inmate the compensatory education awarded in the November 2, 1999 Hearing Officer's Determination along with that awarded in DISCUSSION II, below, when the inmate's circumstances permit delivery.**

The record did not reveal an effort on the part of DCPS to comply with the November 2, 1999 Hearing Officer's Determination. In fact, DCPS made no effort to make a FAPE available to the inmate after that date. The November 2, 1999 award remains outstanding as DCPS continued to violate IDEA after that date. DCPS was obligated to make a FAPE available to the inmate until his 22nd birthday or the responsibility for his education was placed on the Federal Bureau of Prisons, whichever date is the earliest.

## II

**The inmate is awarded additional compensatory education.**

Mindful that compensatory education is an equitable remedy, the inmate is awarded compensatory education from November 2, 1999 to ~~December~~, 2001, his 22nd birthday, or date the responsibility for his education was placed on Federal Bureau of Prisons, whichever date is the earliest. This award is based on the fact that, from the record, DCPS made no effort to make a FAPE available to the inmate after November 2, 1999.

## III

**IDEA is not applicable to the United States Department of Justice, Federal Bureau of Prisons.**

34 CFR 300.300 requires DCPS to fully evaluate every child residing in the District of Columbia who is suspected of having a disability and, ages 3 through 21, including inmates under certain circumstances, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement.

In the Hearing Officer's Determination issued in this matter on November 2, 1999, Inmate Document No 2, it was established that the inmate was then entitled to a FAPE from the District of Columbia Public School (DCPS).

The instant hearing had jurisdiction over DCPS.

From what authority did the hearing have jurisdiction over the Federal Bureau of Prisons?

The Law Student Advocate advanced two theories upon which the hearing officer could have asserted jurisdiction over the Bureau of Prisons: Pub. L. 105-33, Section 11201 et seq., where the responsibility, ". . .for the custody, care, subsistence, education, treatment and training . . ." of all D.C. Code offenders was placed on the Federal Bureau of Prisons and, secondly, 20 U.S.C. 1415(m)(1)(D) where parental rights under IDEA are transferred to ". . . to children . . . incarcerated in . . . Federal . . . correctional institutions" upon majority.

The interpretation of Pub. L. 105-33 urged upon the hearing officer was that the Law placed upon the FBOP the exact responsibility for education that was upon the District of Columbia prior to its enactment: that whatever educational obligation DCPS had to the inmate, after Pub. L. 105-33, the FBOP then had. The hearing officer was not persuaded. The hearing officer understood the Law, not as a transfer of anything; rather it placed responsibility, all of it and as the FBOP considered appropriate, for the education, custody, care, subsistence, treatment and training of D.C. Code offenders on the FBOP. Under the Law, the FBOP decides what, if any, education is appropriate for the inmate.

At 34 CFR 300.2(b)(iv), the applicability of Title 34, CFR, Part 300, to "State and local juvenile and adult correctional facilities," is clearly defined; federal correctional facilities are not mentioned. There is no basis for asserting jurisdiction over the FBOP in 34 CFR 300.2.

As pointed out by the Law Student Advocate, an inference from 20 U.S.C. 1415(m) (1)(D) could be made that the Congress intended IDEA to apply to the FBOP: why else would a Federal Law transferring parental rights under IDEA to inmates incarcerated in Federal institutions be enacted? A question not fully explored at the hearing was what, if any, were parental rights under IDEA regarding a minor in a Federal correctional institution/facility. Still, as 34 CFR 300.2 sets out the applicability of Part 300 and Federal correctional institutions/ facilities are not mentioned therein, the conclusion that Part 300 is not applicable to the FBOP was forced upon the hearing officer.

Lastly under this DISCUSSION, this hearing convened under 34 CFR 300.507 and did not have jurisdiction over the United States Department of Justice, Federal Bureau of Prisons.

## IV

### Issue IV was mooted.

IV.     Without jurisdiction over the Federal Bureau of Prisons, the hearing officer mooted Issue

In consideration of the foregoing, the hearing officer made the following

## ORDER

1. When the circumstances of the inmate permit delivery of compensatory education, DCPS shall convene an MDT meeting during which the form

4 of 5 pages

and delivery of compensatory education set out in DISCUSSIONS I and II, above, will be discussed and determined. The November 2, 1999 HOD is incorporated herein.

2. The MDT will first determined if the inmate is then in need of and will benefit from the said compensatory education. In regard to this determination, the MDT is authorized to complete evaluation of the inmate.

3. In the event the MDT determines that the inmate/ former inmate either does not need the compensatory or will not benefit from it, the MDT is authorized to CANCEL this award.

4. For disputes under this ORDER, either party may request a hearing.

This is **THE FINAL ADMINISTRATIVE DECISION.** Appeal can be made to a court of competent jurisdiction within thirty (30) days of the issue date of this decision.

H. St. Clair, Esq., Hearing Officer        Date: _January 14, 2005_

Issued: _1-14-05_
Student Hearing Office, DCPS

5 of 5 pages

360

03/17/2005 14:11 FAX 202 442 5098        OFF.OF GENERAL COUNSEL                     ☑002/006

# District of Columbia Public Schools

## Office of Management Services
### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | |
|---|---|
| In the Matter of　　　　　　　　　　　　) | **IMPARTIAL** |
| 　　　　　　　　　　　　　　　　　　　　) | **DUE PROCESS HEARING** |
| DOMINIC GIBSON, adult inmate　　　　　) | |
| Date of Birth: ██████████, 1979　　　) | **DISPOSITION of PETITION** |
| 　　　　　　　　　　　　　　　　　　　　) | **for RECONSIDERATION** |
| 　　　　　　　Petitioner　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　versus　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| The District of Columbia Public Schools,　) | |
| Home School: N.A.,　　　　　　　　　　) | |
| Attending: (incarcerated at the United States ) | |
| 　　Penitentiary Atlanta, Atlanta, Ga.)　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Respondent.　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |

Counsel for the Adult Inmate:

　　　　University of the District of Columbia
　　　　David A. Clark School of Law
　　　　Juvenile and Special Education Law Clinic
　　　　Att: Joseph B. Tulman, Esq., Supervising Atty
　　　　4200 Connecticut Avenue, NW
　　　　Building 38　Second Floor
　　　　Washington, D.C. 20008

District of Columbia Public Schools:

　　　　Michael Levy, Esq., Attorney-Advisor
　　　　**Office of the General Counsel, DCPS**
　　　　825 North Capitol Street, NE  9th Floor
　　　　Washington, D.C. 20002

# JURISDICTION

The proceeding was authorized by Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations

# STATEMENT of the CASE

A Request for Mediation/Hearing on behalf of the adult inmate at the United States Penitentiary Atlanta, Atlanta, Ga., Registration No 10437-007 was filed on November 22, 2004. A hearing was held on Friday, December 17, 2004, at DCPS Headquarters, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. A DECISION & ORDER unfavorable to the inmate, in part, and favorable, in part, was issued on January 14, 2005. On February 15, 2005, the inmate filed the herein Petition for Reconsideration.

The Petition argued that the DECISION & ORDER issued on January 14, 2005 contained two errors:

    I. The Hearing Officer Failed to Recognize the Federal Bureau of Prisons' Responsibility to Provide a Free Appropriate Public Education to Dominic Gibson Pursuant to the National Capital Revitalization and Self Government Act of 1997 and 20 U.S.C. 1415(m)(1)(D), and

    II. Hearing Officer St. Clair Erred in Delegating to the Multi-Disciplinary Team (MDT) the Authority to Terminate Dominic's Compensatory Education Award

Argument I did not advance an argument not made at the December 17, 2004 hearing. Still, mention of 20 U.S.C. 1415(a) seemed indicated. Speaking to the obligation of State education agencies, State agencies and local education agencies to establish procedures to ensure the availability of FAPE, the section makes clear that those agencies receiving assistance under IDEA are obliged to establish the procedures and to conduct hearings under 20 U.S.C. 1415(f) and then with respect to and within such agencies. The United States Department of Justice, Federal Bureau of Prisons, is not such an agency. DISCUSSIONS and CONCLUSIONS of LAW III & IV in the DECISION & ORDER issued in this matter January 14, 2005 are REITERATED.

In response to Argument II, it is noted that compensatory education is an equitable remedy not to be compared to compensatory damages; it is appropriately awarded and delivered to the student who needs and can benefit from the services. Because of the uncertainty as to

availability of the inmate to receive the compensatory education award, it was appropriate revisit the appropriateness of the compensatory services on the occasion of the inmate's availability to receive the services. Paragraph 4 of the ORDER provided for resort to Due Process by either party in the event of a dispute under the ORDER, whether concerning the continued appropriateness of the compensatory education award or some other dispute. See *Mathew Reid, et. el. vs. District of Columbia* Civil Action 02cv1611 (RBW), 2004.

In consideration of the foregoing, the herein Petition for Reconsideration is DENIED.

This is **THE FINAL ADMINISTRATIVE DECISION.** Appeal can be made to a court of competent jurisdiction within thirty (30) days of the issue date of this decision.

_____    Date: MARCH 11, 2005
H. St. Clair, Esq., Hearing Officer

Issued: _3-11-05_
Student Hearing Office, DCPS

3 of 3 pages

# MP17 Letter to Harley Lappin,
## Director of BOP, 3/3/07

UNIVERSITY OF THE DISTRICT OF
COLUMBIA

David A. Clarke School of Law
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W.
Washington, D.C.  20008
(202) 274-7314
(202) 274-5583 (fax)
http://www.law.udc.edu

March 03, 2007

Harley G. Lappin,
Director of the Federal Bureau of Prisons

In re: Maurice Pimble, Inmate Number 35565-007

Dear Director Lappin:

Under the supervision of Professor of Law Joe Tulman, I represent Maurice Pimble
in regards to his special education matters.  Mr. Pimble was identified as a student
with learning disabilities on January, 2001 (Please see attached document). Mr.
Pimble has enforced his right to special education rights on several occasions since
2004.  However, the BOP has failed to provide him with special education services.
As a result of the BOP's failure to implement the IDEIA in regards to our client,
the BOP has failed to render a free appropriate education to Mr. Pimble as
required by federal statutory law.

A child who reaches the age of majority and is incarcerated in a local, state, or

federal correctional facility has the right to enforce their special educational rights under the Individuals with Disabilities Education Improvement Act (IDEIA) (20 U.S.C. 1415(m)(1)(D)).  Those rights include but are not limited to the following:

> 1) A person who has been identified as an individual with a learning disability must be evaluated in accordance with the provisions specified in the Rules and Regulations of the IDEIA (34 C.F.R. § 300.122);

> 2) Each public agency must ensure that the individual with a learning disability has his IEP reviewed periodically but not less than annually in order to determine whether the goals for the child are being achieved.  In addition the IEP must be appropriately revised in order to address any lack of progress, the results of reevaluations any information about the individual, the child's anticipated needs, or other matters (34 C.F.R.§ 300.324 (b));

> 3) The individual has the right to obtain  an individual educational evaluation[1] conducted by a private qualified examiner.   If the public agency fails to provide an individual evaluation, the examiner is to be paid in full by the public agency or the public agency must ensure that the evaluation is otherwise provided at no cost to the individual. An individual who disagrees with the evaluations conducted by the public entity has the right to obtain an independent educational evaluation conducted by a private qualified examiner.  The examiner is to be paid in full by the public agency or the public agency must ensure that the evaluation is otherwise provided at no cost to the individual.

As a result of the BOP's failure to adhere to the IDEIA, Mr. Pimble has received no special education services and his IEP and evaluations are out of date.

In accordance with the law, we are requesting that the Federal Bureau of Prisons implement the IDEIA as required by the United States Congress.  In addition, we also request that the BOP allow for Mr. Pimble's IEP to be update, pay for the

---

[1] Such evaluations include but are not limited to Clincal-Educational Evaluation, a Psychological Evaluations, a Speech and Language Evaluation, and a Neuro-Psychological Evaluation

necessary evaluation of Mr. Pimble and permit our evaluator to be allowed to evaluate Mr. Pimble in person at your facility at a future date to be agreed upon by all parties.

If you have any questions or concerns you may reach Professor Tulman at (202) 274-7317 or myself at (703) 717-8667.

Sincerely,

Colleen Archer
Law Student Advocate

367

MP18 Letter to Michael Snipes, Director of Department of Special Education for Incarcerated Youth, 2/28/07

# UNIVERSITY OF THE DISTRICT OF COLUMBIA

David A. Clarke School of Law

Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W.
Washington, D.C.  20008
(202) 274-7314
(202) 274-5583 (fax)
http://www.law.udc.edu

February 28, 2007

Mr. Michael Snipes,
Director
Department of Special Education for Incarcerated Youth
District of Columbia Public Schools
825 North Capitol St., N.E.
Washington, DC  20001

In re: Maurice Pimble, DOB: ███/85

February 21, 2003

Dear Mr. Snipes:

My name is Colleen Archer.  Under the supervision of Professor of Law Joe Tulman, I represent Mr. Maurice Pimble with regard to his special education rights.

Pursuant to 34 C.F.R. § 300.324(a)(6)(b)(i) and (ii), the District of Columbia Public School System must ensure that, subject to paragraphs (b)(2) and (b)(3) of the same section, the IEP Team reviews Maurice Pimble's IEP periodically, but not less than annually, and revises the IEP appropriately.  In accordance with this provision of the law, I am requesting an expedited review and revision of Mr. Pimble's IEP.

We have also made this request previously on February 15, 2005 and January 25, 2004. (Please see attachments.)

Please respond in writing to the address above.  If you have any questions or concerns, you may reach Professor Tulman at (202) 274-7317 or me at (703) 717-8667.

Sincerely,

Colleen Archer
Law Student Advocate
Representing Maurice Pimble

MP19  Letter to George Synder,
      Warden of Rivers Correctional
      Institution, 2/28/07

UNIVERSITY OF THE DISTRICT OF
COLUMBIA

David A. Clarke School of Law
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W.
Washington, D.C.  20008
(202) 274-7314
(202) 274-5583 (fax)
http://www.law.udc.edu

February 28, 2008

George Snyder,
Warden of Rivers Correctional Institution
Attention: Deborah Gatlin,
Secretary to the Warden
145 Parker's Fishery Road
Winton, NC 27986

Dear Warden Snyder:

My name is Colleen Archer.  Under the supervision of Professor
of Law Joe Tulman, I represent Mr. Maurice Pimble with regard
to his special education rights.

Pursuant to 20 U.S.C §1415(m)(1)(D) and  34 C.F.R. §
300.324(a)(6)(b)(i) and (ii), the Rivers Correctional Institute,
because it is a part of the Federal Bureau of Prisons, must ensure

372

that, subject to paragraphs (b)(2) and (b)(3) of the same section, the IEP Team reviews Maurice Pimble's IEP periodically, but not less than annually, and revises the IEP appropriately. In accordance with this provision of the law, I am requesting an expedited review and revision of Mr. Pimble's IEP
We previously requested that you conduct an IEP of Mr. Pimble on April 12, 2005 (Please see attachment.).

As Mr. Pimble's representatives we have the right to be present at the IEP meeting. If for some reason, we are unable to be present, we have the right to be present via telephone. Under the law, the IEP meeting must be scheduled at a mutually acceptable time. Mondays, Wednesday afternoons, and Fridays are usually good days for us.

Please respond in writing to the address above.
If you have any questions or concerns, you may reach Professor Tulman at (202) 274-7317 or me at (703) 717-8667.

Sincerely,

Colleen Archer
Law Student Advocate

373

MP20 Letter to George Synder, Warden of Rivers Correctional Institution, 2/21/07.

U<small>NIVERSITY OF THE</small> D<small>ISTRICT OF</small>
C<small>OLUMBIA</small>

David A. Clarke School of Law
Juvenile and Special Education Law Clinic
4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
(202) 274-7314
(202) 274-5583 (fax)
http://www.law.udc.edu

February 21, 2007

George Snyder
Warden of Rivers Correctional Institution
Attention Deborah Gatlin,
Secretary to the Warden
145 Fisher's Perry Rd.
Winton, NC 27986

In re: Maurice Pimble, Inmate Number 35565-007

Dear Warden Snyder:

As you are now aware form my previous letters sent to you, Mr. Pimble has
enforced his right to receive special education. A child who reaches the age of
majority and is incarcerated in a local, state, or federal correctional facility has the
right to enforce their special educational rights under the Individuals with
Disabilities Education Improvement Act (IDEIA) (20 U.S.C. 1415(m)(1)(D)).
Those rights include but are not limited to the following:

      1) A person who has been identified as an individual with a learning

375

disability must be evaluated in accordance with the provisions specified in the Rules and Regulations of the IDEIA (34 C.F.R. § 300.122);

2) Each public agency must ensure that the individual with a learning disability has his IEP reviewed periodically but not less than annually in order to determine whether the goals for the child are being achieved. In addition the IEP must be appropriately revised in order to address any lack of progress, the results of reevaluations any information about the individual, the child's anticipated needs, or other matters (34 C.F.R.§ 300.324 (b));

3) The individual has the right to obtain an individual educational evaluation[1] conducted by a private qualified examiner. The examiner is to be paid in full by the public agency or the public agency must ensure that the evaluation is otherwise provided at no cost to the individual.

In accordance with the law, we are requesting that Rivers Correctional Institution pay for the necessary neuro-psychological evaluation of Mr. Pimble and permit our evaluator to be allowed to evaluate Mr. Pimble in person at your facility at a future date to be agreed upon by all parties.

If you have any questions or concerns you may reach Professor Tulman at (202) 274-7317 or Ms. Archer at (703) 717-8667.

Sincerely,

Colleen Archer
Law Student Advocate

---

[1] Such evaluations include but are not limited to Clincal-Educational Evaluation, a Psychological Evaluations, a Speech and Language Evaluation, and a Neuro-Psychological Evaluation

# MP21  Most Recent IEP, 10/1/04

2nd
Refer



# D.C. PUBLIC SCHOOLS
## OFFICE OF SPECIAL EDUCATION
### MAIN NUMBER (202) 442-4800
### FAX NUMBER (202) 442-5517, 442-5518

## FACSIMILE TRANSMITTAL SHEET

| | | |
|---|---|---|
| TO: Cynthia Cattell | FROM: Lisa Russell | |
| COMPANY: UDC Law Clinic | DATE: 3/25/05 | |
| FAX NUMBER: (202) 274-5583 | TOTAL NO. OF PAGES INCLUDING COVER: | |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: | |
| RE: Maurei Pmbi | YOUR REFERENCE NUMBER: | |

☐ URGENT    ☒ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

10/04    IEP developed @ DC Jail

825 NORTH CAPITOL STREET N.E., SIXTH FLOOR

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Pimble**    First **Maurice**    MI

Student ID **772952** Soc. Sec. No. ~~_____~~    Age: **13**    Grade **9**

Gender ☒M ☐F    Date of Birth ~~____~~ /85    Ethnic Group **African American**

Address **1845 Ontario Pl. NW**
House No.    Street Name    Quadrant    Apartment #

**Washington DC    20003**
City    State    Zip Code

☐ Non-attending

Attending School _____    Home School _____

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS

Parent **Alfred Hobdy**

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home _____    Work _____

## II. CURRENT INFORMATION

Date of IEP Meeting: **10/1/04**

Date of Last IEP Meeting: **1/30/01**

Date of Most Recent Eligibility Decision: **1/30/01**

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: **IA**

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION | |
|---|---|---|---|
| ESY | | TRANSITION | ☒ |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | N. Lang | Oral ____ |
| Parent | English | English | English | N. Lang | Rdg./Written ____ |
| Home | English | English | English | N. Lang | Instrument ____ |
| | | | | | Date: ____ |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min  D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION #  wks./mos. | |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | | ✓ | | 6 hr | week | Spec. Ed. Teacher | 10/4/04 | 1.0 | mos |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 6 | | Hours Per Week | | | | | |

## V. Disability(ies)    **Learning Disabled**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

*Maureen Kemp*
*Maurice Pimble*
*Lia Durande*
*Jophta Thomas*

*Maure Kemp*
*unavailable*
*Lia Durande*
*Sophia Thorne*

*I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.*

Parent/Guardian Signature _____    Date _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

379

| Student Name | Maurice Pimble | | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 7029-24 | DOB ___85 | Managing School | Page 2 of 4 |
| | | | Attending School   DOC/DC Jail | |

## VII. Present Educational Performance Levels in Areas Affected by the Disability
Additional Comments: ☐

**Academic Areas: (Evaluator)**   Special Educator

Math Strengths:
Student is able to add and subtract with regrouping

Impact of disability on educational performance in general education curriculum:
Student disability impact his ability to perform Grade level work

Reading Strengths:
Student is able to read some sight words

Impact of disability on educational performance in general education curriculum:
Student disability impacts on academic success

**Score(s) When Available**
Math Cal.   3.0
Math Rea.
See goal page:
Date:
Rdg. Com.
Rdg. Basic   2.0
Written Ex.
See goal page:
Date:   2-5-01

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp.Lang.
Rec.Lang.
Artic.
Voice
Fluency
Exp. Voc.
Rec. Voc.
See goal page:
Date:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**

See goal page:
Date:

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

380

| Student Name | Maurice Pimble | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 7729534 | DOB [ ]85 | Attending School DOC/DC Acad | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: |
|---|---|---|

Area addressed by goal: _Academics Mathematics_

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will be able to demonstrate a years growth in Mathematics with 80 % accuracy

Provider(s): Special Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to mutiply whole numbers with 80 % accuracy | | monthly |
| Maurice will be able to divide whole number with 80 % accuracy | | monthly |
| Maurice will be able to solve word problems involving multiplication and division with 80 % accuracy. | | monthly |
| Maurice will be able to add and subtract fractions and decimals with 80 % accuracy. | | monthly |
| Maurice will be able to multiply and divide fractions and decimals with 80 % accuracy | | monthly |
| Maurice will be able to complete percentage with 80 % accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

381

| Student Name | Maurice Pimble | | Managing School | | DCP8 - IEP |
| Student ID Number | | DOB | Attending School | Doc / Oclail | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**     Additional Comments: ☐

Area addressed by goal: *Academics - Written Expressions*     Goal Number: ☐

**ANNUAL GOAL:** (including mastery criteria)

Maurice will be able to demonstrate one years growth in written expression with 80% accuracy

Provider(s): Special Education

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to use correct Capitalization with 80% accuracy | | Monthly |
| Maurice will be able to use correct punctuation with 80% accuracy | | Monthly |
| Maurice will be able to draft an essay with 80% accuracy | | Monthly |
| Maurice will be able to use a dictionary with 80% accuracy | | Monthly |
| Maurice will be able to use the internet to conduct research with 80% accuracy | | Monthly |
| Maurice will identify complete sentences with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☑ Portfolio   ☐ Log   ☐ Chart   ☑ Test   ☑ Documented Observation   ☐ Report   ☐ Other _____

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 3 of 4     382

| Student Name | Maurice Trimble | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 2729524 | DOB ▓▓85 | Attending School | DOC/DC Jail | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: ☐ |
|---|---|---|---|

Area addressed by goal: _Academic – Reading_

**ANNUAL GOAL:** (including mastery criteria.)

Maurice will demonstrate a years growth in Reading Comprehension and vocabulary skills with 80% Accuracy

Provider(s): _Special Educator_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will be able to identify analogies with 80% accuracy | | monthly |
| Maurice will be able to draw inferences from materials read with 80% accuracy. | | monthly |
| Maurice will able to identify supporting details with 80% accuracy. | | monthly |
| Maurice will be able to distinguish facts from opinion with 80% accuracy | | monthly |
| Maurice will be able to identify the main idea of a reading selection with 80% accuracy | | monthly |
| Maurice will be able to use context clues to define unfamiliar words with 80% accuracy | | monthly |

**EVALUATION PROCEDURE(S)**

☑ Portfolio ☐ Log ☐ Chart ☐ Test ☐ Documented Observation ☐ Report ☐ Other

| Student Name | Maurice Pimble | | | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 0229524 | DOB | | Managing School | Page 3 of 4 |
| | | | | Attending School DOC/DC Jail | |

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐      Goal Number: ☐

Area addressed by goal: _____

**ANNUAL GOAL: (including mastery criteria.)**

Maurice will reduce his inability to refrain from impulsive behaviors

Provider(s): Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maurice will process in counseling sessions situations when he had difficulty impulsive behavior | | Weekly |
| Maurice will identify situations in which he successfully refrained from engaging in impulsive behavior | | Weekly |
| Maurice use existing skills coupled with newly learned skills from counseling sessions to refrain from impulsive behaviors | | Weekly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☑Portfolio ☐Log ☐Chart ☐Test ☑Documented Observation ☐Report ☐Other   Information obtained in counseling sessions

MP22   Report Card from Roosevelt
       High School, 00/01 through
       01/02

Student History                                                    10:02

Student ID: 7729524        PIMBLE, MAURICE                          M-09-I-01/02-

| Grd | Year | Crse Abbr | Sec | Text | Grade Lvl | In Cnt | Cum GPA | Cred | Term 1 Mrk | Credit | Term 2 Mrk | Credit | Term 3 Mrk | Credit | Term 4 Mrk | Credit | Exm Mrk | Avg Mrk | Final Mrk | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . 08 | 00/01 | I21 | 02 | MECH DRAW I | 07 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | | 0.000 | | | | 0.00 |
| . 08 | 00/01 | M01 | 06 | FUND. OF MATH S | 07 | Y | Y | Y | B | 0.000 | B | 0.000 | | 0.000 | | 0.000 | | | | 0.00 |
| . 08 | 00/01 | M15 | 04 | LIFE MGMT | 10 | Y | Y | Y | | 0.000 | | 0.000 | D | 0.000 | | 0.000 | | | | 0.00 |
| . 08 | 00/01 | M15 | 05 | LIFE MGMT | 10 | Y | Y | Y | B | 0.000 | B | 0.000 | | 0.000 | | 0.000 | | | | 0.000 |
| . 08 | 00/01 | M15 | 06 | LIFE MGMT | 10 | Y | Y | Y | B | 0.000 | B | 0.000 | | 0.000 | | 0.000 | | | | 0.000 |
| . 08 | 00/01 | N02 | 02 | READING COMPREN | 09 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | | 0.000 | | | | 0.000 |
| . 08 | 00/01 | S01 | 04 | LIFE SCIENCE | 07 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | | 0.000 | | | | 0.000 |
| . 09 | 01/02 | H21 | 21 | DC HIS&GOV | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | | 0.000 | | 0.000 | | F | | 0.000 |
| . 09 | 01/02 | H23 | 21 | WORLD GEOGRAPHY | 09 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | * | 0.000 | | | | 0.000 |
| . 09 | 01/02 | M14 | 21 | MATH FOUND PT I | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | | 0.000 | | 0.000 | | F | | 0.000 |
| . 09 | 01/02 | N11 | 21 | DEVEL.READ I | 09 | Y | Y | Y | | 0.000 | | 0.000 | F | 0.000 | * | 0.000 | | | | 0.000 |
| . 09 | 01/02 | S21 | 21 | BIOLOGY | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | F | 0.000 | * | 0.000 | | | | 0.000 |
| . 09 | 01/02 | V02 | 21 | COMP APPL I | 09 | Y | Y | Y | F | 0.000 | F | 0.000 | | 0.000 | | 0.000 | | F | | 0.00 |

E SPECIAL KEYS TO SCROLL OR EXIT

1(023,035)

386

MP23  Student Master Record from
Johnson Junior High School,
09/05/00 through 09/17/01

Document Name: untitled



```
SIS - STUD              JOHNSON JUNIOR HIGH SCHOOL           Dec 08, 20
[DISPLAY]                  Student Master Record             02:05 PM

 Student ID:          7729524              Status:              I
                                           Grade/School Yr:     08 00/01
 Last Name:           PIMBLE               Homeroom:            8312 New:
 Given Names:         MAURICE A            Program:
 Called Name:                              Locker/Comb:
 Address Line 1:      D.C. VILLIAGE LANE   Previous School:        0
 Address Line 2:      #2A                  Admission Date:      285   File
 City:                WASHINGTON           Admission Code:      09/05/00
 State:               DC                   Withdrawal Date:     A5 Calendr
 Zip Code:            20032                Withdrawal Code:
 Tel No/Area/Code:    561-8090  (202)      Transf To School:      459  File
 Parent/Guardian:     LEWIS, TWANDYA       Date Transferred:    09/17/01
 P/G Relationship:    1  MOTHER            Graduation Rule:
 Sex/Ethnic Code:     M  B  BLACK          Graduation Date:
 Birthdate:           ████/85              Schedule Changed:    06/13/01
 Verified With:                                                 1 2 3 4 5
 Soc Sec No:          ██████████
 Counselor Name:      KEELING              Data Flags:
 Scheduling Priority: 1                    Report Flags:        N N N N N
                                           Res/Sped/Att:            0 B
 Press 'RETURN' To Accept This Student Or 'NEXT' To Go On
 Message:
```

388

MP24 Student Master Record for Johnson Junior High School, 09/05/00 through 09/17/01

# MP25  Report Card from Johnson Junior High School, 02/05/01




# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## REPORT FORM
### 02/05/01
*JOHNSON JUNIOR HIGH SCHOOL*
REPORT TO PARENTS ON STUDENT PROGRESS

STUDENT ID: 7729524   STUDENT NAME: PIMBLE, MAURICE A
GRADE:    07        HOMEROOM:   7423

189

| COURSE SEC TEACHER | SUBJECT COMMENTS | ADV 1 | ADV 2 | ADV 3 | ADV 4 | FINAL | EARN CRED | CLASS ABSENC ADV YT |
|---|---|---|---|---|---|---|---|---|
| B17    05 CROSSON | EXPLOR KEYBOARD | P | P | | | *P* | | 0 |
| C35    05 PATTERSON | LIFE MGMT EXCELLENT INITIATIVE EXCELLENT BEHAVIOR | B | B | | | | | 11  12 |
| C35    06 PATTERSON | LIFE MGMT GOOD PARTICIPATION | B | B | | | | | 11  12 |
| E01S   06 CARTER | ENGLISH 7 EXCELLENT BEHAVIOR GOOD PARTICIPATION | B | B | | | | | 11  12 |
| H11S   05 PATTERSON | W. HEM. GEO. SP EXCELLENT BEHAVIOR GOOD PARTICIPATION | B | B | | | | | 11  14 |
| M01S   06 PATTERSON | FUND. OF MATH S GOOD PARTICIPATION EXCELLENT BEHAVIOR | B | B | | | | | 11  12 |

HOMEROOM ABSENCES: 14.0   EXCUSED: 0.0  UNEXCUSED: 14.0   TARDY: 11

MAURICE A PIMBLE
2343 PITTS PLACE S.E.
WASHINGTON,, DC 20020

391

# MP26 Student Master Record form
# Raymond Elementary School
# 03/04/98 through 10/13/99



Document Name: untitled

```
SIS - STUD            RAYMOND ELEMENTARY SCHOOL           Dec 08,
[DISPLAY]                Student Master Record             04:21 PM

Student ID:         7729524              Status:              I
                                        Grade/School Yr:  05 99/00
Last Name:          PIMBLE              Homeroom:          New
Given Names:        MAURICE A           Program:
Called Name:                            Locker/Comb:         0
Address Line 1:     1469 MERIDIAN PLSCE, NW   Previous School:  302  Fi
Address Line 2:                         Admission Date:    03/04/98
City:               WASHINGTON          Admission Code:    A3 Calen
State:              DC                   Withdrawal Date:   10/13/99
Zip Code:           20010               Withdrawal Code:   W1
Tel No/Area/Code:   635-0130  (202)     Transf To Schcol:    285  Fi
Parent/Guardian:    LEWIS, TWANDWA      Date Transferred:  11/03/99
P/G Relationship:   1  MOTHER           Graduation Rule:
Sex/Ethnic Code:    M  B  BLACK         Graduation Date:
Birthdate:          ████/85             Schedule Changed:
Verified With:                                            1 2 3 4
Soc Sec No:         ████████████        Data Flags:
Counselor Name:     BERNARD GRAYSON     Report Flags:      N N N N
Scheduling Priority:                    Res/Sped/Att:          0
Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On
Message:
```

Date: 12/8/ 4 Time: 04:05:50 PM

# MP27 Fifth Grade Report Card, 1998-1999

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
# 5TH GRADE REPORT CARD  1998-99

(Page one of three)

Student Name: _Maurice Pimble_

ID#: _719524_

School: _Raymond_

Teacher: _Morgan_

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **READING** | 2 | 2 | 2 | 1 |
| Uses word attack skills & vocabulary strategies | — | ✓ | ✓ | ✓ |
| Learns and uses new vocabulary | ✓ | ✓ | ✓ | ✓ |
| Reads and comprehends 25 books | ✓ | ✓ | ✓ | ✓ |
| Recognizes literary devices (e.g. simile, exaggeration) | ✓ | ✓ | ✓ | ✓ |
| Compares/contrasts literary works | NI | NI | ✓ | — |
| Locates and uses information | NI | ✓ | ✓ | — |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **WRITING** | 2 | 2 | 2 | 1 |
| Writes set of instructions | NI | NI | NI | — |
| Writes detailed narrative | ✓ | ✓ | ✓ | ✓ |
| Writes research report | NI | ✓ | ✓ | — |
| Writes response to literature | NI | NI | ✓ | ✓ |
| Uses correct grammar, capitalization & spelling | ✓ | ✓ | ✓ | ✓ |
| Uses writing process | ✓ | ✓ | ✓ | ✓ |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **LISTENING SKILLS** | 2 | 1 | 2 | 1 |
| Exhibits appropriate audience behavior | ✓ | ✓ | ✓ | ✓ |
| Comprehends oral presentations | ✓ | ✓ | ✓ | — |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **SPEAKING SKILLS** | 2 | 1 | 2 | 2 |
| Gives oral directions | NI | NI | NI | ✓ |
| Participates in group discussions | ✓ | ✓ | ✓ | ✓ |
| Makes oral presentations | ✓ | ✓ | + | + |

| INSTRUCTIONAL LEVEL | above level | on level | below level |
|---|---|---|---|
| **Reading** | | | |
| 1st Advisory | — | ✓ | — |
| 2nd Advisory | — | ✓ | — |
| 3rd Advisory | — | ✓ | — |
| 4th Advisory | — | — | ✓ |
| **Mathematics** | | | |
| 1st Advisory | — | ✓ | — |
| 2nd Advisory | — | ✓ | — |
| 3rd Advisory | — | ✓ | — |
| 4th Advisory | — | — | ✓ |

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **MATHEMATICS** | 2 | 2 | 2 | 1 |
| Computes using whole numbers | ✓ | ✓ | ✓ | ✓ |
| Applies place value concepts | ✓ | ✓ | ✓ | ✓ |
| Describes & compares quantities | + | ✓ | ✓ | ✓ |
| Computes using fractions | NI | NI | ✓ | — |
| Computes using decimals | NI | NI | ✓ | ✓ |
| Identifies geometric figures | ✓ | ✓ | ✓ | ✓ |
| Estimates/measures objects | NI | ✓ | ✓ | ✓ |
| Collects, organizes & displays data on charts, graphs and tables | NI | + | + | + |
| Models & solves problems | NI | ✓ | ✓ | ✓ |

## Reporting Key:

**For overall grade in subject area:**

**4 = Exceeds the standard (Advanced)**
Student takes initiative to exceed the standard; consistently produces excellent work, applying skills/concepts correctly; shows creativity and insight.

**3 = Meets the standard (Proficient)**
Student produces work that meets the standard; frequently produces very good work of high quality; applies skills/concepts correctly.

**2 = Approaches the standard (Basic)**
Student shows a basic working knowledge of skills/concepts; produces satisfactory work; usually applies skills/concepts correctly.

**1 = Does not meet the standard (Below Basic)**
Student does not show basic working knowledge of skills/concepts; seldom produces work of satisfactory quality.

**For skills/expectations within subject area:**

| | |
|---|---|
| + = Excellent | – = Unsatisfactory |
| ✓ = Satisfactory | NI = Not Introduced |

395

# MP28 Fifth Grade Report Card, 1999



**SECOND SEMESTER 1999 – 2000**
**Part A**

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 5TH GRADE REPORT CARD

Student Name: _Pimble Maurice_

**Grade Placement September, 2000** _____

| Advisory | 3rd | 4th |
|---|---|---|
| **READING** | 2 | — |
| Uses word attack skills & vocabulary strategies | ✓ | — |
| Learns and uses new vocabulary | ✓ | — |
| Reads and comprehends 25 books | — | — |
| Recognizes literary devices (e.g. simile, exaggeration) | ✓ | — |
| Compares/contrasts literary works | ✓ | — |
| Locates and uses information | ✓ | — |
| **WRITING** | 2 | — |
| Writes set of instructions | — | — |
| Writes detailed narrative | ✓ | — |
| Writes research report | ✓ | — |
| Writes response to literature | ✓ | — |
| Uses correct grammar, capitalization & spelling | ✓ | — |
| Uses writing process | ✓ | — |
| **LISTENING SKILLS** | 2 | — |
| Exhibits appropriate audience behavior | ✓ | — |
| Comprehends oral presentations | — | — |
| **SPEAKING SKILLS** | 2 | — |
| Gives oral directions | — | — |
| Participates in group discussions | ✓ | — |

| INSTRUCTIONAL LEVEL | above level | on level | below level |
|---|---|---|---|
| **Reading** | | | |
| 3rd Advisory | — | ✓ | — |
| 4th Advisory | — | — | — |
| **Mathematics** | | | |
| 1st A | | | |
| 2nd Adv | | | |
| 3rd Advisory | — | ✓ | — |
| 4th Advisory | — | — | — |

| Advisory | 3rd | 4th |
|---|---|---|
| **MATHEMATICS** | 2 | — |
| Computes using whole numbers | ✓ | — |
| Applies place value concepts | ✓ | — |
| Describes & compares quantities | ✓ | — |
| Computes using fractions | ✓ | — |
| Computes using decimals | ✓ | — |
| Identifies geometric figures | ✓ | — |
| Estimates/measures objects | ✓ | — |
| Collects, organizes & displays data on charts, graphs and tables | — | — |
| Models & solves problems | ✓ | — |

**Reporting Key:**
For overall grade in subject area:
4 = Exceeds the standard (Advanced)
Student takes initiative to exceed the standard; consistently produces excellent work, applying skills/concepts correctly; shows creativity and insight.
3 = Meets the standard (Proficient)
Student produces work that meets the standard; frequently produces very good work of high quality; applies skills/concepts correctly.
2 = Approaches the standard (Basic)
Student shows a basic working knowledge of skills/concepts; produces satisfactory work; usually applies skills/concepts correctly.
1 = Does not meet the standard (Below Basic)
Student does not show basic working knowledge of skills/concepts; seldom produces work of satisfactory quality.
For skills/expectations within subject area:
+ = Excellent          – = Unsatisfactory
√ = Satisfactory      NI = Not Introduced

397

# MP29 Stanford Achievement Test Series, 04/98 (5th Grade)

# STANFORD

**ACHIEVEMENT TEST SERIES, NINTH EDITION**
SELECT

TEACHER: OLIVER
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/98

**STUDENT REPORT FOR**
**MAURICE A PIMBLE**

Age: 12 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 42 | 626 | 24-4 | 35.1 |
| Vocabulary | 30 | 18 | 638 | 33-4 | 40.7 |
| Reading Comp. | 54 | 24 | 620 | 24-4 | 35.1 |
| Total Mathematics | 78 | 27 | 596 | 8-2 | 20.4 |
| Problem Solving | 48 | 19 | 600 | 12-3 | 25.3 |
| Procedures | 30 | 8 | 589 | 7-2 | 18.9 |
| Partial Battery | 162 | 69 | NA | 17-3 | 30.0 |

## NATIONAL GRADE PERCENTILE BANDS

| CONTENT CLUSTERS | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| **Reading Vocabulary** | 18/ 30/ 30 | | ✓ | |
| Synonyms | 9/ 16/ 16 | | ✓ | |
| Context | 4/ 7/ 7 | | ✓ | |
| Multiple Meanings | 5/ 7/ 7 | | ✓ | |
| **Reading Comprehension** | 24/ 54/ 54 | ✓ | ✓ | |
| Recreational | 10/ 18/ 18 | | ✓ | |
| Textual | 6/ 18/ 18 | ✓ | | |
| Functional | 8/ 18/ 18 | | ✓ | |
| Initial Understanding | 4/ 12/ 12 | ✓ | | |
| Interpretation | 12/ 24/ 24 | | ✓ | |
| Critical Analysis | 4/ 9/ 9 | | ✓ | |
| Process Strategies | 4/ 9/ 9 | | ✓ | |
| **Mathematics: Problem Solving** | 19/ 48/ 48 | ✓ | | |
| Measurement | 2/ 6/ 6 | ✓ | | |
| Estimation | 2/ 4/ 4 | | ✓ | |
| Problem-Solving Strategies | 0/ 5/ 5 | ✓ | | |
| Number & No. Relationships | 4/ 6/ 6 | | ✓ | |
| Number Systems & No. Theory | 2/ 5/ 5 | ✓ | | |
| Patterns & Functions | 2/ 3/ 3 | | ✓ | |
| Algebra | 1/ 3/ 3 | | ✓ | |
| Statistics | 2/ 6/ 6 | ✓ | | |
| Probability | 1/ 3/ 3 | ✓ | | |
| Geometry | 3/ 7/ 7 | | ✓ | |
| **Mathematics: Procedures** | 8/ 30/ 30 | ✓ | | |
| Computation/Symbolic Notation | 3/ 10/ 10 | ✓ | | |
| Computation in Context | 4/ 16/ 16 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |

399



ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

STUDENT REPORT with
PERFORMANCE STANDARDS FOR
MAURICE A PIMBLE

**TEACHER:** OLIVER
**SCHOOL:** RAYMOND ELEM SCH - 302
**DISTRICT:** DC PUBLIC SCHOOLS
**TEST TYPE:** MULTIPLE CHOICE

**GRADE:** 05
**TEST DATE:** 04/98

Age: 12 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 42 | BASIC |
| Vocabulary | 30 | 18 | BASIC |
| Reading Comp. | 54 | 24 | BELOW BASIC |
| Total Mathematics | 78 | 27 | BELOW BASIC |
| Problem Solving | 48 | 19 | BELOW BASIC |
| Procedures | 30 | 8 | BELOW BASIC |

Performance Standards are content-referenced cuts that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

Below Basic indicates little or no mastery of fundamental knowledge and skills.

Basic denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

Proficient represents solid academic performance, indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

Advanced signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

**NOTES**

400

# STANFORD

**ACHIEVEMENT TEST SERIES, NINTH EDITION**
SELECT

TEACHER:    OLIVER
SCHOOL:     RAYMOND ELEM SCH - 302
DISTRICT:   DC PUBLIC SCHOOLS            GRADE:      05
TEST TYPE: MULTIPLE CHOICE               TEST DATE: 04/98

**STUDENT REPORT with PERFORMANCE STANDARDS FOR MAURICE A PIMBLE**

Age: 12 Yrs  11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 42 | BASIC |
| Vocabulary | 30 | 18 | BASIC |
| Reading Comp. | 54 | 24 | BELOW BASIC |
| Total Mathematics | 78 | 27 | BELOW BASIC |
| Problem Solving | 48 | 19 | BELOW BASIC |
| Procedures | 30 | 8 | BELOW BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

Below Basic indicates little or no mastery of fundamental knowledge and skills.

Basic denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

Proficient represents solid academic performance indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

Advanced signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

## N O T E S

# MP30 Stanford Achievement Test Series, 09/98 (5th Grade)

# STANFORD

**ACHIEVEMENT TEST SERIES, NINTH EDITION**
SELECT

TEACHER: MORGAN - 30
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: D C PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 09/98

**STUDENT REPORT with PERFORMANCE STANDARDS FOR**
**MAURICE A PIMBLE**

Age: 13 Yrs 04 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 50 | BASIC |
| Vocabulary | 30 | 23 | PROFICIENT |
| Reading Comp. | 54 | 27 | BELOW BASIC |
| Total Mathematics | 78 | 36 | BELOW BASIC |
| Problem Solving | 48 | 17 | BELOW BASIC |
| Procedures | 30 | 19 | BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance, indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

## NOTES

403

# STANFORD

### ACHIEVEMENT TEST SERIES, NINTH EDITION
### SELECT

TEACHER: MORGAN - 30
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: D C PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 09/98

**STUDENT REPORT**
**FOR**
**MAURICE A PIMBLE**

Age: 13 Yrs 04 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 50 | 617 | 22-3 | 33.7 |
| Vocabulary | 30 | 23 | 638 | 37-4 | 43.0 |
| Reading Comp. | 54 | 27 | 607 | 19-3 | 31.5 |
| Total Mathematics | 78 | 36 | 593 | 19-3 | 31.5 |
| Problem Solving | 48 | 17 | 575 | 11-3 | 24.2 |
| Procedures | 30 | 19 | 623 | 6-2 | 13.1 |
| Partial Battery | 162 | 86 | NA | 21-3 | 32.9 |

### NATIONAL GRADE PERCENTILE BANDS

1    10    30  50  70    90    99

| CONTENT CLUSTERS | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| Reading Vocabulary | 23/ 30/ 30 | | ✓ | |
| Synonyms | 11/ 16/ 16 | | ✓ | |
| Context | 7/ 7/ 7 | | | ✓ |
| Multiple Meanings | 5/ 7/ 7 | | ✓ | |
| | | | | |
| Reading Comprehension | 27/ 54/ 54 | ✓ | | |
| Recreational | 8/ 18/ 18 | ✓ | | |
| Textual | 10/ 18/ 18 | | ✓ | |
| Functional | 9/ 18/ 18 | ✓ | | |
| Initial Understanding | 6/ 12/ 12 | ✓ | | |
| Interpretation | 12/ 24/ 24 | ✓ | | |
| Critical Analysis | 5/ 9/ 9 | | ✓ | |
| Process Strategies | 4/ 9/ 9 | | ✓ | |
| | | | | |
| Mathematics: Problem Solving | 17/ 48/ 48 | ✓ | | |
| Concepts/Whole No. Comput. | 2/ 4/ 4 | ✓ | | |
| Number Sense and Numeration | 1/ 6/ 6 | ✓ | | |
| Geometry and Spatial Sense | 2/ 6/ 6 | ✓ | | |
| Measurement | 3/ 10/ 10 | ✓ | | |
| Statistics and Probability | 5/ 6/ 6 | | ✓ | |
| Fraction and Decimal Concepts | 2/ 6/ 6 | ✓ | | |
| Patterns & Relationships | 1/ 3/ 3 | ✓ | | |
| Estimation | 1/ 3/ 3 | | ✓ | |
| Problem-Solving Strategies | 0/ 4/ 4 | ✓ | | |
| | | | | |
| Mathematics: Procedures | 19/ 30/ 30 | | ✓ | |
| Number Facts | 3/ 3/ 3 | | H/✓ | |
| Computation/Symbolic Notation | 7/ 12/ 12 | | ✓ | |
| Computation in Context | 7/ 12/ 12 | | ✓ | |
| Rounding | 2/ 3/ 3 | | ✓ | |

| | | Below Average | Average | Above Average |
|---|---|---|---|---|

404



**STANFORD**

*ACHIEVEMENT TEST SERIES, NINTH EDITION*
SELECT

TEACHER: MORGAN - 30
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: D C PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE:        05
TEST DATE: 09/98

**STUDENT REPORT with PERFORMANCE STANDARDS FOR MAURICE A PIMBLE**

Age: 13 Yrs 04 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 50 | BASIC |
| Vocabulary | 30 | 23 | PROFICIENT |
| Reading Comp. | 54 | 27 | BELOW BASIC |
| Total Mathematics | 78 | 36 | BELOW BASIC |
| Problem Solving | 48 | 17 | BELOW BASIC |
| Procedures | 30 | 19 | BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance, indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

N O T E S

405

# MP31 Stanford Achievement Test Series, 04/99 (5th Grade)



ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

TEACHER: MORGAN
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/99

**STUDENT REPORT with
PERFORMANCE STANDARDS FOR
MAURICE A PIMBLE**

Age: 13 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | PERFORMANCE STANDARD |
|---|---|---|---|
| Total Reading | 84 | 34 | |
| Vocabulary | 30 | 17 | BELOW BASIC |
| Reading Comp. | 54 | 17 | BASIC |
| Total Mathematics | 78 | 40 | BELOW BASIC |
| Problem Solving | 48 | 27 | BELOW BASIC |
| Procedures | 30 | 13 | BASIC |
| | | | BELOW BASIC |

Performance Standards are content-referenced scores that reflect what students know and should be able to do in given subject areas. The Stanford Performance Standards were determined by expert panels of educators, who judged each test question on the basis of how students at different levels of achievement should perform. These expert judgments yielded four categories or levels of student performance.

**Below Basic** indicates little or no mastery of fundamental knowledge and skills.

**Basic** denotes partial mastery of the knowledge and skills that are fundamental for satisfactory work. At the high school level, this is higher than minimum competency skills.

**Proficient** represents solid academic performance indicating that students are prepared for the next grade. At the high school level, this indicates preparedness for democratic citizenship, responsible adulthood, and productive work.

**Advanced** signifies superior performance beyond grade-level mastery. At the high school level, this shows readiness for rigorous college courses, advanced technical training, or employment requiring advanced academic achievement.

NOTES

207

STANFORD LEVEL/FORM:



ACHIEVEMENT TEST SERIES, NINTH EDITION
SELECT

TEACHER: MORGAN
SCHOOL: RAYMOND ELEM SCH - 302
DISTRICT: DC PUBLIC SCHOOLS
TEST TYPE: MULTIPLE CHOICE

GRADE: 05
TEST DATE: 04/99

**STUDENT REPORT FOR**
**MAURICE A PIMBLE**
Age: 13 Yrs 11 Mos
Student No: 7729524

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE |
|---|---|---|---|---|---|
| Total Reading | 84 | 34 | 610 | 14-3 | 27.2 |
| Vocabulary | 30 | 17 | 632 | 29-4 | 38.3 |
| Reading Comp. | 54 | 17 | 598 | 11-3 | 24.2 |
| Total Mathematics | 78 | 40 | 623 | 25-4 | 35.8 |
| Problem Solving | 48 | 27 | 627 | 34-4 | 41.3 |
| Procedures | 30 | 13 | 618 | 22-3 | 33.7 |
| Partial Battery | 162 | 74 | NA | 23-4 | 34.4 |

### NATIONAL GRADE PERCENTILE BANDS

1     10     30   50   70     90     99

### CONTENT CLUSTERS

| | RS/ NP/ NA | Below Average | Average | Above Average |
|---|---|---|---|---|
| **Reading Vocabulary** | 17/ 30/ 30 | | ✓ | |
| Synonyms | 11/ 16/ 16 | | ✓ | |
| Context | 3/ 7/ 7 | ✓ | | |
| Multiple Meanings | 3/ 7/ 7 | ✓ | | |
| **Reading Comprehension** | 17/ 54/ 54 | ✓ | | |
| Recreational | 7/ 18/ 18 | ✓ | | |
| Textual | 6/ 18/ 18 | ✓ | | |
| Functional | 4/ 18/ 18 | ✓ | | |
| Initial Understanding | 5/ 12/ 12 | ✓ | | |
| Interpretation | 6/ 24/ 24 | ✓ | | |
| Critical Analysis | 3/ 9/ 9 | ✓ | | |
| Process Strategies | 3/ 9/ 9 | ✓ | | |
| **Mathematics: Problem Solving** | 27/ 48/ 48 | | ✓ | |
| Measurement | 2/ 6/ 6 | ✓ | | |
| Estimation | 2/ 4/ 4 | | ✓ | |
| Problem-Solving Strategies | 3/ 5/ 5 | | ✓ | |
| Number & No. Relationships | 2/ 6/ 6 | ✓ | | |
| Number Systems & No. Theory | 4/ 5/ 5 | | ✓ | |
| Patterns & Functions | 3/ 3/ 3 | | ✓ | |
| Algebra | 0/ 3/ 3 | ✓ | H | |
| Statistics | 3/ 6/ 6 | | ✓ | |
| Probability | 3/ 3/ 3 | | ✓ | |
| Geometry | 5/ 7/ 7 | | ✓ | ✓ |
| **Mathematics: Procedures** | 13/ 30/ 30 | ✓ | | |
| Computation/Symbolic Notation | 5/ 10/ 10 | ✓ | | |
| Computation in Context | 7/ 16/ 16 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |

| | Below Average | Average | Above Average |
|---|---|---|---|

4 8

MP32 Student Master Record form
        Randolph Elementary School,
        09/12/94 through 11/07/97

Document Name: untitled

```
SIS - STUD                    RUDOLPH ELEMENTARY SCHOOL              Nov 29,
[DISPLAY]                       Student Master Record                01:30 P

   Student ID:            7729524
                                              Status:               I
   Last Name:             PIMBLE              Grade/School Yr:       05 97/9
   Given Names:           MAURICE A           Homeroom:              0206 Ne
   Called Name:                               Program:
   Address Line 1:        5501 7TH STREET, NW Locker/Comb:
   Address Line 2:                            Previous School:        306  F
   City:                  WASHINGTON          Admission Date:        09/12/9
   State:                 DC                  Admission Code:        A1 Calen
   Zip Code:              20011               Withdrawal Date:       11/07/9
   Tel No/Area/Code:      635-0131  (202)     Withdrawal Code:       W1
   Parent/Guardian:       TAYLOR,GARY         Transf To School:       326  F
   P/G Relationship:      0  PARENT           Date Transferred:      11/07/9
   Sex/Ethnic Code:       M  B  BLACK         Graduation Rule:
   Birthdate:             ███/85              Graduation Date:
   Verified With:                             Schedule Changed:
   Soc Sec No:            000 00 0000
   Counselor Name:                            Data Flags:            1 2 3 4
   Scheduling Priority:                       Report Flags:          N N N N
   Press 'RETURN' To Accept This  Student Or 'NEXT' To Go On  Res/Sped/Att:        0
   Message:
```

*withdrawal from one To DcP school to another DcPS school*

410

Date: 11/29/2004 Time: 01:25:53 PM

# MP33  Report Card, Rudolph Elementary School (4th Grade)

 

DISTRICT OF COLUMBIA PUBLIC SCHOOLS

**REPORT OF PUPIL PROGRESS**

**ELEMENTARY GRADES 1A — 6B**

#609
53P(

| **PUPIL** | | | SCHOOL | GRADE | TEACHER |
|---|---|---|---|---|---|
| Pimble | | Semester #1 | | | |
| Last Name     First Name | | | | | |
| ID # _____ | | Semester #2 | Rudolph C | 4 | Johnson |
| School Year    19___ — 19___ | | | | | |

| GRADING SCALE | A | B | C | D | U |
|---|---|---|---|---|---|
| Progress | Excellent | Very Good | Good | Minimum | Unsatisfactory |
| % of Mastery | 100 – 93 | 92 – 85 | 84 – 78 | 77 – 70 | Below 70% |

*Dear Parent,*

*You are encouraged to confer frequently with your child's teacher. Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.*

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| MATHEMATICS | | | | D |
| | *Instructional Level* | | *Instructional Level* | |
| Above Grade Level | | | | |
| On Grade Level | | | 4D | 4B |
| Below Grade Level | | | | |
| READING | | | | C |
| | *Instructional Level* | | *Instructional Level* | |
| Above Grade Level | | | | |
| On Grade Level | | | 4B | 4B |
| Below Grade Level | | | | |
| LANGUAGE | | | C | A |
| SPELLING | | | B | C- |
| HANDWRITING | | | D+ | D |
| SOCIAL STUDIES | | | B | D |
| SCIENCE | | | B | C |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | | | P | B |
| MUSIC | | | D | U |
| HEALTH/PHYSICAL EDUCATION | | | P | B+ |
| FRENCH, SPANISH Homework | | | A | A |
| CITIZENSHIP | | | P | B |

**The following behaviors are in need of improving:**

| Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | Advisory 1 2 | |
|---|---|---|---|---|---|
| ☐ ☐ | ☐ ☐ | Demonstrates appropriate behavior | ☐ ☐ | ☐ ☐ | Works independently |
| | | | ☐ ☐ | ☐ ☐ | Makes effective use of time |
| ☐ ☐ | ☐ ☐ | Works effectively with others | ☐ ☐ | ☐ ☐ | Completes required homework assignments |
| ☐ ☐ | ☐ ☐ | Follows established rules | ☐ ☐ | ☐ ☐ | Completes work on time |
| ☐ ☐ | ☐ ☐ | Shares ideas and talents | ☐ ☐ | ☐ ☐ | Does his best consistently |
| ☐ ☐ | ☐ ☐ | Listens attentively | | | |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | | | 1 | O |
| DAYS ABSENT | | | 2 | 2 |

**Teacher Comments:**                    Conference
                                           Date _____

November _____

**Teacher Comments:**                    Conference
                                           Date _____

January _____

**Teacher Comments:**                    Conference
                                           Date _____

April 97 _____

**Teacher Comments:**                    Conference
                                           Date _____

Have a nice summer!

June 97

412

February Placement

Grade _____

September Placement

Grade 5H

# MP34 Report Card, Rudolph Elementary School (3rd Grade)




**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**REPORT OF PUPIL PROGRESS**
**ELEMENTARY GRADES 1A – 6B**

#### PUPIL

Pimble, Maurice
Last Name          First Name

ID # 7720924

School Year    19 94 – 19 95

| | SCHOOL | GRADE | TEACHER |
|---|---|---|---|
| Semester #1 | Rudolph | 3A | M. Wright |
| Semester #2 | Rudolph | 3A | M. Wright |

#### GRADING SCALE

| Progress % of Mastery | A Excellent 100 – 93 | B Very Good 92 – 85 | C Good 84 – 78 | D Minimum 77 – 70 | U Unsatisfactory Below 70% |
|---|---|---|---|---|---|

*Dear Parent,*

You are encouraged to confer frequently with your child's teacher. Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| **MATHEMATICS** | Instructional Level | U | Instructional Level | U |
| Above Grade Level | | | | |
| On Grade Level | | 3A | 3A | 3A |
| Below Grade Level | | | | |
| **READING** | Instructional Level | U | Instructional Level | U |
| Above Grade Level | | | | |
| On Grade Level | | 3A | 3A | 3A |
| Below Grade Level | | | | |
| **LANGUAGE** | | | U | U |
| **SPELLING** | | | U | U |
| **HANDWRITING** | C | D | D | U+ |
| **SOCIAL STUDIES** | | D | D | D |
| **SCIENCE** | D | | U | U |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| **ART** | S | | C | C |
| **MUSIC** | | C | C | C |
| **HEALTH/PHYSICAL EDUCATION** | B | B | B | D |
| **FRENCH, SPANISH** | | U | U | U |
| **CITIZENSHIP** | | D | U | D |

The following behaviors are in need of improving:

| Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | Advisory 1 2 | |
|---|---|---|---|---|---|
| ☐ ☐ | ☐ ☐ | Demonstrates appropriate behavior | ☐ ☐ | ☐ ☐ | Works independently |
| ☐ ☐ | ☐ ☐ | Works effectively with others | ☐ ☐ | ☐ ☐ | Makes effective use of time |
| | | Follows established rules | ☐ ☐ | ☐ ☐ | Completes required homework assignments |
| ☐ ☐ | ☐ ☐ | Shares ideas and talents | ☐ ☐ | ☐ ☐ | Completes work on time |
| ☐ ☐ | ☐ ☐ | Listens attentively | ☐ ☐ | ☐ ☐ | Does his best consistent |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| **TIMES TARDY** | | | | |
| **DAYS ABSENT** | 6 | 11 | 17 | 19 |

**Teacher Comments:**                    Conference Date _____

November _____

**Teacher Comments:**                    Conference Date _____

January _____

**February Placement**
Grade ___ A

**Teacher Comments:**                    Conference Date _____

April 4, 1995    Maurice is in danger of failing Grade 3

**Teacher Comments:** Maurice has been absent too many days this school year.    Conference Date _____

June 9, 1995

414

**September Placement**

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**STUDENT PROGRESS PLAN**
**MATHEMATICS OBJECTIVES CHECKLIST**

SPP-M-3A - Rev. 19
53PO4

Student __Maurice Pimble__

Classroom Teacher __M. Wright__     Student Number __7729524__     School __Rudolph__

Mathematics Teacher ____

Instructional Level: 3A

Number of Objectives: 33
Number of Critical Objectives: 8
*Critical Skills

| Mastery Advisory 1 | 2 | Code | Objectives |
|---|---|---|---|

**OBJECTIVES IN INSTRUCTIONAL SEQUENCE**

**CLUSTER I**

| Mastery 1 | Mastery 2 | Code | Objective |
|---|---|---|---|
| | ✓ | *WM-3 | Multiply a one-digit number by a one-digit number. (basic multiplication facts) (For first semester: include basic through 5 × 9 only.) |
| | | S-7 | Name the pair(s) of one-digit factors of a given number. |
| | | WD-1 | Name the division facts that are related to the basic multiplication facts. |
| | | *WD-2 | Divide a one- or two-digit number by a one-digit number. (The quotient is a one-digit number with a remainder.) |
| | | MCLn-5 | Convert a measurement given in feet, to yards and feet or to a whole number of yards. (Limit given measurement to 29 |

**CLUSTER II**

| Mastery 1 | Mastery 2 | Code | Objective |
|---|---|---|---|
| ✓ | ✓ | NR-1 | Identify and write the Roman numerals that name the same numbers as the Arabic numerals "1" through "10." |
| | | NR-2 | Identify and write the Roman numeral associated with a given Arabic number less than forty. |
| | | NW-22 | Identify and name a given three-digit number in expanded notation. |
| | | NW-23 | Rename and write a given three-digit number as: ones; tens and ones; hundreds, tens, and ones. |
| | | *NW-24 | Round a two-digit number to the nearest ten; a three-digit number to the nearest hundred and to the nearest ten. |

**CLUSTER III**

| Mastery 1 | Mastery 2 | Code | Objective |
|---|---|---|---|
| | | WA-11 | Add two three-digit numbers with regrouping from ones to tens place only. (Limit sum to less than one thousand.) |
| | ✓ | WA-12 | Add two three-digit numbers with regrouping from tens to hundreds only. (Limit sum to less than one thousand.) |
| ✓ | | WS-8 | Subtract a two-digit number from a three-digit number with regrouping from the hundreds to the tens only. |
| | ✓ | WS-9 | Subtract a two-digit number from a three-digit number with regrouping. |
| | | WA-13 | Add two three-digit number with regrouping. (Limit sum to less than one thousand.) |
| | | NW-25 | Using symbols "<", "=" and "=", compare two three-digit numbers. |
| | | *WS-10 | Subtract a three-digit number from a three-digit number with regrouping. |
| | | WA-14 | Add four or more two-digit numbers. (Limit sum to less than one thousand.) |

**CLUSTER IV**

| Mastery 1 | Mastery 2 | Code | Objective |
|---|---|---|---|
| | | RN-7 | Order a given set of like/common fractions. (halves, thirds, fourth, sixths, eighths, tenths) |
| | | CFA-1 | Add two like fractions, each having a value less than ONE. (No regrouping is required.) |
| | | CFS-1 | Subtract a fraction from a fraction having the same denominator. (No renaming is required.) |
| | | CFA-2 | Add three or more like unit fractions. (No renaming is required.) |
| | | RN-8 | Order unit fractions: 1/2, 1/3, 1/4, 1/5, 1/6, 1/8, 1/10. |
| | | RN-9 | Given an appropriate set, identify 1/2, 1/4, 1/8, 1/3, 1/6, 1/5, 1/10 of the set. |
| | | *RN-10 | Given an appropriate set, identify a specific fractional part: halves, fourths, eighths; thirds, sixths; fifths, tenths. |
| | | ND-1 | Identify and write the decimal fraction equivalent of a common fraction whose denominator is ten. (2/10 = .2) |
| | | DA-1 | Add three or more decimal fractions (tenths only) whose sum is less than ONE. |
| | | *DA-2 | Add money expressions using dollar sign and decimal point. (Limit sum to $10.00.) |
| | | *DS-1 | Subtract money expressions using dollar sign and decimal point. (Limit sum to $10.00) |

**CLUSTER V**

| Mastery 1 | Mastery 2 | Code | Objective |
|---|---|---|---|
| | | WM-4 | Multiply a two-digit multiple of ten by a one-digit number. |
| | | WD-3 | Divide a two-digit multiple of ten by a one-digit number. (The quotient is a multiple of ten.) |
| | | *WM-5 | Multiply a two-digit number by a one-digit number with no regrouping. |
| | | WD-4 | Divide a two-digit number by a one-digit number. (Each digit in the dividend must be a multiple of the divisor.) |

MINIMUM NUMBER OF OBJECTIVES, INCLUDING CRITICAL OBJECTIVES, TO BE MASTERED FOR PROMOTION TO 4A

415

| | Advisory 1 | 2 | Total |
|---|---|---|---|
| Number of Critical Objectives | | 1 | 1 |
| Number of Other Objectives | | | |

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT PROGRESS PLAN
READING OBJECTIVES CHECKLIST

SPP-R-3A-19
53PO550

Student **Maurice Pimble**    Student Number **7729524** School **Rudolph**

Classroom Teacher **M. Wright**

Reading Teacher _____

Instructional Level: 3A

Number of Objectives : 19
Number of Critical Objectives: 6
*Critical Objectives

| Mastery Advisory | | Code | Objectives |
|---|---|---|---|
| 1 | 2 | | **WORD PERCEPTION** |
| ✓ | | WP/C-9 | Distinguish Consonant Digraph Sounds |
| ✓ | | *WP/C-10 | Apply a Rule for Phonetic Irregularities |
| | | WP/VOW-11 | Identify Digraphs |
| | | WP/V-7 | Describe Heteronyms |
| | ✓ | *WP/SA-12 | Construct Possessive Forms |
| | | WP/SA-13 | Construct Contractions |
| | | WP/SA-14 | Identify Syllables |
| | | | **COMPREHENSION** |
| | | *C/MI-3 | Distinguish Main Idea in Words and Phrases or Story |
| | | C/S-4 | Order Paragraphs |
| | | C/MO-3 | Distinguish Mood |
| | | C/PR-2 | Order Time Relationships |
| | | C/FL-2 | Identify Similies |
| | | *C/PO-3 | Describe Outcomes |
| | | *C/FO-3 | Distinguish Fact from Opinion |
| | | C/FJ-2 | Distinguish Choice of Judgement |
| | | | **STUDY SKILLS** |
| | | *SS/FD-3 | Follow Written Multi-Step Directions |
| | | SS/CC-1 | Order Titles |
| | | SS/O-1 | Identify Topics |
| | | SS/D-8 | Distinguish the Location of Words in a Dictionary Using the Quarters Division |

MINIMUM NUMBER OF OBJECTIVES (INCLUDING CRITICAL) TO BE MASTERED AT THIS INSTRUCTIONAL LEVEL: 14

|  | Advisory 1 | 2 | Total |
|---|---|---|---|
| Number of Critical Objectives | 0 | | 1 |
| Number of Other Objectives | | | |

416

MP35 Report Card, Rudolph
Elementary School (2nd Grade)

 

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**REPORT OF PUPIL PROGRESS**
**ELEMENTARY GRADES 1A — 6B**

| PUPIL | | SCHOOL | GRADE | TEACHER |
|---|---|---|---|---|
| Last Name **Pimble, Maurice** First Name | Semester #1 | | | |
| ID# **7729524** | Semester #2 **Rudolph** | | **2B** | **W. Harris** |
| School Year 19 **93** – 19 **94** | | | | |

**GRADING SCALE**

| Progress % of Mastery | A Excellent 100 – 93 | B Very Good 92 – 85 | C Good 84 – 78 | D Minimum 77 – 70 | U Unsatisfactory Below 70% |
|---|---|---|---|---|---|

*Dear Parent,*

*You are encouraged to confer frequently with your child's teacher. Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.*

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| MATHEMATICS | | C | | C |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | | | | |
| Below Grade Level | | 2A | 2B | 2B |
| READING | | B | | D |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | | | | |
| Below Grade Level | | 2A | 2B | |
| LANGUAGE | | | | |
| SPELLING | | C | B | C |
| HANDWRITING | | C | C+ | C |
| SOCIAL STUDIES | | C | B | B |
| SCIENCE | | C | B | B |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | | A | A | A |
| MUSIC | | C+ | C+ | |
| HEALTH/PHYSICAL EDUCATION | | B | B | |
| FRENCH, SPANISH | | | | |
| CITIZENSHIP | | B | A | A |

**The following behaviors are in need of improving:**

| Advisory 1 2 | Advisory 1 2 | | Advisory 1 2 | Advisory 1 2 | |
|---|---|---|---|---|---|
| ☐ ☐ | ☐ ☐ | Demonstrates appropriate behavior | ☐ ☐ | ☐ ☐ | Works independently |
| ☐ ☐ | ☐ ☐ | Works effectively with others | ☐ ☐ | ☐ ☐ | Makes effective use of time |
| ☐ ☐ | ☐ ☐ | Follows established rules | ☐ ☐ | ☐ ☐ | Completes required homework assignments |
| ☐ ☐ | ☐ ☐ | Shares ideas and talents | ☐ ☐ | ☐ ☐ | Completes work on time |
| ☐ ☐ | ☐ ☐ | Listens attentively | ☐ ☐ | ☐ ☐ | Does his best consistently |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | | 13 | 19 | |
| DAYS ABSENT | | 13 | 17 | |

Teacher Comments:

Conference
Date _____

November _____

Teacher Comments: Student's
school attendance
attempts to effect
academic performance. He
January 1994 displays his his good behavior
days.

Conference
Date 1 Feb. 1994

February Placement

Grade _____

Teacher Comments: Maurice has
shown improvement,
his attendance has
affected his academic
April 1994 good citizenship. He has

Conference
Date 2/94

Teacher Comments:

Conference
Date _____

June _____

418

September Placement

# MP36 Report Card (1st Grade)

 

DISTRICT OF COLUMBIA PUBLIC SCHOOL
REPORT OF PUPIL PROGRESS
ELEMENTARY GRADES 1A – 6B

#609 19
53PO:

| PUPIL | | SCHOOL | GRADE | TEACHER |
|---|---|---|---|---|
| Pimble | | | | |
| Last Name    First Name | Semester #1 _____ | | | |
| ID # _____ | Semester #2 _____ | | 1A | |
| School Year   19__ – 19__ | | | | |

### GRADING SCALE

| Progress % of Mastery | A Excellent 100 – 93 | B Very Good 92 – 85 | C Good 84 – 78 | D Minimum 77 – 70 | U Unsatisfactory Below 70% |
|---|---|---|---|---|---|

Dear Parent,

You are encouraged to confer frequently with your child's teacher. Close cooperation between the home and school will help develop the skills, habits and attitudes which promote maximum growth.

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| MATHEMATICS | | U | | U |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | 1A | 1A | 1A | 1A |
| Below Grade Level | | | | |
| READING | | U | | U |
| | Instructional Level | | Instructional Level | |
| Above Grade Level | | | | |
| On Grade Level | 1A | 1A | 1A | 1A |
| Below Grade Level | | | | |
| LANGUAGE | | U | U | U |
| SPELLING | | U | U | U |
| HANDWRITING | | C | C | C |
| SOCIAL STUDIES | C | C | C | C |
| SCIENCE | C | C | C | C |

| SUBJECTS | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| ART | | | | C |
| MUSIC | | | | C |
| HEALTH/PHYSICAL EDUCATION | | | | C |
| FRENCH, SPANISH | | N/A | N/A | N/A |
| CITIZENSHIP | | C | | C |

The following behaviors are in need of improving:

| Advisory | Advisory | | Advisory | Advisory | |
|---|---|---|---|---|---|
| 1 2 | 1 2 | | 1 2 | 1 2 | |
| ☑ ☐ | ☐ ☐ | Demonstrates appropriate behavior | ☐ ☐ | ☐ ☐ | Works independently |
| ☐ ☐ | ☐ ☐ | Works effectively with others | ☑ ☐ | ☐ ☐ | Makes effective use of time |
| ☐ ☐ | ☐ ☐ | Follows established rules | ☐ ☐ | ☐ ☐ | Completes required homework assignments |
| ☑ ☐ | ☐ ☐ | Shares ideas and talents | ☑ ☐ | ☐ ☐ | Completes work on time |
| ☑ ☐ | ☐ ☐ | Listens attentively | ☑ ☐ | ☐ ☐ | Does his best consistently |

| ATTENDANCE RECORD | SEMESTER 1 | | SEMESTER 2 | |
|---|---|---|---|---|
| | Advisory 1 | Advisory 2 | Advisory 1 | Advisory 2 |
| TIMES TARDY | | 7 | 2 | |
| DAYS ABSENT | 17 | 15 | | 21 |

Teacher Comments:                    Conference Date _____

November _____

Teacher Comments:                    Conference Date _____

January _____

**February Placement**
Grade 1A

Teacher Comments:                    Conference Date _____

April _____

Teacher Comments:                    Conference Date _____

Read, write and work with _____
June _____

**September Placement**
Grade 1A

420

# MP37 Progress Report, 2/9/93

# EARLY CHILDHOOD UNITS AND DEMONSTRATION CENTERS

District Of Columbia Public Schools

## EARLY LEARNING YEARS: Pre-K–3rd Grade
## CONTINUOUS PROGRESS REPORT

School Year 1992-1993

NAME *Maurice Pimble*  AGE *7*  REPORT DATE *Feb 9, 1*

SCHOOL *Meyer Lower Campus*  Days Present *70*  Days Absent *20*  Days Absent Excused ___  Days Tardy *9*

CODES: E - ESTABLISHED AND FREQUENTLY OBSERVED: Does consistently on a regular basis
S - SOMETIMES OBSERVED: Emerging, requires support
N - NOT YET EXPECTED

## Personal and Social Development

| | |
|---|---|
| Shows empathy and caring for others | E |
| Displays self-confidence | S |
| Is willing to take risks | S |
| Finds humor in situations | N |
| Demonstrates self-control | S |
| Plans work and makes choices | N |
| Shows willingness to try something new | N |
| Works independently | N |
| Shares and takes turns | E |
| Deals with problem situations constructively | N |
| Persists with a task until completed | N |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | N |
| Asks and answers questions clearly | N |
| Listens to and makes appropriate comments | N |
| Recognizes words used frequently | N |
| Selects appropriate books to read or browse | N |
| Reads for meaning | N |
| Writes for meaning | N |
| Shows flexible and logical thinking | N |
| Understands and uses words appropriately | N |
| Uses techniques of editing | N |

Writes:
☑ Emergent writer  ☐ Early writer  ☐ Fluent writer

Reads:
☑ Emergent reader  ☐ Early reader  ☐ Fluent reader

## Physical Development

| | |
|---|---|
| Moves with increasing balance and control | S |
| Shows increasing eye-hand coordination | S |
| Uses writing and drawing tools with increasing control | S |

## Creative Arts

| | |
|---|---|
| Experiments with new materials and activities | N |
| Shows interest in music, movement, arts, drama | S |
| Uses imagination in drama, arts, and projects | N |
| Plans, designs, and completes creative projects | N |

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | N |
| Makes and describes observations | N |
| Predicts/discusses outcomes of experiments | N |
| Represents scientific conclusions in variety of ways | N |
| Explores materials and problems with curiosity | N |
| Identifies, extends, and creates patterns | N |
| Sorts, classifies and compares objects | N |
| Makes appropriate estimates | N |
| Computes mentally | N |
| Creates/interprets graphs: ☐ concrete ☐ pictorial ☐ symbolic | N |
| Describes and classifies geometric solids and shapes | N |
| Measures in ☐ non-standard ☐ standard units | N |
| Understands concepts of operations: ☐ addition ☐ subtraction ☐ multiplication ☐ division | |
| Compares and orders quantities/numbers | N |
| Understands place value to ☐ two digits ☐ three digits | |

422

STUDENT'S COMMENTS:

Deals with problem situations constructively

| | |
|---|---|
| Persists with a task until completed | N |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | N |
| Asks and answers questions clearly | N |
| Listens to and makes appropriate comments | N |
| Recognizes words used frequently | N |
| Selects appropriate books to read or browse | N |
| Reads for meaning | N |
| Writes for meaning | N |
| Shows flexible and logical thinking | N |
| Understands and uses words appropriately | N |
| Uses techniques of editing | N |

Writes:
- [x] Emergent writer  [ ] Early writer  [ ] Fluent writer

Reads:
- [x] Emergent reader  [ ] Early reader  [ ] Fluent reader

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | N |
| Makes and describes observations | N |
| Predicts/discusses outcomes of experiments | N |
| Represents scientific conclusions in variety of ways | N |
| Explores materials and problems with curiosity | N |
| Identifies, extends, and creates patterns | N |
| Sorts, classifies and compares objects | N |
| Makes appropriate estimates | N |
| Computes mentally | N |

Creates/interprets graphs: N  [ ] concrete  [ ] pictorial  [ ] symbolic

| | |
|---|---|
| Describes and classifies geometric solids and shapes | N |

Measures in  [ ] non-standard  [ ] standard units   N

Understands concepts of operations:
- [x] addition  [ ] subtraction
- [ ] multiplication  [ ] division

| | |
|---|---|
| Compares and orders quantities/numbers | N |

Understands place value to  [ ] two digits  [ ] three digits

**STUDENT'S COMMENTS:** _____

**TEACHER'S COMMENTS:** Please continue to work with Maurice at home. His attendance is very important.

_Alice C. Riggs_
**Teacher's Signature**

_Sandra Lewis_
**Parent's Signature**

Copyright © 1992, District of Columbia Public Schools

# MP38 Progress Report, 6/18/93

# EARLY CHILDHOOD UNITS AND DEMONSTRATION CENTERS

## District Of Columbia Public Schools
## EARLY LEARNING YEARS: Pre-K–3rd Grade
## CONTINUOUS PROGRESS REPORT
### School Year 1992-1993

NAME *Pimble, Maurice*  AGE *8*  REPORT DATE *June 18,*

SCHOOL *Meyer Lower Campus*  Days Present *155*  Days Absent *25*  Days Absent Excused  Days Tardy *10*

CODES: E - ESTABLISHED AND FREQUENTLY OBSERVED: Does consistently on a regular basis
S - SOMETIMES OBSERVED: Emerging, requires support
N - NOT YET EXPECTED

## Personal and Social Development

| | |
|---|---|
| Shows empathy and caring for others | E |
| Displays self-confidence | S |
| Is willing to take risks | S |
| Finds humor in situations | E |
| Demonstrates self-control | S |
| Plans work and makes choices | S |
| Shows willingness to try something new | E |
| Works independently | E |
| Shares and takes turns | E |
| Deals with problem situations constructively | S |
| Persists with a task until completed | S |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | S |
| Asks and answers questions clearly | S |
| Listens to and makes appropriate comments | S |
| Recognizes words used frequently | S |
| Selects appropriate books to read or browse | S |
| Reads for meaning | S |
| Writes for meaning | S |
| Shows flexible and logical thinking | S |
| Understands and uses words appropriately | S |
| Uses techniques of editing | S |

Writes:

☐ Emergent writer  ☑ Early writer  ☐ Fluent writer

Reads:

☐ Emergent reader  ☑ Early reader  ☐ Fluent reader

## Physical Development

| | |
|---|---|
| Moves with increasing balance and control | S |
| Shows increasing eye-hand coordination | S |
| Uses writing and drawing tools with increasing control | S |

## Creative Arts

| | |
|---|---|
| Experiments with new materials and activities | S |
| Shows interest in music, movement, arts, drama | S |
| Uses imagination in drama, arts, and projects | S |
| Plans, designs, and completes creative projects | S |

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | S |
| Makes and describes observations | S |
| Predicts/discusses outcomes of experiments | S |
| Represents scientific conclusions in variety of ways | S |
| Explores materials and problems with curiosity | S |
| Identifies, extends, and creates patterns | S |
| Sorts, classifies and compares objects | S |
| Makes appropriate estimates | S |
| Computes mentally | S |

Creates/interprets graphs: ☐ concrete  ☑ pictorial  ☐ symbolic

| | |
|---|---|
| Describes and classifies geometric solids and shapes | S |

Measures in ☐ non-standard  ☑ standard units

Understands concepts of operations:

☑ addition  ☑ subtraction  ☐ multiplication  ☐ division

Compares and orders quantities/numbers **425**

Understands place value to ☑ two digits  ☐ three digits

STUDENT'S COMMENTS: _____

| | |
|---|---|
| Finds humor in situations | |
| Demonstrates self-control | S |
| Plans work and makes choices | S |
| Shows willingness to try something new | E |
| Works independently | E |
| Shares and takes turns | E |
| Deals with problem situations constructively | S |
| Persists with a task until completed | S |
| Represents work carefully | S |

## Reading/Writing/Language Arts

| | |
|---|---|
| Contributes to discussions | S |
| Asks and answers questions clearly | S |
| Listens to and makes appropriate comments | S |
| Recognizes words used frequently | S |
| Selects appropriate books to read or browse | S |
| Reads for meaning | S |
| Writes for meaning | S |
| Shows flexible and logical thinking | S |
| Understands and uses words appropriately | S |
| Uses techniques of editing | S |

Writes:
☐ Emergent writer  ☑ Early writer  ☐ Fluent writer

Reads:
☐ Emergent reader  ☑ Early reader  ☐ Fluent reader

## Creative Arts

| | |
|---|---|
| Experiments with new materials and activities | S |
| Shows interest in music, movement, arts, drama | S |
| Uses imagination in drama, arts, and projects | S |
| Plans, designs, and completes creative projects | S |

## Mathematics and Science

| | |
|---|---|
| Pursues scientific inquiry | S |
| Makes and describes observations | S |
| Predicts/discusses outcomes of experiments | S |
| Represents scientific conclusions in variety of ways | S |
| Explores materials and problems with curiosity | S |
| Identifies, extends, and creates patterns | S |
| Sorts, classifies and compares objects | S |
| Makes appropriate estimates | S |
| Computes mentally | S |
| Creates/interprets graphs: ☐ concrete ☑ pictorial ☐ symbolic | |
| Describes and classifies geometric solids and shapes | S |
| Measures in ☐ non-standard ☑ standard units | |

Understands concepts of operations:
☑ addition  ☑ subtraction
☐ multiplication  ☐ division

| | |
|---|---|
| Compares and orders quantities/numbers | |
| Understands place value to ☑ two digits ☐ three digits | |

STUDENT'S COMMENTS: _____

TEACHER'S COMMENTS: *I'm very pleased with Maurice's progress. Please continue to work with him. Maurice has improved in his reading and writing skills tremendously. You should praise him for his efforts, and encourage him to continue to read and write over the summer. He should do well in second grade.*

Alice C. Digges — Teacher's Signature
Miss Lila Gee — Parent's Signature
Gr. 2, in Sept.

Copyright © 1992, District of Columbia Public Schools

426

MP39 Student Residence and Date
Verification Form, 1997-1998
(5th Grade)

 

District of Columbia Public Sch

## STUDENT RESIDENCE AND DATA VERIFICATION FORM
### School Year 1997-98

*iowa*

**DEAR PARENT:**

To assist the local school in updating your child's records, please complete this section fully and sign the form to certify that this section contains correct information. The form should be completed and returned to your child's school within three (3) school days. Thank you for your continued support and cooperation.

To be completed by the parent/guardian:

Legal Name: **Maurice Anthony Dimble Jr.**    Date of Birth: ▆▆▆-85

Place of Birth (Country): **Wash D.C.**    Social Security Number: _____

Race/Ethnic Origin: **Black**    Sex: **M.**

Street Address: **5 Thomas Circle N.W.**

City/State/Zip: **Wash DC. 20005**    Ward: _____

Enrolled in School in the U.S. before September 1994 ?    Yes **X**    No _____    Month **9**    Year **94**

School attended in June 1997: **~~Dete~~ Rudloph Elem**    Primary Language Spoken in the Home: **English**

Parent(s)/Legal Guardian's Name: _____

Residency Status:    ☒ D.C. Resident (Student & parent or legal guardian live in D.C.)    ☐ Nonresident (Student &/or parent live outside D.C.)

Parent/Guardian's Street Address: **5 Thomas Circle N.W.**

Parent/Guardian's City/State/Zip: **Wash DC. 20005**

Home phone: **(202) 371-0088**    Business phone: ( )

Occupation: _____

In case of emergency notify (Last, First name): **Taylor, Luella**

Emergency address: **49 Due St N.E.**

Emergency phone: **(202) 635-0131**    Relationship: **grandmother**

I completed this form and I certify that the information above is accurate. I understand that providing false information for purposes of defrauding the government is punishable by law. I also understand that failure to provide the required proof of residence may result in an investigation for compliance with Public Law 86-725, "District of Columbia Non-Resident Tuition Act"; a tuition bill for my child's enrollment in a District of Columbia public school; and/or exclusion of my child from the D.C. Public Schools.

**Swandya Lewis**    Date **11-13-97**

Signature of Parent/Legal Guardian with Whom Student Lives or Adult Student

---

To be completed by the school:

DCPS ID #: **7729534**    School: **Thomson**

HOME ROOM: **15**    GRADE: **5**    Date of Enrollment: **11/17/97**

Free/Reduced Lunch: Y ✓    N _____    Bilingual Services: LEP _____    NEP _____    Title 1: Y ✓    N _____

Special Education Services: _____    Level: _____    Attending: Y _____    N _____

**Robert Briscoe III**    428

Signature of School Official

Enrolled as an Out-of-Boundary Student: Y _____    N _____

# MP40 Hearing Officer Order to Brief Issues (Statute of Limitations and DCPS Liability), 4/25/05

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION
### SPECIAL EDUCATION DUE PROCESS HEARING
### CONFIDENTIAL

SEP 20  AM 11: 38

DC PUBLIC
SYSTEM

Seymour DuBow, Due Process Hearing Officer
1150 5th Street, S.E.
Washington, D.C. 20003
(202) 698-3819; (202) 698-3825 (fax)

## HEARING OFFICER'S DETERMINATION ON MOTION TO RECONVENE DUE PROCESS HEARING

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| Maurice Pimble, student ) | |
| Date of Birth: ██/85 ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| The District of Columbia Public Schools ) | Attending School: Non-attending Currently incarcerated at Schuylkill Federal Correctional Facility |
| ) | |
| Respondent ) | |


**Counsel for Parent/Student:**

Joseph Tulman, Esq.
University of District of Columbia
David Clarke School of Law
4200 Connecticut Ave., N.W.
Washington, D.C. 20008


**Counsel for DCPS:**

Quinne Harris-Lindsey, Esq.
825 N. Capitol Street, N.E.,
Washington, D.C. 20002

430

**DISPOSITION OF THE CASE:**

Counsel for Mr. Maurice Pimble have filed a Motion to Reconvene a Due Process Hearing. The original due process hearing request was filed on March 21, 2005. A due process hearing was held on April 25, 2005. This hearing officer requested legal memoranda to be filed on May 3rd 2005. On that date, counsel for Mr. Pimble filed their legal memorandum. Counsel for DCPS, Ms. Lenore Verra, requested an extension and stated settlement negotiations were continuing. This hearing officer, hearing nothing from counsel for the parties, scheduled a telephonic status conference on May 13th 2005 to discuss the status of settlement discussions. *The forty five day rule was waived*. On May 13th the telephonic status conference was held and counsel for DCPS agreed to fund independent evaluations within the Superintendent's Guidelines, but would not agree to travel costs for the evaluators to go to the federal correctional facility in North Carolina. This hearing officer requested from counsel for Mr. Pimble information on travel costs for the evaluators and whether Rivers Federal Correctional Institution would allow access. Counsel provided that information on May 26, 2005. On June 8, 2005 this hearing officer ordered DCPS to reimburse the evaluators for their travel costs to Rivers Correctional Institution upon proper documentation. Now more than two years later, counsel for Mr. Pimble is requesting the reconvening of the due process hearing. Counsel for DCPS, Lenore Verra, is no longer employed by DCPS. Counsel for Mr. Pimble sent a copy of their Motion to Erica Pierson at OGC, but Ms. Pierson is no longer with OGC. The appropriate action, giving fair notice to DCPS, is for counsel for Mr. Pimble to send a copy of their motion with attachments to counsel for DCPS, Quinne Harris-Lindsey. The case will be set down for a hearing on October   , 2007

It is hereby **ORDERED** that:

Counsel for Mr. Pimble shall send a copy of the Motion to Reconvene a Due Process Hearing to Ms. Quinne Harris-Lindsey. The case shall be set down for a due process hearing on October 3 6 2007 at 11 A.M.

Seymour DuBow, Esq.
Impartial Hearing Officer
Date Issued: 9\20\07

Date filed: September 20, 2007

2

MP41  Speech and Language
Evaluation, 6/27/06

CONFIDENTIAL

CONFIDENTIAL

# SPEECH AND LANGUAGE EVALUATION

**NAME:** **Maurice Pimble**
**DATE OF BIRTH:** ███/85
**AGE:** **21 years, 1 month**
**DATE OF ASSESSMENT:** **06/27/06**
**REFERRED BY ATTORNEYS:** **U.D.C David A. Clark School of Law**

## EXAMINER

Marisa S. Harrell, M.S., CCC-SLP, Speech-Language Pathologist

## TESTS ADMINISTERED

Clinical Evaluation of Language Fundamentals – Fourth Edition (CELF-4)
Oral and Written Language Scales (OWLS)/ Listening Comprehension and Oral Expression Scales
Goldman-Fristoe Test of Articulation – 2nd Edition (GFTA-2)
Hearing Screening

## REASON FOR EVALUATION

Maurice is currently incarcerated at the Rivers Federal Correctional Institution in Winton, North Carolina. A speech and language evaluation was requested for Maurice by his attorneys at U.D.C David A. Clark School of Law to determine Maurice's eligibility for services under the Individuals with Disabilities Education Improvement Act of 2004 (IDEIA). Psychologist Rona M. Fields conducted psycho-educational testing with Maurice in November and December of 2005. Please refer to her report for detailed background information about Maurice.

433

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 2          Confidential

## TEST RESULTS

### Clinical Evaluation of Language Fundamentals—4 (CELF-4)

The <u>Clinical Evaluation of Language Fundamentals – 4th Edition (CELF-4)</u> is an individually administered evaluation tool for the identification and diagnosis of language and communication disorders in students 5-21 years old.  Standard scores are reported with a mean = 100 and a standard deviation = 15.  Therefore, scores that fall between 85-115 are considered in the average range. Individual subtest scores are also reported with a mean = 10 and a standard deviation = 3. Subtest scores between 7-13 are considered in the average range. Maurice's scores are as follows:

| | Sum of Subtest Scaled Scores | Standard Score | Percentile Rank |
|---|---|---|---|
| Core Language | 30 | 85 | 16 |
| Receptive Language | 19 | 78 | 7 |
| Expressive Language | 23 | 87 | 19 |
| Language Content | 19 | 78 | 7 |
| Language Memory | 22 | 84 | 14 |
| Working Memory | 25 | 115 | 84 |

| Subtest Score | Raw Score | Scaled Score |
|---|---|---|
| **CORE LANGUAGE** | | |
| Formulated Sentences | 52 | 11 |
| Recalling Sentences | 68 | 6 |
| Word Classes-Total | 13 | 6 |
| Word Definitions | 21 | 7 |
| **RECEPTIVE LANGUAGE** | | |
| Understanding Spoken Paragraphs | 10 | 7 |
| Semantic Relationships | 13 | 5 |
| Word Classes-Receptive | 16 | 7 |
| **EXPRESSIVE LANGUAGE** | | |
| Word Classes-Expressive | 10 | 6 |
| Formulated Sentences | 52 | 11 |
| Recalling Sentences | 68 | 6 |
| **LANGUAGE CONTENT** | | |
| Word Definitions | 21 | 7 |
| Understanding Spoken Paragraphs | 10 | 7 |
| Sentence Assembly | 11 | 5 |

434

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 3

| LANGUAGE MEMORY | | |
|---|---|---|
| Semantic Relationships | 13 | 5 |
| Formulated Sentences | 52 | 11 |
| Recalling Sentences | 68 | 6 |
| WORKING MEMORY | | |
| Number Repetition-Total | 14 | 7 |
| Familiar Sequences 1/2 | 39 | 18 |

Maurice's language skills as assessed by the CELF-4 reflect mildly delayed receptive and expressive language skills.

The Receptive Language portion of the test includes the following subtests: Understanding Spoken Paragraphs, Semantic Relationships, and Word Classes-Receptive. Maurice performed in the low average range on the Understanding Spoken Paragraphs subtest, which evaluated his ability to a) sustain attention and focus while listening to spoken paragraphs of increasing length and complexity, b) understand oral narrative and text (critical thinking for text comprehension), c) answer questions about the content of the information given, and d) think critically to arrive at logical answers. Maurice demonstrated good attention and focus; however, as the paragraphs increased in length and complexity, it became more difficult for Maurice to answer the following question types: main idea, detail, inference, and prediction. Maurice performed in the below average range for the Semantic Relationships subtest, which evaluated his ability to interpret sentences that a) make comparisons, b) identify location or direction, c) specify time relationships, d) include serial order, or e) are expressed in passive voice. Maurice demonstrated difficulty with the following semantic relationships: sequential, comparative, and passive. Maurice performed in the low average range for the Word Classes-Receptive subtest, which evaluated his ability to understand relationships between words that are related by semantic class features.

The Expressive Language portion of the test includes the following subtests: Word Classes-Expressive, Formulated Sentences, and Recalling Sentences. Maurice performed in the low average range for the Word Classes-Expressive subtest, which evaluated his ability to understand and explain logical relationships in the meanings of associated words. Maurice performed in the average range for the Formulated Sentences subtest, which evaluated his ability to formulate complete, semantically and grammatically correct spoken sentences of increasing length and complexity using given words and contextual constraints imposed by illustrations. This subtest was a strength for him and his sentences were quite good. On the Recalling Sentences subtest, which evaluated his ability to a) listen to spoken sentences of increasing length and complexity, and b) repeat the sentences without changing word meanings, inflections, derivations or comparisons (morphology), or sentence structure (syntax), Maurice performed below average, indicating that he has not internalized complex sentence structures. He demonstrated the most difficulty with sentences containing subordinate clauses.

The Working Memory portion of the test includes the following supplementary subtests: Number Repetition and Familiar Sequences. Maurice performed in the above average range for Familiar

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 4          Confidential

Sequences and in the high average range for Number Repetition-Forward. However, he performed below average for Number Repetition-Backward.

Maurice demonstrated within normal limits pragmatic or social language skills throughout the testing session. He appropriately greeted the examiner, took conversational turns, maintained topics, made appropriate eye contact, and responded well to verbal praise. Maurice demonstrated appropriate attention and focus throughout the evaluation. He seemed motivated to do well and was concerned about answering questions correctly.

## Oral and Written Language Scales(OWLS)/ Listening Comprehension and Oral Expression Scales

This test is standardized and normed for ages three through twenty one and the standardization sample took into account the US Census data on sex, race, region and mother's education level. This test measures vocabulary and grammar as well as pragmatics (language function) and supralinguistics (higher-order thinking with language). It allows the examiner to measure a person's ability to understand and produce connected language not just single words and sentence structures.  The OWLS includes items that measure advanced lexical skills, knowledge of idioms and complex syntactic structures as well as cognitively loaded messages that must be analyzed at different levels. It requires no reading or writing. The scores presented are based on an age of twenty one, which represents adult language. Standard scores are reported with a mean = 100 and a standard deviation = 15.  Therefore, scores that fall between 85-115 are considered in the average range. Maurice's scores are as follows:

|  | Standard Score | Percentile | Age Equivalent |
|---|---|---|---|
| **Oral Composite** | 70 | 2 | 10y 6m |
| Listening Comprehension | 74 | 4 | 10y 6m |
| Oral Expression | 69 | 2 | 10y 6m |

Maurice's language skills as assessed by the OWLS reflect moderately delayed receptive language skills and severely delayed expressive language skills.

Receptively, Maurice demonstrated the most difficulty understanding supralinguistic test items including: humor, contextual cues, words with multiple meanings, figurative language, and logic. He also demonstrated some difficulty understanding complex sentences structures.

Expressively, Maurice presented as a concrete thinker and had difficulty using figurative language, forming appropriate requests based on contextual cues, and providing a detailed description so as to enable another person to identify who he was talking about. He also made grammatical errors such as switching verb tenses, using incorrect pronouns, and incorrectly combining clauses to form complex sentences.

436

Pimble, Maurice   Speech and Language Evaluation, 06/27/06, page 5

## Goldman-Fristoe Test of Articulation-2nd edition (GFTA-2)

The Goldman-Fristoe Test of Articulation-2nd edition (GFTA-2) assesses an individual's articulation of the consonant sounds of Standard American English. Maurice's scores were as follows:

| Raw Score | Standard Score | Percentile |
|-----------|----------------|------------|
| 2 | 87 | 2 |

Maurice substituted /f/ for "th" in the words "bathtub" and "bath". This substitution is considered dialectically appropriate for African Americans. Maurice was 100% intelligible during today's evaluation and no concerns were noted about his articulation skills.

*Voice*: Within normal limits.
*Fluency*: Within normal limits. No stuttering or hesitations were noted.
*Oral Motor*: Face and lips are symmetrical and tongue is of normal size. Labial and lingual range of motion and coordination appear within normal limits. Oral motor skills are judged to be within normal limits.
*Hearing*: Maurice passed a hearing screening, given by this evaluator, prior to speech and language testing.
*Vision*: No concerns.

## SUMMARY AND RECOMMENDATIONS

Maurice's receptive and expressive language skills are below expected levels as measured by the OWLS. However, as measured by the CELF-4, a more structured, concrete, and visual test; his receptive skills are only mildly delayed and his expressive skills are in the low average range. This discrepancy between test scores indicates that when given structure, concrete information, and visual cues, Maurice is better able to understand and use language. Overall, his general communication is functional but grammatical and semantic errors are prevalent. Maurice is concrete in his thinking style and has difficulty understanding idioms and other figurative language. Attention to visual detail is a strength for him. Fluency, articulation, voice, and hearing are judged to be within normal limits. Speech and language therapy is recommended in order to improve Maurice's understanding and use of grammatical structures, semantics, and figurative language. Maurice was a pleasure to work with and if you have any questions or concerns please do not hesitate to call me at 919-602-2945.


*Marisa S. Harrell   MS CCC SLP*
Marisa S. Harrell, M.S., CCC-SLP

# MP42 Clinical Psychological Evaluation, 4/19/05

# DAVID W. STEWART, PH.D.
### LICENSED PSYCHOLOGIST
### 811 NINTH ST. SUITE 220
### DURHAM, NC 27705
### (919) 286-5051 (VOICE)
### (919) 286-5525 (FAX)

# PSYCHOLOGICAL EVALUATION

**Name: Maurice Pimble**
**Date of Birth:** ████████ 1985
**Date of Report: April 19, 2005**

## REFERRAL AND IDENTIFYING INFORMATION

Maurice Pimble is 19 year-old single black male currently incarcerated at Rivers Correctional Institution in Winton, North Carolina. This psychological evaluation was requested by Mr. Pimble's attorney to address two issues of competency. On July 13, 2004, Mr. Pimble revoked his request for a new lawyer. His present attorney is asking for an opinion as to whether his decision was voluntary and knowing. On September 7, 2004, Mr. Pimble decided not to accept a plea deal that would have resulted in a shorter sentence than what he received by going to trial. His present attorney is asking for an opinion as to whether this decision was voluntary, intelligent, and knowing. Mr. Pimble is represented by Jennifer Daskal of the Public Defender Service for the District of Columbia.

## ASSESSMENT PROCEDURES

Mr. Pimble was interviewed and tested at the Rivers Correctional Institution on April 12, 2005. Prior to initiating formal assessment procedures, Mr. Pimble was informed as to the general purposes of the evaluation as well as the limits of confidentiality. He indicated that he understood these instructions and elected to fully cooperate with the assessment procedures. Mr. Pimble was administered the following psychological tests:

Wechsler Adult Intelligence Scale-Third Edition (WAIS-III)
Millon Clinical Multiaxial Inventory-III (MCMI-III)
Rorschach Projective Test
Mental Status Exam and Clinical Interview

Maurice Pimble
Psychological Evaluation
Page Two

In addition, transcripts from hearings on July 17 and September 9, 2004, and a copy of his arrest affidavit and investigative report were reviewed along with educational records and a portion of the Court Social Services report (12/10/04).

# FINDINGS

*Behavioral Observations:* Mr. Pimble was dressed in a prison-issued jump suit and was somewhat shy initially. He was responsive to directions and cooperated with the testing procedures throughout. Mr. Pimble tended to avoid eye contact and manifested a generally shy manner. His affect was limited and his mood was depressed. Mr. Pimble denied hallucinations or delusions or suicidal ideation. The test results are believed to be a valid indication of his current functioning.

*Intellectual Test Results:* Mr. Pimble was administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III) from which his IQ scores were derived. His Full Scale IQ, which is considered an indication of his global intellectual functioning, falls in the Borderline range of intellectual functioning (FSIQ = 78; within 74 - 83 with 95% confidence). His overall thinking and reasoning abilities exceed those of approximately 7% of adults his age.

The Verbal score is a measure of acquired knowledge, verbal reasoning, and comprehension of verbal information. His verbal reasoning abilities, as measured by the Verbal IQ, are in the Borderline range and above those of approximately 6% of his peers (VIQ = 77; within 73 - 83 with 95% confidence). The Verbal Comprehension Index (VCI) provides a measure of verbal acquired knowledge and verbal reasoning thus it is a purer measure of verbal comprehension than is the Verbal IQ. In Mr. Pimble's case, his Verbal Comprehension Index score is similar to his Verbal IQ score. His ability to understand and respond to verbally presented material is better than that of only 7% of others his age (VCI = 78; 95% Confidence Interval = 73 - 85).

The Performance score provides an indication of an individual's nonverbal reasoning, spatial processing skills, attentiveness to detail and visual-motor integration. His nonverbal reasoning abilities, as measured by the Performance IQ, are in the Low Average range and better than those of approximately 14% of his peers (PIQ = 84; within 78 - 92 with 95% confidence). The Perceptual Organization Index (POI) is actually a purer measure of nonverbal reasoning than is the Performance IQ. The POI measures fluid reasoning, spatial processing, attentiveness to detail and visual-motor integration. Mr. Pimble's Perceptual Organization Index score is identical to his Performance IQ score. His performance on the Perceptual Organization Index exceeds that of 14% of his age-mates (POI = 84; 95% Confidence Interval = 78 - 92).

*Personality Test Results:* Two specific personality tests were administered to Mr. Pimble, the Millon Clinical Multiaxial Inventory-III (MCMI-III) and the Rorschach Projective Test.

440

Maurice Pimble
Psychological Evaluation
Page Three

Mr. Pimble's responses to the MCMI-III were valid and allow for clinical interpretation. His responses suggest a broad tendency to magnify the level of experienced illness and/or a characterological inclination to complain or to be self-pitying. Equally possible is that this response style conveys feelings of vulnerability associated with current acute turmoil.

Data from the Millon Clinical Multiaxial Inventory-III suggest that Mr. Pimble is experiencing a significant psychological disorder with at least a moderate level of psychopathology characterizing his overall personality organization. Evidence indicates the presence of prominent anxiety and depressive disorders in this young man. He may appear to be edgy and apprehensive and manifest worrisome self-doubts especially regarding inadequacy. He is especially sensitive to public reproval. Depressive symptoms appear to be of a chronic nature. He exhibits a persistent level of downheartedness and poor self-esteem. He lacks a sense of belonging and feels unwanted much of the time.

Underlying dynamics suggest an intense conflict between dependency needs and feelings of guilt and self-condemnation. Although he would like to lean on others he has learned to anticipate pain and disillusionment. He has become pessimistic about the future, brooding over past events and feeling sorry for himself. Feelings of resentment are infrequently displayed as anger and discontent but mostly he projects a gloomy moodiness. He hesitates to stand on his own due to his own self-doubts; on the other hand, he fears he cannot depend on others. Disposed to anticipate disillusionment, he behaves in a helpless and inadequate manner feeling misunderstood, unappreciated and demeaned by others.

The Rorschach Projective Test provides an opportunity to confirm or reject hypotheses generated from the MCMI-III. Because it is not as apparent how to exaggerate or fake responses to the Rorschach, the degree of overlap in the data obtained can help determine the validity of results obtained from the self-report personality measures. In Mr. Pimble's case there was general confirmation of the data from the MCMI-III as well as some additional factors relating to his difficulties with adapting to reality and relating to others.

The Rorschach revealed evidence for a substantial impairment of Mr. Pimble's reality testing capacity whereby he tends to misperceive events and to form mistaken impressions of people and the significance of their actions. This liability is likely to result, at times, in instances of poor judgment in which he fails to anticipate the consequences of his actions and misconstrues what constitutes appropriate behavior. He appears to lack a consistent and well-defined coping style and has fewer resources available for coping with the ordinary demands of everyday living. There is evidence of marked oppositional tendencies associated with underlying feelings of anger and resentment toward people or the world in general. There is no evidence for the presence of delusional or psychotic thinking.

There is evidence for impairments in the areas of self-esteem and identifying with the people in his life. As a consequence, he likely has difficulty in establishing a clear and stable

441

Maurice Pimble
Psychological Evaluation
Page Four

sense of identity. His relationships with others is affected by his limited capacity to form close attachments to others. He shows little interest in engaging in collaborative or competitive relationships with others and he is more likely than most to demonstrate ineffective or maladaptive interpersonal behavior.

## DIAGNOSTIC IMPRESSIONS

According to the criteria established in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, TR, Mr. Pimble qualifies for the following diagnoses:

AXIS I:  CLINICAL SYNDROMES

309.24  Adjustment Disorder with Anxiety
300.4  Dysthymic Disorder

AXIS II:  PERSONALITY DISORDERS AND MENTAL RETARDATION

301.9  Personality Disorder Not Otherwise Specified with Schizoid Features.
V62.89  Borderline Intellectual Functioning

AXIS III:  GENERAL MEDICAL CONDITIONS

Deferred

AXIS IV:  PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS

Legal Difficulties
Poor educational achievement
History of child abuse
Fragmented family of origin

AXIS V:  GLOBAL ASSESSMENT OF FUNCTIONING

50 (Current)

442

Maurice Pimble
Psychological Evaluation
Page Five

# DISCUSSION, OPINIONS AND RECOMMENDATIONS

Mr. Pimble manifests current difficulties with anxiety and depression. His current circumstances certainly contribute to his symptoms but there is reason to believe that these problems were present before his incarceration. His childhood is marked by instability and physical abuse. Both parents were drug abusers and he spent time in shelters for the homeless. Although he qualifies for an Adjustment Disorder with Anxiety diagnosis there is reason to believe that he is predisposed to anxiety as the result of post-traumatic stress issues related to trauma in his childhood. Depressive symptoms appear to be chronic and related to poor self-esteem, feelings of rejection and lack of attachment. Apparently Mr. Pimble did not seek treatment for these problems, perhaps due to his lack of belief that anything could be done about them.

Personality disorders are longstanding maladaptive patterns of impairment in social and personal areas. Mr. Pimble manifests maladaptive behavioral patterns in his relations with others and perception of reality. Further evaluation would be required to more definitively diagnose these patterns. For now a diagnosis of Personality Disorder Not Otherwise Specified with Schizoid Features documents the presence of these adaptive difficulties.

Mr. Pimble also qualifies for a Borderline Intellectual Functioning diagnosis due to his performance on the intellectual measure (WAIS III). Although not mentally retarded, he cannot be expected to comprehend and understand information, particularly of verbal content, like the average citizen. Special accommodation would be required to insure that he is able to understand and then make important decisions based upon full knowledge of the facts.

With reference to the issues of referral, the data indicates that Mr. Pimble was not able to make a knowing, intelligent and voluntary decision with respect to the situation when he revoked his request for a new attorney and when he refused the plea offer. Based upon the content of the transcripts and Mr. Pimble's description of the circumstances, his ability to consider his options and make an intelligent decision were compromised in several ways. First, there is no evidence that his attorney took into consideration his intellectual limitations and thus explained matters in a way so that Mr. Pimble could fully understand his options. It also does not appear that his attorney then followed up with Mr. Pimble to insure that he was basing his decision on all the facts at hand.

Second, Mr. Pimble's problems with poor self-esteem and his issues with dependency make it unlikely that he would not be influenced by what he thought others wanted him to decide. In the situation of the courtroom he was likely intimidated by the judge and personnel and thus was not capable of making a voluntary decision about his request for a new attorney without feeling the pressure of the circumstances. Likewise he was likely similarly influenced in

Maurice Pimble
Psychological Evaluation
Page Six


his decision to refuse the plea offer and ended up making a decision that was not in his best
interests.

Third, there is evidence that, particularly under stress, Mr. Pimble has difficulties with
reality testing which can lead to poor judgments. Under these circumstances, he is likely to form
mistaken impressions of people and the significance of their actions. These mistaken perceptions
in combination with his limited decision-making skills under the best of circumstances would
lead to decisions that would not be in his best interests and be ultimately to his detriment.


David W. Stewart, Ph.D.
Licensed Psychologist
NC License 1043

444

# MP43 Psychological-Educational evaluation 11/21-12/8/05



ASSOCIATES IN COMMUNITY PSYCHOLOGY

## RONA M. FIELDS, Ph.D.

1618 MYRTLE ST., N.W., WASHINGTON, DC
20012

### REPORT ON PSYCHO-EDUCATIONAL AND CLINICAL EVALUATIONS FOR MAURICE PIMBLE

Tel:  202-882-8833
Fax: 202-545-1758
Email: rmfields27@aol.com

Maurice Pimble, a twenty year old male presently incarcerated in the River Correctional Institution in Winton, North Carolina. He was brought to the DC Correctional Center for purposes of an appeal hearing for ineffective assistance of counsel in a criminal proceeding. He was authorized for psycho-educational and clinical assessments. It was in this facility that he was evaluated.

## REPORT ON PSYCHO-EDUCATIONAL EVALUATION OF MAURICE PIMBLE

Date of Birth: ▇▇/85
Dates of Evaluation: 11/21-12/8/05
Age: 20 yrs.8 months
Referred By Attorneys: U.D.C. David A. Clarke School of Law

### Background

Mr. Pimble's background in the juvenile and adult criminal justice system is detailed elsewhere. His background in DC Public Schools is far less detailed and his family background is provided through clinical interviews and a social history. Access to Mr. Pimble for psychological testing required four separate visits. Conditions for testing were less than conducive to concentration. Nonetheless, Maurice was attentive and cooperative despite the poor environment. At one meeting he explained that he was unable to attend the previous appointment because along with everyone else, he was on lock-down.

Maurice describes his early life as chaotic and neglected His parents were together during his first seven years but they wee both drug users and dealers. He is the eldest of his mother's five children. One sister lives with her grandmother. Another sister and brother are presumably with their mother. Maurice doesn't know, however, where they are living these days. He says that he was kicked out of his mother's house when he was twelve because he didn't get along with her boy friends. He lived with various relatives after that. His father was incarcerated during that period of time. Life with his mother meant having to move every time

the rent was due and having the water cut off and other utilities terminated because even when his mother had money she spent it on drugs, never on food or rent. Because of her frequent evictions and consequent moves, Maurice attended different schools, was absent a lot, and was poorly equipped to study in school. He was retained at least three times in elementary school and although he had been referred for special education evaluations, never was evaluated and never placed in an appropriate educational environment to meet his learning disabilities. After leaving his mother's house he wound up with a paternal uncle and then with a friend of his uncle, Alfred Hobdy whom he calls "uncle". Mr. Hobdy, who coached boxing at a gym and felt that Maurice had a talent to box and for the sport. Maurice learned to box and for a while found that gratifying. Then he began playing basketball and football at a local recreation center and stopped going to school altogether. He had changed schools five or six times when he finally got into a GED program at Links and Learn for a year and a half. After that he was in jail. He claims that he just wanted to be friends with the wrong people. His uncle told him he shouldn't hang out with the people who were partying. But, he says, he didn't know kids who were law-abiding.

Records indicate that Maurice was abused by his mother and her boy friend and frequently acted out against the men his mother brought home. His behavior in seventh grade brought him to the attention of the juvenile justice system He began using Marijuana and PCP when he was 15 years old. It is the opinion of his guardian, who is a regular visitor to Maurice since he's been incarcerated, that Maurice is easily influenced by others and is a follower rather than a leader. All of his history, as well as his own accounts and those of his guardian indicate that during the time he was in DCPS he was a very emotionally impaired child suffering the consequences of abuse both physical and mental and the customary consequences of hat abuse manifested as Learning Disabilities that interfere with academic performance.

## Psycho-educational Test Battery

Wechsler Individual Achievement Test
Wechsler Adult Intelligence Scale (WAIS III)
Memory for Designs
Bender Gestalt

## Findings

Maurice Pimble's Full Scale WAIS-III IQ is 75. This is in the low normal or borderline range of cognitive functioning. His Verbal Scale score is 78 and his Performance Scale score is 72. Usually such proximity in the two scale scores would suggest a very consistent pattern of low functioning, borderline ability. But while his scores on the tasks most influenced by formal education are quite consistent in the Mildly Mentally Retarded/Borderline range (Standard score 6), the Performance Scale subtests which are less influenced by formal education indicate that Mr. Pimble has been in the normal range in some conceptual and abstract functioning His score in Spatial Relations and Concrete relationships suggest that he is able to

2

447

learn to perform skilled work in mechanical and construction tasks. The standard scores on the subtests are as follows:

| Verbal | | Performance | |
|---|---|---|---|
| Information | 6 | Picture Completion | 5 |
| Digit Span | 6 | Picture Arrangement | 6 |
| Vocabulary | 6 | Block Design | 8 |
| Arithmetic | 6 | Object Assembly | 8 |
| Conceptualization | 6 | Digit Symbol | 4 |

Although his Verbal Scale IQ is slightly higher that his Performance Scale IQ, and indicates lack of formal education, it also suggests that this young man has been unable to communicate effectively and would feel marginal in peer groups because he lacks the common knowledge base that informs school and peer societies. In combination with these disparities, he has a very depressed understanding of social consequences or logical sequences and common sense judgment. He is operating at the level of mildly retarded in Language learning and possibly suffered some developmental delays in central nervous system processing (brain damage). His score of Average in spatial orientation and perceptual organization suggests that he was able, if presented with appropriate language arts learning tools, to have performed adequately at each grade level. Instead, he failed at least three times on his way through elementary school. Quite likely Maurice Pimble would have met the criteria for classification as Learning Disabled early in school. Maurice's difficulties with visual memory as reflected in his Standard Score 5 on the Picture Completion subtest, is further reflected in his very poor showing on the Memory for Designs test. He remembered and accurately drew only four of the fifteen designs on the MFD test. This could also reflect a perceptual motor handicap commonly found in children with Learning Disabilities, but also a consequence of brain damage or Developmental Delays in psycho-motor functioning. Interestingly though (and this will also be addressed in the context of his Clinical evaluation since these tests are also clinical screening tools) while thee were anomalies in his designs on the Bender he was not required to reproduce them from memory and was therefore able to make reasonable approximations in copying the designs. This reflects adequate perceptual motor functioning but probable central nervous system damage.

Maurice Pimble's scores on the Wechsler Individual Achievement Test (WIAT were compared with his Full Scale IQ of 75 and more specifically with verbal and performance IQs which were within close range to reveal highly significant differences between his IQ and his Achievement. The latter is actually a reflection of his formal education and because his scores on the parts of the WAIS most affected by formal education were so low, the actual achievement scores are even more

significantly depressed. All but two subtest scores are significant at the .01 level of confidence. The other two, Spelling and Reading Comprehension are significant at the .05 level.

The standard and percentile scores on the WIAT are as follows:

| | | |
|---|---|---|
| Basic Reading | 74 ................. | 4th percentile |
| Mathematics Reasoning | 64................. | 2nd percentile |
| Spelling | 69 ................. | 2nd percentile |
| Reading Comprehension | 75 ................. | 5th percentile |
| Numerical Operations | 58 .................0.3 | percentile |
| Listening Comprehension | 72 ................. | 3rd percentile |
| Oral Expression | 80 .................22nd | percentile |
| Written Expression | 60.................0.4 | percentile |

Maurice's subtest scores on Basic Reading, Reading Comprehension, Listening Comprehension and Oral Expression are consistent with his WAIS Verbal scale scores which also place him in the lowest quartile in IQ. However, when we examine the Composite Scores for Reading, Math, Language and Spelling, his standard score of 57 is significantly lower than his Full Scale IQ of 75 and places him at the 0.2 percentile at the significance level of .01 probability.This is especially notable in the difference between his level of Mathematical Reasoning and his performance of Numerical Operations.

## Conclusions

The Psycho-educational Testing illustrates several issues about Maurice Pimble's cognitive functioning and suggests two underlying handicapping conditions that interfere with his ability to learn.
First, his formal education was not appropriate to his ability and needs. This may be consequent to brain processing impediments and anomalies. This hypothesis needs to be investigated by means of a neuropsychological examination. His performance in his early school years apparently indicated that he required Special Education services for Learning Disabilities. The probable etiology of his Learning Disabilities was a combination of Central Nervous System Anomalies (Neuropsychological processing or obstruction). He was referred for evaluation at that time but neither the evaluation nor the placement ever happened.
Second, there is and likely has always been an emotional impediment to learning given his early childhood traumatic and chaotic life experience. He is seriously Emotionally Disturbed. That has been studied through the clinical assessment(See attached report) regarding the clinical psychological assessment of Maurice Pimble.


-----------------------
Rona M. Fields, Ph.D.
Licensed Clinical Psychologist

449

*Part II*



ASSOCIATES IN COMMUNITY PSYCHOLOGY

# RONA M. FIELDS, Ph.D.

1618 MYRTLE ST., N.W., WASHINGTON, DC
20012

Tel:  202-882-8833
Fax:  202-545-1758
Email: rmfields27@aol.com

## REPORT ON CLINICAL PSYCHOLOGICAL
## EVALUATION OF MAURICE PIMBLE

Date of Birth: ▓▓▓85
Date of Evaluation: 11/29/05
Age: 20 years 8 months
Referred by Attorney: U.D.C. David A. Clarke School of Law

### Background

Maurice Pimble's background has been noted above and in a social history report.
To summarize in the context of this clinical report, there are some significant issues:

1. His parents were drug dealers and users who had little involvement with
   their children. Given the home circumstances as described by
   caseworkers/investigators from Social Services Abuse and Neglect
   investigations, Maurice had to be removed from the home for his health and
   safety.  He was found by the court to have been severely abused and
   describes having been beaten up by a series of his mother's boy friends.
2. He recalls many times when there was no food, no lights, and  no heat
   because his mother didn't pay rent nor utility bills and spent the food money

5. He felt he had been rejected by his mother and that his father didn't care about him from the time he was seven years old. After his foster uncle (who became his guardian) took an interest in him he wanted to please him but found it difficult to feel worthy.

At this time, the only visitor he has is that "uncle".

<u>Tests Administered</u>

Thematic Apperception Test (TAT):
Projective Drawings:
Draw A Person
Self Portrait
House Tree Person
Clinical Interview

<u>Findings</u>

The projective drawings indicate that Maurice feels "disconnected" from himself and from others. He also experiences feelings of instability and great insecurity. He has some concerns about his sexuality and a particular disconnectedness between mind and body. <u>He is unable to control himself and/or to understand what he is thinking and feeling. His drawings also indicate emotional immaturity and lack contact features indicating that he is unable to connect with another person</u> or tries to hide himself from others. On the House-Tree -Person drawing, there is no connection between the figures and no connection is even possible. When asked to tell a story about his drawing, Mr. Pimble told the following story: "They live up in the woods where thee are a lot of trees. He lives alone in the house. In the house is furniture, TV, clothes. The tree? It just grows real tall. It doesn't grow food. It's a tall tree."

The clinical interpretation of this story and the drawing is that neither the tree (male symbol) nor the house(female symbol) provide shade, comfort, nourishment, warmth nor access. *He is alone in the world in a "forest of (men) trees" that just exist.*

The drawings also project his sense of his own mental impairment, particularly processing problems. He has serious issues of low self- esteem and poor verbal comprehension. All of this, makes him particularly susceptible to the influence and leadership of others.

At the same time, Maurice is conflicted between feelings of guilt and dependency needs. He learned as a child that depending on others is painful and disappointing. More of this conflict and anxiety are revealed in his TAT stories. The Imports or themes of these stories are as follows:

1. When you find you cant do something you take lessons to learn how to do it better
2. because each person has his own thoughts and destination

451

3. and when your feelings are hurt you have trouble pulling yourself together but you learn to control yourself

4. or if you are told how to do something and don't do it and drop your responsibilities you now do what you are told.

5. If you are in a relationship you don't want it to go away but it does for awhile, then it returns

6. But when you get into a fight with weapons one goes to jail and the other to surgery.

7. on the other hand when two creatures are in a fight one can kill the other and consume it.

8. or you get into an argument with someone and cannot resolve it until you dream about it and awaken the next morning

9. and if you do something wrong you can almost kill yourself but get saved by the law enforcers who punish you for wrongdoing and you learn ever to do that again

10. but if you do something very hard, dangerous but good and do a good job of it, you are rewarded.

These stories reflect a strong concern with right and wrong and with achievement. However the also demonstrate that Maurice Pimble has little confidence in himself to succeed at doing what he knows is right. He feels weak and vulnerable. Important among these themes are the repeated instances of individuals in conflict with close ones and are unable or unmotivated for connecting with each other.

## Conclusions

Mr. Pimble 's history and his clinical symptoms suggest he suffered an Attachment Disorder of childhood as well as probable toxicity in utero and abuse that included head trauma. The nutritional deficits in his childhood also contributed to the probability of central nervous system damage. Attachment Disorder of early childhood is a diagnosis consistent with his history of chaotic home environment and disrupted relationships. It is also consistent with his inability to feel connected with other people and places. His very poor self esteem and lack of emotional stability is consistent with a diagnosis of Anxiety Disorder and Chronic Post Traumatic Stress. These circumstances and consequence of childhood neglect and abuse would have made it difficult for Mr. Pimble to concentrate in school and to achieve learning objectives. His cognitive impairments were never addressed with special education although he was retained three or four times in elementary school. He is quite concerned with issues of right and wrong and cognizant of the need to follow rules and laws. However, he wants to be liked and is therefore easily led by peers who may not have the same standards of moral judgment. He expects punishment for his criminal actions and because he is naïve and low cognitive ability, committed actions for which he feels guilty. He also has difficulty with self- direction because of his weak ego or sense of self because he is Seriously Emotionally Disturbed. He fits the diagnosis Multiple Handicap because he has an emotional, mental and (probable)brain anomalies.

452

may not have the same standards of moral judgment. He expects punishment for his criminal actions and because he is naïve and low cognitive ability, committed actions for which he feels guilty. He also has difficulty with self- direction because of his weak ego or sense of self. He fits the diagnosis <u>Multiple Handicap because he has an emotional, mental and (probable)brain anomalies.</u> Neuropsychological testing of Maurice Pimble is essential to making a final diagnosis of his disabilities and is essential, also, to determining the etiology of his impairments.

### Recommendations for Educational and Psychological Remediation

Maurice Pimble needs one- on- one psychotherapy sessions to develop self esteem and confidence. Therapy needs to deal with his chronic Post Traumatic Stress Disorder, including the Dissociative phenomenon and flashbacks that interfere with his integration into present reality. But to be effective his therapy must include educational remediation. His Language Arts deficits can be addressed with an Orton-Gillingham method program. These are available on interactive CD for use by individuals. He will need training first to use a computer. This program includes speech and hearing and is therefore a complete sensory integration approach to learning.

His WAIS profile suggests that his Spatial Comprehension and Perceptual Organization skills might contribute to success in learning skills such as auto mechanics, heating and air conditioning mechanics and machine tool operations. There is every reason to believe that when Maurice Pimble has achieved literacy and job skills, he will also achieve confidence and self-esteem. He will need encouragement to persevere long enough to achieve a level of proficiency. Every attempt the ends in failure will further impair his fragile confidence. He is eager to learn a trade and to gain self-respect.

Rona M. Fields, Ph.D.
**Licensed Clinical Psychologist**

# OSSE
## DC Office of the State Superintendent of Education
### OFFICE OF COMPLIANCE & REVIEW
### STATE ENFORCEMENT & INVESTIGATION DIVISION
### STUDENT HEARING OFFICE
1150 5th Street, S.E.
Washington, D.C. 20003
CONFIDENTIAL

Seymour DuBow, Due Process Hearing Officer

## HEARING OFFICER'S DETERMINATION

In the Matter of                              )
                                              )
**Maurice Pimble,**                           )
Date of Birth: ███/85                         )
                                              )        Date of Complaint: 3/21/05
            Petitioner,                       )        Date of Original Hearing: **4/25/05**
                                              )        Motion to Reconvene: 9/24/07
        v.                                    )        **Date of Hearing: 10/31/07**
                                              )
**The District of Columbia Public Schools**  )        **Currently at D.C. Jail**
                                              )
                                              )
            Respondent                        )


**Counsel for Petitioner:**            **Professor Joseph Tulman, Esq.**
                                       **Alea Harmon and Colleen Archer**
                                       **Law Student Advocates**
                                       **David A. Clarke School of Law**
                                       **UDC**
                                       **4200 Connecticut Ave., N.W.**
                                       **Washington, D.C. 20008**


**Counsel for DCPS:**                  **Quinne Harris-Lindsey, Esq.**
                                       **825 N. Capitol Street, N.E.,**
                                       **Washington, D.C. 20002**

**INTRODUCTION:**

The original due process hearing request was filed on March 21, 2005. A due process hearing was held on April 25, 2005. This hearing officer requested legal memoranda to be filed on May 3rd 2005. On that date, counsel for Mr. Pimble filed their legal memorandum. Counsel for DCPS, Ms. Lenore Verra, requested an extension and stated settlement negotiations were continuing. This hearing officer, hearing nothing from counsel for the parties, scheduled a telephonic status conference on May 13th 2005 to discuss the status of settlement discussions. *The forty five day rule was waived.* On May 13th the telephonic status conference was held and counsel for DCPS agreed to fund independent evaluations within the Superintendent's Guidelines, but would not agree to travel costs for the evaluators to go to the federal correctional facility in North Carolina. This hearing officer requested from counsel for Mr. Pimble information on travel costs for the evaluators and whether Rivers Federal Correctional Institution would allow access. Counsel provided that information on May 26, 2005. On June 8, 2005 this hearing officer ordered DCPS to reimburse the evaluators for their travel costs to Rivers Correctional Institution upon proper documentation. Counsel for Mr. Pimble then sought to have independent evaluations conducted and to resume a hearing after the evaluations were completed. The independent clinical psychological evaluation was completed on April 19, 2005 and the independent psychological-educational evaluation was conducted on November 21st and December 8, 2005. On August 23, 2007, over a year and half after the independent evaluations were completed, counsel for Mr. Pimble filed a motion to reconvene the due process hearing which was granted and a hearing was held at the District of Columbia Public Schools (DCPS), 1150 5th Street, S.E., Washington, D.C. 20003, on October 31, 2007.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUE:**

1.     **Is the petitioner entitled to compensatory education from DCPS?**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**MP-1-MP-43**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY DCPS:**

**None**

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| **Maurice Pimble\*** | **Petitioner** |
| **Twandya Lewis** | **Mother** |
| **Alfred Hobdy** | **Friend** |
| **Dr. Rona Fields** | **Clinical Psychologist** |

**(\* Testified by telephone)**

**FINDINGS OF FACT:**

1.  The petitioner is a twenty-two-year old male who has been found eligible for special education services by DCPS as a student with a Learning Disability. (MP-21)

2.  The petitioner was first found eligible for special education services on January 30, 2001 while attending Johnson Junior High School. (MP-21)

3.  The student received special education services at Johnson Junior High School in the 2000-2001 School Year. He was placed in a special education classroom all the school day taught by two teachers. (Testimony of Petitioner)

4.  The student's report card at Johnson J.H.S. for the first two advisories dated February 5, 2001 show he received grades of B in all subjects and the teacher comments were good participation and excellent behavior. (MP-25)

5.  The petitioner transferred from Johnson J.H.S. on September 17, 2001. (MP-24) He than went to Roosevelt Senior High School for the 2001-2002 School Year. The petitioner attended for two to three months and then stopped attending. (Testimony of Petitioner) His report card at Roosevelt showed him failing all his subjects for the 2001-2002 School Year. The report card further showed that the student did take the courses of developmental reading and math foundations that may have been special education classes. (MP-22)

456

6.  The petitioner was incarcerated at the District of Columbia Jail on February 24, 2004. He stayed there until he was moved on February 16, 2005 to the Rivers Correctional Institution in Winston, North Carolina which is part of the Federal Bureau of Prisons to serve his sentence. He was later moved in March 2007 to the Schuylkill Federal Correctional Facility in Pennsylvania. He has currently been moved back to the D.C. Jail awaiting trial on another charge, and he understands he will return to the Schuylkill Correctional Facility to finish his first sentence that ends in 2011. (Testimony of Petitioner)

7.  An IEP was developed for the student at the D.C. Jail on October 1, 2004 that provided for six hours of specialized instruction to be provided by a special education teacher. The IEP states under LRE Determination: "Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability. Maurice requires behavior intervention and small structured environment that cannot be met in the general education classroom." The IEP accepts out of general education as the appropriate placement to meet the student's needs. The IEP states the location of services is the D.C. Jail with "specific scheduling to accommodate services". (MP-14 & MP-21)

8.  The petitioner received no special education services from his date of incarceration at the D.C. Jail on February 24, 2004 through October 1, 2004 when his IEP was developed. Counsel for the Petitioner stated in a letter to the Education Director at Rivers Correctional Institution that "According to Lisa Russell, Director of Incarcerated Youth for the District of Columbia Public Schools, Maurice was receiving special education at the D.C. Jail." (MP-14)

**DISCUSSION AND CONCLUSIONS OF LAW:**

As a preliminary matter, counsel for the petitioner filed on October 24, 2007, a Motion for Default Judgment and a Motion to Include Discussion of the McKinney-Vento Homeless Assistance Act. Counsel for the petitioner concedes that these motions were not made prior to or at the first due process hearing on April 25, 2005. Counsel for the petitioner's failure to make these motions prior to or at the April 25th 2005 due process hearing effectively waives them from being raised at the reconvening of the due process hearing over two years later.

Counsel for the petitioner agrees that one of the original issues raised in the due process complaint about the failure of DCPS to conduct evaluations has been resolved. Counsel for the petitioner agrees that the only issue before this hearing officer is whether the student is entitled to compensatory education and if so, the amount of that compensatory education award.

457

While compensatory education is not a remedy expressly identified in IDEA, courts have awarded it in appropriate circumstances by exercising their authority under *20 U.S.C. Section 1415 (i) (2) (B) (iii) and IDEA 2004 at Section 615 (i) (2) (C) (iii)* to "grant such relief as the court determines appropriate." The Supreme Court in *Florence County School District Four v. Carter*, 510 U.S. 7 at 16 stated: "Under this provision, 'equitable considerations are relevant in fashioning relief,' *Burlington*, 471 U.S. at 374, 105 S.Ct., at 2005, and the court enjoys 'broad discretion' in so doing, id. at 369, 105 S. Ct. at 2002. Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." In *Reid v. D.C.*, 401 F. 3d 516, (2005) The United States Court of Appeals for the District of Columbia held: "Consistent with Congress's stated aim of 'ensur[ing] that the rights of children with disabilities and parents of such children are protected,' see 20 U.S.C. Section 1400 (d) (1) (B), we therefore join our sister circuits and hold that compensatory education awards fit comfortably within the 'broad discretion' of courts fashioning and enforcing IDEA remedies, *see Carter*, 510 U.S. at 15-16." *Id.* at 20

Counsel for the petitioner requests compensatory education for missed services going back to when the student was in first grade in DCPS schools. An initial issue is whether those claims for compensatory education are barred by the statute of limitations. When this due process complaint was filed in March 2005, the current two year statute of limitations in IDEA at *34 C.F.R. Section 300.507 (2)* was not yet in force. At the time of this complaint being filed, the courts in the District of Columbia applied the District's "catch-all" statute of limitations of three years to *IDEA* cases. U.S. Judge Joyce Green in *Wingfield v. District of Columbia*, Civil Action No. 00-121 (D.D.C. 2000) found "that a three year limit is consistent with the federal policies underlying the IDEA." Similarly, in *Hammond v. District of Columbia*, 2001 U.S. Dist. LEXIS 25845, U.S. Judge Gladys Kessler held:

> The reasoning underlying this nearly unanimous line of case applying catch-all limitations periods to IDEA hearings persuades the Court that the three-year limitations period under D.C. Code Section 12-308 (1) applies. Application of this limitation is not inconsistent with the IDEA's twin goals of protecting educational opportunities for the disabled, 20U.S.C. Section 1400 (d)(1)(A), and of providing procedures by which parents and school systems can efficiently resolve disputes over a disabled child's education. 20 U.S.C. Section 1415 *et. seq.* The local three-year statute of limitations provides sufficient time for cooperation and negotiation among parents and school officials so that they can resolve complex issues in a non-adversarial manner. At the same time, it safeguards the due process right to an administrative hearing in the event discussions fall. *Id.* Accordingly, the Court concludes that the three-year statute of limitations applies to Plaintiff's request for a due process hearing.

5

Counsel for the petitioner argues that the continuing violation doctrine applies to claims prior to the three year statute of limitations and relies on the *Hammond* case that found a continuing violation. In this case, DCPS found the student eligible for special education services on January 1, 2001 and developed an IEP for the student on that date. DCPS had provided a FAPE at Johnson J.H.S. in implementing his January 2001 IEP. There is no evidence in the record that the January 2001 IEP was inappropriate. The petitioner testified that he did receive full-time special education services in a special education classroom at Johnson J.H.S. The student's report card at Johnson J.H.S. for the first two advisories dated February 5, 2001 show he received grades of B in all subjects and the teacher comments were good participation and excellent behavior. (MP-25)  The above report card, introduced into the record by the petitioner's counsel, shows the student was receiving educational benefits at Johnson with solid B grades in all his courses. This hearing officer finds on the basis of the petitioner's own testimony that the student stopped attending Roosevelt Senior High School two to three months into the 2001-2002 School Year. The Report Card from Roosevelt indicates a math and reading course that appeared to be special education classes. DCPS was making a FAPE available, but the student failed to take advantage of those educational opportunities by his non-attendance. Counsel for the petitioner's argument for a continuing violation does not apply in light of DCPS providing FAPE from January 2001 until the student stopped attending Roosevelt S.H.S. Unlike the facts in *Hammond,* after January 2001 there was not inaction on the part of DCPS to provide a FAPE while the student was attending a DCPS school to justify applying the continuing violation doctrine. In *Wingfield v. D.C., Id.,* Judge Joyce Green dealt with a similar issue and held:

> Finally, plaintiffs argue that the statute of limitations does not apply because Kevin suffered a continuing injury. The purported injury done to Kevin may well have had lasting effects, but the statute of limitations begins to run when the "tortuous conduct" ceases, not when the injury to the plaintiff has been undone. See 325-343 E. 56th Street Corp. v. Mobil Oil Corp. 906 F.Supp. 669, 675-76 (D.D.C. 1995) (citing Page v. United States, 729 F. 2d 818, 8231 (D.C.Cir. 1984) Between January 30, 1996, when Kevin was placed in a special education program, and January 30, 1999, when Kevin became due for a triennial re-evaluation, the only ongoing IDEA violation plaintiffs allege is the District's failure to provide Kevin with compensatory education to atone for its previous IDEA violations. That "continuing denial of Kevin's rights" is not a new injury, but a refusal to compensate for past injury. As such, it does not delay the initiation of the limitations period.

This hearing officer finds the decision in *Wingfield* directly applicable to this case. The facts in this case do not justify applying the continuing violation doctrine. Following the law in this Circuit, this hearing officer concludes that the three- year statute of limitations applies to this case. Petitioner's claims for compensatory education prior to January 2001 when he was found eligible for special education are therefore barred by the three-year statute of limitations.

The threshold question for this hearing officer is whether there has been a denial of a Free Appropriate Public Education (FAPE) to the petitioner that would entitle him to the equitable remedy of compensatory education. The above Findings of Fact show that DCPS denied a FAPE to the petitioner, who they had found eligible for special education services in January 2001, by not providing special education services when he was at the D.C. Jail from February 24, 2004 until October 1, 2004 when DCPS developed an IEP for the student. While the petitioner testified he did not receive any special education services while in the D.C. Jail from February 24, 2004 until February 15, 2005, that statement is contested by his own counsel who wrote in a letter to the Education Director at Rivers Correctional Institution that "According to Lisa Russell, Director of Incarcerated Youth for the District of Columbia Public Schools, Maurice was receiving special education at the D.C. Jail." Based on the above letter from counsel for the petitioner, this hearing officer concludes that the student received some special education services at the D.C. Jail after October 1, 2004. The IEP developed for the petitioner at the D.C. Jail on October 1, 2004 provided for six hours of specialized instruction to be provided by a special education teacher. The IEP states under LRE Determination: "Maurice is unable to be academically successful in the regular education classroom because of the severity of his disability. Maurice requires behavior intervention and small structured environment that cannot be met in the general education classroom." Despite this recognition by DCPS of the severity of his disability, DCPS only provided six hours of services at the D.C. Jail. The 2006 IDEA Regulations allow an IEP team of a student with a disability who is convicted as an adult under state law and incarcerated in an adult prison to modify the student's IEP or placement if the state has demonstrated a "bona fide security or compelling penalogical interest that cannot otherwise be accommodated." *34 C.F.R. Section 300.324 (d) (2) (i)*. In this case, the petitioner testified that all student prisoners each only receive six hours a week of instruction at the D.C. Jail. The IEP team made no showing of a "bona fide security or compelling penalogical interest that cannot otherwise be accommodated." The student's 2001 IEP resulted in the student receiving full-time special education services in a special education classroom at Johnson J.H.S. While such full-time services may not be possible at the D.C. Jail in light of the above security interests, the provision of only six hours is inadequate to meet the student's recognized needs and therefore makes the October 1, 2004 IEP inappropriate. Based on the above discussion, this hearing officer awards eight months of compensatory education for missed specialized instruction from March 2004 until October 1, 2004 and for inadequate specialized instruction services from October to February 2005.

It is hereby **ORDERED** that:

**The petitioner is awarded eight months of compensatory education.**

460

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.


Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: November 8, 2007


Date Issued:

461

ATTENDANCE SHEET

STUDENT'S NAME: _Maurice Pimble_

SCHOOL OF ATTENDANCE: _____

D.O.B: ~~____~~/85

HEARING DATE: _Oct. 31, 07_    ROOM: _6A_    TIME: _11_ (A.M./P.M.)

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Alea N. Harmon  Alea N. Harmon | Student | Law Student Advocate |
| Colleen Archer | Student | Law Student Advocate |
| Joe Tulman | Student | Supervising Attorney |
| Rona M. Fields PhD | Psychologist | Licensed Clinical Psychologist |
| Jwandyn Lewis | ~~mother~~ Student | Mother |
| Alfred Hobdy | Student | Witness |
| Quinne Harris-Lindsey | DCPS | Attorney-Advisor |
| Maurice Pimble  — by Telephone | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**PLEASE CHECK ONE OF THE FOLLOWING BOXES**

Hearing Held/Concluded _____  Withdrawn _____  Settlement _____  Continued _____

Other: _____

_____

_____

**Impartial Hearing Officer (PLEASE SIGN)**

Revised 07/25/07    462